IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| DAVID LEE JACKSON, | § | |
| | § | |
| Petitioner, | § | Civil Action No. 1:09-CV-1039 |
| | § | |
| v. | § | JUDGE RON CLARK |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

## **MEMORANDUM AND ORDER ON ATTORNEY'S FEES**

Petitioner David Lee Jackson was convicted of murder and use of a dangerous weapon to commit murder, in violation of federal law, and sentenced to death. His conviction and sentence were affirmed by the United States Court of Appeals for the Fifth Circuit, and the Supreme Court denied Mr. Jackson's petition for writ of certiorari. Pro bono counsel Steven Olson and Steven Bergman of O'Melveny & Myers appeared on his behalf on October 1, 2009 and June 18, 2010, respectively. On the motion of trial counsel, the court also appointed James Lohman as habeas corpus co-counsel on October 13, 2009. Over the course of the next nine months, counsel submitted four CJA 30 vouchers totaling $79,999.04 for services rendered between October 13, 2009 and July 15, 2010.

Before the case was transferred to the undersigned on July 23, 2010, the December 15, 2009 and February 8, 2010 CJA 30 vouchers had been paid in the amount of $40,018.19. The May 23 and July 15, 2010 vouchers totaling $39,980.85 had been submitted, but were still pending. The undersigned requested that counsel submit more detailed time sheets to support the May 23 and July 15 vouchers, noting that the time sheets provided little, if any, support for the funds requested. This was done, but the additional documentation also lacked specificity.

1

The court is concerned with the amount of money that has been requested for attorney's fees before Mr. Jackson's petition has even been filed, when the docket shows mainly repeated requests for additional funding. *See, e.g.*, Docs. # 5, 10-12, 17, 20, 27. Due to a lack of information about the nature of some work performed and because excessive time was billed for "conferences" with pro bono co-counsel, for the reasons discussed below, the attorney's fee request will be reduced by a total of $6,603.80: i.e., by $4,717.00 for the May 23 voucher and $1,886.80 for the July 15 voucher.[1]

## DISCUSSION

**A.    Applicable law**

1.    *The court is responsible for reviewing attorney's fee requests*

There are few published decisions that discuss a specific framework for analyzing attorney's fee requests in habeas corpus cases, and fewer still that do so in death penalty habeas cases. However, it is clear that the court does have the ability, and the responsibility, to review such requests. *See, e.g.*, *United States v. Johnson*, 214 F. Supp. 2d 488 (E.D. Pa. 2002); *United States v. McVeigh*, 918 F. Supp. 1452 (W.D. Okla. 1996); *United States v. Diaz*, 802 F. Supp. 304 (C.D. Cal. 1992); *United States v. Self*, 818 F. Supp. 1442 (D. Utah 1992); *United States v. Cook*, 628 F. Supp. 38 (D. Colo. 1985); *Williams v. Quarterman*, 2007 WL 2065239 (S.D. Tex. Jul. 17, 2007); *United States v. Parker*, 2004 WL 2095684 (W.D.N.Y. Sep. 14, 2004); *United States v. Haslip*, 1997 WL

---

[1] While the court is cognizant of Mr. Jackson's right under 18 U.S.C. § 3599(f) to *ex parte* requests and orders for investigative, expert, or other services upon a showing of the need for confidentiality, this Order discusses only his counsel's request for attorney's fees. No details of Mr. Jackson's claims are discussed, nor does the court touch on the specific content of the billing records submitted, other than to mention that Mr. Lohman had a number of conferences with, and communications to, co-counsel. Therefore, there is no need for this Order to be *ex parte* or sealed.

471731 (D. Kan. Jul. 9, 1997); *United States v. Hamilton*, 1996 WL 633619 (D. Kan. Oct. 8, 1996). Given the limited resources available for all cases nationwide, the court cannot simply "rubber-stamp" voucher requests. *See United States v. Smith*, 76 F. Supp. 2d 767, 768 (S.D. Tex. 1999).

The Judicial Council of the Fifth Circuit issued a notice in October 1998 entitled "Special Procedures for Reviewing Attorney Compensation Requests in Death Penalty Cases," which states that "any request for compensation in excess of $35,000 at the district court level . . . is presumptively excessive." It goes on to note that "[a]ny attorney's fees request which is presumptively excessive, either because of the hourly rate or the total amount requested, must be justified by the requesting attorney in a written submission filed with the presiding judicial officer in the district court." *See* www.ce5.uscourts.gov/cja/cjaDocs/cja.pdf.

2.  *Factors the court may consider when determining a reasonable fee*

While the above-cited cases provide some guidance to the court, they often fail to set out a comprehensive analysis to support their determination of a reasonable fee. Further, the court has not found a published death penalty habeas case in the Fifth Circuit that has developed a test or set of factors to consider when determining a reasonable fee.[2] Given the importance of this issue, the court will utilize the following framework in its analysis.

