# EXHIBIT 74

**Offense Report**

Case 1:09-cv-01039-MJT     Document 51-2     Filed 10/05/10     Page 2 of 93 PageID #: 6842

74-001



U. S. Department of Justice

Federal Bureau of Prisons

| United States Penitentiary | Beaumont, Texas 77720 |
|---|---|

March 3, 2000

MEMORANDUM FOR ERNEST V. CHANDLER, WARDEN 3/17/2000

THRU:          R. L. AMMONS, ASSOCIATE WARDEN (CUSTODY)

THRU:          J. A. MARSHALL, ACTING CAPTAIN

FROM:          O. RIVERA, ACTING SPECIAL INVESTIGATIVE AGENT

SUBJECT:       **HOMICIDE-CASE NO. BMP99451**
               BROWN, DARRYL, REG. NO. 05803-055
               JACKSON, DAVID, REG. NO. 13567-039
               GULLEY, ARZELL, REG. NO. 18249-039

**INMATE DATA:**

Inmate Darryl Brown was a 34-year-old black male, serving a 188-month sentence for Bank Robbery, Use of a Deadly Weapon in a Bank Robbery. He was a High security level inmate, with Max custody classification. His projected release date was January 22, 2006, with a release method of Good Conduct Time Release. A review of inmate Brown's Chronological Disciplinary Record revealed he had received numerous disciplinary sanctions. Inmate Brown had no Detainers, a CMC assignment of Separation, and no Security Threat Group assignments.

Inmate David Jackson is a 39-year-old black male, serving a 15-year sentence for Felon in Possession of a Firearm. He is a High security level inmate, with Max custody classification. His projected release date is September 15, 2003, with a release method of Good Conduct Time Release. A review of inmate Jackson's Chronological Disciplinary Record revealed he has received numerous disciplinary sanctions. Inmate Jackson has no Detainers, a CMC assignment of Separation, and Security Threat Group assignments of Assault of Correctional Officer, Drug Introduction, and Posted Picture file.

74-002

## INMATE DATA (continued):

Inmate Arzell Gulley is a 28-year-old black male, serving a 240-month sentence for Conspiracy and Possession with Intent to Distribute Heroin, Cocaine, and Cocaine Base. He is a High security level inmate, with In custody classification. His projected release date is June 23, 2011, with a release method of Good Conduct Time Release. A review of inmate Gulley's Chronological Disciplinary Record revealed he has received numerous disciplinary sanctions. Inmate Gulley has no Detainers, a CMC assignment of Separation, and no Security Threat Group assignments.

## INCIDENT SUMMARY:

On December 16, 1999, at approximately 6:02 p.m., staff announced via radio, there was a fight in progress in front of Building #3. A second radio transmission indicated the inmates involved, possessed weapons, and had entered Unit 3B1. Responding staff entered Unit 3B1 and observed inmates Jackson, David, Reg. No. 13567-039, and Gulley, Arzell, Reg. No. 18249-039, walking quickly out of cell 125. Both inmates were ordered to the floor. As staff were restraining inmate Gulley, inmate Brown, Darryl, Reg. No. 05803-055, was observed walking out of cell 125, bleeding from the face and chest, and holding a homemade weapon. Inmate Brown walked toward inmate Jackson who was laying on the floor. Inmate Jackson jumped to his feet, picked up a chair, and tried to hold off inmate Brown's advances. Staff ordered inmate Brown to drop the weapon. Inmate Brown took several steps toward staff and collapsed. Staff restrained inmate Brown and carried him via a stretcher to Health Services. Inmate Brown was then transported to an outside hospital via an ambulance. At 7:06 p.m., inmate Brown was pronounced dead. Inmates Jackson, David, Reg. No. 13567-039, and Gulley, Arzell, Reg. No. 18249-039, were placed in Administrative Detention. The FBI was notified and an investigation initiated.

## MEDICAL DATA:

Inmate Gulley, Arzell, Reg. No. 18249-039, was examined and treated for four superficial scratches 1 ½ cm in length, to the right shoulder. The medical assessment was conducted by S. Burkett, LVN. Inmate Brown, Darryl, Reg. No. 05803-055, sustained a stab wound in the upper left chest, a stab wound in the left sternum, and an injury to the left eyebrow. Inmate Brown was transferred to Christus St. Mary's Hospital, by EMS. Inmate Brown was medically assessed by M. Faytaren, RN. Refer to Autopsy section of this report concerning inmate Brown.

## STAFF STATEMENTS:

K. Tims, Lieutenant, reported on December 16, 1999, at approximately 6:02 p.m., staff announced via radio, there was a fight in Unit 3B1, and weapons were involved. Responding staff observed inmates Brown, Darryl, Reg. No. 05803-055 and Gulley, Arzell, Reg. No. 18249-039, coming out of cell 125, in Unit 3B1. Inmate Brown was chasing inmate Gulley with a homemade weapon. Staff separated the inmates and secured the unit. Inmate Brown was transported to the Health Services Unit, where it was determined he had sustained puncture wounds to his sternum, heart, and left eye. He was transported via an ambulance to a local hospital, where he was pronounced dead at 7:06 p.m. Inmate Gulley did not sustain any injuries. A review of the unit tapes, also placed inmate Jackson, David, Reg. No. 13567-039, as also being involved in the incident. An ambulance was called at approximately 6:06 p.m., and arrived at approximately 6:23 p.m. The ambulance departed at approximately 6:55 p.m. At approximately

**LIMITED OFFICIAL USE**
**DOJ-SENSITIVE-FOI EXEMPT**

74-003

## STAFF STATEMENTS (continued):

7:06 p.m., notification was received, inmate Brown was pronounced dead. At approximately 8:00 p.m., the next of kin was notified by Chaplain Wallace.

L. Devereaux. Senior Officer, reported on December 16, 1999, at approximately 6:02 p.m., he witnessed a verbal altercation between two black inmates, which turned into a physical altercation. Officer Devereaux announced via radio, "fight in progress in front of Unit 3, and weapons were involved." Officer Devereaux observed inmate Brown, Darryl, Reg. No. 05803-055, remove his shirt and attempt to engage in a fight with two other inmates, one being inmate Jackson, David, Reg. No. 13567-039. Officer Devereaux stated inmate Jackson stated, "let's get this motherfucker." At this point, inmate Jackson and another inmate started chasing inmate Brown, who ran into Unit 3B1. Officer Devereaux related the sliders to the unit were closed, and upon arrival of additional staff, they entered the unit. Officer Devereaux stated he entered the unit and observed inmate Gulley, Arzell, Reg. No. 18249-039, lying face down on the ground, and he applied restraints on the inmate. Officer Devereaux further related he returned to his unit, Unit 3A1, and started securing the cells. Officer Devereaux observed inmate Jackson give inmate Ewing, James, Reg. No. 63236-061, something and then proceeded to his cell. A strip search was conducted on inmate Ewing with negative results. At this point, Officer Devereaux advised the Operations Lieutenant, inmate Jackson was a participant in the incident. Officer Devereaux related prior to removing inmate Jackson from his cell, he exchanged shoes. Upon arrival of additional staff, inmate Jackson was restrained and removed from the unit.

E. Gordon. Senior Officer, reported on December 16, 1999, at approximately 6:15 p.m., he responded to a fight in Unit 3B1, with weapons involved. Upon arrival, the Operations Lieutenant ordered the sliders opened to the unit. Upon entering the unit, Officer Gordon observed a black inmate with a brown jacket, khaki pants, and a gray knit cap, walking briskly away from cell 125. The inmate was later identified as inmate Gulley, Arzell, Reg. No. 18249-039. Upon approaching inmate Gulley, Officer Gordon ordered him to get on the ground, and he complied. Officer Gordon stated inmate Gulley was placed in restraints with the assistance of Officer Devereaux. Officer Gordon stated he observed inmate Gulley was wearing tan colored gloves with what appeared to be blood spots on them. Officer Gordon stated inmate Gulley stated, "he's still got a knife." Officer Gordon looked up and observed a black inmate (later identified as inmate Brown, Darryl, Reg. No. 05803-055) adjacent to cell 115, with no shirt on and what appeared to be blood about his face and chest. He further related inmate Brown had an unidentified object in his right hand and he dropped to the floor. Inmate Gulley was restrained and removed from the unit. Officer Gordon stated while escorting inmate Gulley from the unit, inmate Gulley's pants fell down. Officer Gordon picked up inmate Gulley's pants and secured them in the unit office. Officer Gordon conducted a search of the pants and discovered white paper towels in the right front pocket and an inmate identification card belonging to inmate Gulley.

G. Vann. Senior Officer Specialist, reported on December 16, 1999, at approximately 6:02 p.m., he observed a black inmate in front of Unit 3B1, backing up and removing his coat. Officer Vann further observed the inmate remove his shirt, while two other black inmates were walking toward the inmate. Officer Vann stated he called for assistance via radio and observed all three inmates run toward and into Unit 3B1. Officer Vann stated he observed one of the inmates with a weapon in his hand. Officer Vann further related he ran into Unit 3B1 and observed the inmates fighting inside the unit. Officer Vann further related he observed all three inmates run into cell 125. Upon arrival of additional staff, staff entered the unit and began securing the unit. Officer Vann stated he observed an inmate come out of cell 125, with blood all over him, and holding a weapon. Officer Vann ordered the inmate to drop the

**LIMITED OFFICIAL USE**
**DOJ-SENSITIVE-FOI EXEMPT**

74-004

## STAFF STATEMENTS (continued):

weapon and lay down. Officer Vann stated the inmate dropped the weapon and fell to the ground. Officer Vann and another officer applied restraints to the inmate on the ground. Officer Vann stated the inmate was placed on a stretcher and transported to the Health Services Unit. Officer Vann stated the inmates were later identified as Brown, Darryl, Reg. No. 05803-055, Jackson, David, Reg. No. 13567-039, and Gulley, Arzell, Reg. No. 18249-039. Officer Vann stated inmate Brown was identified as the inmate with blood on him, exiting the cell.

D. Wilhite, Senior Officer, reported on December 16, 1999, at approximately 6:00 p.m., he responded to a fight in front of Unit 3. Upon arrival, he observed several black inmates run into Unit 3B1. Upon arrival to the unit, the exterior sliders were closed, preventing him from entering. Upon opening the exterior sliders, Officer Wilhite entered the unit and observed inmate Brown, Darryl, Reg. No. 05803-055, exit cell 125, with a bloody weapon in his hand. Officer Wilhite stated he observed inmate Brown bleeding profusely from his left eye and left side of his chest. Officer Wilhite ordered inmate Brown to put the weapon down and he refused. Officer Wilhite stated staff continued to order inmate Brown to stop. Inmate Brown pointed at an inmate who was laying face down on the floor and continued to advance toward him. Officer Wilhite stated the inmate laying on the floor was inmate Jackson, David, Reg. No. 13567-039. As inmate Brown continued to advance toward inmate Jackson, inmate Jackson leaped from the floor and ran. Officer Wilhite stated inmate Brown then slowed and fell to the floor, dropping the homemade knife. Inmate Brown was restrained, placed on a gurney and transported to Health Services Unit, where life sustaining measures were initiated. Officer Wilhite stated he assisted Officer Marten, administering compressions to the inmate, until he was loaded into the ambulance. Officer Wilhite further assisted inmate Brown's respiration by using the ambu bag, until the arrival at Christus St. Mary's Hospital, in Port Arthur, Texas, at approximately 7:04 p.m. Officer Wilhite further related at approximately 7:06 p.m., inmate Brown was pronounced dead by Dr. Ronaldo Matsuda. He further related at approximately 7:30 p.m., Robert Morgan Jr., Justice of the Peace, arrived and pronounced inmate Brown dead. At approximately 9:55 p.m., S. Anstey, Inmate Systems Manager, arrived and fingerprinted the inmate. At approximately 10:30 p.m., inmate Brown's body was released to the Jefferson County Coroners Office.

R. Chopane, Senior Officer, reported on December 16, 1999, at approximately 6:02 p.m., he observed inmate Brown, Darryl, Reg. No. 05803-055, arguing with two unidentified inmates, in front of Unit Three. Officer Chopane observed inmate Brown backing up, while taking his coat off. Officer Chopane stated inmate Brown ran into Unit 3B1, with the same unidentified inmates chasing him, with weapons in their hands. Officer Chopane stated at this time the unit sliders closed with the three inmates inside the unit. Officer Chopane stated the sliders were opened for responding staff, he entered, and began securing the inmates in their cells.

J. Armand, Senior Officer, reported on December 16, 1999, at approximately 6:02 p.m., he responded to a call for assistance, for a fight which had moved into Unit 3B1. Upon arrival, he observed inmate Brown, Darryl, Reg. No. 05803-055, standing with blood on his clothing, and a homemade weapon in his right hand. Officer Armand stated inmate Brown was refusing to drop the weapon, and was holding staff at bay. He further related inmate Brown then fell to the ground and dropped the weapon. Officer Armand stated he assisted in applying restraints on inmate Brown and placed him on the stretcher. Inmate Brown was transported to the Health Services Unit, where medical procedures were initiated. Officer Armand stated he returned to the compound, and assisted in the yard recall.

**LIMITED OFFICIAL USE**
**DOJ-SENSITIVE-FOI EXEMPT**

74-005

## STAFF STATEMENTS (continued):

B. Wright, Senior Officer Specialist, reported on December 16, 1999, at approximately 6:15 p.m., she responded to a call for assistance, for a fight which had moved into Unit 3B1. Upon arrival, she observed inmate Brown, Darryl, Reg. No. 05803-055, laying in a pool of blood, and he was immediately placed on a stretcher and taken to the Health Services Unit. Officer Wright stated she observed inmate Gulley, Arzell, Reg. No. 18249-039, in the unit and was being placed in restraints. She further related she assisted in securing the inmates in the unit.

E. Cervantez, Senior Officer, reported on December 16, 1999, at approximately 6:00 p.m., he responded to a body alarm in Unit 3B1, involving weapons. Upon arrival, he observed inmate Brown, Darryl, Reg. No. 05803-055, on the floor, with restraints. Inmate Brown was placed on a gurney and transported to the Health Services Unit, where life sustaining measures were initiated. Officer Cervantez stated he was assigned to the emergency medical trip crew. Inmate Brown was taken to Christus St. Mary's Hospital, in Port Arthur, Texas. Upon arrival at the emergency room, inmate Brown was pronounced dead at approximately 7:06 p.m., by Dr. Ronaldo Matsuda. At approximately 7:30 p.m., Robert Morgan Jr., Justice of the Peace, arrived and pronounced inmate Brown dead, and stated he was going to order an autopsy, to determine the cause of death. At approximately 9:55 p.m., S. Anstey, Inmate Systems Manager, arrived at the hospital to take fingerprints of inmate Brown. At approximately 10:30 p.m., inmate Brown's body was released to the Jefferson County Medical Examiner's Office.

P. Piazza, Correctional Officer, reported on December 16, 1999, at approximately 6:15 p.m., he responded to a call for assistance, for a fight which had moved into Unit 3B1. Upon arrival, he observed several staff ordering inmate Brown, Darryl, Reg. No. 05803-055, to drop the weapon he was holding. Officer Piazza stated inmate Brown eventually dropped the weapon, as he fell to the floor. Officer Piazza stated he assisted in restraining inmate Brown, who was bleeding from the chest. Officer Piazza further related he observed two other inmates being restrained on the other side of the unit. He assisted in loading inmate Brown on the stretcher and transporting to the Health Services Unit. Officer Piazza stated he assisted medical staff by performing CPR and where he was needed.

S. Wilson, Case Manager, reported on December 16, 1999, he responded to a call for assistance in Unit 3B1. Upon arrival, he assisted in securing the inmates to their cells. Mr. Wilson stated upon completion, he reported to the Receiving and Discharge area, where inmate Jackson, David, Reg. No. 13567-039, was being held in a holding cell. Upon entering, he observed inmate Jackson in the cell tearing paper out of an address book, and flushing it down the toilet. Mr. Wilson stated he informed Captain Whaley and instructed Officer Buttram to place hand restraints on inmate Jackson. Mr. Wilson instructed the officer to remove inmate Jackson from the cell and he was placed in an adjacent cell. Mr. Wilson stated he entered the cell previously occupied by inmate Jackson and discovered postage stamps and what appeared to be gambling sheets, on the seat of the cell.

A. Wallace, Chaplain, reported on December 16, 1999, at approximately 7:55 p.m., he received information from J. Hanks, Case Manager, inmate Brown, Darryl, Reg. No. 05803-055, had expired. At approximately 8:00 p.m., Chaplain Wallace made contact with the inmate's mother, who was listed as next of kin. Chaplain Wallace informed her of the inmates' passing. Chaplain Wallace explained there was no known cause of death and an investigation had been initiated. Chaplain Wallace stated he gave Ms. Brown the institutions' telephone number and she stated she would call back in the morning.

**LIMITED OFFICIAL USE**
**DOJ-SENSITIVE-FOI EXEMPT**

74-006

## MEDICAL DATA/24 HOUR REPORT:

N. Pasao. Health Systems Specialist. reported on September 17. 1999. inmate Brown. Darryl. Reg. No. 05803-055. was a 34-year-old black male. involved in a fight with another inmate on December 16. 1999. at approximately 6:00 p.m., in front of Unit 3B1. Inmate Brown was brought to the Health Services Unit by the UTMB nursing staff and correctional officers. who had responded to the call for a medical emergency at 6:02 p.m. The patient was unconscious. unresponsive. and had no palpable pulse. CPR was initiated immediately during transport to the Health Services Unit. Resuscitative measures were continued and Emergency Medical Services (EMS) were activated by the Control Center Officer. at approximately 6:06 p.m. EMS arrived at approximately 6:20 p.m. Upon arrival of the EMS. ACLS protocols were initiated. the patient was defibrillated several times. without establishing a rhythm. The patient was subsequently transported to St. Mary's Hospital. leaving the institution at approximately 6:55 p.m. Resuscitative measures failed and the inmate was pronounced dead at approximately 7:06 p.m. An autopsy was performed on December 17. 1999. by the Jefferson County Medical Examiner. and a preliminary cause of death was established as multiple stab wounds in the chest and left eye. The inmate did not have a past medical history of any significant medical problems.

## AUTOPSY REPORT:

On December 17. 1999. at approximately 8:45 a.m.. an autopsy was performed on inmate Brown. Darryl. Reg. No. 05803-055. by Dr. Tommy J. Brown. Forensic Pathologist. Jefferson County Morgue. at the request and upon the written authorization of The Honorable Robert Morgan. Justice of the Peace. Precinct 2. Jefferson County. Texas.