The court's inquiry into payments in excess of the maximum amount is two-pronged. It first asks whether the representation is "extended" or "complex," then whether the excess payment is "necessary to provide fair compensation." *See* 18 U.S.C. § 3006A(d)(3). Extended representation infers a "substantial investment of time," while complex representation requires an evaluation of the

---

[2]Some cases do touch on the general idea, but provide little analysis. *See, e.g., Stoker v. Scott*, 1996 WL 661640 at *3 (5th Cir. Oct. 25, 1996). However, the court has found no Circuit case that provides a set of specific factors to consider.

"intricacies of the case and their corresponding call on counsel's intellectual resources." *See, e.g., Chamblin v. I.N.S.,* 176 F. Supp. 2d 99, 104-05 (D.N.H. 2000). "Only reasonably competent and productive time is deserving of recompense under the CJA." *Id.* at 105.

In determining whether the fee is "necessary to provide fair compensation," some of the factors the court may consider are:

1. The responsibilities involved, measured by the magnitude and importance of the case;

2. The manner in which the duties were performed;

3. Knowledge, skill, efficiency, professionalism, and judgment required of, and used by, counsel;

4. The nature of counsel's practice and injury thereto;

5. Any extraordinary pressure of time or other factors under which services were rendered; and

6. Any other circumstances relevant and material to a determination of a fair and reasonable fee.

*Johnson*, 214 F. Supp. 2d at 491 (citing Administrative Office of the United States Courts, Guide to Judiciary Policies and Procedures, Chap. II, Part C., § 2.22B(3)); *see also McVeigh*, 918 F. Supp. at 1460; *Diaz*, 802 F. Supp. at 308. For a fee to be fair, the compensation provided need not be full. *Johnson*, 214 F. Supp. 2d at 491.

**B. Analysis**

1. *Attorneys appearing in this action*

One appointed attorney and two pro bono attorneys have appeared. Based on the billing records, one might be led to believe that the appointed attorney has performed all of the work in this case to date, and also billed for the time it took to discuss the case at length with his pro bono co-counsel. Co-counsel, Messrs. Olson and Berman, work for the well-known firm of O'Melveny &

Myers. Mr. Olson is a partner at the firm, and is a former Assistant United States Attorney. These attorneys are not neophytes whom appointed counsel has to train. Rather, they are experienced attorneys who can assist effectively without endless discussions with appointed counsel.

It appears to the court that the bills submitted not only list time for most, if not all, of the work done in the case, but also for unduly long discussions Mr. Lohman had with pro bono co-counsel. Most sophisticated private clients generally do not accept extensive billing for duplicative services or conversations with co-counsel, and neither should the federal government.

    2.    *The representation is extended or complex*

Mr. Lohman was appointed on October 13, 2009, nearly one year before Mr. Jackson's petition deadline. Counsel will likely file a reply brief to the Government's response to the petition, and there may be hearings while the habeas case is pending at the district court level. Although counsel has not yet filed the petition, the motions for investigative funds provided the court with an idea of the types of claims that will be pursued.

The court finds that the representation is likely to be extended and complex. However, the $35,000 cap in death penalty habeas cases was presumably set based upon the type of work and time commitment a typical case requires. The mere fact that this is a death penalty habeas case does not obviate the need for fee requests that set out clearly what work was done, and that demonstrate that proper billing judgment was exercised.

    3.    *Documentation of the time spent to date does not demonstrate that the fees requested are "necessary to provide fair compensation"*

        a.    <u>The responsibilities involved, measured by the magnitude and importance of the case</u>

This is an important case. Death penalty cases have a "uniquely severe penalty." *Jackson v. Dretke*, 450 F.3d 614, 619 (5th Cir. 2006) (Dennis, J. dissenting); *see also Krull v. United States*,

240 F.2d 122, 134 (5th Cir. 1957) (the death penalty is the "most severe of all penalties"). The responsibilities involved in defending such a case, whether at the trial or the habeas level, are grave. However, this does not mean that an attorney has carte blanche to request whatever fees he or she wants to defend such a case.

      b.    <u>The manner in which the duties were performed</u>

The court is unable to tell much about the work performed in this case to date. Nearly $80,000 in attorney fees have been requested before the petition has been filed. All that has been filed are several requests for investigative funds that appear to be patterned on existing forms, rather than crafted from novel analysis. It would seem that this could have been accomplished for less expense or even with the assistance of pro bono counsel.