**Dr. Brown's autopsy report stated the cause of death was due to a stab wound of the chest. Dr. Brown reported pathological findings of a stab wound of left chest into the aorta. multiple stab and cutting wounds, and multiple stab wounds of face, chest, posterior left upper arm, posterior neck and back. Dr. Brown further reported the manner of death was homicide.**

**Dr. Brown reported there were ten cutting and stab wounds of the body, and described the following injuries:**

**There was a cutting wound of the left upper eyelid which was located 3 1/4 inches below the top of the head, just beneath the left eyebrow and 1 1/4 inches to the left of the midline. The cutting wound measured 3/4 inches in length and extended into the superficial eyelid tissue.**

**There was a stab wound of the medial left eye at the level of the nasion which measured 3/8 inchs, located 4 inches below the top of the head and 3/4 inches to the left of the midline. The tracing of the stab wound showed it entered the medial left orbit and did not enter into the brain or sinus cavities. It did not rupture the globe of the left eye.**

**There was a vertical stab wound of the left upper chest located 13 3/4 inches below the top of the head, 2 3/4 inches to the left of the midline, and 1 3/4 inches below the jugular notch. The stab wound measured 1/2 by 3/8 inchs. The stab wound entered the medial upper lobe of the left lung, went through the pericardial sac and cut into the aorta.**

**There was a superficial stab wound of the medial left mid-chest located 16 1/4 inches below the top of the head, 3/4 inches to the left of the midline and 5 inches below the jugular notch. This stab**

**LIMITED OFFICIAL USE**
**DOJ-SENSITIVE-FOI EXEMPT**

74-007

## AUTOPSY REPORT (continued):

wound measured 1/4 inchs and extended into the left side of the sternum, but did not go into the chest cavity.

There was a transverse oblique 1 5/8 inch cutting wound of the right temporal occipital area which did not cut into the skull bone. The cutting wound was superficial into the underlying subcutaneous fat.

There was an oblique 3/4 inch stab wound of the medial right posterior neck which traveled in a left to right direction. This was a superficial stab wound and exited 1/2 inchs away through a 5/8 inch exit wound. The exit wound was located in the posterior lateral right upper neck and just below the base of the skull. The stab wound went into the subcutaneous fat and muscles only.

There was a stab wound of the left upper back located 8 inches below the top of the head and 2 1/4 inches to the left of the midline. The stab wound measured 1/4 inch. The blade went into the superficial soft tissue only.

There was a 5/8 inch stab wound of the left mid-back located 13 ½ inches below the top of the head and 2 inches to the left of the midline. The blade traveled in right to left and slightly downward direction. It did not enter into the chest cavity, but into the soft tissue and muscle.

There was a stab wound of the left mid-back which measured 3/8 inchs. It was located 13 1/4 inches below the top of the head and 4 inches to the left of the midline. The blade traveled in a left to right and upward direction into the soft tissue only. It did not enter into the chest cavity.

There was a stab wound of the distal posterior left upper arm which measured 1 inch and extended into the soft tissue only.

Dr. Brown reported the results of the Toxicological Report, revealed a positive result of THC metabolites.

## INMATE INTERVIEWS:

On March 6, 2000, at approximately 11:44 a.m., an interview was conducted by O. Rivera, Special Investigative Supervisor, with inmate Jackson, David, Reg. No. 13567-039.

Inmate Jackson refused to provide information, due to pending prosecution.

On March 6, 2000, at approximately 12:08 p.m., an interview was conducted by O. Rivera, Special Investigative Supervisor, with inmate Gulley, Arzell, Reg. No. 18249-039.

Inmate Gulley refused to provide information, due to pending prosecution.

On March 6, 2000, at approximately 11:05 a.m., an interview was conducted by O. Rivera, Special Investigative Supervisor, with inmate McGrier, Terryonto, Reg. No. 02469-087.

**LIMITED OFFICIAL USE**
**DOJ-SENSITIVE-FOI EXEMPT**

74-008

## INMATE INTERVIEWS (continued):



Inmate McGrier stated he was coming out of the Unit 3B3, going to sick call for his medicines. Inmate McGrier further related he was recovering from surgery, and was walking with a cane, when a body alarm sounded. He further related he was held at the Unit 3B3 doorway, and instructed to return to the unit. Inmate McGrier stated he didn't know inmate Brown personally, all he knew was inmate Brown was assigned to the same unit. Inmate McGrier stated **"inmate Brown was always drunk, or high off of marijuana, and always running his neck. I just stayed away from him."**

On March 6, 2000, at approximately 11:20 a.m., an interview was conducted by O. Rivera, Special Investigative Supervisor, with inmate Wormley, Cedric, Reg. No. 18025-001.

Inmate Wormley stated he was locked up because inmate Jackson was his cell mate. Inmate Wormley stated he was watching television, when the Unit officer instructed him to lock down. Inmate Wormley stated when he went to his cell, inmate Jackson was in the cell reading. Inmate Wormley stated he knew inmates Brown and Jackson. He further stated **"Inmate Brown was cool, but was always getting high. I don't believe he was indebted to anyone. I wouldn't feel comfortable on the compound, because people are crazy. My cell mate here in SHU, inmate Griffin, got stuck for no reason, and got a punctured lung. I don't want to get hit, for being Jackson's cell mate. I'll refuse to go out on the compound, for fear of retaliation from the New Yorkers, for being Jackson's cell mate. Me and Jackson were close, we were at Marion together, and everybody knows us."**

## PHYSICAL EVIDENCE:

The Special Investigative Supervisor's office obtained approximately 51 items of physical evidence. The following is a list of significant evidence:

The Closed Caption Television Video (CCTV) tape (ECN99451-V1) of the assault on inmate Brown, by inmates Jackson and Gulley. The video shows inmates Jackson and Gulley, chasing inmate Brown into Unit 3B1, cell 125, and assaulting him in the cell. Inmates Jackson and Gulley depart the cell, inmate Brown exits the cell, and collapses shortly after. Inmate Gulley is observed placing an object on a chair and then lays on the floor.

A flat sharpened metal instrument (ECN99451-A), with a white cloth attached, with blood stains. Inmate Brown dropped the weapon, prior to collapsing.

A sharpened metal rod (ECN99451-B), with shoestring handle. Inmate Gulley was observed on CCTV Video camera placing the weapon on a chair, after departing cell 125.

A total of 232 U.S. Postal Stamps (ECN99451-AA, ECN99451-BB, ECN99451-Z) with various betting slips.

## OTHER INFORMATION:

M. Mattes, Code Treatment Specialist, reported on February 24, 2000, at approximately 9:00 p.m., at the conclusion of a confrontational avoidance, inmate Jackson, David, Reg. No. 13567-039, requested to speak with him. Inmate Jackson informed him he did not want to accept a new cell mate. Inmate Jackson informed Mr. Mattes, if the inmate was not moved, inmate Jackson stated "you will have a

**LIMITED OFFICIAL USE**
**DOJ-SENSITIVE-FOI EXEMPT**

74-009

## OTHER INFORMATION (continued):

dead body on your hands. I will kill him." Mr. Mattes further related inmate Jackson stated "I am through playing games. If you think I am kidding. look at the tapes. I've killed before. I will kill again." Mr. Mattes further related inmate Jackson stated he was "through talking." and walked away from the door. Mr. Mattes immediately informed the Special Housing Unit Lieutenant.

## SUMMARY AND CONCLUSION:

Several staff members witnessed inmate Brown. Darryl. Reg. No. 05803-055. being chased by two black inmates. with weapons in their hands. into Unit 3B1. A review of the Closed Caption Television Cameras. revealed inmate Brown. Darryl. Reg. No. 05803-055. being chased into Unit 3B1. cell 125. by inmates later identified. as Jackson. David. Reg. No. 13567-039. and Gulley. Arzell. Reg. No. 18249-039. Further review revealed. inmates Jackson and Gulley assaulting inmate Brown while in the cell. with homemade weapons. Inmates Jackson and Gulley, departed the cell, leaving inmate Brown on the floor of the cell. Inmate Brown gets up, leaves the cell with a weapon (ECN99451-A) retrieved from the cell floor. and collapses shortly after. Inmate Gulley is observed placing a homemade weapon (ECN99451-B) on a chair and laid on the ground.

During interviews with the Special Investigative Supervisor. inmates Jackson. David. Reg. No. 13567-039. and Gulley. Arzell. Reg. No. 18249-039. refused to provide any relevant information regarding the incident. due to pending prosecution.

It is the conclusion of the Special Investigative Supervisor's office. on December 16. 1999. at approximately 6:02 p.m.. inmates Jackson. David. Reg. No. 13567-039. and Gulley. Arzell. Reg. No. 18249-039. were observed by staff arguing with inmate Brown. Darryl. Reg. No. 05803-055. The argument escalated into an assault on inmate Brown. by inmates Jackson and Gulley. Inmate Brown was chased into Unit 3B1. cell 125. where he was assaulted by inmates Jackson and Gulley. with homemade weapons. The assault was captured on the Closed Caption Television Cameras. located in the unit. Inmate Brown sustained ten cutting and stab wounds to the body. Specifically. according to Dr. Tommy J. Brown. Forensic Pathologist. Jefferson County Morgue. **"there was a vertical stab wound of the left upper chest located 13 3/4 inches below the top of the head, 2 3/4 inches to the left of the midline, and 1 3/4 inches below the jugular notch. The stab wound measured 1/2 by 3/8 inchs. The stab wound entered the medial upper lobe of the left lung, went through the pericardial sac and cut into the aorta."** All other wounds were superficial. however. this wound. which severed the aorta. proved to be fatal.

As a result of this investigation. inmates Jackson. David. Reg. No. 13567-039. and Gulley. Arzell. Reg. No. 18249-039. will be issued Incident Reports for Killing. Code 100.

It is the recommendation of the Special Investigative Supervisor's office. inmates Jackson. David, Reg. No. 13567-039. Gulley. Arzell. Reg. No. 18249-039. and Wormley. Cedric. Reg. No. 18025-001, receive transfers to another facility deemed appropriate by the Administration. Their continued presence at the United States Penitentiary. Beaumont. Texas. seriously jeopardizes the safety. security and orderly running of the institution.

**LIMITED OFFICIAL USE**
**DOJ-SENSITIVE-FOI EXEMPT**

74-010



**U.S. Department of Justice**

**Federal Bureau of Prisons**

---

*United States Penitentiary, Beaumont*                    ***Beaumont, Texas 77720***

February 28, 2000

MEMORANDUM FOR:     FILE

FROM:               O. RIVERA, ACTING SPECIAL INVESTIGATIVE AGENT

SUBJECT:            HOMICIDE - FILE NO. BMP99-451
                    BROWN, DARRYL, Reg. No. 05803-055
                    JACKSON, DAVID, Reg. No. 13567-039
                    GULLEY, ARZELL, Reg. No. 18249-039

On December 16, 1999, at approximately 6:02 p.m., staff announced via radio, there was a fight in progress in front of Building #3. A second radio transmission indicated the inmates involved, possessed weapons, and had entered Unit 3B1. Responding staff entered Unit 3B1 and observed inmates Jackson, David, Reg. No. 13567-039, and Gulley, Arzell, Reg. No. 18249-039, walking quickly out of cell 125. Both inmates were ordered to the floor. As staff were restraining inmate Gulley, inmate Brown, Darryl, Reg. No. 05803-055, was observed walking out of cell 125, bleeding from the face and chest, and holding a homemade weapon. Inmate Brown walked toward inmate Jackson who was laying on the floor. Inmate Jackson jumped to his feet, picked up a chair, and tried to hold off inmate Brown's advances. Staff ordered inmate Brown to drop the weapon. Inmate Brown took several steps toward staff and collapsed. Staff restrained inmate Brown and carried him via a stretcher to Health Services. Inmate Brown was then.transported to an outside hospital via an ambulance. At 7:06 p.m., inmate Brown was pronounced dead. Inmates Jackson, David, Reg. No. 13567-039, and Gulley, Arzell, Reg. No. 18249-039, were placed in Administrative Detention. The FBI was notified and an investigation initiated.

On February 28, 2000, the Special Investigative Supervisor's Office received authorization from Special Agent K. Kenser, Resident FBI, Beaumont, Texas, to proceed with the Administrative portion of the investigation. It should be noted the case has been referred to the Federal Bureau of Investigations, and is pending prosecution by the Assistant United States Attorney.

```
Mail Envelope Info:    (38D65964.963 : 7 : 38448)

Subject:              SIS REPORT
Creation Date:        3/20/00 11:01am
From:                 Teresa A. McIntosh

Created By:           BMPDOM1.BMPADM1:TAM
```

| Recipients | Action | Date & Time |
|---|---|---|
| Post Office BMPDOM1.BMPADM1 | Delivered | 03/20/00 11:01am |
|   BMA6664 (Scott Wilson) | | |
|   JEO (Enrique Ortiz) | | |

| Domain.Post Office | Delivered | Route |
|---|---|---|
| BMPDOM1.BMPADM1 | 03/20/00 11:01am | BMPDOM1.BMPADM1 |

| Files | Size | Date & Time |
|---|---|---|
| BMP99451.HOM | 183507 | 03/20/00 11:00am |
| MESSAGE | 25 | 03/20/00 11:01am |

```
Options
 Auto Delete:          No
 Expiration Date:      None
 Notify Recipients:    Yes
 Priority:             Normal
 Reply Requested:      No
 Return Notification:: None

 Concealed Subject:    No
 Security:             Normal

 To Be Delivered:      Immediate
 Status Tracking:      Delivered & Opened
```

74-012

# SECTION #2

"Staff Memorandums"

# UNITED STATES GOVERNMENT

# MEMORANDUM

## Federal Correctional Complex
## Beaumont, Texas 77720-6015

*BROWN, Darryl*

DATE: December 17, 1999

REPLY TO    //Signed//
ATTN OF : Nicanor P. Pasao
          Health Systems Specialist

    TO: Newton Kendig, Medical Director
        Central Office

SUBJECT: Report of Inmate Death, Brown, Darryl No. 05803-055
         24 Hour Report

USP Beaumont received notification that inmate Darryl Brown #05803-055 had expired at 7:06 P.M. on December 16, 1999 at St. Mary's Hospital in Port Arthur, Texas.

After consultation with the UTMB medical staff the following information is submitted:

Name: Brown, Darryl

Age: 34 DOB: REDACTED65

Register Number: 05803-055

Date: December 17, 1999

Preliminary Cause of Death: Multiple Stab Wound in the Chest and Left Eye.

Place of Death: Emergency Room, St. Mary's Hospital, Port Arthur, Texas

Brief Clinical Synopsis: 34-year-old black male was involved in a fight with another inmate on December 16, 1999 at 6:00 P.M. in front of 3B1 unit.  He was brought to the HSU by the UTMB nursing staff and correctional officers who had responded to the call for a medical emergency at 6:02 P.M.. Patient was

74-014

unconscious, unresponsive, and had no palpable pulse. CPR was initiated immediately during transport to the HSU. Resuscitative measures were continued and Emergency Medical Services were activated by control officer at 6:06 P.M.. EMS arrived at 6:20 P.M. Upon arrival of the EMS, ACLS protocols were initiated, the patient was defibrillated several times without reestablishing a rhythm. The patient was subsequently transported to St. Mary's Hospital, leaving the institution at 6:55 P.M. Resuscitative measures failed and the inmate was pronounced dead at 7:06 P.M.

An autopsy was performed on December 17, 1999, by the Jefferson County Medical Examiner and a preliminary cause of death was established as Multiple Stab wound in the chest and left eye

The inmate did not have a past medical history of any significant medical problems.

A Mortality Review Committee will be convened to review this inmate death.  If further information is required, please contact Kirk Des Ormeaux, UTMB AHSA at (409) 727-8188 extension 4119.

74-015



*U.S. Department of Justice*

*Federal Bureau of Prisons*

---

*United States Penitentiary, Beaumont*                    *Beaumont, Texas 77720*

February 24, 2000

MEMORANDUM FOR: O. RIVERA, ACTING SIA
USP BEAUMONT, TEXAS

FROM:                    M. MATTES, CODE TREATMENT SPECIALIST
USP BEAUMONT, TEXAS

SUBJECT:                 Inmate David Jackson, #13567-039

At approximately 9:00 PM at the conclusion of a confrontational avoidance intervention, Inmate D. Jackson, #13567-039 requested to speak with me. Inmate Jackson informed me that he did not want to accept his new cellmate, Inmate H. Jones #10411-039. Mr. Jackson then informed me that unless Inmate Jones was moved we would "have a dead body on our hands, I will kill him". Mr. Jackson further stated that he was "through playing games. I f you think I am kidding, look at the tapes. I've killed before, I will kill again." Mr. Jackson then informed me he was "through talking." and walked away from the door. I immediately informed Lieutenant Dickerson.

cc: C. I. Lohman, PhD.
    M. Dickerson, SHU Lieutenant

OPTIONAL FORM 99 (7-90)

**FAX TRANSMITTAL**    2-25-200

# of pages ► 1

To Kelly Kenser        From T. McIntosh
Dept /Agency FBI       Phone # 727-5155 x4137
Fax #                  Fax #

NSN 7540-01-317-7368    5099-101    GENERAL SERVICES ADMINISTRATION

74-016



U.S. *Department of Justice*

*Federal Bureau of Prisons*

*United States Penitentiary, Beaumont*                    *Beaumont, Texas 77720*

December 16, 1999

MEMORANDUM FOR Walter H. Whaley, Jr., Captain

FROM:                    K. Tims, Lieutenant

SUBJECT:                Assault/Homicide unit 3B1

On December 16, 1999 at approximately 6:02p.m. staff announced via radio there was a fight in Unit 3B1, then staff announced weapons were involved.   Responding staff observed inmates Brown, Darryl, Reg No. 05803-055 and Gulley, Arzell, Reg. No. 18249-039 coming out of cell 125 in Unit 3B1.  Inmate Brown was chasing inmate Gulley with a Homemade weapon. Staff separated the inmates and secured the unit.  Inmate Brown was transported to the Health Services Unit where it was determined he had sustained puncture wounds to his sternum, Heart and left eye.   He was transported via ambulance to a local hospital where he was pronounced dead 7:06p.m.  Inmate Gulley did not sustain any injuries.   A review of the unit tapes also placed inmate Jackson, David, Reg. No. 13567-039  was also involved in the assault.   An ambulance was called at 6:06p.m.  6:23:p.m.  The ambulance arrived at 6:55p.m. the ambulance departed.   We were notified at 7:06 that inmate Brown pronounced dead, his mother was notified at 8:00p.m.  By the Chaplain that her son had expired.

An inmate recall was announced at 6:11p.m., count commenced at 7:00p.m. and cleared at 7:00p.m. .   The institution Executive Staff and Departments were recalled at 6:25p.m.

*Notified amb @ 606p*

*arrived @ 623p*

*departed @ 655p*

*death notified @ 706p*

74-017



UNITED STATES GOVERNMENT

MEMORANDUM

United States Penitentiary, Beaumont, TX.