While performing an investigation into certain aspects of the crime, Mr. Jackson's background, and the defense presented at the first trial is understandable, and necessary before writing a habeas petition, the time sheets primarily disclose often unspecified legal research, the drafting of motions for more funding, and lengthy telephone conferences with, or the drafting of memos to, co-counsel.

      c.    <u>Knowledge, skill, efficiency, professionalism, and judgment required of, and used by, counsel</u>

Appointed counsel stated to the court that he has over twenty years of experience representing capital prisoners in Texas, Florida, and Louisiana; has worked on dozens of capital cases both at the trial and habeas level, and is admitted to practice before the United States Supreme Court, United States Court of Appeals for the Fifth and Eleventh Circuits, and the United States District Courts for the Eastern and Southern Districts of Texas, as well as for the Southern District of Florida. That

degree of experience should reduce the need for legal research on basic issues, especially since co-counsel, who are working pro bono, appear to be competent and experienced.

        d.       <u>The nature of counsel's practice and injury thereto</u>

It is unclear whether counsel practices any other type of law. The court is unable to ascertain what, if any, injury to his practice would result from his handling of death penalty cases like this one.

        e.       <u>Any extraordinary pressure of time or other factors under which services were rendered</u>

Counsel was appointed as Mr. Jackson's habeas counsel little more than one week after the Supreme Court denied his petition for certiorari, and his one year statute of limitations under the AEDPA began running. Although this is a time limitation, it is the same limitation present in every other death penalty habeas case. In this case, the pressure is somewhat less than that imposed on a solo practitioner in many cases, because counsel is assisted by additional counsel.

        f.       <u>Any other circumstances relevant and material to a determination of a fair and reasonable fee</u>

The court is not aware of any other circumstances relevant and material to a determination of a fair and reasonable fee.

        g.       <u>Conclusion</u>

Taking the above six factors into account, the court does not believe that the documentation submitted, and the filings on the docket, demonstrate that the fee requested is "necessary to provide fair compensation."

The court certainly appreciates and commends counsel from a major law firm fulfilling their ethical responsibilities by volunteering to take on a complex case such as this. The court would not expect pro bono counsel to go it alone, or even to take the laboring oar. It is indeed appropriate that an attorney with Mr. Lohman's years of experience was appointed as co-counsel, and took the lead.

But in such a situation, it seems reasonable that billing requests would indicate that qualified pro bono counsel have been involved as something more than "sounding boards."

    4.    *The court will reduce the requested fees by $6,603.80*

Of all the fees claimed, the court finds the numerous and lengthy telephone conferences with, and memoranda/correspondence to, co-counsel most troubling. CJA 30 forms list specific categories of activities performed by the lawyer. On the May 27 voucher, the largest number of hours are claimed in the "Other" category—44.3. Judging by the time sheets, these hours appear to have been largely expended on Mr. Lohman's conversations and correspondence with co-counsel. The July 15 voucher is similar—the second largest number of hours, 26.3, are claimed in the "Other" category.

Mr. Lohman has pointed to the fact that his co-counsel in this case, Messrs. Olson and Bergman, are working pro bono. However, the pro bono representation begins to look less and less like a bargain to the taxpayers responsible for paying counsel, when many of the billable hours claimed involve lengthy conversations with pro bono co-counsel. Further, consultations with expert counsel is a separate category on the CJA 30 form; the hours previously stated from the May and July vouchers in the "Other" category are in *addition* to 8.6 hours spent consulting with expert counsel. The court finds this unreasonable for purposes of CJA reimbursement.

The court will reduce the fee request by the hours marked "Other" that were solely spent consulting and corresponding with co-counsel. On the May 23 voucher, this comes to 26.5 hours. On the July 15 voucher, this comes to 10.6 hours.[3] At the claimed rate of $178.00 per hour, the fee

---

[3]The court did not exclude time spent meeting, conferring, or corresponding with the "trial team," which theoretically means something more than merely meeting and conferring with co-counsel and is more likely to advance Mr. Jackson's case. The court only excludes phone conference with co-counsel, drafting memoranda to co-counsel, and corresponding with co-

request will be reduced by a total of $6,603.80: i.e., by $4,717.00 for the May 23 voucher and $1,886.80 for the July 15 voucher.

It is this court's responsibility to carefully scrutinize fee requests. To avoid the problems which the court has previously identified, counsel should provide concise, but clear, explanations of the work performed for hours billed.

## CONCLUSION

The court approves $17,077.85 of the requested $21,794.85 from the May 23, 2010 CJA 30 voucher, and $16,299.20 of the requested $18,186.00 from the July 15, 2010 CJA 30 voucher.

So **ORDERED** and **SIGNED** this **1** day of **October, 2010.**

_____
Ron Clark, United States District Judge

---

counsel. This is not to say that such time expenditures could never be permissible; however, if counsel wishes compensation for these activities in the future, he will need to provide the court with a great deal more justification than was presented with the May and July vouchers.