DATE: 12-16-99

REPLY TO

ATTN. OF: Larry Devereaux, Senior Officer

SUBJECT: Inmate Fight 3B1

TO: K. Tims, Operation Lieutenant

On December 16, 1999 at approximately 6:02pm I witnessed a verbal altercation between two black inmates that turned into a physical altercation. At that point I made an emergency call to control and compound that there was a fight in front of Unit 3 and that a weapons were involved. I then witnesses inmate Brown, Daryl Reg. No. 05803-055 remove his shirt and attempt to engage in a fight with two inmates, one being inmate Jackson, David Reg. No. 13567-039 who stated to another inmate "lets get this mother fucker." At that point inmate Jackson and another inmate started chasing inmate Brown who ran into unit 3B-1 then the sliders started closing and Officer Vann managed to get between the slider door before it closed. He stopped before entering the unit itself due to the lack of staff available. Once additional staff arrived I with several unknown staff members entered the unit and began ordering inmates to rack up and I witnessed inmate Gulley, Arzell Reg. No. 18249-039 lying face down on the floor and Officer E. Gordon standing over him and I placed restraints on inmate Gulley and advised Officer E. Gordon to stay with the inmate while I went over to place inmate Brown Reg. No. 05803-055 on the stretcher and help transport him to medical. I then returned back to my unit and started securing the cell doors. While ordering inmates to the cell, jackson cell mate was standing near the cell door and he was ordered to the television room. I witnessed inmate Jackson walking back to his cell. I then witnessed inmate Jackson give inmate Ewing, James Reg. No. 63236-061 something and then proceed to his assigned cell. A strip search was conducted on inmate Ewing with negative results. At this point I advised the Operations Lieutenant, Tims, that inmate Jackson was a participant in the incident. Prior to removing inmate Jackson from his cell he exchanged shoes. Once additional staff arrived in unit 3A1 inmate Jackson was restrained and escorted away by staff. Inmate Jackson's cell door was secured and to the best of my knowledge, no one entered the secured cell. He was later taken to Lieutenants' Office. I then resumed my duties as 3A1 unit officer.

74-018



*U.S. Department of Justice*

*Federal Bureau of Prisons*

---

*United States Penitentiary*                                 *Beaumont, Texas 77720*

12-16-99

MEMORANDUM FOR LIEUTENANT TIMS

FROM:                     R. Chopane

                          R. CHOPANE, SENIOR OFFICER


SUBJECT:                  ASSAULT, INMATE BROWN #05803-055


On 12-16-99 at about 6:02 p.m. inmate Daryl Brown # 05803-053 was on the yard getting into a verbal argument with two unidentified inmates in front of unit three. Inmate Brown was backing up taking off his coat. He then started running into unit 3B1 with the same two unidentified inmates chasing him with weapons in their hands. At that time the units sliding door closed with the the three inmates inside the unit. The sliding door was opened for responding staff. I proceeded into the unit and begun securing the inmates in their cell.

74-019

**United States Government**

# memorandum

*Federal Correctional Complex*
Beaumont. Texas 77720-6015

DATE: 16 December 1999
REPLY TO
ATT. OF: E. Gordon. Senior Officer
SUBJECT: Assault Unit 3B1

TO: Operations Lieutenant K. Tims

On 12-16-99   at 6:15 p.m.. I was working as the 3B3 Unit Officer. when a call came over the radio of a fight in front of Unit Three with weapons involved. I secured my Unit. and responded to the front of Unit 3B1. with other staff. At this time Operations Lieutenant K. Tims gave the order for Control to the  Open Unit 3B1 slider. As we entered the Unit I observed a Black Inmate . with a brown jacket. Khaki pants. and a gray knit cap. walking briskly away from Cell #125 to my left towards Cell # 132. This Inmate was later identified as Gulley. A. Reg. #18249-039. Upon approaching Inmate Gulley. I repeatedly ordered him to get on the ground. to which he complied. Myself. and Officer L. Devereaux began placing Inmate Gulley in handcuffs. At this time I observed that Inmate Gulley was wearing tan colored gloves with what appeared to be blood spots on them. It was also at this time that Inmate Gulley stated " He's still got a knife." I then looked up and observed a Black Inmate (later identified as Brown. D 05803-055 3b3-410) adjacent to Cell #115 with no shirt on and what appeared to be blood about his face and chest. Inmate Brown also had an unidentified object in his right hand. that he dropped to the floor. At this time myself and Ofc. Devereaux secured the handcuffs on Inmate Gulley and began escorting him from the Unit. As we reached the track field in front of Unit Three Inmate Gulley's pants fells down. It was at this time that Officer E. Cervantez took over escort of Inmate Gulley. with Ofc. Devereaux. I then picked up Inmate Gulley's pants and secured them  in my Unit office. A subsequent search of the pants revealed white paper towels in the right front pocket. and an Inmate I.D. bearing the name Gulley. Arzell # 18249-039. I also secured the gray knit cap that Inmate Gulley was wearing. I then returned to my duties securing all 3B3 inmates in their cells.

74-020



**U.S. Department of Justice**

**Federal Bureau of Prisons**

**United States Penitentiary, Beaumont**                    **Beaumont, Texas 77720**

DATE:December 16,1999

FROM:G. Vann / Senior Officer Specialist

To:K. Tims/Operations Lieutenant

Subject:Fight in Unit 3B1

On Thursday, December 16,1999, I was assigned as Compound #2 Officer. At approximately 6:02pm I observed a black inmate close to the horse shoe pit in front of unit 3B1 backing up and removing his coat. I then observed him removing his shirt. I also observed two black inmates walking towards this inmate at a fast pace. At this time I called for assistance in front of unit 3B1. I observed all three inmates run towards unit 3B1. At this time I observed one of the inmates had a weapon in his hand. I called over the radio that the inmates were running into unit 3B1 and that weapons were involved. I ran into unit 3B1 and observed that the inmates were fighting inside of the unit. I observed all three inmates run into cell 125. When additional staff arrived at the unit we went into the unit and began securing the unit. I observed an inmate come out of cell 125 with what appeared to be blood all over him. I then observed that this inmate was holding a weapon. I began ordering the inmate to drop the weapon and lay down. The inmate dropped the weapon and fell to the floor. Officer Armand and myself placed handcuffs on this inmate. The inmate was placed on a stretcher and was taken to medical by myself and several other officers. The inmates were later identified as inmate Brown, Darryl #05803-055 unit 3B3, inmate Jackson, David #13567-039 unit 3A1, and inmate Gulley, Arzell #18249-039 unit 1B3. Inmate Brown, Darryl #05803-055 was identified as the inmate that had the blood on him.

74-021



United States Government ·

# memorandum

*Federal Correctional Complex*
Beaumont, Texas 77720-6015

DATE: December 16, 1999

REPLY TO
ATT. OF:  D. Wilhite, Senior Officer

SUBJECT: Fight in Unit 3B-1

TO: K. Tims, Operations Lt.

On December 16, 1999, at approximately 6:00 pm, I responded to a fight in front of Unit #3. As I ran across the compound, I saw several black inmates run into Unit 3B-1. When I arrived at Unit 3B-1, the exterior slider door was closed. Officers Devereaux and Gordon were standing outside, and Officer Vann was inside. The Control Center then opened the slider door, and I entered the Unit. I observed inmate Brown, Darryl #05803-055 exit cell #125, with a bloody homemade weapon in his right hand. Inmate Brown was bleeding profusely from his left eye, and the left side of his chest. I ordered him to put the weapon down, as did other staff, but he refused. I then picked up a plastic chair in order to defend myself and the other staff from inmate Brown. Staff continued to order him to stop, but he pointed at an inmate who was laying face down on the floor, and continued to advance toward him. The individual on the floor was inmate Jackson, David #13567-039. When inmate Brown pointed at inmate Jackson, and continued to advance toward him, inmate Jackson leapt from the floor and ran. Inmate Brown then slowed and fell to the floor, dropping the homemade knife. I then dropped the chair, and assisted Officer Vann, who handcuffed inmate Brown. Inmate Brown was then placed on a gurney, and taken to the Medical Department, where life sustaining measures were begun. Lt. Marten began compressions on him and continued to do so until approximately 6:25 pm. At this time, I relieved him and continued to do compressions until approximately 6:45 pm, when inmate Brown was loaded into the ambulance, and I was relieved. I then began to assist inmate Brown's respiration by using an ambu bag until we arrived at St. Mary's Hospital in Pt. Arthur, Texas at approximately 7:04 pm. Inmate Brown was rushed into the Emergency Room, where he was pronounced dead by Dr. Ronaldo Matsuda at approximately 7:06 pm. At approximately 7:30 pm, Justice of the Peace Robert Morgan Jr. arrived and pronounced inmate Brown dead. Inmate Systems Manager S. Anstey arrived at approximately 9:55 pm to fingerprint inmate Brown. At approximately 10:30 pm, inmate Brown's body was released to the Jefferson County Coroners Office, and I returned to the institution.

74-022



*U.S. Department of Justice*

*Federal Bureau of Prisons*

*United States Penitentiary, Beaumont*                    *Beaumont, Texas 77720*

DATE:   12-16-99

MEMORANDUM
    FOR:  Lieutenant K. Tims, Operations

REPLY TO
ATTN. OF:  J. Armand, Senior Officer, Compound 1 E/W

SUBJECT: Inmate Fight 3B1

On December 16, 1999 at 6:02pm a call for staff needs assistance in front of unit 3 was sounded. I responded from the Food Service exit door.  A second call was made that the fight had moved in to unit 3B1.  Upon arriving in 3B1, I saw inmate Brown, Darryl Reg. No. 05803-055 standing with blood on his clothing and a homemade weapon in his right hand.  Inmate Brown #05803-055 was refusing to drop the weapon and was holding staff at bay.  Inmate Brown then fell to the ground and dropped the weapon.  Officer G. Vann then grabbed the inmates hands and I, Officer J. Armand, placed restraints on inmate Brown.  I then retrieved the orange stretcher and placed inmate Brown on it with the assistance of other staff.  We then carried inmate Brown #05803-055 to medical where UTMB began medical procedures.  I then returned to the compound to assist in yard recall.

74-023



U.S. Department of Justice

Federal Bureau of Prisons

---

United States Penitentiary

Beaumont, Texas 77720

12/16/99

MEMORANDUM FOR   Lt. Tims

FROM:   Beverly K. Wright
Senior Officer Specialist
E/W

SUBJECT:  Inmate Assault in 3B1

On 12/16/99 at approx. 6:15pm a call that a fight was occuring in front of unit #3 was sounded.  I responded and heard on the radio that the fight and inmates had moved inside unit 3B1.  When I got inside I saw inmate Brown, Darryl #05803-055 laying in a pool of blood and immediately he was placed on the stretcher and taken to medical.  I saw inmate Gulley, A. also in the unit that had now been cuffed.  I remained in the unit as these inmates were taken out and assisted in lockdown of the inmates remaining in this unit.

74-024



U.S. Department of Justice

Federal Bureau of Prisons

---

*United States Penitentiary, Beaumont*                    Beaumont, Texas 77720

12-16-99

MEMORANDUM FOR        Lt. K. Timms

FROM:                 E.Cervantez, Senior Officer

SUBJECT:              Body Alarm in Unit 3B1

on 12-16-99 at approximately 6:02 pm, I Officer Cervantez responded to a body alarm in Unit 3B1,As I was responding a call came over the radio stating that weapons were involved. As I enter the unit I observe Inmate Brown, Darrell # 05803-055 on the floor with restrains. Inmate Brown was then placed in the gurney and carried to the unit infirmary where life sustaining measures were began. I was then assign to the emergencey medical trip with Lt. Dickerson and Senior Officer Wilhite. Inmate Brown was taken to St. Mary's Hospital in Pt. Arthur, Texas, Upon arriving at the emergency room Inmate Brown was pronounce dead at 7:06pm by Dr. Ronaldo Matsuda. At 7:30pm Jefferson Co. Justice of the Peace Robert Morgan Jr. Pronounce Inmate Brown dead and stated that he was going to order an Autopsy to determine the cause of death.At 9:55pm Mrs. Sannie Anstey of ISM arrived at the hospital to take Fingerprints of Inmate Brown. At 10:30pm the Body Of Inmate Brown was turned over to The Jefferson County Medical Examiners-Office. We then returned to the instituition for further instructions.

74-025



**U.S. Department of Justice**

**Federal Bureau of Prisons**

---

*United States Penitentiary*                              *Beaumont, Texas 77720*

12/16/99

MEMORANDUM FOR   Lt. Tims

FROM:   Officer P. Plaza

SUBJECT:   Inmate Assault in 3B1

On 12-16-99 at aprox. 6:15pm, I heard over the radio of a fight in front of the unit, I followed other staff members into unit 3B1. I observed several staff members ordering inmate Darrell Brown , Registration number 05803-055 to drop the weapon he was holding. The inmate eventually dropped the weapon as he fell to the floor. I assisted in restraing the inmate who was bleeding from his chest. I also observed two other inmates being restrained on the other side of the common area. I then assisted in loading inmate Brown #05803-055 onto the orange stretcher and carrying him to the medical department. I assisted medical staff by performing CPR and assisting where I was needed. I also assisted when EMS person's arrived at the emergency room. The inmate was then transfered to their stretcher and taken from the institution ER. I have no further knowledge of the incident.

74-026



**U.S. Department of Justice**
Federal Bureau of Prisons
*Federal Correctional Complex*
Beaumont, Texas 77705
### *MEMORANDUM*

**DATE:**  DECEMBER 16, 1999

**REPLY TO**  *Scott Wilson*
**ATTN OF:**  SCOTT WILSON, CSW

**TO:**  JOE MARSHALL, SIA

**SUBJECT:**  JACKSON, David Lee #13567-039

On Thursday December 16, 1999, I responded to a call for assistants in unit 3B1. When I arrived, I helped secure inmates into their appropriate units. At that time, Counselor Carter and myself escorted all inmates on the yard from unit 3B1 to the north corridor in front of Unicor. I wrote down each inmate's name and register number and secured them in the corridor. I was then told to report to the Staff Lounge. As I entered the Lieutenants Office, I asked Captain Whaley if I should get the names and register numbers of the possible assailants. I reported to Receiving and Discharge. As I entered Receiving and Discharge, I noticed inmate David Lee Jackson in cell number four tearing paper out of an address book and flushing it down the toilet. I reported this to Captain Whaley and told Officer Buttam to place hand restraints on inmate Jackson. I told Officer Buttam to take inmate Jackson out of cell number four and place him in cell number three. After inmate Jackson was secured in cell number three, I entered cell number four and found postage stamps and what appeared to be a gambling sheet on the seat inside cell number four. Officer Buttam secured cell number four and I reported what had taken place to Captain Whaley.

cc: Lieutenant Rivera
Lieutenant Tims
Lieutenant Martin

74-027





*U.S. Department of Justice*

*Federal Bureau of Prisons*

---

*United States Penitentiary*                          *Beaumont, Texas 77720*

December 16, 1999

MEMORANDUM FOR KEVIN TIMS, LIEUTENANT

FROM:            A. Wallace, Chaplain

SUBJECT:            Death Notification

Tonight at 7:55 P.M., I received information from Jan Hanks, Case Manager, that inmate Brown, Darryl, Reg. No. 05803-055 has expired.  At 8:00 P.M., I made contact with the inmates mother, who is listed as his next of kin.  I informed her of the inmates passing.  I explained to her there is no known cause of death and an investigation is under way.

I gave Ms. Brown the institution's telephone number and she said she would call back in the morning.

cc: Staff Duty Officer
    Lt. Office
    Mack Praytor, Supervisory Chaplain
    File

74-028

Page    2 of 3          Report Date Dec. 9, 1999 14:49          /dev/tty

Telephone Number Listing Report
FCC Beaumont

Register Number:  18249039
Name             :  GULLEY, ARZELL
Mailbox Number  :
Living Unit      :  USP

Approved Telephone Numbers

*Note Name Changes for same Phone #s*

| | |
|---|---|
| 29-SEP-99 | YVONNE TURNER/COUSIN |
| 08-OCT-99 | LOBOROU SMITH/COUSIN |
| 14-SEP-99 | SHIRLEY GULLEY/AUNT |
| 09-JUL-99 | TINA MUMPHORD/FRND |
| 09-JUL-99 | EBONY SIMMONS/FRND |
| 09-JUL-99 | DAVID JONES/FRND |
| 19-JUL-99 | DANTE WILLIAMS/COUSIN |
| 08-OCT-99 | JACK BIRD/UNCLE |
| 19-JUL-99 | CALVIN GULLEY/BROT |
| 08-OCT-99 | KIM JONES/COUSIN |
| 09-JUL-99 | MIC WILLIAMS/FNRD |
| 09-JUL-99 | CAREY KNOFF/COUSIN |
| 02-JUL-99 | ANGELA LINDSEY/BABY'S MOTHER |
| 09-JUL-99 | DEVIN JONES/FRND |
| 09-JUL-99 | FREDDY CULURV/FRND |
| 09-JUL-99 | TASHA KLINE/FRND |
| 09-JUL-99 | JEFF REDMOY/COUSIN |
| 02-JUL-99 | DIVION GULLEY/AUNT |
| 09-SEP-99 | IDA TURNER/AUNT |
| 19-JUL-99 | RANDY SMITH/FRND. |
| 19-JUL-99 | SHIRLEY BANKS/COUSIN |
| 09-JUL-99 | VINCENT GULLEY/UNCLE |
| 09-JUL-99 | VIVIAN TURNER/COUSIN |
| 29-SEP-99 | ELMO TURNER/UNCLE |
| 09-JUL-99 | KEITH WILLIAMS/CUZ |
| 09-JUL-99 | TERRY HART/FRND |
| 29-SEP-99 | ANTHONY GULLEY/BROTHER |
| 02-JUL-99 | VIVIAN GULLEY/AUNT |
| 08-OCT-99 | JIMMY HASS/FRIEND |

Redacted

74-029

Report Date Dec. 9, 1999 14:47              /dev/tty

## Telephone Number Listing Report
### FCC Beaumont

```
Register Number:  09176000
Name          :  NEWLAND-ESTRADA, PEDRO
Mailbox Number :
Living Unit    :  USP
```

Approved Telephone Numbers

| Date | Name/Relationship |
|------|-------------------|
| 13-OCT-99 | STACEY COOK/FRIEND |
| 13-OCT-99 | DARRELL JACKSON/FRIEND |
| 13-OCT-99 | REGGIE ALLEN/FRIEND |
| 13-OCT-99 | FREDDY TATE/COUSIN |
| 13-OCT-99 | T STIFF/FRIEND |
| 13-OCT-99 | DAVID GLOVER/FRIEND |
| 13-OCT-99 | DONTE MOON/FRIEND |
| 13-OCT-99 | FREDONIA ADAMS/AUNT |
| 13-OCT-99 | DAVID SWIPES/FRIEND |
| 13-OCT-99 | SHERRY PORTER/FRIEND |
| 13-OCT-99 | ANTONY RISER/FRIEND |
| 13-OCT-99 | EVELYN JONES/COUSIN |
| 13-OCT-99 | J HOLT/FRIEND |
| 13-OCT-99 | CHARLES SMITH/COUSIN |
| 13-OCT-99 | CALVIN MACK/FRIEND |
| 13-OCT-99 | T PRUITT/FRIEND |
| 13-OCT-99 | JEFFREY WILLIAMS/FRIEND |
| 13-OCT-99 | JAMES HICKS/FRIEND |
| 13-OCT-99 | SHIRLEY BAKER/FRIEND |
| 13-OCT-99 | MAKINKA SANDERS/FRIEND |
| 13-OCT-99 | SHIRLEY JONES/FRIEND |
| 13-OCT-99 | VINCENT COMBS/FRIEND |
| 13-OCT-99 | DIANA PETTERSON/AUNT |
| 13-OCT-99 | DAVID BROWN/FRIEND |
| 13-OCT-99 | YVONEE SMITH/FRIEND |
| 13-OCT-99 | WILLIAM CART/FRIEND |
| 26-OCT-99 | ANGELA JONES/COUSIN |
| 13-OCT-99 | BILLY PATTERSON/UNCLE |
| 13-OCT-99 | B WILLIAMS/FRIEND |
| 13-OCT-99 | ANTHONY ERVIN/FRIEND |

Redacted

REPORT OF INCIDENT
(FORM 583)

Tracking #: BMP 402 99
Casefile #: BMP 99451

## SECTION 1: GENERAL INFORMATION

| INSTITUTION | USP Beaumont,Texas | REGION | South Central |
|---|---|---|---|
| REPORT DATE | December 16, 1999 | SUBMITTED BY | Ernest V. Chandler, Warden |

| DATE OF INCIDENT | December 16, 1999 | TIME OF INCIDENT | 6:02 p.m. |
|---|---|---|---|
| FBI NOTIFIED(Yes/No) | Yes | USMS NOTIFIED(Yes/No) | No |

| INCIDENT LOCATION (EXAMPLE: SHU) | | Unit 3B1 Cell 125 |
|---|---|---|

| PROHIBITED ACT CODE(S) | 100 Killing |
|---|---|

| INCIDENT REPORT NUMBER(S) | Pending |
|---|---|

### TYPE OF INCIDENT: (MARK ("X") WHERE APPROPRIATE AND COMPLETE SECTIONS SPECIFIED)

|   | |
|---|---|
|   | ESCAPE (COMPLETE SECTIONS 1, 2, & 6) |
|   | ATTEMPTED ESCAPE (COMPLETE SECTIONS 1, 2, & 6) |
| X | ASSAULT, INMATE ON INMATE (COMPLETE SECTIONS 1 & 6) |
|   | ASSAULT, INMATE ON STAFF (COMPLETE SECTIONS 1 & 6) |
| X | INMATE DEATH (COMPLETE SECTIONS 1, 3 & 6) |
|   | FIGHT (COMPLETE SECTIONS 1 & 6) |
|   | CELL FIRE (COMPLETE SECTIONS 1 & 6) |
|   | SELF MUTILATION (COMPLETE SECTIONS 1 & 6) |
|   | SUICIDE ATTEMPT (COMPLETE SECTIONS 1 & 6) |
|   | INTRODUCTION OF CONTRABAND (COMPLETE SECTIONS 1 & 6) |
|   | DISRUPTIVE BEHAVIOR (COMPLETE SECTIONS 1 & 6) |
|   | WEAPONS DISCHARGE (COMPLETE SECTIONS 1, 4, & 6) |
|   | USE OF FORCE (COMPLETE SECTIONS 1, 5, & 6) |
|   | MISCELLANEOUS (SPECIFY) (COMPLETE SECTIONS 1 & 6) |

| WAS WEAPON USED? (Yes/No) | Yes | IF YES, WHAT TYPE? | Home-made Knife |
|---|---|---|---|

**IF THIS INCIDENT HAS MORE THAN FIVE (5) INMATES INVOLVED, ADDITIONAL LINES CAN BE ADDED BY PLACING CURSOR IN FIRST BLOCK UNDER "INMATE(S) INVOLVED." ON TOOL BAR SELECT TABLE, INSERT, # OF ROWS NEEDED.**

| INMATE(S) INVOLVED | REG. NO. | SEX | RACE | CITZ | CIMS CATEGORY | MGMT INT GROUP/STG |
|---|---|---|---|---|---|---|
| Brown, Darryl | 05803-055 | Male | Black | U. S. | Separation | |
| Jackson, David | 13567-039 | Male | Black | U. S. | Separation | Assault O Drug Intro PostPic |
| Gulley, Arzell | 18249-039 | Male | Black | U. S. | Separation | |
| Lewis, Raymond | 11339-016 | Male | Black | U. S. | Separation | O Jampos S |

74-031

RACIAL/ETHNIC/SECURITY THREAT GROUP CONFLICT NOTES:

| STAFF INJURIES (Yes/No) | No | INMATE INJURIES (Yes/No) | Yes |
|---|---|---|---|

IF MEDICAL TREATMENT REQUIRED BY EITHER STAFF OR INMATES, LIST NAMES, INJURIES, TREATMENT AND NAME OF MEDICAL STAFF PRESENT PRIOR TO OR DURING INCIDENT

Inmate Brown received stab wounds to his upper left chest, right sternum and left eye brow.

### SECTION 2: ESCAPE OR ATTEMPTED ESCAPE (MARK ("X") WHERE APPROPRIATE)

|  | INSIDE PERIMETER |
|---|---|
|  | OUTSIDE PERIMETER |
|  | ESCORTED TRIP |
|  | FURLOUGH (SOCIAL/LEGAL/MEDICAL) |
|  | FURLOUGH (INSTITUTION TO INSTITUTION) |
|  | FURLOUGH (INSTITUTION TO COMMUNITY CONFINEMENT CENTER) |
|  | OTHER (SPECIFY) |  |

### SECTION 3: INMATE DEATH

| INMATE DEATH (LOCATION) | Unit 3Bi Cell 125 |
|---|---|
| CAUSE OF DEATH | Multiple Stab Wounds |

INVESTIGATIVE STEPS BEING TAKEN, IF NECESSARY

FBI Investigation

| IF ALIEN, HAVE CONSULAR AND IMMIGRATION OFFICIALS BEEN NOTIFIED? (YES/NO/NOT APPLICABLE) | N/A |
|---|---|
| HAS SURVIVOR/DESIGNEE BEEN NOTIFIED? (YES/NO) | Yes |
| NAME AND ADDRESS OF SURVIVOR OR DESIGNEE | Mary Brown, 7 Durbin St. Rochester, NY. 14605 |
| MEDICAL COMMENTS | Inmate Brown sustained a stab wounds to his heart, left eyebrow and sternum. |

### SECTION 4: WEAPONS DISCHARGE

| NAME OF EMPLOYEE |  |
|---|---|
| POST ASSIGNMENT |  |
| TYPE OF WEAPON |  |
| NUMBER OF ROUNDS FIRED |  |

DISCHARGE WAS (MARK ("X") WHERE APPROPRIATE)

|  | ACCIDENTAL |
|---|---|
|  | LINE OF DUTY |
|  | OTHER (SPECIFY) |  |

| WAS REGIONAL OFFICE NOTIFIED (YES/NO) |  |
|---|---|

74-032

CAPTAIN'S ANALYSIS AND DAMAGE REPORT

| DAMAGE ESTIMATE ($) | |
|---|---|
| WERE TRAINING NEEDS INDICATED (YES/NO) | |
| IF TRAINING NEEDS WERE INDICATED, EXPLAIN | |
| | |

**SECTION 5: USE OF FORCE/RESTRAINTS/CHEMICAL AGENTS/NON-LETHAL WEAPONS**

USE OF FORCE CLASSIFICATION **(MARK ("X") WHERE APPROPRIATE)**

| | EMERGENCY, UNPLANNED USE OF FORCE |
|---|---|
| | CALCULATED, PLANNED USE OF FORCE |

| RESTRAINT EQUIPMENT USED | | RESTRAINT METHOD USED | |
|---|---|---|---|
| | NONE | | AMBULATORY |
| | Hard | | 2-POINT |
| | SOFT | | 4-POINT |

| DATE PLACED IN RESTRAINTS | |
|---|---|
| TIME PLACED IN RESTRAINTS | |
| USE OF RESTRAINTS AUTHORIZED BY | |

OTHER EQUIPMENT USED **(MARK ("X") WHERE APPROPRIATE)**

| | CHEMICAL AGENTS (TYPE, QUANTITY) | |
|---|---|---|
| | STUN GUN (RANGE, # OF ROUNDS) | |
| | BATON | |
| | SHIELD | |
| | MAG-LIGHT | |
| | OTHER (SPECIFY) | |

| LIST OF OTHER STAFF SUBMITTING MEMOS EXCLUDING PRINCIPLE STAFF |
|---|
| |

REASON FOR USE OF FORCE **(MARK ("X") WHERE APPROPRIATE)**

| | CONFRONTATION AVOIDANCE PROVED INEFFECTIVE |
|---|---|
| | BECAME VIOLENT AND/OR ASSAULTIVE |
| | DISPLAYED SIGNS OF IMMINENT VIOLENCE |
| | DESTROYING PROPERTY |
| | ATTEMPTED SUICIDE |
| | INFLICTED WOUNDS ON SELF/OTHERS |
| | ENFORCEMENT OF INSTITUTION REGULATIONS |
| | PREVENTION OF A CRIME |

74-033

| | APPREHENSION OF ONE WHO HAS COMMITTED A CRIME |
|---|---|
| | OTHER (SPECIFY) |

LIST FULL NAME OF ALL PRINCIPLE STAFF INVOLVED IN INCIDENT

CONFRONTATION AVOIDANCE STAFF (NAME AND TITLE) -- **PRESS ENTER AFTER EACH NAME/TITLE**

FORCE CELL TEAM MEMBERS, IF USED (NAME AND TITLE) -- **PRESS ENTER AFTER EACH NAME/TITLE**

| WAS THE INCIDENT VIDEOTAPED SEQUENTIALLY AS OUTLINED IN THE CORRECTIONAL SERVICES MANUAL?   (YES/NO) | |
|---|---|

IF NO, EXPLAIN WHY NOT, AND INDICATE AT WHAT POINT TAPING DID BEGIN.

| INDICATE TAPE ECN (EVIDENCE CONTROL #) | |
|---|---|

**SECTION 6: DESCRIPTION OF INCIDENT**

DESCRIPTION OF INCIDENT (IF USE OF FORCE, INCLUDE DETAILS, SUCH AS NAME OF THE SUPERVISOR APPLYING THE CHEMICAL AGENT AND/OR RESTRAINTS, REASONS FOR USE OF HARD RESTRAINTS INSTEAD OF SOFT RESTRAINTS, ETC.

On December 16, 1999, at approximately 6:02 p.m., staff announced via radio there was a fight in progress in front of Building #3. A second radio transmission indicated the inmates involved possessed weapons and had entered Unit 3B1. Responding staff entered Unit 3B1 and observed inmates Jackson, David, Reg. No. 13567-039, and Gulley, Arzell, Reg. No. 18249-039, walking quickly out of cell 125. Both inmates were ordered to the floor. As staff were restraining inmate Gulley, inmate Brown, Darryl, Reg. No. 05803-055, was observed walking out of cell 125, bleeding from the face and chest, and holding a homemade weapon. Inmate Brown walked towards inmate Jackson who was laying on the floor. Inmate Jackson jumped to his feet, picked up a chair, and tried to hold off inmate Brown's advances. Staff ordered inmate Brown to drop the weapon. Inmate Brown took several steps toward staff and collapsed. Staff restrained inmate Brown and carried him via stretcher to Health Services. Inmate Brown was then transported to an outside hospital via ambulance. At 7:06 p.m., inmate Brown was pronounced dead. Inmate Jackson, David, Reg. No. 13567-039, Gulley, Arzell Reg. No. 18249-039, and Lewis, Raymond, Reg. No. 11339-016, were placed in Administrative Detention. The FBI was notified and an investigation continues.

ROUTING:    REGION/REGIONAL DIRECTOR; REGION/CORR SVCS; BOP-DIR/DIRECTOR;
            BOP-CPD/CORR SVCS 583S AND 586S; BOP-HSD/ASSISTANT DIRECTOR

FILE:       CAPTAIN; INMATE CENTRAL FILE

74-034

Mail Envelope Info:    (38613BE5.963 : 7 : 38448)

Subject:              USP BEAUMONT, TEXAS
Creation Date:        12/22/99 3:00pm
From:                 Teresa A. McIntosh

Created By:           BMPDOM1.BMPADM1:TAM

| Recipients | Action | Date & Time |
|---|---|---|
| Post Office BOP Central. BOP-HSD/Assistant Director~ | Delivered | 12/22/99 02:55pm |
| Post Office BOP Central. BOP-CPD/Corr Svcs 583s and 586s~ | Delivered | 12/22/99 02:55pm |
| Post Office SCRDOM1.SCR_ADM01 SCRO/Corr Svcs~ SCRO/Regional Director~ SCRO/SIS~ | Delivered | 12/22/99 02:54pm |

| Domain.Post Office | Delivered | Route |
|---|---|---|
| BOP Central. | 12/22/99 02:55pm | BOP Central.BOP_HSD |
| BOP Central. | 12/22/99 02:55pm | BOP Central.BOP_OIS |
| SCRDOM1.SCR_ADM01 | 12/22/99 02:54pm | SCRDOM1.SCR_ADM01 |

| Files | Size | Date & Time |
|---|---|---|
| BMP400.99 | 28466 | 12/21/99 03:02pm |
| BMP402.99 | 30267 | 12/22/99 02:23pm |

Options
Auto Delete:          No
Expiration Date:      None
Notify Recipients:    Yes
Priority:             Normal
Reply Requested:      No
Return Notification::  None

Concealed Subject:    No
Security:             Normal

To Be Delivered:      Immediate
Status Tracking:      Delivered & Opened

74-035

RACIAL/ETHNIC/SECURITY THREAT GROUP CONFLICT NOTES:

| STAFF INJURIES (Yes/No) | No | INMATE INJURIES (Yes/No) | Yes |
|---|---|---|---|

IF MEDICAL TREATMENT REQUIRED BY EITHER STAFF OR INMATES, LIST NAMES, INJURIES, TREATMENT AND NAME OF MEDICAL STAFF PRESENT PRIOR TO OR DURING INCIDENT

Inmate Brown received stab wounds to his upper left chest, right sternum and left eye brow.

## SECTION 2: ESCAPE OR ATTEMPTED ESCAPE (MARK ("X") WHERE APPROPRIATE)

| | |
|---|---|
| | INSIDE PERIMETER |
| | OUTSIDE PERIMETER |
| | ESCORTED TRIP |
| | FURLOUGH (SOCIAL/LEGAL/MEDICAL) |
| | FURLOUGH (INSTITUTION TO INSTITUTION) |
| | FURLOUGH (INSTITUTION TO COMMUNITY CONFINEMENT CENTER) |
| | OTHER (SPECIFY) |

## SECTION 3: INMATE DEATH

| INMATE DEATH (LOCATION) | Unit 3B1 Cell 125 |
|---|---|
| CAUSE OF DEATH | Multiple Stab Wounds |

INVESTIGATIVE STEPS BEING TAKEN, IF NECESSARY

FBI Investigation

| IF ALIEN, HAVE CONSULAR AND IMMIGRATION OFFICIALS BEEN NOTIFIED? (YES/NO/NOT APPLICABLE) | N/A |
|---|---|
| HAS SURVIVOR/DESIGNEE BEEN NOTIFIED? (YES/NO) | Yes |
| NAME AND ADDRESS OF SURVIVOR OR DESIGNEE | Mary Brown, 7 Durbin St. Rochester, NY. 14605 |
| MEDICAL COMMENTS | Inmate Brown sustained a stab wounds to his heart, Left eyebrow and sternum. |

## SECTION 4: WEAPONS DISCHARGE

| NAME OF EMPLOYEE | |
|---|---|
| POST ASSIGNMENT | |
| TYPE OF WEAPON | |
| NUMBER OF ROUNDS FIRED | |

DISCHARGE WAS (MARK ("X") WHERE APPROPRIATE)

| | |
|---|---|
| | ACCIDENTAL |
| | LINE OF DUTY |
| | OTHER (SPECIFY) |

| WAS REGIONAL OFFICE NOTIFIED (YES/NO) | |
|---|---|

74-036

| CAPTAIN'S ANALYSIS AND DAMAGE REPORT | |
| --- | --- |
| DAMAGE ESTIMATE ($) | |
| WERE TRAINING NEEDS INDICATED (YES/NO) | |
| IF TRAINING NEEDS WERE INDICATED, EXPLAIN | |

**SECTION 5: USE OF FORCE/RESTRAINTS/CHEMICAL AGENTS/NON-LETHAL WEAPONS**

USE OF FORCE CLASSIFICATION **(MARK ("X") WHERE APPROPRIATE)**

| | EMERGENCY, UNPLANNED USE OF FORCE |
| --- | --- |
| | CALCULATED, PLANNED USE OF FORCE |

| RESTRAINT EQUIPMENT USED | | RESTRAINT METHOD USED | |
| --- | --- | --- | --- |
| | NONE | | AMBULATORY |
| | Hard | | 2-POINT |
| | SOFT | | 4-POINT |
| DATE PLACED IN RESTRAINTS | | | |
| TIME PLACED IN RESTRAINTS | | | |
| USE OF RESTRAINTS AUTHORIZED BY | | | |

OTHER EQUIPMENT USED **(MARK ("X") WHERE APPROPRIATE)**

| | CHEMICAL AGENTS (TYPE, QUANTITY) | |
| --- | --- | --- |
| | STUN GUN (RANGE, # OF ROUNDS) | |
| | BATON | |
| | SHIELD | |
| | MAG-LIGHT | |
| | OTHER (SPECIFY) | |

| LIST OF OTHER STAFF SUBMITTING MEMOS EXCLUDING PRINCIPLE STAFF |
| --- |
| |

REASON FOR USE OF FORCE **(MARK ("X") WHERE APPROPRIATE)**

| | CONFRONTATION AVOIDANCE PROVED INEFFECTIVE |
| --- | --- |
| | BECAME VIOLENT AND/OR ASSAULTIVE |
| | DISPLAYED SIGNS OF IMMINENT VIOLENCE |
| | DESTROYING PROPERTY |
| | ATTEMPTED SUICIDE |
| | INFLICTED WOUNDS ON SELF/OTHERS |
| | ENFORCEMENT OF INSTITUTION REGULATIONS |
| | PREVENTION OF A CRIME |

74-037

REPORT OF INCIDENT
(FORM 583)

Tracking #: __BMP_____
Casefile #: __BMP_____

## SECTION 1: GENERAL INFORMATION

| INSTITUTION | U S P Beaumont, Texas | REGION | | South Central |
|---|---|---|---|---|
| REPORT DATE | December 16, 1999 | SUBMITTED BY | | Ernest V. Chandler, Warden |
| DATE OF INCIDENT | December.16, 1999 | TIME OF INCIDENT | | 6:02 p.m. |
| FBI NOTIFIED(Yes/No) | Yes | USMS NOTIFIED(Yes/No) | | No |
| INCIDENT LOCATION (EXAMPLE: SHU) | | Unit 3B1 Cell 125 | | |
| PROHIBITED ACT CODE(S) | 100 Killing | | | |
| INCIDENT REPORT NUMBER(S) | | Pending | | |

### TYPE OF INCIDENT: (MARK ("X") WHERE APPROPRIATE AND COMPLETE SECTIONS SPECIFIED)

| | |
|---|---|
| | ESCAPE (COMPLETE SECTIONS 1, 2, & 6) |
| | ATTEMPTED ESCAPE (COMPLETE SECTIONS 1, 2, & 6) |
| X | ASSAULT, INMATE ON INMATE (COMPLETE SECTIONS 1 & 6) |
| | ASSAULT, INMATE ON STAFF (COMPLETE SECTIONS 1 & 6) |
| X | INMATE DEATH (COMPLETE SECTIONS 1, 3 & 6) |
| | FIGHT (COMPLETE SECTIONS 1 & 6) |
| | CELL FIRE (COMPLETE SECTIONS 1 & 6) |
| | SELF MUTILATION (COMPLETE SECTIONS 1 & 6) |
| | SUICIDE ATTEMPT (COMPLETE SECTIONS 1 & 6) |
| | INTRODUCTION OF CONTRABAND (COMPLETE SECTIONS 1 & 6) |
| | DISRUPTIVE BEHAVIOR (COMPLETE SECTIONS 1 & 6) |
| | WEAPONS DISCHARGE (COMPLETE SECTIONS 1, 4, & 6) |
| | USE OF FORCE (COMPLETE SECTIONS 1, 5, & 6) |
| | MISCELLANEOUS (SPECIFY) (COMPLETE SECTIONS 1 & 6) |

| WAS WEAPON USED? (Yes/No) | Yes | IF YES, WHAT TYPE? | Home-made Knife |
|---|---|---|---|

**IF THIS INCIDENT HAS MORE THAN FIVE (5) INMATES INVOLVED, ADDITIONAL LINES CAN BE ADDED BY PLACING CURSOR IN FIRST BLOCK UNDER "INMATE(S) INVOLVED." ON TOOL BAR SELECT TABLE, INSERT, # OF ROWS NEEDED.**

| INMATE(S) INVOLVED | REG. NO. | SEX | RACE | CITZ | CIMS CATEGORY | MGMT INT GROUP/STG |
|---|---|---|---|---|---|---|
| Brown, Darryl | 05803-055 | Male | Black | U. S. | Separation | |
| Jackson, David Lee | 13567-039 | Male | Black | U. S. | Separation | Assault O Drug Intro PostPic |
| Gulley, Arzell | 18249-039 | Male | Black | U. S. | Separation | |
| Lewis, Raymond D | 11339-016 | Male | Black | U. S. | Separation | O Jampos S |

74-038

RACIAL/ETHNIC/SECURITY THREAT GROUP CONFLICT NOTES:

| STAFF INJURIES (Yes/No) | No | INMATE INJURIES (Yes/No) | Yes |
|---|---|---|---|

IF MEDICAL TREATMENT REQUIRED BY EITHER STAFF OR INMATES, LIST NAMES, INJURIES, TREATMENT AND NAME OF MEDICAL STAFF PRESENT PRIOR TO OR DURING INCIDENT

Inmate Brown received stab wounds to his ~~left eye and his Heart~~ *UPPER LEFT CHEST, RIGHT EYEBROW, AND LEFT EYEBROW.*

## SECTION 2: ESCAPE OR ATTEMPTED ESCAPE (MARK ("X") WHERE APPROPRIATE)

|  | INSIDE PERIMETER |
|---|---|
|  | OUTSIDE PERIMETER |
|  | ESCORTED TRIP |
|  | FURLOUGH (SOCIAL/LEGAL/MEDICAL) |
|  | FURLOUGH (INSTITUTION TO INSTITUTION) |
|  | FURLOUGH (INSTITUTION TO COMMUNITY CONFINEMENT CENTER) |
|  | OTHER (SPECIFY) |

## SECTION 3: INMATE DEATH

| INMATE DEATH (LOCATION) | Unit 3B1 Cell 125 |
|---|---|
| CAUSE OF DEATH | Multiple Stab Wounds |

INVESTIGATIVE STEPS BEING TAKEN, IF NECESSARY

~~Investigation Continue~~ *FBI INVESTIGATION*

| IF ALIEN, HAVE CONSULAR AND IMMIGRATION OFFICIALS BEEN NOTIFIED? (YES/NO/NOT APPLICABLE) | N/A |
|---|---|
| HAS SURVIVOR/DESIGNEE BEEN NOTIFIED? (YES/NO) | Yes |
| NAME AND ADDRESS OF SURVIVOR OR DESIGNEE | Mary Brown, 7 Durbin St. Rochester, NY. 14605 |
| MEDICAL COMMENTS | Inmate Brown sustained a stab wounds to his heart, (Left eyebrow and sternum. |

## SECTION 4: WEAPONS DISCHARGE

| NAME OF EMPLOYEE |  |
|---|---|
| POST ASSIGNMENT |  |
| TYPE OF WEAPON |  |
| NUMBER OF ROUNDS FIRED |  |

DISCHARGE WAS (MARK ("X") WHERE APPROPRIATE)

|  | ACCIDENTAL |  |
|---|---|---|
|  | LINE OF DUTY |  |
|  | OTHER (SPECIFY) |  |

| WAS REGIONAL OFFICE NOTIFIED (YES/NO) |  |
|---|---|

74-039

| CAPTAIN'S ANALYSIS AND DAMAGE REPORT | |
|---|---|
| | |
| DAMAGE ESTIMATE ($) | |
| WERE TRAINING NEEDS INDICATED (YES/NO) | |
| IF TRAINING NEEDS WERE INDICATED, EXPLAIN | |
| | |

**SECTION 5: USE OF FORCE/RESTRAINTS/CHEMICAL AGENTS/NON-LETHAL WEAPONS**

USE OF FORCE CLASSIFICATION **(MARK ("X") WHERE APPROPRIATE)**

| | |
|---|---|
| | EMERGENCY, UNPLANNED USE OF FORCE |
| | CALCULATED, PLANNED USE OF FORCE |

| RESTRAINT EQUIPMENT USED | | RESTRAINT METHOD USED | |
|---|---|---|---|
| | NONE | | AMBULATORY |
| | Hard | | 2-POINT |
| | SOFT | | 4-POINT |

| | |
|---|---|
| DATE PLACED IN RESTRAINTS | |
| TIME PLACED IN RESTRAINTS | |
| USE OF RESTRAINTS AUTHORIZED BY | |

OTHER EQUIPMENT USED **(MARK ("X") WHERE APPROPRIATE)**

| | | |
|---|---|---|
| | CHEMICAL AGENTS (TYPE, QUANTITY) | |
| | STUN GUN (RANGE, # OF ROUNDS) | |
| | BATON | |
| | SHIELD | |
| | MAG-LIGHT | |
| | OTHER (SPECIFY) | |

| LIST OF OTHER STAFF SUBMITTING MEMOS EXCLUDING PRINCIPLE STAFF |
|---|
| |

REASON FOR USE OF FORCE **(MARK ("X") WHERE APPROPRIATE)**

| | |
|---|---|
| | CONFRONTATION AVOIDANCE PROVED INEFFECTIVE |
| | BECAME VIOLENT AND/OR ASSAULTIVE |
| | DISPLAYED SIGNS OF IMMINENT VIOLENCE |
| | DESTROYING PROPERTY |
| | ATTEMPTED SUICIDE |
| | INFLICTED WOUNDS ON SELF/OTHERS |
| | ENFORCEMENT OF INSTITUTION REGULATIONS |
| | PREVENTION OF A CRIME |

74-040

# EXHIBIT 75

FD-302 (Rev. 10-6-95)

- 1 -

# FEDERAL BUREAU OF INVESTIGATION

Date of transcription    12/23/1999

LARRY DEVEREAUX, Senior Officer Specialist, FEDERAL CORRECTION COMPLEX, Hebert Road, Beaumont, Texas, provided the following information.

DEVEREAUX related that on December 16 at approximately 6:02 pm he was on the yard outside of 3A1 and 3B1 and some inmates (including DAVID JACKSON) were on the yard and one inmate was arguing with DARYL BROWN. DEVEREAUX saw saw BROWN take off his shirt and coat and run into 3B1 followed by JACKSON, who appeared to have some sort of weapon. DEVEREAUX said the sliders close and Officer VANIN in the sally port area. DEVEREAUX waited until other staff members arrived then they entered 3B1 and started locking down inmates. DEVEREAUX noticed BROWN near cell #108 covered in blood and GULLEY near cell #125. DEVEREAUX and VANIN ordered GULLEY, who was covered with blood. DEVEREAUX helped get BROWN to medical and then put restraints on JACKSON and escorted him to a holding cell.

DEVEREAUX heard JACKSON shot, "Let's get the mother fucker" on the yard about the time that BROWN started running.

Investigation on    12/16/99    at    Beaumont, Texas

File #    90A-HO-54946                                   Date dictated    12/23/99

by    SA BEN MYERS/bm

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

.J2a (Rev. 10-6-95)

90A-HO-54946

Continuation of FD-302 of ___LARRY DEVEREAUX_____ ,On _12/16/99____ , Page __2__

**Descriptive Data:**

<u>Reference</u>
Name -
  Last:                  DEVEREAUX
   First:                 LARRY
Race:                   B
Sex:                    M
DOB:                 Redacted  1965
Phone #:            Redacted

75-002

FD-302 (Rev. 10-6-95)

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription    12/23/1999

       GARY VANIN, Senior Officer Specialist, FEDERAL CORRECTION COMPLEX, Hebert Road, Beaumont, Texas, provided the following information.

       VANIN related that on December 16 he was on the yard in front of Unit 3 with about sixty inmates when suddenly the whole area got quiet. VANIN saw an inmate without his shirt and coat (later identified as DARYL BROWN) running into 3B1 and two other inmates, one with a shank, after BROWN. VANIN said the sliders closed and he was stuck in the sally port area. VANIN made a radio call and saw some inmates throwing tables and chairs. VANIN also saw inmates running into either cell #124 or cell #125. VANIN waited until other staff members arrived then they entered 3B1 and started locking down inmates. VANIN noticed BROWN coming out of cell #125 covered in blood and carrying a weapon. VANIN and Lt. TIMS ordered BROWN to drop the weapon, which he did, and get down on the floor. VANIN helped cuff BROWN and noticed blood pouring onto the floor. VANIN put a pad of gauze on BROWN's wound and then went to medical.

Investigation on    12/16/99    at    Beaumont, Texas

File #    90A-HO-54946 -5    Date dictated    12/23/99

by    SA BEN MYERS/bm

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 10-6-95)

90A-HO-54946

Continuation of FD-302 of ___GARY VANIN_____ , On 12/16/99 , Page 2

## Descriptive Data:

Reference
Name -
  Last:                    VANIN
  First:                 GARY
Race:                   W
Sex:                    M
DOB:                Redacted  1963
Phone #:             Redacted

75-004

FD-302 (Rev. 10-6-95)

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription  12/23/1999

KELVIN TIMS, Lieutenant, FEDERAL CORRECTION COMPLEX, Hebert Road, Beaumont, Texas, provided the following information.

TIMS related that on December 16 at about 6:00 pm he was on the yard making the rounds when he heard a radio call concerning a fight with weapons at Unit 3. TIMS and other staff members entered 3B1 and started locking down inmates when TIMS noticed inmates DARYL BROWN and ARZELL GULLEY coming out of a cell (possibly cell #125). TIMS saw that BROWN had some sort of weapon with lacing and was chasing GULLEY. TIMS noticed that BROWM was bleeding profusely from one of his eyes and the chest area. TIMS ordered BROWN to drop the weapon, which he did, then BROWN collapsed on the floor. TIMS helped lock down inmates WORMLEY (ph) and DAVID JACKSON in the unit. TIMS also saw another weapon, shaped like a screwdriver and covered with black tape, in a chair a few cells down from cell #125. TIMS helped get BROWN onto a gurney and into medical.

---

Investigation on  12/16/99  at  Beaumont, Texas

File #  90A-HO-54946 -6    Date dictated  12/23/99

by  SA BEN MYERS/bm

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 10-6-95)

90A-HO-54946

Continuation of FD-302 of ___KELVIN TIMS_____ , On _12/16/99_ , Page __2__

## Descriptive Data:

Reference
Name -
   Last:                    TIMS
   First:                 KELVIN
Race:                  B
Sex:                  M
DOB:                  Redacted  1956
Phone #:              Redacted

75-006

FD-302 (Rev. 10-6-95)

- 1 -

# FEDERAL BUREAU OF INVESTIGATION

Date of transcription    12/23/1999

RAYMOND CHOPANE, Senior Officer, FEDERAL CORRECTION COMPLEX, Hebert Road, Beaumont, Texas, provided the following information.

CHOPANE related that on December 16 he was on the yard when he noticed inmate DARYL BROWN walking out of the sally port of Unit 3 3B1 Building and talking to another inmate (further described as a b/m, about 6'1"-6'2" tall, wearing a gray sock cap, gray pants, gray sweater, and tennis shoes). CHOPANE saw the other inmate walk away and BROWN suddenly took off his coat and ran into 3B1. Another inmate, carrying what appeared to be a screwdriver, chased after BROWN into 3B1. CHOPANE saw the sliders close and Officer VANIN caught in the sally port area. When other staff members arrived, CHOPANE entered 3B1 and helped secure the inmates. CHOPANE noticed that BROWN was down on the floor and bleeding. CHOPANE then helped get BROWN into medical.

CHOPANE said he heard the phrase "Let's get the mother fucker" on the yard about the time BROWN started running.

Investigation on    12/16/99    at  Beaumont, Texas

File #  90A-HO-54946-7                    Date dictated  12/23/99

by    SA BEN MYERS/bm

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 10-6-95)

90A-HO-54946

Continuation of FD-302 of    RAYMOND  CHOPANE                              , On  12/16/99        , Page    2

**Descriptive Data:**

Reference
Name -
  Last:                    CHOPANE
  First:                   RAYMOND
Race:                      B
Sex:                       M
DOB:                  Redacted    1970
Phone #:                      Redacted

75-008

# EXHIBIT 76



**U.S. Department of Justice**

**Federal Bureau of Prisons**

---

*United States Penitentiary, Beaumont*                 *Beaumont, Texas 77720*

December 16. 1999

MEMORANDUM FOR Walter H. Whaley. Jr.. Captain

FROM:                 K. Tims. Lieutenant

SUBJECT:            Assault/Homicide unit 3B1

On December 16, 1999 at approximately 6:02p.m. staff announced via radio there was a fight in Unit 3B1, then staff announced weapons were involved.   Responding staff observed inmates Brown, Darryl. Reg No. 05803-055 and Gulley, Arzell. Reg. No. 18249-039 coming out of cell 125 in Unit 3B1. Inmate Brown was chasing inmate Gulley with a Homemade weapon. Staff separated the inmates and secured the unit. Inmate Brown was transported to the Health Services Unit where it was determined he had sustained puncture wounds to his sternum, Heart and left eye.   He was transported via ambulance to a local hospital where he was pronounced dead 7:06p.m. Inmate Gulley did not sustain any injuries.   A review of the unit tapes also placed inmate Jackson. David. Reg. No. 13567-039  was also involved in the assault.   An ambulance was called at 6:06p.m.  6:23:p.m.  The ambulance arrived at 6:55p.m. the ambulance departed.   We were notified at 7:06 that inmate Brown pronounced dead. his mother was notified at 8:00p.m. By the Chaplain that her son had expired.

An inmate recall was announced at 6:11p.m.. count commenced at 7:00p.m. and cleared at 7:00p.m. .   The institution Executive Staff and Departments were recalled at 6:25p.m.

*Notified amb @ 606p*

*arrived @ 623p*

*departed @ 655p*

*death notified @ 706p*

76-001



**UNITED STATES GOVERNMENT**

**MEMORANDUM**

United States Penitentiary, Beaumont, TX.

**DATE: 12-16-99**

**REPLY TO** *[signature]*

**ATTN. OF: Larry Devereaux, Senior Officer**

**SUBJECT: Inmate Fight 3B1**

**TO: K. Tims, Operation Lieutenant**

On December 16, 1999 at approximately 6:02pm I witnessed a verbal altercation between two black inmates that turned into a physical altercation. At that point I made an emergency call to control and compound that there was a fight in front of Unit 3 and that a weapons were involved. I then witnesses inmate Brown, Daryl Reg. No. 05803-055 remove his shirt and attempt to engage in a fight with two inmates, one being inmate Jackson, David Reg. No. 13567-039 who stated to another inmate "lets get this mother fucker." At that point inmate Jackson and another inmate started chasing inmate Brown who ran into unit 3B-1 then the sliders started closing and Officer Vann managed to get between the slider door before it closed. He stopped before entering the unit itself due to the lack of staff available. Once additional staff arrived I with several unknown staff members entered the unit and began ordering inmates to rack up and I witnessed inmate Gulley, Arzell Reg. No. 18249-039 lying face down on the floor and Officer E. Gordon standing over him and I placed restraints on inmate Gulley and advised Officer E. Gordon to stay with the inmate while I went over to place inmate Brown Reg. No. 05803-055 on the stretcher and help transport him to medical. I then returned back to my unit and started securing the cell doors. While ordering inmates to the cell, jackson cell mate was standing near the cell door and he was ordered to the television room.    I witnessed inmate Jackson walking back to his cell. I then witnessed inmate Jackson give inmate Ewing, James Reg. No. 63236-061 something and then proceed to his assigned cell. A strip search was conducted on inmate Ewing with negative results. At this point I advised the Operations Lieutenant, Tims, that inmate Jackson was a participant in the incident. Prior to removing inmate Jackson from his cell he exchanged shoes. Once additional staff arrived in unit 3A1 inmate Jackson was restrained and escorted away by staff. Inmate Jackson's cell door was secured and to the best of my knowledge, no one entered the secured cell. He was later taken to Lieutenants' Office. I then resumed my duties as 3A1 unit officer.

76-002



U.S. Department of Justice

Federal Bureau of Prisons

---

**United States Penitentiary**                          **Beaumont, Texas 77720**

12-16-99


MEMORANDUM FOR LIEUTENANT TIMS

FROM:        *R. Chopane*
            R. CHOPANE, SENIOR OFFICER


SUBJECT:    ASSAULT, INMATE BROWN #05803-055


On 12-16-99 at about 6:02 p.m. inmate Daryl Brown #05803-053 was on the yard getting into a verbal argument with two unidentified inmates in front of unit three. Inmate Brown was backing up taking off his coat. He then started running into unit 3B1 with the same two unidentified inmates chasing him with weapons in their hands. At that time the units sliding door closed with the the three inmates inside the unit. The sliding door was opened for responding staff. I proceeded into the unit and begun securing the inmates in their cell.



USI

76-003

**United States Government**

# memorandum

*Federal Correctional Complex*
Beaumont. Texas 77720-6015

DATE: 16 December 1999
REPLY TO
ATT. OF: E. Gordon. Senior Officer Y
SUBJECT: Assault Unit 3B1

TO: Operations Lieutenant K. Tims

On 12-16-99 at 6:15 p.m., I was working as the 3B3 Unit Officer, when a call came over the radio of a fight in front of Unit Three with weapons involved. I secured my Unit, and responded to the front of Unit 3B1, with other staff. At this time Operations Lieutenant K. Tims gave the order for Control to the Open Unit 3B1 slider. As we entered the Unit I observed a Black Inmate , with a brown jacket, Khaki pants, and a gray knit cap, walking briskly away from Cell #125 to my left towards Cell # 132. This Inmate was later identified as Gulley. A. Reg. #18249-039. Upon approaching Inmate Gulley, I repeatedly ordered him to get on the ground, to which he complied. Myself, and Officer L. Devereaux began placing Inmate Gulley in handcuffs. At this time I observed that Inmate Gulley was wearing tan colored gloves with what appeared to be blood spots on them. It was also at this time that Inmate Gulley stated " He's still got a knife." I then looked up and observed a Black Inmate (later identified as Brown. D 05803-055 3b3-410) adjacent to Cell #115 with no shirt on and what appeared to be blood about his face and chest. Inmate Brown also had an unidentified object in his right hand, that he dropped to the floor. At this time myself and Ofc. Devereaux secured the handcuffs on Inmate Gulley and began escorting him from the Unit. As we reached the track field in front of Unit Three Inmate Gulley's pants fells down. It was at this time that Officer E. Cervantez took over escort of Inmate Gulley, with Ofc. Devereaux. I then picked up Inmate Gulley's pants and secured them in my Unit office. A subsequent search of the pants revealed white paper towels in the right front pocket, and an Inmate I.D. bearing the name Gulley. Arzell # 18249-039. I also secured the gray knit cap that Inmate Gulley was wearing. I then returned to my duties securing all 3B3 inmates in their cells.

76-004



*U.S. Department of Justice*

*Federal Bureau of Prisons*

*United States Penitentiary, Beaumont*                    *Beaumont, Texas 77720*

DATE: December 16, 1999

FROM: G. Vann / Senior Officer Specialist

To: K. Tims/Operations Lieutenant

Subject: **Fight** in Unit 3B1

On Thursday, December 16, 1999, I was assigned as Compound #2 Officer. At approximately 6:02pm I observed a black inmate close to the horse shoe pit in front of unit 3B1 backing up and removing his coat. I then observed him removing his shirt. I also observed two black inmates walking towards this inmate at a fast pace. At this time I called for assistance in front of unit 3B1. I observed all three inmates run towards unit 3B1. At this time I observed one of the inmates had a weapon in his hand. I called over the radio that the inmates were running into unit 3B1 and that weapons were involved. I ran into unit 3B1 and observed that the inmates were fighting inside of the unit. I observed all three inmates run into cell 125. When additional staff arrived at the unit we went into the unit and began securing the unit. I observed an inmate come out of cell 125 with what appeared to be blood all over him. I then observed that this inmate was holding a weapon. I began ordering the inmate to drop the weapon and lay down. The inmate dropped the weapon and fell to the floor. Officer Armand and myself placed handcuffs on this inmate. The inmate was placed on a stretcher and was taken to medical by myself and several other officers. The inmates were later identified as inmate Brown, Darryl #05803-055 unit 3B3, inmate Jackson, David #13567-039 unit 3A1, and inmate Gulley, Arzell #18249-039 unit 1B3. Inmate Brown, Darryl #05803-055 was identified as the inmate that had the blood on him.

76-005



United States Government ·

# memorandum

*Federal Correctional Complex*
Beaumont, Texas 77720-6015

DATE: December 16, 1999

REPLY TO
ATT. OF:  D. Wilhite, Senior Officer

SUBJECT: Fight in Unit 3B-1

TO: K. Tims, Operations Lt.

On December 16, 1999, at approximately 6:00 pm, I responded to a fight in front of Unit #3. As I ran across the compound, I saw several black inmates run into Unit 3B-1. When I arrived at Unit 3B-1, the exterior slider door was closed. Officers Devereaux and Gordon were standing outside, and Officer Vann was inside. The Control Center then opened the slider door, and I entered the Unit. I observed inmate Brown, Darryl #05803-055 exit cell #125, with a bloody homemade weapon in his right hand. Inmate Brown was bleeding profusely from his left eye, and the left side of his chest. I ordered him to put the weapon down, as did other staff, but he refused. I then picked up a plastic chair in order to defend myself and the other staff from inmate Brown. Staff continued to order him to stop, but he pointed at an inmate who was laying face down on the floor, and continued to advance toward him. The individual on the floor was inmate Jackson, David #13567-039. When inmate Brown pointed at inmate Jackson, and continued to advance toward him, inmate Jackson leapt from the floor and ran. Inmate Brown then slowed and fell to the floor, dropping the homemade knife. I then dropped the chair, and assisted Officer Vann, who handcuffed inmate Brown. Inmate Brown was then placed on a gurney, and taken to the Medical Department, where life sustaining measures were begun. Lt. Marten began compressions on him and continued to do so until approximately 6:25 pm. At this time, I relieved him and continued to do compressions until approximately 6:45 pm, when inmate Brown was loaded into the ambulance, and I was relieved. I then began to assist inmate Brown's respiration by using an ambu bag until we arrived at St. Mary's Hospital in Pt. Arthur, Texas at approximately 7:04 pm. Inmate Brown was rushed into the Emergency Room, where he was pronounced dead by Dr. Ronaldo Matsuda at approximately 7:06 pm. At approximately 7:30 pm, Justice of the Peace Robert Morgan Jr. arrived and pronounced inmate Brown dead. Inmate Systems Manager S. Anstey arrived at approximately 9:55 pm to fingerprint inmate Brown. At approximately 10:30 pm, inmate Brown's body was released to the Jefferson County Coroners Office, and I returned to the institution.

76-006

# EXHIBIT 77

CENTRAL FILE

U.S. Department of Justice          Discipline Hearing Officer Report (DHO)
Federal Bureau of Prisons               Incident Report Number: 474165

USP Marion                                    Security Level - High

Name of Inmate: JACKSON, DAVID                Reg. No. 13567-039
Date of Incident Report: 02/22/97                          Unit: E
Date of Incident: 02/22/97               Offense Code(s): 201 307

          Summary of Charges
          -Fighting with another person
        . -Refusing to obey an order of any staff member

I.   NOTICE OF CHARGE(S)

   A.   Advanced written notice of charge (copy of Incident Report) was
        given to inmate on 02/22/97 at 14:45 by:
        J. WRIGHT, CORRECTIONAL OFFICER

   B.   The DHO Hearing was held on 03/03/97 at 08:12.

   C.   The inmate was advised of the rights before the DHO by:
        R. REED, COUNSELOR on 02/26/97
        and a copy of the advisement of rights form is attached.

II.  STAFF REPRESENTATIVE

   A.   Inmate waived right to staff representative?  Yes.

   B.   Inmate requested staff representative:
        N/A.

   C.   Requested staff representative declined or could not appear but inmate
        was advised of option to postpone hearing to obtain another staff
        representative with the result that...
        N/A.

   D.   A staff representative was appointed:
        N/A.

III. PRESENTATION OF EVIDENCE

   A.   Inmate denies the charges.

   B.   Summary of Inmate Statement:

        Inmate JACKSON appeared at his hearing; however, he exercised his
        right to remain silent and make no statement in his defense to the
        charge.

J01718

77-001

JACKSON ·        13567-039            474165            03/03/97            page 2

C.  Witnesses:
    1.  The inmate requested witnesses?  No.
    2.  The following people were called as witnesses and appeared:  N/A.

    3.  A summary of the testimony of each witness follows:  N/A.
    4.  The following persons requested were not called for the reasons given:  N/A.

    5.  Unavailable witnesses were requested to submit written statements and those statements received were considered:  N/A.

D.  Documentary Evidence:  In addition to the Incident Report and Investigation, the DHO considered the following documents:

    Memorandum dated 02/22/97 from Counselor J. Robinson.

E.  Confidential Information:  No confidential information was used.

---

IV.  FINDINGS OF THE DHO

The following act(s) was(were) committed:  201

Summary of Acts Committed
-Fighting with another person

---

V.  SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations, written documentation, etc.):

The DHO considered the following evidence:

On 02/22/97 Officer Garcia was assigned to E-Cell House and at 7:30 a.m. released the D-Range inmates out for their inside recreation period.  At 8:35 a.m. a major disturbance occurred between the black and white inmates as they started fighting with each other.  Officer Garcia specially identified Inmate JACKSON fighting with Inmate ███.  Both inmates were throwing punches at each other with closed fists.  The DHO considered the memorandum submitted by Counselor Robinson supporting the reporting officer's eyewitness accounting of the incident and Inmate JACKSON'S actions.  Inmate JACKSON appeared at his hearing and denied the charge; however, exercised his right to remain silent.  The DHO places greater weight toward employee statements over non employee statements because staff are bound by the standards set forth in the Code of Conduct to only submit truthful statements and this includes reports.  Based upon the reporting officer's eyewitness description of Inmate JACKSON'S actions, the DHO finds he committed the prohibited act of Fighting With Another Inmate, Code #201.

77-002

JACKSON  .           13567-039           474165           03/03/97           page 3

---

VI.    SANCTION OR ACTION TAKEN                    Offense Severity: H
                                                   SGT Available: 0

       Code #201

            Disallow good conduct time
              Days Taken:  10.  Days Taken if Available:  10
            Disciplinary transfer
            Disciplinary segregation:  30 days
              (Suspend 20 days of Sanction Pending 60 Days Clear Conduct)

---

VII.   REASON FOR SANCTION OR ACTION TAKEN

       Inmates can not be permitted to fight with each other because of
       injuries they might receive and the serious disruption such actions
       do to the orderly operation of the cell house.  Sanctions were
       imposed for punishment and to impress upon Inmate JACKSON the
       gravity of his actions.  The recommendation for a disciplinary
       transfer was based upon his most recent actions which indicate he
       needs greater security and controls than he can receive at USP
       Marion.

---

VIII.  APPEAL RIGHTS: Yes. The inmate has been advised of the findings, specific
       evidence relied on, action and reasons for the action.  The inmate has
       been advised of his right to appeal this action within 20 calendar days
       following receipt of the DHO report under the Administrative Remedy
       Procedure.  A copy of this report has been given to the inmate.

---

IX.    DISCIPLINE HEARING OFFICER

       M. A. MCELMURRY, JR.
       Printed Name                Signature                    Date

Delivered to Inmate:
                     Staff Signature           Date

J01720

77-003

U.S. Department of Justice

Federal Bureau of Prisons

**Incident Report** 474165

| 1. NAME OF INSTITUTION | | | |
|---|---|---|---|
| USP MARION, ILLINOIS | | | |

**PART I - INCIDENT REPORT**

| 2. NAME OF INMATE | 3. REGISTER NUMBER | 4. DATE OF INCIDENT | 5. TIME |
|---|---|---|---|
| David Jackson | #13567-039 | 02-22-97 | 8:35 A.M. |

| 6. PLACE OF INCIDENT | 7. ASSIGNMENT | 8. UNIT |
|---|---|---|
| E-Unit, B-Range | Unassigned | E-Unit |

| 9. INCIDENT | 10. CODE |
|---|---|
| Fighting, Refusing To Obey An Order | #201 #307 |

**11. DESCRIPTION OF INCIDENT** (Date: 02-22-97 Time: 8:35 A.M. Staff became aware of incident)

At 8:35 A.M., I was observing inside recreation in E-Unit when I observed inmate David Jackson #13567-039 strike inmate ▓▓▓▓▓▓▓▓ in his face with closed fists.

I ordered inmate Jackson to stop fighting but he continued to fight.

| 12. SIGNATURE OF REPORTING EMPLOYEE | DATE AND TIME | 13. NAME AND TITLE (Printed) |
|---|---|---|
| *[signature]* | 02-22-97  1:15P.M. | Angel Garcia, Correctioanl Officer |

| 14. INCIDENT REPORT DELIVERED TO ABOVE INMATE BY | 15. DATE INCIDENT REPORT DELIVERED | 16. TIME INCIDENT REPORT DELIVERED |
|---|---|---|
| *[signature]* | 02/22/97 | 2:45P |

**PART II - COMMITTEE ACTION**

**17. COMMENTS OF INMATE TO COMMITTEE REGARDING ABOVE INCIDENT**

Inmate was advised of his rights before the UDC. Inmate stated "No comment"

**18. A. IT IS THE FINDING OF THE COMMITTEE THAT YOU:**
_____ COMMITTED THE FOLLOWING PROHIBITED ACT.

_____ DID NOT COMMIT A PROHIBITED ACT.

B. ✓ THE COMMITTEE IS REFERRING THE CHARGE(S) TO THE DHO FOR FURTHER HEARING.

C. _____ THE COMMITTEE ADVISED THE INMATE OF ITS FINDINGS AND OF THE RIGHT TO FILE AN APPEAL WITHIN 15 CALENDER DAYS.

**19. COMMITTEE DECISION IS BASED ON THE FOLLOWING INFORMATION**

Incident Report as reported by staff and supporting Memorandums.

**20. COMMITTEE ACTION AND/OR RECOMMENDATION IF REFERRED TO DHO (CONTINGENT UPON DHO FINDING INMATE COMMITTED PROHIBITED ACT)**

Recommend D.Sc. Transfer, MAX D/S, and MAX FSET/ DGCT

**21. DATE AND TIME OF ACTION** 02/24/97 1:30 (THE UDC CHAIRMAN'S SIGNATURE NEXT TO HIS NAME CERTIFIES WHO SAT ON THE UDC AND THAT THE COMPLETED REPORT ACCURATELY REFLECTS THE UDC PROCEEDINGS.)

E. LANGHELD /E. *[signature]*    R. Reed/ *[signature]*

Chairman (Typed Name/Signature)    Member (Typed Name)    Member (Typed Name)

Original - Central File Record    Blue - To Inmate after UDC Action

Yellow - DHO    Pink - To Inmate within 24 hours of Post Incident Act

BP-288(52)

J01721

77-004

**PART III – INVESTIGATION**

| 22. DATE AND TIME INVESTI-GATION BEGAN |
|---|
| 02/24/1997 @ 1:20pm |

23. INMATE ADVISED OF RIGHT TO REMAIN SILENT: YOU ARE ADVISED OF YOUR RIGHT TO REMAIN SILENT AT ALL STAGES OF THE DISCIPLINARY PROCESS BUT ARE INFORMED THAT YOUR SILENCE MAY BE USED TO DRAW AN ADVERSE INFERENCE AGAINST YOU AT ANY STAGE OF THE INSTITUTIONAL DISCIPLINARY PROCESS. YOU ARE ALSO INFORMED THAT YOUR SILENCE ALONE MAY NOT BE USED TO SUPPORT A FINDING THAT YOU HAVE COMMITTED A PROHIBITED ACT.

THE INMATE WAS ADVISED OF THE ABOVE RIGHT BY ___S.A. Stephens, Lt.___ AT (DATE/TIME) __02/24/97 @ 1:21pm__

24. INMATE STATEMENT AND ATTITUDE

The inmate stated he received a copy of this report on 02/24/97. He stated he understands his rights and the charges. His attitude was acceptable.

The inmate refused to make a staeement by stating "No, nothing to say" when asked.

25. OTHER FACTS ABOUT THE INCIDENT, STATEMENTS OF THOSE PERSONS PRESENT AT SCENE, DISPOSITION OF EVIDENCE, ETC.)

INCIDENT REFERRED TO FBI  (Y)  N .............

AGENT REFERRED TO. F. Eakin ...DATE. 2/22/97

DATE REL FOR ADMIN PROCESSING...2/24/97...11

OTHER... O. Epp

Attached to this report are (6) memorandums, (3) photographs of JACKSON following the incident, and an Injury Assessment form. All support the incident report.

26. INVESTIGATOR'S COMMENTS AND CONCLUSIONS

Based upon the body of the incident report, as depicted in section #11, the supporting documentation as depicted in section #25, and the inmate's refusal to make a statement or deny the charges, I conclude the prohibited acts were committed as reported and the inmate is appropriately charged.

27. ACTION TAKEN

The inmate remains housed in ICH pending UDC review/action.

DATE AND TIME INVESTIGATION COMPLETED: __02/24/97 @ 1:25pm__

PRINTED NAME/SIGNATURE OF INVESTIGATOR: _____S.A. Stephens_____
PRINTED NAME

SIGNATURE _____ Lieutenant

TITLE

J01722

77-005

PART III - INVESTIGATION

| | 22. DATE AND TIME INVESTI-GATION BEGAN |
|---|---|
| | 02/24/1997 @ 1:20pm |

23. INMATE ADVISED OF RIGHT TO REMAIN SILENT: YOU ARE ADVISED OF YOUR RIGHT TO REMAIN SILENT AT ALL STAGES OF THE DISCIPLINARY PROCESS BUT ARE INFORMED THAT YOUR SILENCE MAY BE USED TO DRAW AN ADVERSE INFERENCE AGAINST YOU AT ANY STAGE OF THE INSTITUTIONAL DISCIPLINARY PROCESS. YOU ARE ALSO INFORMED THAT YOUR SILENCE ALONE MAY NOT BE USED TO SUPPORT A FINDING THAT YOU HAVE COMMITTED A PROHIBITED ACT.

THE INMATE WAS ADVISED OF THE ABOVE RIGHT BY ___S.A. Stephens, Lt.___ AT (DATE/TIME) 02/24/97 @ 1:21pm

24. INMATE STATEMENT AND ATTITUDE

The inmate stated he received a copy of this report on 02/22/97.  He stated he understands his rights and the charges.  His attitude was acceptable.

The inmate refused to make a staeement by stating "No, nothing to say" when asked.

25. OTHER FACTS ABOUT THE INCIDENT, STATEMENTS OF THOSE PERSONS PRESENT AT SCENE, DISPOSITION OF EVIDENCE, ETC.)

INCIDENT REFERRED TO FBI (Y)  N..............

AGENT REFERRED TO.Egek,A.N...DATE.2/22/97

DATE REL FOR ADMIN PROCESSING..2/24/87...11 a

OTHER...G. Gardner

Attached to this report are (6) memorandums, (3) photographs of JACKSON following the incident, and an Injury Assessment form.  All support the incident report.

26. INVESTIGATOR'S COMMENTS AND CONCLUSIONS

Based upon the body of the incident report, as depicted in section #11, the supporting documentation as depicted in section #25, and the inmate's refusal to make a statement or deny the charges, I conclude the prohibited acts were committed as reported and the inmate is appropriately charged.

27. ACTION TAKEN

The inmate remains housed in ICH pending UDC review/action.

DATE AND TIME INVESTIGATION COMPLETED: ___02/24/97 @ 1:25pm___

PRINTED NAME/SIGNATURE OF INVESTIGATOR: _____S.A. Stephens_____

PRINTED NAME

SIGNATURE

Lieutenant

TITLE

J01723

77-006



JACKSON, DAVID #13567-039
FIGHT IN E-UNIT B-RANGE
PHOTO TAKEN BY H. RIVAS    2-22-97



JACKSON, DAVID #13567-039
FIGHT IN E-UNIT B-RANGE
PHOTO TAKEN BY H. RIVAS    2-22-97



JACKSON, DAVID #13567-039
FIGHT IN E-UNIT B-RANGE
PHOTO TAKEN BY H. RIVAS    2-22-97

J01724

77-007



JACKSON, DAVID #13567-039
FIGHT IN E-UNIT B-RANGE
PHOTO TAKEN BY H. RIVAS    2-22-97



JACKSON, DAVID #13567-039
FIGHT IN E-UNIT B-RANGE
PHOTO TAKEN BY H. RIVAS    2-22-97



JACKSON, DAVID #13567-039
FIGHT IN E-UNIT B-RANGE
PHOTO TAKEN BY H. RIVAS    2-22-97



J01725

77-008

UNITED STATES GOVERNMENT

~~MEMORANDUM~~

~~UNITED STATES PENITENTIARY~~
MARION, ILLINOIS  62959

DOJ - SENSITIVE

DATE: February 22, 1997

REPLY TO
ATTN OF: Angel Garcia, Correctional Officer

SUBJECT: Fight/E-Unit

TO: J. Yonkman, SIA

THRU: N. R. Meadors, Captain

THRU: J. Keels, Operations Lieutenant

On February 22, 1997, I was assigned as the E-Unit #2 Officer.  At 7:30 A.M., inmates on D-Range were released from their cells for unit recreation. I continued to observe the inmates who were out for recreation.  At approximately 8:35 A.M., I observed inmate ████████████████ walking from the back of B-Range towards the front.  I observed ███ being punched in the face with closed fists by two inmates who were known to me as inmates ████████████████ and David Jackson #13567-039. ██████ appeared to be momentarily pinned with his back against a cell grill door in the area of cell #11 through #16. ██████ was throwing punches at both Jackson and ██████. I notified the #1 Officer, Jeff Schroeder, that I had a fight in progress on B-Range. I hollered at the inmates and ordered them to stop fighting, they refused.

As inmates Jackson ██████ and ████ continued to fight, I observed inmate ████████████████ begin striking inmates Jackson and ██████. Initially ████ was striking Jackson and ██████ on their backs but as the fight continued, ██████ was striking Jackson and ████ in the chest, head, and other areas of their bodies.

As these inmates continued to fight, I observed inmate ████████████ and ████████████████████ join in the fight.  I saw ██████ and ██████ throw several punches at inmates ████ and ████

As inmates ████, Jackson, ████, ████████, and ████████ continued to fight, other inmates joined in the fight. I observed inmates ████████████████████████████, and ████ ████████████████. I observed each of these inmates throwing punches and pushing black inmates.  At about this time, I also observed inmate ████████ begin to fight with ██████ on a one-on-one basis.

During this entire incident, I gave repeated orders for the inmates to stop fighting and they continued to refuse my orders.  During this time, various inmates were hollering; "fuck the officers, come on in". When sufficient staff arrived, the inmates were ordered to "get down".  Inmates initially refused, however, when the grill was opened, all inmates complied and got down on the floor.

J01726

77-009

**MEMORANDUM**
**United States Penitentiary**
**Marion, Illinois 62959**



| Subject FIGHT IN E-UNIT ON B-RANGE | Date 02-22-1997 TIME: 8:35AM |
|---|---|

| To JEFF KEELS OPERATIONS LIEUTENANT | From JOHN ROBINSON COUNSELOR |
|---|---|

ON THE ABOVE DATE AND TIME THIS WRITER SAW SEVERAL INMATES INVOLVED IN STRIKING EACH OTHER WITH CLOSED FIST. ██████ WAS STRIKING AT THE BLACK INMATES THAT WERE INVOLVED IN THE FIGHT ON THE RANGE. THESE INMATES ARE ███, JACKSON 13567-039, ███████████ THESE BLACK INMATES WERE ALSO TRYING TO STRIKE INMATE ██████ WITH CLOSED FIST.

J01727

77-010

**MEMORANDUM**
United States Penitentiary
Marion, Illinois 62959



| Subject | Date |
|---|---|
| Fight E-Unit | February 22, 1997 |

| To | From  B. J. Adelsberger, Unit Manager |
|---|---|
| Investigating Lieutenant | General Population Unit |

On this date at approximately 8:25 a.m., I responded to a fight in E-Unit. Upon arrival in the unit, I proceeded to the upper ranges and looked down to the lower range. I saw several black inmates at the front of the range yelling and refusing staff orders to get down on the range. When enough staff were present, the Lieutenant ordered the grill opened. As staff entered the range the inmates laid down.

When the grill was opened I proceeded towards the back of the range. About mid-way down the range I saw inmate ███████████ was laying face down with his hands cuffed behind his back. There was blood on his shirt in the middle of his upper back (between the shoulders). Later, in the Hospital I saw what appeared to be a small puncture wound between his shoulders, and a similar wound in the left upper biceps.

Inmate █████████████████ was standing at the bottom of the steps refusing to lay down when instructed.

Inmate ██████████ was being held at the front of the range by one of the officers. He sat down on one knee and appeared to be very weak. He had a swollen nose.

As I walked the range I saw that inmate Jackson, David #13567-039 had a bloody upper lip. Later in the hospital I saw what appeared to be four small puncture wounds to the upper back across both shoulders.

cc: file

J01728

77-011

UNITED STATES GOVERNMENT
MEMORANDUM
UNITED STATES PENITENTIARY
MARION, ILLINOIS 62959

DATE: February 22, 1997

REPLY TO
ATTN OF: J. Turvey, Lieutenant

SUBJECT: Inmate Jackson #13567-039

TO: Captain N.R. Meadors

On the above date I escorted inmate Jackson #13567-039 to the hospital for his involvment in a fight that occurred in E-unit. Prior to this, inmate ███████████ had been seen by the P.A. and was being escorted to I-unit. While passing inmate ████ in transit, inmate Jackson made the statement "thats just the beginning.

J01729

77-012

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**INMATE INJURY ASSESSMENT AND FOLLOWUP**
(Medical)

| 1. Institution | 2. Name of Injured | 3. Register Number |
|---|---|---|
| USP. MARION | JACKSON DAVID | 13567-039 |

| 4. Injured's Duty Assignment | 5. Housing Assignment | 6. Date and Time of Injury |
|---|---|---|
| N/A | E | 2-22-97  0830 |

| 7. Where Did Injury Happen (Be specific as to location) | Work Related? | 8. Date and Time Reported for Treatment |
|---|---|---|
| E-UNIT | ☐ Yes   ☒ No | 2-22-97  0930 |

**9. Subjective:** (Injured's Statement as to How Injury Occurred)(Symptoms as Reported by Patient)

I FEEL FINE   I DON'T KNOW WHAT HAPPENED   I FEEL WOUNDED

➤ REFUSES SIGN
*Signature of Patient*

**10. Objective:** (Observations or Findings from Examination)

#4 PUNCTURE WDS TO UPPER BACK. PUNCTURE WD TO LT UPPER LIP. EPISTAXIS.—FROM R [...] AREA.  LUNGS CLR TO ALL FIELDS ADD NONTENDER

PT INVOLVED IN ALTERCATION

X–Rays Taken __X__     Not Indicated _____
X–Ray Results

**11. Assessment:** (Analysis of Facts Based on Subjective and Objective Data)

#4 PUNCTURE WDS TO BACK  #1 PUNCTURE WD TO LT UPPER LIP.
☒ EPISTAXIS.

**12. Plan:** (Diagnostic Procedures with Results, Treatment and Recommended Follow–up)
                        —BETADINE SCRUB
- WDS CLEANSED ↑ PROBED
- RBN DRSG - Ø FOR NERVES
- PUNCTURE WDS. APPROXIMATED ō STERI STRPS
- [...] 4 mg ↑ tt QID.
- TET TOX 1990

**13. This Injury Required:**

☐ a. No Medical Attention

☐ b. Minor First Aid

☐ c. Hospitalization

☒ d. Other (explain)
    SEE #12

☐ e. Medically Unassigned

☐ f. Civilian First Aid Only

☐ g. Civilian Referred to
      Community Physician

_____ J.F. CASTILLO-LOZANO, PA
*Signature of Physician or Physician Assistant*

EPISTAXIS

PUNCTURE WD

STAB WDS

*Self Carboned Form – If ballpoint pen is used, PRESS HARD*

Original – Medical File
Canary – Safety
Pink – Work Supervisor (Work related only)
Goldenrod – Correctional Supervisor

USP LVN

Printed on Recycled Paper

BP-362(60)
FEBRUARY 1988

J01730

77-013

# EXHIBIT 78

# THE DEPARTMENT OF JUSTICE MANUAL

## Volume 7

| | |
|---|---|
| TITLE 8 | CIVIL RIGHTS DIVISION |
| TITLE 9 | CRIMINAL DIVISION PART 1 |



**ASPEN LAW & BUSINESS**
A Division of Aspen Publishers, Inc.

1997-3 SUPPLEMENT

78-001

———————— Chapter 10 ————————

DETAILED
———— TABLE OF CONTENTS ————
FOR CHAPTER 10

9-10.000    FEDERAL PROSECUTIONS IN WHICH THE DEATH
PENALTY MAY BE SOUGHT

9-241            1995-3 SUPPLEMENT

78-002

CRIMINAL DIVISION

9-10.000

### 9-10.000 FEDERAL PROSECUTIONS IN WHICH THE DEATH PENALTY MAY BE SOUGHT

[*Editor's Note: Chapter 10 was amended pursuant to a memorandum from Attorney General Janet Reno dated January 27, 1995 (Blue Sheet No. 9.026).*]

### A. AUTHORIZATION TO SEEK THE DEATH PENALTY

The death penalty shall not be sought without the prior written authorization of the Attorney General.

### B. NOTICE OF INTENTION TO SEEK THE DEATH PENALTY

At the time an indictment charging a defendant with an offense subject to the death penalty is filed or unsealed, or before the United States Attorney's Office decides to request approval to seek the death penalty, whichever comes first, the United States Attorney should give counsel for the defendant a reasonable opportunity to present any facts, including any mitigating factors, to the United States Attorney for consideration. If the United States Attorney decides to request approval to seek the death penalty, the United States Attorney's Office should inform counsel for the defendant.

### C. SUBMISSIONS TO THE DEPARTMENT OF JUSTICE

In all cases in which the United States Attorney intends to charge a defendant with an offense subject to the death penalty, whether or not the United States Attorney recommends the filing of a notice to seek the death penalty, the United States Attorney shall prepare a "Death Penalty Evaluation" form and a prosecution memorandum. Following (i) an introduction, the prosecution memorandum should include a comprehensive discussion of (ii) the theory of liability, (iii) the facts and evidence, including evidence relating to any aggravating or mitigating factors, (iv) the defendant's background and criminal history, (v) the basis for federal prosecution (see Section F, infra), and (vi) any other relevant information. A copy of the Death Penalty Evaluation form is included as Appendix A.

The United States Attorney shall send the above-described documents, a copy of the indictment,¹ and any written material submitted by counsel for the defendant in opposition to the death penalty being imposed on the defendant to the Assistant Attorney General for the Criminal Division. Whenever

---

¹The request should include copies of all existing, proposed, and superseding indictments.

9-243          1995-3 SUPPLEMENT

78-003

9-10.000

DEPARTMENT OF JUSTICE MANUAL

possible these materials should be submitted prior to the return of an indictment containing a charge for which the death penalty could be sought. In no event should these documents be received by the Criminal Division later than 30 days prior to the date on which the Government is required, by an order of the court or otherwise, to file notice that it intends to seek the death penalty.

## D. DEPARTMENT OF JUSTICE REVIEW

Each of the documents described above shall be reviewed by a Committee appointed by the Attorney General, including the Deputy Attorney General or designee and the Assistant Attorney General of the Criminal Division or designee. Counsel for the defendant shall be provided an opportunity to present to the Committee, orally or in writing, the reasons why the death penalty should not be sought. The Committee will consider all information presented to it, including any evidence of racial bias against the defendant or evidence that the Department has engaged in a pattern or practice of racial discrimination in the administration of the federal death penalty. The Committee should give the Attorney General its recommendation in writing within fifteen days of receiving all documents required by Section C, supra. The Attorney General will conduct a review and make the final decision whether the Government should file a "Notice of Intention to Seek the Death Penalty."

Subsequent to the initial Department of Justice review, the United States Attorney and the Attorney General's Committee shall review any submission defense counsel chooses to make. After considering the information submitted, the Committee will make a recommendation to the Attorney General concerning the application of the death penalty to the case.

## E. NOTICE TO FAMILY OF VICTIM

The United States Attorney shall notify the family of the victim of all final decisions regarding the death penalty.

## F. SUBSTANTIAL FEDERAL INTEREST

Where concurrent jurisdiction exists with a state or local government, it is anticipated that a federal indictment for an offense subject to the death penalty will be obtained only when the federal interest in the prosecution is more substantial than the interests of the state or local authorities. See Principles of Federal Prosecution, [DOJ Manual 9-27.000], et seq. In states where the imposition of the death penalty is not authorized by law, the fact that the maximum federal penalty is death is insufficient, standing alone, to show a more substantial interest in federal prosecution.

78-004

CRIMINAL DIVISION

9-10.000

The following factors, which are not intended to be an exhaustive list, may be considered in deciding whether there is a more substantial interest in federal as opposed to state prosecution of the offense:

(1) The relative strength of the state's interest in prosecution. The federal and state characteristics of the criminal conduct should be considered. One of the jurisdictions may have a particularly strong interest because of the nature of the offense; the identity of the offender or victim; the fact that the investigation was conducted primarily by its investigators or through its informants or cooperators; or the possibility that prosecution will lead to disclosure of violations which are peculiarly within the jurisdiction of either the federal or state authorities or which will assist an ongoing investigation being conducted by one of them.

(2) The extent to which the criminal activity reached beyond the local jurisdiction. The extent to which the criminal activity reached beyond the boundaries of a single local prosecutorial jurisdiction should be considered. The nature, extent, and impact of the criminal activity upon the jurisdiction, the number and location of any murders, and the need to procure evidence from other jurisdictions, in particular other states or foreign countries, are all relevant to this analysis.

(3) The relative ability and willingness of the state to prosecute effectively. The relative likelihood of effective prosecution in the state and federal jurisdictions should be considered, including the ability and willingness of the authorities in each jurisdiction; the prosecutorial and judicial resources necessary to undertake prosecution promptly and effectively; legal or evidentiary problems that might attend prosecution; conditions, attitudes, relationships or other circumstances that enhance the ability to prosecute effectively, or alternatively, that cast doubt on the likelihood of a thorough and successful prosecution.

## G. STANDARDS FOR DETERMINATION

In deciding whether it is appropriate to seek the death penalty, the United States Attorney, the Attorney General's Committee and the Attorney General shall consider any legitimate law enforcement or prosecutorial reason which weighs for or against seeking the death penalty.

In determining whether or not the Government should seek the death penalty, the United States Attorney, the Attorney General's Committee and the Attorney General must determine whether the statutory aggravating factors applicable to the offense and any non-statutory aggravating factors sufficiently outweigh the mitigating factors applicable to the offense to justify a sentence of death, or, in the absence of any mitigating factors, whether the aggravating factors themselves are sufficient to justify a sentence of death. To qualify for consideration in this analysis, an aggravating factor must be found

9-245          1995-3 SUPPLEMENT

78-005

9-10.000                         DEPARTMENT OF JUSTICE MANUAL

to exist beyond a reasonable doubt. Recognizing that there may be little or no evidence of mitigating factors available for consideration at the time of this determination, any mitigating factor reasonably raised by the evidence should be considered in the light most favorable to the defendant. The analysis employed in weighing the aggravating and mitigating factors that are found to exist should be qualitative, not quantitative. Finally, there must be sufficient admissible evidence of the aggravating factors to obtain a death sentence and to sustain it on appeal.

The authorization process is designed to promote consistency and fairness. As is the case in all other actions taken in the course of federal prosecutions, bias for or against an individual based upon characteristics such as race or ethnic origin may play no role in the decision whether to seek the death penalty.

## H. WITHDRAWAL OF NOTICE OF INTENTION TO SEEK THE DEATH PENALTY

Once the Attorney General has authorized the United States Attorney to seek the death penalty, a notice of intention to seek the death penalty filed with the court shall not be withdrawn unless authorized by the Attorney General or as a condition of a plea agreement approved by the United States Attorney. If the United States Attorney wishes to withdraw the notice and proceed to trial, the United States Attorney shall advise the Assistant Attorney General for the Criminal Division of the reasons for that request, including any changes in facts or circumstances.

Any request to withdraw a notice shall be reviewed by the Committee appointed by the Attorney General, which will make a recommendation to the Attorney General. The Attorney General shall make the final decision.

## I. PLEA AGREEMENTS

The death penalty may not be sought, and no attorney for the Government may threaten to seek it, for the purpose of obtaining a more desirable negotiating position. No plea agreement shall be negotiated until an evaluation in accordance with this Bluesheet has been conducted by the United States Attorney. After an evaluation has been completed by the United States Attorney regarding whether or not to recommend the seeking of the death penalty, the United States Attorney can approve any plea agreement. There is no need for the United States Attorney to obtain prior authority from the Attorney General to approve a plea agreement.

Should a plea be entered in any death penalty case, the United States Attorney shall advise the Assistant Attorney General for the Criminal Division in writing of the plea agreement and the reasons for it.

1995-3 SUPPLEMENT                9-246

CRIMINAL DIVISION

9-10.000

Appendix A

EVALUATION OF FACTORS
IN POSSIBLE DEATH PENALTY PROSECUTIONS

This form is to be prepared by the lead AUSA in any case in which the Government intends to charge a defendant with an offense which is subject to the penalty of death. If your district is making a request for the death penalty, attach a copy of a prosecution memorandum which clearly sets forth the facts of the case or pending investigation in the format described in section 9-10.000 of the United States Attorneys' Manual.

DISTRICT: _____

USAO NO.: _____

GRAND JURY NO.: _____

COURT DOCKET NO.: _____

DEFENDANT NAME: _____

CHARGES: _____

AUSA(s): _____

(LEAD) AGENCY: _____

AGENCY CASE NO.: _____

JUDGE: _____

## I. THEORY OF PROSECUTION

Specify the Title(s), Section(s), and subsection(s) of the U.S. Code and state the theory or theories applicable to the proposed death penalty prosecution.

A. _____ Title _____, Section _____, subsection _____.

_____ Theory or theories of prosecution:

B. _____ Title _____, Section _____, subsection _____.

_____ Theory or theories of prosecution:

9-246.1          1995-3 SUPPLEMENT

78-007

9-10.000                                   DEPARTMENT OF JUSTICE MANUAL

## II. STATUTORY AGGRAVATING FACTORS

### A. AGGRAVATING FACTORS FOR ESPIONAGE AND TREASON

For offenses described in 18 U.S.C. § 794 (espionage) and § 2381 (treason) place a checkmark (✓) next to each applicable factor which you believe you will be able to prove at a sentencing proceeding beyond a reasonable doubt and describe the relevant supporting facts.

Factors listed under 18 U.S.C. § 3592(b). At least one of the following statutory aggravating factors must be found to exist before the death penalty may be considered. 18 U.S.C. § 3593(d) and (e)(1).

_____ (1) PRIOR ESPIONAGE OR TREASON OFFENSE—The defendant has previously been convicted of another offense involving espionage or treason for which a sentence of either life imprisonment or death was authorized by law.

_____ (2) GRAVE RISK TO NATIONAL SECURITY—In the commission of the offense the defendant knowingly created a grave risk of substantial danger to the national security.

_____ (3) GRAVE RISK OF DEATH—In the commission of the offense the defendant knowingly created a grave risk of death to another person.

### B. AGGRAVATING FACTORS FOR HOMICIDE

For all homicide offenses, place a checkmark (✓) next to each applicable factor which you believe you will be able to prove at a sentencing proceeding beyond a reasonable doubt and describe the relevant supporting facts.

Factors listed under 18 U.S.C. § 3591(a)(2). At least one of the following statutory aggravating factors must be found to exist before the death penalty may be considered. 18 U.S.C. § 3591(a)(2).

_____ (A) The defendant intentionally killed the victim;

_____ (B) The defendant intentionally inflicted serious bodily injury that resulted in the death of the victim;

_____ (C) The defendant intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or

1995-3 SUPPLEMENT            9-246.2

78-008

CRIMINAL DIVISION                                                      9-10.000

_____ (D) The defendant intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act.

Factors listed under 18 U.S.C. § 3592(c). At least one of the following statutory aggravating factors must be found to exist before the death penalty may be considered. 18 U.S.C. § 3593(d) and (e)(2).

_____ (1) DEATH DURING COMMISSION OF ANOTHER CRIME— The death, or injury resulting in death, occurred during the commission or attempted commission of, or during the immediate flight from the commission of an offense under one of the following Sections under Title 18:

|         |      |                                                                         |
| ------- | ---- | ----------------------------------------------------------------------- |
| _____ | 32   | (destruction of aircraft or aircraft facilities),                       |
| _____ | 33   | (destruction of motor vehicles or motor vehicle facilities),            |
| _____ | 36   | (violence at international airports),                                    |
| _____ | 351  | (violence against Members of Congress, Cabinet Officers, or Supreme Court Justices), |
| _____ | 751  | (prisoners in custody of institution or officer),                       |
| _____ | 794  | (gathering or delivering defense information to aid foreign government), |
| _____ | 844  | (d) (transportation of explosives in interstate commerce for certain purposes), |
| _____ | 844  | (f) (destruction of Government property by explosives),                 |
| _____ | 1118 | (prisoners serving life term),                                          |
| _____ | 1201 | (kidnapping),                                                           |
| _____ | 844  | (i) (destruction of property affecting interstate commerce by explosives), |
| _____ | 1116 | (killing or attempted killing of diplomats),                            |
| _____ | 1203 | (hostage taking),                                                       |
| _____ | 1992 | (wrecking trains),                                                      |
| _____ | 2280 | (maritime violence),                                                    |
| _____ | 2281 | (maritime platform violence),                                           |
| _____ | 2332 | (terrorist acts abroad against U.S. Nationals),                         |
| _____ | 2339 | (use of weapons of mass destruction),                                   |
| _____ | 2381 | (treason),                                                              |

under Title 49:

|         |      |                                                                         |
| ------- | ---- | ----------------------------------------------------------------------- |
| _____ | 1472 | (i) (aircraft piracy within special aircraft jurisdiction), and/or      |
| _____ | 1472 | (n) (aircraft piracy outside special aircraft jurisdiction).            |

9-246.3            1995-3 SUPPLEMENT

78-009

9-10.000                         DEPARTMENT OF JUSTICE MANUAL

_____ (2) PREVIOUS CONVICTION OF VIOLENT FELONY INVOLV-
ING FIREARM—For any offense, other than an offense for which a
sentence of death is sought on the basis of 18 U.S.C. § 924(c), the defendant
has previously been convicted of a Federal or State offense punishable by a
term of imprisonment of more than one year, involving the use or attempted
or threatened use of a firearm (as defined in 18 U.S.C. § 921) against another
person.

_____ (3) PREVIOUS CONVICTION OF OFFENSE FOR WHICH A
SENTENCE OF DEATH OR LIFE IMPRISONMENT WAS AUTHO-
RIZED—The defendant has previously been convicted of another Federal or
State offense resulting in the death of a person, for which a sentence of life
imprisonment or death was authorized by statute.

_____ (4) PREVIOUS CONVICTION OF OTHER SERIOUS OF-
FENSES—The defendant has previously been convicted of two or more
Federal or State offenses, each punishable by a term of imprisonment of more
than one year, committed on different occasions, involving the infliction of,
or attempted infliction of, serious bodily injury or death upon another person.

_____ (5) GRAVE RISK OF DEATH TO ADDITIONAL PERSONS—
The defendant, in the commission of the offense, or in escaping apprehension
for the offense, knowingly created a grave risk of death to one or more persons
in addition to the victim of the offense.

_____ (6) HEINOUS, CRUEL, OR DEPRAVED MANNER OF COM-
MITTING THE OFFENSE—The defendant committed the offense in an
especially heinous, cruel, or depraved manner in that it involved torture or
serious physical abuse to the victim.

_____ (7) PROCUREMENT OF THE OFFENSE BY PAYMENT—The
defendant procured the commission of the offense by payment, or promise of
payment, of anything of pecuniary value.

_____ (8) COMMISSION OF THE OFFENSE FOR PECUNIARY
GAIN—The defendant committed the offense as consideration for the
receipt, or in the expectation of the receipt, of anything of pecuniary value.

1995-3 SUPPLEMENT              9-246.4

78-010

CRIMINAL DIVISION

9-10.000

—— (9) SUBSTANTIAL PLANNING AND PREMEDITATION—The defendant committed the offense after substantial planning and premeditation to cause the death of a person or commit an act of terrorism.

—— (10) PREVIOUS CONVICTION OF TWO FELONY DRUG OFFENSES—The defendant has previously been convicted of two or more Federal or State offenses. each punishable by a term of imprisonment of more than one year. committed on different occasions. involving the distribution of a controlled substance.

—— (11) VULNERABILITY OF THE VICTIM—The victim was particularly vulnerable due to old age. youth. or infirmity.

—— (12) PREVIOUS CONVICTION OF SERIOUS FEDERAL DRUG OFFENSE—The defendant has previously been convicted of violating Title II or Title III of the Controlled Substances Act (21 U.S.C. § 801. et seq.) for which a sentence of five or more years imprisonment may be imposed or has previously been convicted of engaging in a continuing criminal enterprise (21 U.S.C. § 848(c)).

—— (13) CONTINUING CRIMINAL ENTERPRISE INVOLVING DISTRIBUTION TO MINORS—The defendant committed the offense in the course of engaging a continuing criminal enterprise in violation of [21 U.S.C. § 848(c)] and that violation involved the distribution of drugs to persons under the age of 21 in violation of [21 U.S.C. § 859].

—— (14) HIGH PUBLIC OFFICIALS—The defendant committed the offense against:

    —— (A) the President, President-elect, Vice President, Vice President-elect, Vice President-designate, officer next in the order of succession to the Presidency (if there is no Vice President), or any person acting as President under the Constitution and laws;

    —— (B) a Chief of State. head of government, or the political equivalent, of a foreign nation;

    —— (C) a foreign official listed in 18 U.S.C. § 1116(b)(3)(A), if the official is in the United States on official business;

9-246.5        1995-3 SUPPLEMENT

78-011

9-10.000                                    DEPARTMENT OF JUSTICE MANUAL

———  (D)  a federal public servant who is a judge, a law enforcement officer,[1] or an employee of a United States penal or correctional institution—
———      (i)   while engaged in the performance of official duties,
———      (ii)  because of the performance of official duties, or
———      (iii) because of status as a public servant.

———  (15) PREVIOUS CONVICTION OF SEXUAL ASSAULT OR CHILD MOLESTATION—In the case of an offense under chapter 109A (sexual abuse) [18 U.S.C. § 2241, et seq.] or chapter 110 (sexual exploitation and other abuse of children) [18 U.S.C. § 2251, et seq.], the defendant has previously been convicted of a crime of sexual assault or crime of child molestation.

## C. AGGRAVATING FACTORS FOR DRUG OFFENSE DEATH PENALTY

For offenses described in 18 U.S.C. § 3591(b)(1) and (2), place a checkmark (√) next to each applicable factor which you believe you will be able to prove at a sentencing proceeding beyond a reasonable doubt and describe the relevant supporting facts.

Factors listed under 18 U.S.C. § 3592(d). At least one of the following statutory aggravating factors must be found to exist before the death penalty may be considered. 18 U.S.C. § 3593(d) and (e)(3).

———  (1) PREVIOUS CONVICTION OF OFFENSE FOR WHICH A SENTENCE OF DEATH OR LIFE IMPRISONMENT WAS AUTHORIZED—The defendant has previously been convicted of another Federal or State offense resulting in the death of a person, for which a sentence of life imprisonment or death was authorized by statute.

———  (2) PREVIOUS CONVICTION OF OTHER SERIOUS OFFENSES—The defendant has previously been convicted of two or more Federal or State offenses, each punishable by a term of imprisonment of more

---

[1] For purposes of this subparagraph, a "law enforcement officer" is a public servant authorized by law or by a Government agency or Congress to conduct or engage in the prevention, investigation, prosecution, or adjudication of an offense, and includes those engaged in corrections, parole, or probation functions. 18 U.S.C. § 3592(c)(14).

78-012

CRIMINAL DIVISION                                    9-10.000

than one year, committed on different occasions, involving the importation, manufacture, or distribution of a controlled substance (as defined in 21 U.S.C. § 802) or infliction of, or attempted infliction of, serious bodily injury or death upon another person.

_____ (3) PREVIOUS SERIOUS FELONY DRUG CONVICTION—The defendant has previously been convicted of another Federal or State offense involving the manufacture, distribution, importation, or possession of a controlled substance (as defined in 21 U.S.C. § 802) for which a sentence of five or more years of imprisonment was authorized by statute.

_____ (4) USE OF A FIREARM—In committing the offense, or in furtherance of a continuing criminal enterprise of which the offense was a part, the defendant used a firearm (as defined in 18 U.S.C. § 921) or knowingly directed, advised, authorized, or assisted another to use a firearm to threaten, intimidate, assault, or injure a person.

_____ (5) DISTRIBUTION TO PERSONS UNDER TWENTY-ONE— The offense, or a continuing criminal enterprise of which the offense was a part, involved conduct proscribed by [21 U.S.C. § 859 (distribution of a controlled substance to a person under 21)] which was committed directly by the defendant.

_____ (6) DISTRIBUTION NEAR SCHOOLS—The offense, or a continuing criminal enterprise of which the offense was a part, involved conduct proscribed by [21 U.S.C. § 860 (distribution or manufacture of a controlled substance within 1,000 feet of a school)] which was committed directly by the defendant.

_____ (7) USING MINORS IN DRUG TRAFFICKING—The offense, or a continuing criminal enterprise of which the offense was a part, involved conduct proscribed by [21 U.S.C. § 861 (employment of a person under age 21 in a controlled substance violation)] which was committed directly by the defendant.

_____ (8) LETHAL ADULTERANT—The offense involved the importation, manufacture, or distribution of a controlled substance (as defined in 21 U.S.C. § 802) mixed with a potentially lethal adulterant, and the defendant was aware of the presence of the adulterant.

                              9-246.7        1995-3 SUPPLEMENT

78-013

9-10.000                                    DEPARTMENT OF JUSTICE MANUAL

### III. NON-STATUTORY AGGRAVATING FACTORS, 18 U.S.C. § 3593(a)

List and explain in relevant detail any non-statutory aggravating factors which you believe you can establish at a sentencing proceeding beyond a reasonable doubt.

Examples:

_____ (1) Participation in additional, uncharged murders, attempted murders, or other serious acts of violence.[1]

_____ (2) A victim was killed in an effort by the defendant to obstruct justice, tamper with a witness or juror, or in retaliation for cooperating with authorities.[2]

_____ (3) Contemporaneous convictions for more than one killing.[3]

---

[1] See, e.g., United States v. Pitera, 795 F. Supp. 546, 564 (E.D.N.Y.) (holding that the evidence of defendant's participation in other murders was "relevant to his character and his propensity to commit violent crimes"), aff'd, 986 F.2d 499 (2d Cir. 1992).

[2] See 18 U.S.C. §§ 1510, 1512, and 1513.

[3] In United States v. Pitera, 795 F. Supp. at 573-77, the district court rules that multiple murder convictions in the same trial do not satisfy the requirements of the statutory aggravating factor under 21 U.S.C. § 848(n)(2). This is no impediment, however, to the cause of multiple murder convictions as a nonstatutory aggravating factor.

78-014

CRIMINAL DIVISION                                    9-10.000

_____ (4) Future dangerousness to the lives and safety of other persons,' as evidenced by one or more of the following:[*]

    _____ a.   specific threats of violence.

    _____ b.   continuing pattern of violence.

    _____ c.   low rehabilitative potential.

    _____ d.   lack of remorse.

    _____ e.   mental evaluation, and/or

    _____ f.   custody classification.

_____ (5) Victim impact evidence concerning the effect of the offense on the victim and the victim's family as evidenced by oral testimony or a victim impact statement. See 18 U.S.C. § 3593(a).[']

## IV. MITIGATING FACTORS

1. **Statutory Mitigating Factors.** The statutory mitigating factors under 18 U.S.C. § 3592(a) are listed below. Place a checkmark (√) next to each factor which you expect the defendant will be able to prove at a sentencing proceeding by a preponderance of the evidence or which is reasonably raised by the evidence, and describe the relevant supporting facts.

_____ (1) **IMPAIRED CAPACITY**—The defendant's capacity to appreciate the wrongfulness of conduct or to conform conduct to the requirements of the law was significantly impaired, regardless of whether the capacity was so impaired as to constitute a defense to the charge.

---

[*]See Jurek v. Texas, 428 U.S. 262, 272-73 (1976) ("probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society"). The Supreme Court has approved consideration of a defendant's future dangerousness in capital sentencing, as both statutory and nonstatutory aggravation. See Simmons v. South Carolina, 114 S.Ct. 2187, 2193 (1994) (and cases cited therein).

[*]See, e.g., Johnson v. Texas, 113 S.Ct. 2658, 2662-63 (1993) (affirming a death sentence where a finding of future dangerousness was based in part upon lay witness testimony about unadjudicated acts of violence committed by the defendant prior and subsequent to the instant capital murder); Barefoot v. Estelle, 463 U.S. 880, 898 (1983) ("relevant, unprivileged evidence [expert testimony concerning future dangerousness] should be admitted and its weight left to the factfinder").

[']See also Payne v. Tennessee, 111 S.Ct. 2597, 2609 (1991) (holding that the victim's personal characteristics and the impact of the murder on the victim's family may be considered in capital sentencing; the Eighth Amendment is not per se a bar "if the State chooses to permit the admission of victim impact evidence").

78-015

9-10.000                                    DEPARTMENT OF JUSTICE MANUAL

———— (2) DURESS—The defendant was under unusual and substantial duress, regardless of whether the duress was of such a degree as to constitute a defense to the charge.

———— (3) MINOR PARTICIPATION—The defendant is punishable as a principal in the offense, which was committed by another, but the defendant's participation was relatively minor, regardless of whether the participation was so minor as to constitute a defense to the charge.

———— (4) EQUALLY CULPABLE DEFENDANTS—Another defendant or defendants, equally culpable in the crime, will not be punished by death.

———— (5) NO PRIOR CRIMINAL RECORD—The defendant does not have a significant prior history of other criminal conduct.

———— (6) DISTURBANCE—The defendant committed the offense under severe mental or emotional disturbance.

———— (7) VICTIM'S CONSENT—The victim consented to the criminal conduct that resulted in the victim's death.

   2. Non-Statutory Mitigating Factors. Subsection (a)(8) provides wide latitude to the defendant to present evidence of any "other factors in the defendant's background, record, or character or any other circumstance of the offense...mitigat[ing] against imposition of the death sentence." List and explain in relevant detail all non-statutory mitigating factors. Note again whether you expect that a defendant could establish the factor at a sentencing hearing by a preponderance of the evidence or the factor is reasonably raised by the evidence.

## V. WEIGHING OF AGGRAVATION AND MITIGATION

   The applicable statutory aggravating factors under Section 3591(a)(2) and Section 3592(b), (c), and (d) and any non-statutory aggravating factors under Section 3593(a) must sufficiently outweigh any mitigating factors under 18 U.S.C. § 3592(a) to justify a sentence of death, or, in the absence of any mitigating factors, the aggravating factors themselves must be sufficient to justify a sentence of death. To qualify for consideration in this analysis, an aggravating factor must be found to exist beyond a reasonable doubt.

1995-3 SUPPLEMENT              9-246.10

78-016

CRIMINAL DIVISION

9-10.000

Recognizing that there may be little or no evidence of mitigating factors available for consideration at the time of this determination, any mitigating factor(s) reasonably raised by the evidence should be considered in the light most favorable to the defendant. The analysis employed in weighing the aggravating and mitigating factors that are so found to exist should be qualitative, not quantitative.

## VI. DEFENSE ATTORNEY(S)

DEFENSE ATTORNEY(S) NAME: _____

ADDRESS: _____

_____

TELEPHONE NO.: _____

NAME: _____

ADDRESS: _____

_____

TELEPHONE NO.: _____

If defense attorney(s) submitted any written materials in opposition to the death penalty, attach copies of documents.

## VII. RECOMMENDATION OF THE UNITED STATES ATTORNEY

In deciding whether it is appropriate to seek the death penalty, the United States Attorney, the Attorney General's Committee and the Attorney General may consider any legitimate law enforcement or prosecutorial reason which weighs against seeking the death penalty. There must be sufficient admissible evidence of the aggravating factors to obtain a death sentence at trial and to sustain it on appeal.

_____ Recommends that "Notice of Intention to Seek the Death Penalty" be filed for the following reasons:


_____ Recommends that "Notice of Intention to Seek the Death Penalty" not be filed for the following reasons:


_____
Date

_____
United States Attorney

_____
[District]

9-246.11          1995-3 SUPPLEMENT

78-017

9-10.000                              DEPARTMENT OF JUSTICE MANUAL

NON-DECISIONAL CASE IDENTIFYING INFORMATION[1]

[Fill out a separate page for each indicted defendant. This page will not be included in the materials presented to the Attorney General's Review Committee but will be routed to and retained by OPMA, Criminal Division.]

DISTRICT: _____   USAO NO.: _____

CASE NAME: _____

DEFENDANT NAME: _____

DEFENDANT ALIASES: _____

DEFENDANT DOB: _____   DEFENDANT SSN: _____

CORONER'S OFFICE CASE NO(S).: _____

DEFENDANT

RACE (Check one)   ☐ White              ☐ Native American
                   ☐ Black              ☐ Alaska Native
                   ☐ Asian              ☐ Aleut
                   ☐ Pacific Islander   ☐ Other (explain) _____

IS VICTIM HISPANIC? ☐ YES   ☐ NO

VICTIM NAME _____

RACE (Check one)   ☐ White              ☐ Native American
                   ☐ Black              ☐ Alaska Native
                   ☐ Asian              ☐ Aleut
                   ☐ Pacific Islander   ☐ Other (explain) _____

WAS VICTIM HISPANIC? ☐ YES   ☐ NO

VICTIM NAME _____

RACE (Check one)   ☐ White              ☐ Native American
                   ☐ Black              ☐ Alaska Native
                   ☐ Asian              ☐ Aleut
                   ☐ Pacific Islander   ☐ Other (explain) _____

_____

[1] As is true for all federal decisions regarding prosecution, bias for or against an individual based upon characteristics such as race, color, religious beliefs, national origin, or sex of a defendant or a victim may not play any role in the decision whether to seek or authorize the death penalty, and any influence of passion, prejudice, or other arbitrary factors must be avoided. See 18 U.S.C. § 3593(e) and (f) and § 3595(c)(1).

1995-3 SUPPLEMENT            9-246.12

78-018

CRIMINAL DIVISION

9-10.000

WAS VICTIM HISPANIC? ☐ YES   ☐ NO

VICTIM NAME _____

RACE (Check one)   ☐ White          ☐ Native American
                   ☐ Black          ☐ Alaska Native
                   ☐ Asian          ☐ Aleut
                   ☐ Pacific Islander   ☐ Other (explain) _____

WAS VICTIM HISPANIC? ☐ YES   ☐ NO

DOES U.S. ATTORNEY RECOMMEND DEATH PENALTY?
     ☐ YES   ☐ NO

*[Next page is 9-247.]*

9-246.13          1995-3 SUPPLEMENT

78-019

# U.S. DEPARTMENT OF JUSTICE



Approved: _____ Date: 10-09-94
JANET RENO
Attorney General