# EXHIBIT 81



*Department of Police*
*Detroit, Michigan 48226*

*Coleman A. Young, Mayor*
*City of Detroit*

Date:  January 23, 1986

TO WHOM IT MAY CONCERN:

    This is to certify that this Department has the
following record of:  Sammie Lee Jackson
               D.O.B:  REDACTED27

having been arrested in this City:

| DATE | CHARGE | DISPOSITION |
|------|--------|-------------|
| 2-10-80 | Poss Marijuana<br>80-50677 AM | 6 mos Prob/$100 atty<br>$150 cost |

This record has been checked by name and fingerprints.

Very truly yours,

*Lonnie B. Landeros*
LONNIE B. LANDEROS
Inspector
Commanding Officer
Identification Section

Receipt #: 266659

Initials:  dm

LL/cb
5/84

81-001



**Department of Police**
**Detroit, Michigan 48226**

**Coleman A. Young, Mayor**
**City of Detroit**

Date:    5-15-85

TO WHOM IT MAY CONCERN:

This is to certify that this Department has the
following record of: Sammie Lee Jackson
DOB:    REDACTED ·27

having been arrested in this City:

| DATE | CHARGE | DISPOSITION |
|------|--------|-------------|
| 2-10-80 | VCSA | 6 months probation |
|  |  | $150.00 Pd. |

This record has been checked by name and fingerprints.

Very truly yours,

*Lonnie B. Landeros*

LONNIE B. LANDEROS
Inspector
Commanding Officer
Identification Section

Receipt #: 203996

Initials:        LW

LL/cb
5/84

81-002

# EXHIBIT 82

CFP #99970

K/3002                David Lee Jackson

Psychological Examination by Lamont Crenshaw
April 17, 1980


This is the first referral to the Certified Forensic Facility of the Recorder's Court Psychiatric Clinic of this 20 year old, black, married male who was born in Detroit, Michigan on REDACTED 1960. He is charged with larceny in A Building under Docket No. 80-01999 in the Recorder's Court of the City of Detroit. The defendant was referred to the center on an order for diagnostic evaluation dated April 7, 1980, pursuant to MCIA 330.2026, by the Honorable Geraldine Bledsoe Ford, Judge of Recorder's Court.

A review of the information in the Detroit Police Department investigator's report indicates that on March 29, 1980, the defendant was observed kneeling in front of and with his hands inside of the office safe of the Detroit Edison Co. located at 3100 W. Grand Blvd. It further reports that the defendant was observed taking rolls of coins and running from the building. He was positively identified by a witness and later arrested by police officers subsequent to an on-foot c   e. The alleged offense occurred on the same morning that the de  dant was released from a local Detroit Police Department Precinct, where he was held on a suspected charge of larceny. The defendant gives the following account of the alleged offense. "I just went in the joint. Something came over me. I saw the money and I just took it. Friday they arrested me and this other guy for being on private property. Something we didn't do. I was in a restaurant at Wayne State. We went across the street and ordered hamburgers. So here comes this police and said we were on private property. He took us to the police station. I told him I was nervous because I was getting arrested for something I didn't do. They let us go two days later I got on the Woodward bus and got off and went in the Edison place. At first I was going to ask for a job. I say $10.00 on a desk and I took it and went out the back door. I didn't take any money out of the safe. I kept on going. This guy came out and I broke. I didn't want to go back to jail about $10.00. I didn't take nothing out of the safe."

It is speculated that due to the bizarre nature of the offense, and the fact that the defendant had been released from a precinct jail immediately prior to his arrest for the current charges, questions have been raised concerning the defendant's competency to stand trial. Defense counsel is Steven H. Malach, telephone number 961-5955.

82-001

K 3002                David Lee Jackson

The Wayne County Jail medical staff reports that the defendant has not displayed any unusual or bizarre behavior while incarcerated. The Wayne County Jail medical staff also reports that the defendant is not currently taking any medication, and they have him listed as "a heroin addict."

Mr. Jackson is a native of Detroit, who was born REDACTED 1960. He grew up on the West side of Detroit in the ]          REDACTED area and is the oldest of five siblings. The family also included four cousins. His father is Leroy Jackson, age 74, who is retired construction worker. His mother is Sammie Jackson, age 52 and functions primarily as a housewife. They currently reside at REDACTED REDACTED Detroit, Michigan, telephone number    Redacted   . The defendant was somewhat evasive about his early childhood and adolescent years and his relationship with his parents and family members. He was involved in many fights as a youth and delinquent activity. He describes his father as generally supportive and having made an effort to desperately counsel him and discourage him from becoming involved in antisocial behavior. His mother is described as being supportive. He was waived by Juvenile Court at the age of 15 and tried as an adult and incarcerated at Ionia State Prison, he was also arrested for attempted B & E an Auto as a juvenile (dropped) he served four years of a two-to fifteen year sentence at Ionia State Prison for a robbery armed conviction. He received his education in the public school system of Detroit. He was placed in Special Education classes in schools for remedial reading and math and also behavioral problems. He was suspended from Samson Elementary School and referred to Winger Elementary, a special education school. He attended Northwestern High School until the 11th grade at which time he was incarcerated at Ionia State Prison. He relates that he completed the requirements for his GED while incarcerated. He was suspended from school for fighting, smoking marijuana and experiencing conflict with teachers. After being released from Ionia in 1979 he began working as a plumber's helper and has been employed by the Michigan Plumbing Co. for the past four months. He earns approximately $165.00 per week. He pays $180.00 rent, and owns an automobile. He also relates selling illicit drugs to supplements his income.

He married              on November 7, 1979. His wife is currently expecting a child. The defendant enjoys playing basketball, dancing and "getting high" as recreational activities. He relates experiencing blackouts periodically, severe head pains, and in 1974 he was treated for drug related hepatitis. He began taking Valium while incarcerated in Ionia and related that he continues to take Valium on a daily basis "for my nerves" prescribed by a private

82-002

# EXHIBIT 83

Case 1:09-cv-01039-MJT    Document 51-4    Filed 10/05/10    Page 8 of 77 PageID #:
7014

⬩ Back to Article        🖶 Click to Print



**Friday, Oct. 27, 1961**

## Michigan: Decline in Detroit

If ever a city stood as a symbol of the dynamic U.S. economy, it was Detroit. It was not pretty. It was, in fact, a combination of the grey and the garish: its downtown area was a warren of dingy, twisting streets; the used-car lots along Livernois Avenue raised an aurora of neon. But Detroit cared less about how it looked than about what it did—and it did plenty. In two world wars, it served as an arsenal of democracy. In the auto boom after World War II. Detroit put the U.S. on wheels as it had never been before. Prosperity seemed bound to go on forever—but it didn't, and Detroit is now in trouble.

Detroit's decline has been going on for a long while. Auto production soared to an alltime peak in 1955—but there were already worrisome signs. In the face of growing foreign and domestic competition, auto companies merged, or quit, or moved out of town to get closer to markets. Automation began replacing workers in the plants that remained. In the past seven years, Chrysler, the city's biggest employer, has dropped from 130,000 to 50,000 workers. At the depth of the 1958 recession, when Detroit really began reeling. 20% of the city's work force was unemployed. Even today, the figure is an estimated 10%, and the U.S. Government lists Detroit as an area of "substantial and persistent unemployment."

On the Dole. During Detroit's decay, much of the city's middle class has packed up and headed for the suburbs. Since 1950, Detroit has had a population drop of 197,568 from 1,849,568 to 1,652,000, while the suburbs, counting arrivals from elsewhere, have jumped by more than 1,000,000. Detroit's population decrease would have been even more drastic but for an influx of white and Negro workers from the South. In the past ten years, Detroit's Negro population has risen from 300,506 to 482,000.

With little education or training, Detroit's new arrivals have had to scramble for any job they could get. But in their desperation to find work at any wage, they have crowded out thousands of the city's longtime residents; more than 70% of the 61,692 persons on relief have lived in Detroit since before 1950. Children under three get an allowance of $5.50 a week for food, an active adult gets $10.60. The city also pays for fuel, rent and clothing. Counting city and state funds, welfare payments in Detroit this year will total around $28 million, compared with $8,197,000 in 1952.

Creeping Blight. Here and there in Detroit are hopeful eddies. Wayne State University is defiantly building a modern campus right in the heart of the city. But blight is creeping like a fungus through many of Detroit's proud, old neighborhoods. Vast areas have been leveled for redevelopment projects that have not

83-001

Case 1:09-cv-01039-MJT     Document 51-4     Filed 10/05/10     Page 9 of 77 PageID #: 7015

materialized. Down on the waterfront, the city's $70 million Cobo Convention Hall and Arena is not attracting the anticipated crowds of fast-spending conventioneers, this year failed to meet expenses by $285,000.

In all. Detroit has lost $16 million in taxes in the past four years. The nonprofit Citizens Research Council of Michigan warns that Detroit is headed for a $15 million deficit in its 1961-62 budget.

United Effort. The man who has genially stood watch over much of Detroit's decline is Mayor Louis Miriani, 64, a competent but complacent bureaucrat who has held office since 1957. Miriani wants the Michigan legislature, dominated by Republicans to help by voting more state relief funds or by at least passing the bills to let Detroit get more federal aid. Says Miriani: "That's where we need help—at the state level."

This year, Miriani is facing serious opposition in Detroit's nonpartisan mayoralty race. His opponent: Lawyer Jerry Cavanagh, 33, who describes Miriani as a "ceremonial figurehead who presides over the abandonment of the city." Cavanagh talks of attracting new industry, capturing a bigger slice of the St. Lawrence Seaway trade, and, if need be, leveling an income tax on anyone—including suburbanites—who makes money in Detroit.

But many Detroiters would agree that the city cannot be saved by a mayor alone. Its problems run so deep that they can be solved only by the effort of labor, management, -'government and citizenry—working in a spirit that once made Detroit the symbol of economic dynamism. Says Henry Ford II: "Detroit admittedly has its problems—intelligent citizen interest and action can solve them. As I see it, the vital need now is for the people themselves to become interested in the community and government, and to take an active part in their affairs."

 Click to Print

**Find this article at:**
http://www.time.com/time/magazine/article/0,9171,873465,00.html

Copyright © 2010 Time Inc. All rights reserved. Reproduction in whole or in part without permission is prohibited.

Privacy Policy  |  Add TIME Headlines to your Site  |  Contact Us  |  Customer Service

83-002

# EXHIBIT 84

NAME: Last **JACKSON** First **DAVID** Middle ___   BIRTHDATE Mo., Day, Year ___   SEX ___

THIS INDEX TAB NEED NOT BE COMPLETED UNLESS THIS SIDE IS PHOTOGRAPHED, OR CLIPPED FOR INCLUSION IN A NEW FOLDER.

FILE (Junior High) 180044   FILE (Senior High) 31   STUDENT NUMBER ___

**FORM 80 SERIES**
DETROIT PUBLIC SCHOOLS

## PUPIL'S CUMULATIVE RECORD
### Grades K — 12

THIS FOLDER, WITH ENCLOSURES, PARALLELS FORM CA-60 (MICHIGAN SCHOOLS)

**FORM 80A – THE FOLDER**

Page 1—RECORD OF ADMISSIONS AND OTHER CHANGES, K-12
Inside —SCHOLARSHIP AND CONTRIBUTING DATA, K-12
Page 4—OVERFLOW FROM PAGE 1 AND FROM INSIDE

**USUAL ENCLOSURES**

Form 80-C—SECONDARY-SCHOOL RECORD, 7-12
Form 80-D—TEST RECORD ENVELOPE, K-12
Form 80-E—HEALTH RECORD, K-12
Form 80-F—(inside 80-D)—OPTIONAL TEST RECORD, K-12

**DO NOT DESTROY!**

DETROIT PRINCIPALS: This folder, with all above enclosures, should follow the pupil to other Detroit schools. If the pupil transfers elsewhere or leaves school, retain records until requested, then send to Department of School Census for forwarding.

OUTSIDE-DETROIT PRINCIPALS: It is urged that these records follow the pupil wherever and as often as he may be transferred

Form 80-A—FOLDER, K-12
(12-64 CLI)

### RECORD OF ADMISSIONS AND OTHER CHANGES—ELEMENTARY, JUNIOR HIGH, SENIOR HIGH

REDACTED

| CHILD'S RESIDENCE, ZONE, APT. NO. | PHONE | SCHOOL | GRADE | ROOM | SEC. OR ST. HALL | DATE ADMITTED | LEFT—REASON* AND DATE | DAYS ABSENT |
|---|---|---|---|---|---|---|---|---|
| | 894-1209 | Sampson | KG | 201 | | 7/65 | | |
| | | | KG | 201 | A.M. | 9-8-65 | | 17 |
| | | | P.U. | 204 | P.M. | | | 21½ |
| | | | P-1 | 206 | S.C. | 9-8-66 | | 21½ |
| | | | 02 | 312 | S.C. | 9-19-67 | | 10½ |
| | 894-1209 | " | 3 | 303 | Sec 5 | 9-4-68 | | 25½ |
| | | | 4 | 316 | Sec 7 | 9-3-69 | | |
| | | | 4 | 318 | 10 | 1-26-70 | R'm-Rm | |
| | | | 5 | 317 | 11 | 9-9-70 | Wesley Sp. A 0-5-70 | 13 |
| | 894-1209 | Hammerman | Sp A | 204 | Sc | 10-5-70 | Transfer 9-8-71 | 25½ |
| | 894-1029 | Clippert | 6 Sp | B5° | | 9-8-71 | A 11-4-71 | 1 |
| | 894-1029 | Vincent | Jr p B | 212 | | 10-4-71 | 5-16-72 A Thurkell | 17 |
| | | Thirkell Jr/gh S | 105 | " | | 5/16/72 | | 0 |
| | 894-1029 | " | " 6 | " | S.C. | 9-6-72 | 11-13-72 Mc Millan | 35 |
| | " " | Mc Millan Sp | 216 | | | 1-13-72 | | |
| | | Don Bosco Hall | | | | 3-28-73 | TR 12-78 23 | |
| | | McMillan JBS | | 246 | | 10-22-73 | A 12-18-73 | |
| | 894-1029 | Neinas Sr Sp | | 301 | SC | 12-18-73 | 1 1/14/74 By/5 Rm | 35 |
| | | Information System | | | | | 4/14/86 | |

† Suspended

\* CODE FOR REASON (EFT (enter code letter and date): A—TRANSFER (new address and school on following line)   B—Graduation   CHECK IF MORE ENTRIES ON PAGE 4 ( )
C—Over-age   D—Employment   E—Marriage   F—Prolonged Illness   G—Death   H—Other reasons

TEAR ALONG LINE ABOVE AND PASTE IN NEW FOLDER IF REPLACEMENT IS NECESSARY. (NOTICE IS THIS FOLDS WHEN IT BEGINS TO BREAK.)

84-001

Case 1:09-cv-01039-MJT — Document 51-4 — Filed 10/05/10 — Page 12 of 77 PageID #: 7018

NAME: Last **Jackson** First **David** Middle **Lee** BIRTHDATE: Mo. Day, Year REDACTED 60 CODE SEX **M** SCHOOL (In pencil until terminal school is known) **M Kinnema** FILE (Lower Right) **1800444** STUDENT NUMBER

| PERSONAL AND FAMILY DATA | PUPIL | FATHER | MOTHER | Others in Loco Parentis (State Relationship) | CHILD LIVES WITH (Date each new entry, e.g. "8-2-63 = Father, Mother") |
|---|---|---|---|---|---|
| NAME: First and Last if Different | | Leroy | Sampie | | 9-1-65 Parents |
| BIRTHPLACE: City, State or Nation | | U.S. | U.S. | | |
| HOME LANGUAGE | | English | English | | |
| DATE NATURALIZED | | | | | |
| EDUCATIONAL STATUS (pencil) | | | | | |
| OCCUPATION (pencil) | | Construction | | | |
| HOME ADDRESS (If different) | | | | | |
| HOME PHONE (if different) | | | | | |
| BUSINESS ADDRESS | | | | | |
| BUSINESS PHONE | | | | | |

ESSENTIAL REMARKS (each dated): changes in statuses above, and other items:

## SCHOLARSHIP RECORD, KINDERGARTEN THROUGH GRADE 6

| KINDERGARTEN, READING RDNS. | GRADES 1-6 SEMESTER ENDING: | 6/69 | 6/70 | 6/91 | 6/72 | | | | | | PRIMARY YEARS AFTER KINDERGARTEN | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| L.S.-A | GRADE, CLASS: | 3 | 2 | 3pr | JrB | | | | YEAR ENDING (Mo./Yr.): | 6-67 | 6-68 | | |
| | Achievement, Efforts | A E | A E | A E | A E | A E | A E | PRIMARY YEAR (P): 1st Yr., after Kdgn., etc.: | P1 | P2 | A E | A E |

**LANGUAGE ARTS**

| | | | | | | | | **LANGUAGE ARTS** | | |
|---|---|---|---|---|---|---|---|---|---|---|
| English | C | E | | B | | | 1. Understands what he reads | S | S | |
| Handwriting | C | D | C | A 3 | | | 2. Reads well orally | S | S | |
| Literature | D | | 3 | 3 | | | 3. Expresses ideas clearly | S | S | |
| Reading | | E | 3 | B | | | 4. Forms letters well | S | N | |
| Spelling | C | E | | A | | | 5. Spells correctly | S | N | |
| Arithmetic, Mathematics | D 2 | E 3 | 3 | A | | | **MATHEMATICS** 1. Understands facts and processes | S | N | |
| Homemaking | | | | | | | 2. Reasons well in solving problems | S | N | |
| Industrial Arts | | | | | | | | | |
| Science | D 2 | C | 3 C | 3 B | | | Science | S | | |
| Social Studies | D 2 | D | 3 C | 3 B | | | Social Studies | S | | |
| Art | C 2 | D | 2 | D | | | Art | S | | |
| Guid | C 2 | C | 5 | | | | | | |
| Health, Physical Ed. | D 3 | C | 2 | C | | | Music | S | | |
| Library | B 2 | C | 2 | | | | | | |
| Music, General | D 4 | C | 3 | B | | | Health & Phys. Ed. | S | | |
| Music, Instrumental | | | | | | | Work Habits (average) | | N | |
| Citizenship | 3 | 3 | 3 | 3 | | | Social Habits (average) | | N | |
| Days Absent | 25 | 13 | 25½ | 1 | | | Days Absent | 21½ | 10½ | |
| Times Tardy | 13 | 27 | 0 | 1 | | | Times Tardy | 9 | 0 | |

GRADE, CLASS: NGP-1 or -2: Nongraded Primary Grade Equivalent 1 or 2. Marks in other grades: A=Excellent, B=Good, C=Average, D=Poor, E=Not Passed.
NGP marks: 1-Outstanding Progress, 2-Shows Progress, 3-Needs to Improve. Citizenship: 1=Excellent, 2=Average, 3=Poor.
93 pupil days in average semester.

### SPECIAL ABILITIES (+) OR DISABILITIES (—)
—Including Special Ability or Remedial classes. These spaces are NOT intended for notations about psychosocial adjustment. For these, or for extended comment, see Form 80-B inside 80-D.

| +OR— | AREA | COMMENTS (Please Date) |
|---|---|---|
| | | |

### CODE FOR SOURCE OF BIRTH RECORD
OF —Official Record  CH—Church Record
MS —Mother's Statement  FS—Father's Statement
O —Other Source (specify here)

FORM 80-A—RECORD FOLDER, PAGE 2

TRIM ALONG LINE ABOVE AND INSERT IN NEW FOLDER IF REPLACEMENT IS NECESSARY.

TRIM ALONG LINE BELOW AND INSERT IN NEW FOLDER IF REPLACEMENT IS NECESSARY.

FORM 80-A—RECORD FOLDER, PAGE 3

84-002

## IMMUNIZATIONS

| CHECK ANTIGEN GIVEN | WHOOPING COUGH | DIPHTHERIA | TETANUS (TOXOID) | POLIO | SMALLPOX | DATE GIVEN | GIVEN BY DEPT. OF HEALTH | PRIVATE PHYSICIAN | REMARKS AND OTHER IMMUNIZATIONS |
|---|---|---|---|---|---|---|---|---|---|
| measles | ✓ | ✓ | ✓ | | | MAR 25 1965 | ✓ | | |
| ✓ | ✓ | ✓ | – | – | | 3-10-67 | ✓ | ✓ | ORAL POLIO TRIV. VACC. |
| | | | | | | APR 14 1966 | | ✓ | ORAL POLIO TRIV. VACC |

| | DATE | AGE | WT. | H |
|---|---|---|---|---|
| | | | | |

### TUBERCULIN TESTS—GIVEN IN SCHOOL

| | | | | | | |
|---|---|---|---|---|---|---|
| GRADE | | | | | | |
| DATE | | | | | | |
| RESULT | | | | | | |
| CHEST X-RAY | | | | | | |

### FLUORIDE TREATMENTS

| | | | | | | |
|---|---|---|---|---|---|---|
| GRADE | | | | | | |
| DATE | | | | | | |

### OTHER PROCEDURES — COMMENTS

| NAME LAST | FIRST | MIDDLE | BIRTHDATE | | | SEX | SCHOOL (PENCIL UNTIL FINAL SCHOOL IS KNOWN) | FILE (JR. HIGH) | FILE (SR. HIGH) |
|---|---|---|---|---|---|---|---|---|---|
| Jackson | David | L | MO. | DAY | YEAR | m | | | |
| | | | REDACTED | 60 | | | | | |

INSTRUCTIONS. (1) Check (✓) entry only when deviation is noted (refer to guide). (2) Circle (√) entry when follow-up is completed. (3) Use inside for explanatory and progress notes.

84-003

Case 1:09-cv-01039-MJT    Document 51-4    Filed 10/05/10    Page 14 of 77    PageID #: 7020

| NAME: Last | First | Middle | BIRTHDATE: Mo., Day, Year | SEX | FORM 80-A— RECORD FOLDER, PAGE 3  This index tab need not be completed  unless this side is photographed. | FILE (Junior High) | FILE (Senior High) | STUDENT NUMBER |
|---|---|---|---|---|---|---|---|---|

## STANDARD INDIVIDUAL APTITUDE TESTS, GRADES K-12
See Form 80-D (998-A) for standard group tests of aptitude and scholastic achievement.

## STUDENT ACTIVITIES—Organizations, Athletics, Work Experiences, Special Interests, Hobbies, Honors

| DATE | GRADE | TEST  Add form, if any: A, B, etc. | CA | MA or Raw Score | IQ | PCTL if reported | RECOMMENDATIONS | GRADE | SEMESTER ENDING | ITEM AND BRIEF COMMENT |
|---|---|---|---|---|---|---|---|---|---|---|
| 11-28-1969 | P 2 | BINET (L-M) | | | | | | | | |
| 4-13-1970 | 4 | Wechsler Intell. Scale 10-0  Bender-Gestalt Tst for Children | | | | | Mildly Retarded  Perceptually handicapped. | | | |

FURTHER RECOMMENDATIONS, OR REFERRALS AND ACTION (date each entry):

Guidance Counselor - Pilot Program - 12-14-66

| | PSYCHOLOGICAL CLINIC FILE NO. | | | | |
|---|---|---|---|---|---|

## SPECIAL CLASS PLACEMENT, ELEMENTARY-SECONDARY (enter elementary marks above, secondary on Form 80-C)

| SCHOOL | SPECIAL CLASS | DATE ENTERED | DATE LEFT | REMARKS |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

84-004

Case 1:09-cv-01039-MJT   Document 51-4   Filed 10/05/10   Page 15 of 77   PageID #: 7021

NAME: Last *Jackson*  First *David*  Middle *L*  | BIRTHDATE: REDACTED 60 | SEX: M | SCHOOL: *Sampson* | STUDENT NUMBER

## GROUP APTITUDE TESTS

| Date Tested | Grade | NAME OF TEST (Add form if any A, B, etc) | Letter Rating or I.Q. | Per-centile | Other (label) | Title of Test |
|---|---|---|---|---|---|---|

DETROIT BEGINNING FIRST GRADE

### PRIMARY MENTAL ABILITIES

Name: JACK... DAVID  Birthdate: 5-60  Chronological Age: 52 Months

| School | Group | Primary Level | Date Tested | Letter Rating | Percentile Rank | Raw Score |
|---|---|---|---|---|---|---|
| 2323 | 51 | P1 | 1-57 | 5 | 11 | 80 |

### CALIFORNIA S-F TEST OF MENTAL MATURITY

Name: JACKSON  DAVID

| | | | Letter Rating | Percentile | Raw Score |
|---|---|---|---|---|---|
| School 2323 | Group C2 | Grade 32 | Level 1H | Language D | 14 | 13 |
| Date Tested 12/68 | Chronological Age 105 Months | Birthdate REDACTED /60 | Non-Language C | 21 | 25 |
| | | | Total D | 14 | 38 |

or record scores.  **TOTAL**

| Date Tested | Grade | Other Test. Affix gummed label (extending into left margin) or enter name above and record scores. | | | |
|---|---|---|---|---|---|
| | | **TOTAL** | | | |

| Date Tested | Grade | JUNIOR-HIGH CALIFORNIA S-F TEST OF MENTAL MATURITY | Letter Rating | Grade Equiv. | Age Eq. (Months) |
|---|---|---|---|---|---|
| | | Affix gummed label (extending into left margin) or record scores. Language | | | |
| | | Non-Language | | | |
| | | **TOTAL** | | | |



DIFFERENTIAL APTITUDE TESTS.—Affix gummed-label report in this space or record percentile scores. Then make percentile band graph in the narrow columns under the arrows on the chart below. (Second copy goes on Form 80-C front.)

### 10-B SCAT-STEP TESTS

Second copy of gummed-label report, if available, should be affixed in this space, extending into left and right margins and covering these directions. Otherwise, copy percentile band scores below. (First copy of gummed-label report goes on 80-C reverse.)

| | CODES | | | | TEST DATE | | FORMS | | NATIONAL NORMS | SEQUENTIAL TESTS OF EDUCATIONAL PROGRESS | | | | | | SCHOOL AND COLLEGE ABILITY TEST | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | A | B | C | D | Month | Year | STEP | SCAT | | MATH | SCIENCE | SOC. STUDIES | READING | LISTENING | WRITING | VERBAL | QUANT. | TOTAL |
| 10-B | | | | | | | | | | % ile Band | % ile Band | % ile Band | % ile Band | % ile Band | % ile Band | % ile Band | % ile Band | % ile Band |

### 12-B SCAT-STEP TESTS

Second copy of gummed-label report, if available, should be affixed in this space, extending into left and right margins and covering these directions. Otherwise, copy percentile band scores below. (First copy of gummed-label report goes on 80-C reverse.)

| | CODES | | | | TEST DATE | | FORMS | | NATIONAL NORMS | SEQUENTIAL TESTS OF EDUCATIONAL PROGRESS | | | | | | SCHOOL AND COLLEGE ABILITY TEST | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | A | B | C | D | Month | Year | STEP | SCAT | | MATH | SCIENCE | SOC. STUDIES | READING | LISTENING | WRITING | VERBAL | QUANT. | TOTAL |
| 12-B | | | | | | | | | | % ile Band | % ile Band | % ile Band | % ile Band | % ile Band | % ile Band | % ile Band | % ile Band | % ile Band |

FORM 80-D (reverse)—TEST RECORD ENVELOPE, K-12

DETROIT PUBLIC SCHOOLS

84-005

## OBSERVATIONS, CONFERENCES, RECOMMENDATIONS, EXPLANATORY AND FOLLOW-UP NOTES BY TEACHERS, NURSES, PHYSICIANS AND OTHER PROFESSIONAL PERSONNEL

(DATE AND SIGN ALL ENTRIES — PLEASE IDENTIFY YOUR POSITION)

(X)   USE THIS SYMBOL IN MARGIN TO IDENTIFY "MEDICAL ALERT" EXPLANATIONS

| DATE | NOTATION | DATE | NOTATION |
|------|----------|------|----------|
| Summer 1965 | Project Head Start Health Appraisal | | |
| | √ = Complete | | |
| | O = Procedure not done | | |
| | Questionaire ✓   Het ✓ | | |
| | Physical Exam /\   Sickle-Prep ✓ | | |
| | Visual ○ | | |
| | Abnormalities and Referrals: | | |
| | | | |

NAME: LAST, FIRST, MIDDLE

STUDENT NO.

Case 1:09-cv-01039-MJT  Document 51-4  Filed 10/05/10  Page 17 of 77  PageID #: 7023

NAME: Last JACKSON First DAVID Middle ___

BIRTHDATE: Mo., Day, Year ___ SEX ___

THIS INDEX TAB NEED NOT BE COMPLETED UNLESS THIS SIDE IS PHOTOGRAPHED, OR CLIPPED FOR INCLUSION IN A NEW FOLDER.

FILE (Junior High) 180044  FILE (Senior High) 21  STUDENT NUMBER ___

## FORM 80 SERIES
### DETROIT PUBLIC SCHOOLS

## PUPIL'S CUMULATIVE RECORD

### Grades K — 12

THIS FOLDER, WITH ENCLOSURES, PARALLELS FORM CA-60 (MICHIGAN SCHOOLS)

**FORM 80A – THE FOLDER**

Page 1—RECORD OF ADMISSIONS AND OTHER CHANGES, K-12
Inside —SCHOLARSHIP AND CONTRIBUTING DATA, K-12
Page 4—OVERFLOW FROM PAGE 1 AND FROM INSIDE

**USUAL ENCLOSURES**

Form 80-C—SECONDARY-SCHOOL RECORD, 7-12
Form 80-D—TEST RECORD ENVELOPE, K-12
Form 80-E—HEALTH RECORD, K-12
Form 80-F—(Inside 80-D)—OPTIONAL TEST RECORD, K-12

## DO NOT DESTROY!

DETROIT PRINCIPALS: This folder, with all above enclosures, should follow the pupil to other Detroit schools. If the pupil transfers elsewhere or leaves school, retain records until requested, then send to Department of School Census for forwarding.

OUTSIDE-DETROIT PRINCIPALS: It is urged that these records follow the pupil wherever and as often as he may be transferred

Form 80-A—FOLDER, K-12 (1-64 CE)

### RECORD OF ADMISSIONS AND OTHER CHANGES—ELEMENTARY, JUNIOR HIGH, SENIOR HIGH

| CHILD'S RESIDENCE, ZONE, APT. NO. | PHONE | SCHOOL | GRADE | ROOM | SEC. OR ST. HALL | DATE ADMITTED | LEFT—REASON* AND DATE | DAYS ABSENT |
|---|---|---|---|---|---|---|---|---|
| REDACTED | 894-1209 | Simpson | KG | 201 | | 7/65 | | |
| | | | KG | 201 | A.M. | 9-8-65 | | 17 |
| | | P.M. | | 204 | P.M. | | | |
| | | | P-1 | 206 | SC | 9-8-66 | | 21½ |
| | | | P-2 | 312 | S.C. | 9-19-67 | | 10½ |
| | 894-1209 | " | 3 | 303 | Sec 5 | 9-4-68 | | 35½ |
| | | | 4 | 316 | Sec 7 | 9-3-69 | | |
| | | | 4 | 318 | 10 | 1-26-70 | Rm – Rm | |
| | | | 5 | 311 | 11 | 9-9-70 | Walkin Sr. A 10-5-70 | 13 |
| | 894-1209 | Hammerson | Sp N | 204 | SC | 10-5-70 | Transfer 9-8-71 | 25½ |
| | 894-1029 | Clippert | Gr Sp | B507 | | 9-8-71 | A 10-4-71 | 1 |
| | 894-1029 | Clippert | Sp B | 210 | | 10-4-71 | 5-16-72 *A Transfer | 17 |
| | | Michael JrHgB | | 105 | | 5/16/72 | | 0 |
| | 894-1029 | " Jr Sp | | | S.C. | 9-6-72 | 11-13-72 McMillan | 35 |
| | " " | McMillan Jr Sp | | 216 | | 11-13-72 | | |
| | | Don Bosco Hall | | | | 3-28-73 | TR 12-18-73 | |
| | | McMillan JrBSp | | 216a | | 10-22-73 A 12-18-73 | | |
| | 894-1029 | Neinas JrBSp | | 301 | SC | 12-18-73 | 1/14/74 Buis Trans Sr. Hosp | 3½ |
| | | | | | | | | |
| | | Information System | | | | | 4/14/86 | |

*A suspended

**CODE FOR REASON LEFT (enter code letter and date):** A—TRANSFER (new address and school on following line)   C—Over-age   D—Employment   E—Marriage   F—Prolonged illness   G—Death   H—Other reasons   B—Graduation

CHECK IF MORE ENTRIES ON PAGE 4

Tear along line above and insert new folder if displacement is necessary. Clothing this house when it begins to seal.

84-007

Case 1:09-cv-01039-MJT Document 51-4 Filed 10/05/10 Page 18 of 77 PageID #: 7024

**NAME:** Last: Jackson  First: David  Middle: Lee  **BIRTHDATE:** Mo. Day, Year  REDACTED 60  CODE  SEX  SCHOOL (In pencil until terminal school is known)  FILE (Junior High)  FILE (Senior High)  STUDENT NUMBER

M.K. Innerman  150044

| PERSONAL AND FAMILY DATA | PUPIL | FATHER | MOTHER | Others in Loco Parentis (State Relationship) | CHILD LIVES WITH (Date each new entry, e.g. "8-2-63=Father, Mother" "5-6-64=Father, Stepmother" |
|---|---|---|---|---|---|
| NAME: First and Last If Different | | Leroy | Sampie | | 7-4-65 Parents |
| BIRTHPLACE: City, State or Nation | | U.S. | U.S. | | |
| HOME LANGUAGE | | English | English | | |
| DATE NATURALIZED | | | | | |
| EDUCATIONAL STATUS (pencil) | | | | | |
| OCCUPATION (pencil) | | Cooking | | | |
| HOME ADDRESS (if different) | | | | | |
| HOME PHONE (if different) | | | | | |
| BUSINESS ADDRESS | | | | | |
| BUSINESS PHONE | | | | | |

ESSENTIAL REMARKS (each dated): changes in statuses above, and other items:

## SCHOLARSHIP RECORD, KINDERGARTEN THROUGH GRADE 6

### SPECIAL ABILITIES (+) OR DISABILITIES (—)

—including Special Ability or Remedial classes. These spaces are NOT intended for notations about psycho-social adjustment. For these, or for extended comment, see Form 80-R inside 80-D.

| +OR— | AREA | COMMENTS (Please Detail) |
|---|---|---|
| | | |

| KINDERGARTEN READING RDNS. | GRADES 1-6 SEMESTER ENDING: | 4/69 | 6/70 | 4/71 | 6/72 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5-11 | GRADE, CLASS: | 3 | 4 | Jan. | Yr. B | | | | | | | | | |
| | Achievement, Effort: | A E | A E | A E | A E | A E | A E | A E | A E |
| | English | C | E | | B | | | | |
| | Handwriting | C | D | C | A 3 | | | | |
| | Literature | A 2 | | E 3 | 3 | | | | |
| | Reading | A | E | | B B | | | | |
| | Spelling | C | E | | A | | | | |
| | Arithmetic, Mathematics | D 2 | E 3 | B 3 | A | | | | |
| | Homemaking | | | | | | | | |
| | Industrial Arts | | | | | | | | |
| | Science | B 2 | C 3 | C 3 | B | | | | |
| | Social Studies | D 2 | D | C 3 | B | | | | |
| | Art | C 2 | D | A | D | | | | |
| | Aud. | B 2 | C 5 | | | | | | |
| | Health, Physical Ed. | D 3 | C 2 | | C | | | | |
| | Library | B 2 | C 2 | | | | | | |
| | Music, General | D | C 3 | | B | | | | |
| | Music, Instrumental | | | | | | | | |
| | Citizenship | 2 | 3 | 3 | 3 | | | | |
| | Days Absent | 25½ | 13 | 25½ | 1 | | | | |
| | Times Tardy | 13 | 27 | 0 | 11 | | | | |

### PRIMARY YEARS AFTER KINDERGARTEN

| YEAR ENDING (Mo./Yr.): | 6/67 | 6-68 | | | | |
|---|---|---|---|---|---|---|
| PRIMARY YEAR (P1 1st Yr. after Kdgn., etc.): | P1 | P2 | A E | A E | A E | A E |
| **LANGUAGE ARTS** 1. Understands what he reads | S | S | | | | |
| 2. Reads well orally | S | S | | | | |
| 3. Expresses ideas clearly | S | S | | | | |
| 4. Forms letters well | S | N | | | | |
| 5. Spells correctly | S | O | | | | |
| **MATHEMATICS** 1. Understands facts and processes | S | N | | | | |
| 2. Reasons well in solving problems | S | N | | | | |
| Science | S | | | | | |
| Social Studies | S | | | | | |
| Art | S | | | | | |
| Music | S | | | | | |
| Health & Phys. Ed. | S | | | | | |
| Work Habits (average) | | N | | | | |
| Social Habits (average) | | N | | | | |
| Days Absent | 21½ | 10½ | | | | |
| Times Tardy | 9 | 0 | | | | |

93 pupil days in average semester.

### ' CODE FOR SOURCE OF BIRTH RECORD

OF —Official Record  CH—Church Record
MS—Mother's Statement  FS—Father's Statement
O —Other Source (specify here):

FORM 80-A—RECORD FOLDER, PAGE 2

**GRADE, CLASS:** NGP-1 or -2: Nongraded Primary Grade Equivalent 1 or 2.  NGP marks: 1-Outstanding Progress, 2-Shows Progress, 3-Needs to Improve
Marks in other grades:  A=Excellent,  B=Good,  C=Average,  D=Poor,  E=Not Passed.  Citizenship:  1=Excellent,  2=Average,  3=Poor.

TRIM ALONG LINE ABOVE AND INSERT IN NEW FOLDER IF REPLACEMENT IS NECESSARY.

TRIM ALONG LINE BELOW AND INSERT IN NEW FOLDER IF REPLACEMENT IS NECESSARY.

FORM 80-A—RECORD FOLDER, PAGE 3

84-008

Case 1:09-cv-01039-MJT Document 54-4 Filed 10/05/10 Page 19 of 77 PageID #: 7025

TRIM ALONG LINE BELOW AND INSERT IN NEW FOLDER IF REPLACEMENT IS NECESSARY.

| | | | | FORM 80-A—RECORD FOLDER, PAGE 3 | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | This index tab need not be completed unless this side is photographed. | | | |
| NAME Last | First | Middle | BIRTHDATE: Mo., Day, Year | SEX | | FILE (Junior High) | FILE (Senior High) | STUDENT NUMBER |

## STANDARD INDIVIDUAL APTITUDE TESTS, GRADES K-12
See Form 80-D (998-A) for standard group tests of aptitude and scholastic achievement.

## STUDENT ACTIVITIES—Organizations, Athletics, Work Experiences, Special Interests, Hobbies, Honors

| DATE | GRADE | TEST Add form, if any: A, B, etc. | CA | MA or Raw Score | IQ | PCTL if reported | RECOMMENDATIONS | GRADE | SEMESTER ENDING | ITEM AND BRIEF COMMENT |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 11-28-1962 | P 2 | BINET (L-M) | | | | | | | | |
| 4-13-1970 | 4 | Wechsler Intell. Scale 10-0 | | | | | Mildly Retarded | | | |
| | | Bender-Gestalt Test For Children | | | | | Perceptually handicapped | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

FURTHER RECOMMENDATIONS, OR REFERRALS AND ACTION (date each entry):

Guidance Counselor - Pilot Program - 12-14-66

PSYCHOLOGICAL CLINIC FILE NO.

## SPECIAL CLASS PLACEMENT, ELEMENTARY-SECONDARY (enter elementary marks above, secondary on Form 80-C)

| SCHOOL | SPECIAL CLASS | DATE ENTERED | DATE LEFT | REMARKS |
| --- | --- | --- | --- | --- |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

84-009

## IMMUNIZATIONS

| CHECK ANTIGEN GIVEN | WHOOPING COUGH | DIPHTHERIA | TETANUS (TOXOID) | POLIO | SMALLPOX | DATE GIVEN | GIVEN BY | DEPT. OF HEALTH | PRIVATE PHYSICIAN | REMARKS AND OTHER IMMUNIZATIONS |
|---|---|---|---|---|---|---|---|---|---|---|
| | ✓ | ✓ | ✓ | ✓ | | MAR 25 1966 | ✓ | | | |
| | - | - | - | - | | 7.0 67. | ✓ | | | ORAL POLIO TRIV. VACC. _given 2/13/67_ |
| | | | | | | APR 14 1966 | ✓ | | | ORAL POLIO TRIV. VACC. |
| | | | | | | | | | | |
| | | | | | | | | | | |

### TUBERCULIN TESTS—GIVEN IN SCHOOL

| GRADE | | | | | | |
|---|---|---|---|---|---|---|
| DATE | | | | | | |
| RESULT | | | | | | |
| CHEST X RAY | | | | | | |

### FLUORIDE TREATMENTS

| GRADE | | | | | | |
|---|---|---|---|---|---|---|
| DATE | | | | | | |

### OTHER PROCEDURES — COMMENTS

| | DATE | AGE | WT. | HI |
|---|---|---|---|---|
| | | | | |

LAST: Jackson  FIRST: David  MIDDLE: L

| | REDACTED | 60 | m | SCHOOL (PENCIL UNTIL FINAL SCHOOL IS KNOWN) | FILE (JR. HIGH) | FILE (SR. HIGH) |
|---|---|---|---|---|---|---|
| | MO. | DAY | YEAR | | | |
| | BIRTHDATE | | SEX | | | |

INSTRUCTIONS: (1) Check ✓ entry only when deviation is noted (refer to guide). (2) Circle Ⓥ entry when follow-up is completed. (3) Use inside for explanatory and progress note

84-010



Case 1:09-cv-01039-MJT   Document 51-4   Filed 10/05/10   Page 21 of 77  PageID #: 7027

84-011

NAME: Last *Jackson* First *David* Middle *L* | REDACTED 60 | m | School *Sampson* | STUDENT NUMBER
BIRTHDATE | SEX | SCHOOL

## GROUP APTITUDE TESTS

| Date Tested | Grade | NAME OF TEST (Add form if any: A, B, etc) | Letter Rating or I.Q. | Percentile | Other (Label) | No. of Test |
|---|---|---|---|---|---|---|
| | | DETROIT BEGINNING FIRST GRADE | | | | |

### PRIMARY MENTAL ABILITIES

Name: JACK... ...DAVID | Birthdate: 3-60 | Chronological Age: 32 Months

| School | Group | Primary Level | Date Tested | Letter Rating | Percentile Rank | Raw Score |
|---|---|---|---|---|---|---|
| 2325 | 01 | P1 | 1-67 | D | 11 | 40 |

### CALIFORNIA S-F TEST OF MENTAL MATURITY

Name: JACKSON DAVID

| | | | | | Letter | Percentile | Raw |
|---|---|---|---|---|---|---|---|
| School 2325 | Group 02 | Grade 32 | Level 1H | Language | D | 14 | 13 |
| Date Tested 12/66 | Chronological Age 105 Months | Birthdate 03/60 | Non-Language | C | 21 | 25 |
| | | | Total | C | 14 | 38 |

PERCENTILES

or record scores.

| Date Tested | Grade | | TOTAL | |
|---|---|---|---|---|
| | | Other Test. Affix gummed label (extending into left margin) or enter name above and record scores. | | |
| | | | TOTAL | |

| Date Tested | Grade | JUNIOR-HIGH CALIFORNIA S-F TEST OF MENTAL MATURITY | Letter Rating | Grade Equiv. | Age Eq. (Months) |
|---|---|---|---|---|---|
| | | Affix gummed label (extending into left margin) or record scores. | Language | | |
| | | | Non-Language | | |
| | | | TOTAL | | |

DIFFERENTIAL APTITUDE TESTS.—Affix gummed-label report in this space or record percentile scores. Then make percentile band graph in the narrow columns under the arrows on the chart below. (Second copy goes on Form 80-C front.)

| Percentile-Bar: Sub-Tests | Verbal Reasoning | Numerical Ability | Abstract Reasoning | Space Relations | Mech Reasoning | Clerical Sp. & Acc. | Language Usage Spelling | Language Usage Sentences | VR + NA |
|---|---|---|---|---|---|---|---|---|---|

**10-B SCAT-STEP TESTS** — Second copy of gummed-label report, if available, should be affixed in this space, extending into left and right margins and covering these directions. Otherwise, copy percentile band scores below. (First copy of gummed-label report goes on 80-C reverse.)

| 10-B | CODES | | | | TEST DATE | | FORMS | | NATIONAL NORMS | SEQUENTIAL TESTS OF EDUCATIONAL PROGRESS | | | | | | SCHOOL AND COLLEGE ABILITY TEST | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | A | B | C | D | Month | Year | STEP | SCAT | | MATH | SCIENCE | SOC. STUDIES | READING | LISTENING | WRITING | VERBAL | QUANT. | TOTAL |
| | | | | | | | | | | % ile Band | % ile Band | % ile Band | % ile Band | % ile Band | % ile Band | % ile Band | % ile Band | % ile Band |

**12-B SCAT-STEP TESTS** — Second copy of gummed-label report, if available, should be affixed in this space, extending into left and right margins and covering these directions. Otherwise, copy percentile band scores below. (First copy of gummed-label report goes on 80-C reverse.)

| 12-B | CODES | | | | TEST DATE | | FORMS | | NATIONAL NORMS | SEQUENTIAL TESTS OF EDUCATIONAL PROGRESS | | | | | | SCHOOL AND COLLEGE ABILITY TEST | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | A | B | C | D | Month | Year | STEP | SCAT | | MATH | SCIENCE | SOC. STUDIES | READING | LISTENING | WRITING | VERBAL | QUANT. | TOTAL |
| | | | | | | | | | | % ile Band | % ile Band | % ile Band | % ile Band | % ile Band | % ile Band | % ile Band | % ile Band | % ile Band |

FORM 80-D (reverse)—TEST RECORD ENVELOPE, K-12            DETROIT PUBLIC SCHOOLS

OBSERVATIONS, CONFERENCES, RECOMMENDATIONS, EXPLANATORY AND FOLLOW-UP NOTES BY TEACHERS, NURSES, PHYSICIANS AND OTHER PROFESSIONAL PERSONNEL
(DATE AND SIGN ALL ENTRIES — PLEASE IDENTIFY YOUR POSITION)
(X)  USE THIS SYMBOL IN MARGIN TO IDENTIFY "MEDICAL ALERT" EXPLANATIONS

| DATE | NOTATION | DATE | NOTATION |
|---|---|---|---|
| Summer 1965 | Project Head Start Health Appraisal | | |
| | √ = Complete | | |
| | O = Procedure not done | | |
| | Questionnaire ✓   Hct ✓ | | |
| | Physical Exam /√   Sickle-Prep ✓ | | |
| | Visual C | | |
| | Abnormalities and Referrals: | | |

STUDENT NO.

NAME: LAST, FIRST, MIDDLE

ACTIVITY CODE

84-012



# DETROIT PUBLIC SCHOOLS

Department of Student Support Programs
OFFICE OF PSYCHOLOGICAL SERVICES
Sandra J. Screen, Ph.D., Director
13141 Rosa Parks Blvd.
Detroit, MI    48238
(313) 866-0456/57 or 58          Fax: (313) 866-0656

Date: *12/5/2005*

RE: *Alonia L. Jackson*
BD:

Your request for information has been processed as indicated below:

☒ The parent(s)/legal guardian of the above-named individual has authorized the release of the enclosed information for professional use only. *The enclosed information is the most current available.*

☐ The requested information for the above-named individual cannot be sent without written authorization from the child's parent(s)/legal guardian. Your letter of inquiry is enclosed.

☐ A record for the above-named individual does not exist as submitted. It may be that the client has had a name change and further verification is needed.

☐ Evaluation of the above-named individual is currently in process. Please resubmit "Request for Information" after fifteen (15) school days. The school psychologist has been notified that a request for information has been made.

☐ There is no evidence/record that the above-named individual has received a psychological evaluation or special education services. Requests for school records may be forwarded to:

<u>Office of Student Information Systems</u>
**WELCOME CENTER**
3011 W. Grand Blvd.
Detroit, MI  48202
(313) 873-7120

*If you have any questions, please contact Maxine Sanders at 866-0605*

_____          *Valerie Strong*      *12/5/2005*
Records Processing Center Clerical Staff                              Date forwarded

84-013

| | | | |
|---|---|---|---|
| Name | Jackson, David Lee | Father | Leroy |
| School | Sampson | Grade | Prim.2 |
| Home address | — REDACTED | — REDACTED | |
| Date examined | 11-28-1967 | | |
| Date of birth | REDACTED 1960 | Verified | S.R. and M.S. |
| Chr. age 7-8 | M.A.6-0 Binet LM | I.Q. 76 | |
| | Bender Gestalt | | |
| Time in present grade | | Time in previous grade | |

Physical defects Eyes R&L 20/20    Malocclusion    .

4-13-1970: Decreased hearing in both ears.  Marked malocclusion, some speech.  Refer for hearing examination.

Recommendation Regular Grade

Subsequent history 4-13-70: Perceptually Handicapped  10-30-70: Ent.
Hanneman Sp. A. 10-29-71: Ent Wingert Jr Spec B

Form 5021-G                    MASTER FILE CARDS            Det. Pub. Sch.—Psychological Clinic

| School | Grade | Date Examined | C. A. | M. A. | I. Q. | Recommendation |
|--------|-------|---------------|-------|-------|-------|----------------|
| Sampson | 4 | 4-13-1970 | 10-0 | V.70 P.71 WISC, | FS 67 HTP, Bender, | Special A Class Gates MacGinitie |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

84-015

STATE OF MICHIGAN



WILLIAM G. MILLIKEN, Governor

# DEPARTMENT OF SOCIAL SERVICES

300 S. CAPITOL AVENUE, LANSING, MICHIGAN 48926

R. BERNARD HOUSTON, Director

## OFFICE OF YOUTH SERVICES
### EDUCATIONAL TRANSCRIPT

| NAME (Last, First, Middle) | | DATE OF BIRTH |
|---|---|---|
| Jackson, David | | REDACTED/60 |

| ENROLLED IN | DATE OF INSTITUTION ADMISSION | NAME AND ADDRESS OF SCHOOL |
|---|---|---|
| 7A-8B-8A | 1/74 | W. J. Maxey School |
| | DATE OF INSTITUTION RELEASE | P.O. Box 518 |
| | 10/75 | Whitmore Lake, Mi. 48189 |

RECOMMENDED PLACEMENT IN NEXT SCHOOL

Special Ed. 9B (See Program Recommendations)

### ACHIEVEMENT TEST RESULTS:

| Test | Form | Date | Word Meaning | Para. Meaning | Spelling | Word Study Skills | Language | Arith. Comp. | Arith. Concepts | Arith. Applic. | Social Studies | Science | Battery Median |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SAT | PII w | 1/74 | 2.8 | 2.4 | 2.5 | 2.7 | 1.9 | 3.2 | 2.6 | | 3.3 | | 2.7 |
| SAT | PII x | 9/75 | 2.5 | 3.1 | 2.9 | 2.0 | 2.2 | 4.5 | 2.6 | | 2.6 | | 2.6 |

### INTELLIGENCE TEST RESULTS:

| NAME OF TEST | DATE | VERBAL IQ | NON-VERBAL IQ | TOTAL IQ |
|---|---|---|---|---|
| Not available | | | | |

| SUBJECTS | LEVEL | | GRADE | UNIT OF CREDIT EARNED |
|---|---|---|---|---|
| Remedial English | 7A | | C | |
| Remedial Math | " | | C | |
| P.E./Health Ed. | " | | C | |
| Career Ed. | " | | C | |
| Social Studies | " | | B- | |
| | | | | |
| English (Remedial) | 8B | 8A | B | |
| Math (Remedial) | " | " | B | |
| P.E./Health Ed. | " | " | C | |
| Career Ed. | " | " | C | |
| Social Studies | " | " | B- | |

KEY TO MARKING SYSTEM

A - Superior
B - Above Average
C - Average
D - Below Average
E - No Credit Earned
I - Incomplete

One semester credit is the equivalent of 90 class hours in accordance with North Central Association Standards. One semester credit = ½ unit.

Distribution:
Original - Aftercare
Copies - Aftercare
Receiving school
O.Y.S. Office

DSS-2702 (Rev. 4-72) Previous editions obsolete.

84-016

**PROGRAM:**

**COMMENTS:**

David has been employed in our laundry work program. His employer says he is a very good worker and that he relates well with the other employees. He has completed and passed the drivers' education course.

## SCHOOL RELATED ACTIVITIES

**PROGRAM:**

**COMMENTS:**

David has received his multimedia first aid card. David enjoys participating in sports such as football, baseball and basketball. He should be encouraged to pursue his interest in sports.

## RECOMMENDATIONS

**SOCIAL RELATIONSHIPS:**

Peers – David gets along well with his peers. He is a very positive youth and will extend himself in helping others.

Adults – Very positive relationship. David has done an excellent job during these last few months in relating to adults and peers.

**PERFORMANCE INFORMATION:**

He is a dependent learner. It is essential that Dave be given additional assistance in math and reading.

**PROGRAM RECOMMENDATIONS:**

It is recommended at this time that David be placed in a special education setting 9B. We would further recommend that David be given an opportunity to pursue some Industrical Education classes of his interest and ability.

**AUTHORIZED SIGNATURE**                 CUB                 **DATE**  10/3/75

DSS-2702 (Rev. 4-72) (Back)

84-017

# STATE OF MICHIGAN



WILLIAM G. MILLIKEN, Governor

## DEPARTMENT OF SOCIAL SERVICES
300 S. CAPITOL AVENUE, LANSING, MICHIGAN 48926

JOHN T. DEMPSEY, Director

## OFFICE OF YOUTH SERVICES
### EDUCATIONAL TRANSCRIPT

| NAME (Last, First, Middle) | DATE OF BIRTH |
|---|---|
| Jackson, David | REDACTED/60 |

| ENROLLED IN | DATE OF INSTITUTION ADMISSION | NAME AND ADDRESS OF SCHOOL |
|---|---|---|
| 10A | 3/24/76 | W. J. Maxey School |
| | DATE OF INSTITUTION RELEASE | Olympic Center |
| | 9/9/77 | P.O. Box 349 |
| RECOMMENDED PLACEMENT IN NEXT SCHOOL | | Whitmore Lake, Mi. 48189 |
| 10A | | |

**ACHIEVEMENT TEST RESULTS:**

| Test | Form | Date | Word Meaning | Para. Meaning | Spelling | Word Study Skills | Language | Arith. Comp. | Arith. Concepts | Arith. Applic. | Social Studies | Science | Battery Median |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SAT | PIIw | 1/74 | 2.8 | 2.4 | 2.5 | 2.7 | 1.9 | 3.2 | 2.6 | | 3.3 | | 2.7 |
| SAT | PIIx | 9/75 | 2.5 | 3.1 | 2.9 | 2.0 | 2.2 | 4.5 | 2.6 | | 2.6 | | 2.6 |

**INTELLIGENCE TEST RESULTS:**

| NAME OF TEST | DATE | VERBAL IQ | NON-VERBAL IQ | TOTAL IQ |
|---|---|---|---|---|
| | | | | |
| | | | | |

| SUBJECTS | LEVEL | GRADE | UNIT OF CREDIT EARNED |
|---|---|---|---|
| English | 10A | O | O |
| General Math | " | | O |
| Social Studies | " | | O |
| P.E. | " | | O |
| Career Ed. | " | | O |

*Not in program long enough to receive credit.

**KEY TO MARKING SYSTEM**

A - Superior
B - Above Average
C - Average
D - Below Average
E - No Credit Earned
I - Incomplete

One semester credit is the equivalent of 90 class hours in accordance with North Central Association Standards. One semester credit = ½ unit.

Distribution:
Original - Aftercare
Copies - Aftercare
Receiving school
O.Y.S. Office

DSS-2702 (Rev. 2-75) Previous editions obsolete.

84-018

## PROGRAM INFORMATION

PROGRAM:

COMMENTS:

## SCHOOL RELATED ACTIVITIES

PROGRAM:

COMMENTS:

## RECOMMENDATIONS

SOCIAL RELATIONSHIPS:

PERFORMANCE INFORMATION:

PROGRAM RECOMMENDATIONS:

David has not been in class long enough to receive credit.  Our grade recommendation is the second semester of the tenth grade.

| AUTHORIZED SIGNATURE | DATE |
|---|---|
| George Fabbri Assistant Director | 10/13/77 |

DSS-2702 (Rev. 4-72) (Back)

84-019

# EXHIBIT 85

THE STATE OF TEXAS
VS.

CLARA SUE SMITH SHAFFER (WFL) (1-4-55)
914 Montrose, Port Neches, Texas

CFCR        122246

DOCUMENT #2173192        0 PG

CAUSE NO _____ 122246 _____

COUNTY COURT OF JEFFERSON COUNTY AT LAW _____

MISDEMEANOR CHARGE **HINDERING APPREHENSION**
PNPD

BAIL _____

FIRST SETTING DATE _____

RELATED CASES _____

## IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS

Comes now the undersigned Assistant Criminal District Attorney of Jefferson County  Texas  in behalf of the State of Texas  and presents in and to the County Court of Jefferson County at Law of Jefferson County, Texas, that in Jefferson County  Texas

CLARA SUE SMITH SHAFFER
September 20, 1985

hereafter styled the Defendant, heretofore on or about_____

did then and there unlawfully with intent to hinder the arrest, prosecution, conviction, and punishment of Albert Smith, hereafter styled the suspect, harbor and conceal the suspect, provide and aid in providing the suspect with a means of avoiding arrest and effecting escape, and warn the suspect of impending discovery and apprehension,

AGAINST THE PEACE AND DIGNITY OF THE STATE

FILE:

CLERK, COURT AT LAW
JEFFERSON COUNTY AT LAW

Oct 2 11 16 AM 1985

_____
ASSISTANT CRIMINAL DISTRICT ATTORNEY OF JEFFERSON COUNTY, TEXAS

85-001

THE STATE OF TEXAS
VS.

CLARA SUE SMITH SHAFFER (WFL) (1-4-55)
914 Montrose, Port Neches, Texas

| | |
|---|---|
| CAUSE NO | _____ |
| COUNTY COURT OF JEFFERSON COUNTY AT LAW | |
| MISDEMEANOR CHARGE | HINDERING APPREHENSION PNPD |
| BAIL | _____ |
| FIRST SETTING DATE | _____ |
| RELATED CASES | _____ |

### IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS

Before me, the undersigned Assistant Criminal District Attorney of Jefferson County, Texas this day appeared the undersigned affiant, who under oath says that he has good reason to believe and does believe that in Jefferson County, Texas,

CLARA SUE SMITH SHAFFER
September 20, 1985

hereafter styled the Defendant, heretofore on or about _____ did then and there unlawfully with intent to hinder the arrest, prosecution, conviction, and punishment of Albert Smith, hereafter styled the suspect, harbor and conceal the suspect, provide and aid in providing the suspect with a means of avoiding arrest and effecting escape, and warn the suspect of impending discovery and apprehension,

AGAINST THE PEACE AND DIGNITY OF THE STATE

Sworn to and subscribed before me on _____ 10-2-85 _____

AFFIANT

ASSISTANT CRIMINAL DISTRICT ATTORNEY OF JEFFERSON COUNTY, TEXAS

CLERK
JEFFERSON COUNTY AT LAW

OCT 2 11 16 AM 1985

COMPLAINT (ORIGINAL)

85-002

<u>PROBABLE CAUSE AFFIDAVIT</u>       *12 2246*

THE STATE OF TEXAS  Ι

COUNTY OF JEFFERSON Ι

    BEFORE ME, the undersigned authority, on this day personally appeared
____Paul A Watson_____, who after being by me first duly
sworn on his oath, deposes and says.

    My name is____Paul A Watson_____ . I am a Detective
_____with the Port Neches Police Department
_____

    On 9-20-85 at about 3:58pm Officer Hinson discovered a stolen van at
914 Montrose. While at the scene of the recovery I spoke with Clara Sue Smith Shaffer
who lives at this residence. I asked if Albert Smith her father was there and she stated
no. I then asked if we could look in the house and she stated that we could if we got
a search warrant. I then advised her that this could be done. While waiting on the wrecker
to get the van Mrs Shaffer stepped back into the house. Shortly after that I observed
a W/M about 65yoa. looking around the corner of the house. He also saw me and went the
other direction. I yelled for officer Hinson to stop him in the front yard. Hinson got
the subject stopped and IDed him as Albert Smith the man that was supposed to have taken
the van. Mrs Shaffer then stepped back outside and I asked her for ID which she gave
me. I then advised her that this information would be turned over to the DA's officer
in reference to filing charges of Hindering Apprehinsion.
    Clara Sue Smith Shaffer is a W/F, DOB 1-4-55, TDL#08739627 of 914 Montrose,
Port Neches, Texas.

**I HEREBY ORDER THE COUNTY CLERK TO ISSUE A CAPIAS FOR THE ARREST OF THE ABOVE-NAMED.**

*W.A. McCauland*

    Based on the foregoing, I believe sufficient  probable cause exists for the
issuance of a warrant for the arrest of_ Clara "Sue" Smith Shaffer_____
on a charge of __Hindering Apprehension_____

    I have read the above statement and it is true and correct to the best of my
knowledge and belief.

                                *Paul A. Watson*

SUBSCRIBED before me, this the ___30th___ day of_ September____ ,

                                      *C.E. Marsh*
                    NOTARY PUBLIC IN  AND FOR JEFFERSON CO. TEXAS

85-003

NO. 122246 _____          000 29 0417

| THE STATE OF TEXAS | X | IN THE COUNTY COURT OF |
|---|---|---|
| VS. | X | JEFFERSON COUNTY AT LAW NO. 2 |
| CLARA SUE SMITH SHAFFER | X | JEFFERSON COUNTY, TEXAS |

## MOTION TO DISMISS

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES the State of Texas by and through her Attorney, and respectfully requests the Court to dismiss the above entitled and numbered criminal action for the reason:

- [ ] The evidence is insufficient;
- [ ] The defendant was convicted in another case;
- [ ] The complaining witness has requested dismissal;
- [ ] The case has been refiled;
- [ ] The defendant is unapprehended;
- [ ] The defendant is deceased;
- [ ] The defendant has been granted immunity in light of his testimony;
- [XXX] Other;

and for cause would show the Court the following·

DISMISS:  Defendant plead  in J. P. Court.

WHEREFORE, it is prayed that the above entitled and numbered cause be dismissed.

Respectfully submitted,

*Bruce W. Cobb*

Assistant Criminal District Attorney
of Jefferson County, Texas.COBB

### O R D E R

The foregoing motion having been presented to me on this the _17_ day of ___MARCH___, A. D., 19 86 , and the same having been considered, it is, therefore, ORDERED, ADJUDGED and DECREED that said above entitled and numbered cause be and the same is hereby dismissed.

Judge of the ___COUNTY COURT AT LAW #2___

Court of ___JEFFERSON___ County, Texas.

85-004

VOL 23 0025

NO. __122246__

| | | |
|---|---|---|
| THE STATE OF TEXAS | X | IN THE COUNTY COURT OF |
| VS | X | JEFFERSON COUNTY AT LAW 2 |
| Clara Sue Smith Shaffer | X | JEFFERSON COUNTY, TEXAS |
| | | ENTERED AS OF: MAR · ° 1986 |

## COURT ORDER REFUNDING CASH BOND

I hereby order the Clerk of this Court to refund the amount of $ __75.00__ , this being the amount of cash appearance bond ordered in this cause, to __Clara Sue Smith Shaffer__

_____ who deposited

said amount for the defendant, __Clara Sue Smith Shaffer__ .

_____
Judge

Received from R. L. Barnes, Clerk, County Court of Jefferson County at Law No. 2 , Jefferson County, Texas, Check No. __B 2996__ in the amount of $ __75.00__ .

85-005

# CRIMINAL DOCKET

C-0016

NUMBER OF CASE **122246**

| STYLE OF CASE | ATTORNEYS | OFFENSE | DATE OF FILING MONTH DAY YEAR |
|---|---|---|---|
| THE STATE OF TEXAS | | | |
| VS. | STATE | | |
| Clara Sue Smith Shaffer | | Hindering Apprehension | October 2, 1985 |
| | DEFENDANT | | |

| DATE OF ORDERS | ORDER OF COURT |
|---|---|
| MAR 1 3 1986 | Court Order Refunding Cash Bond |
| 3-17-86 | Dismissed on motion of state as per decree. Deft plead in JP Court |

Case 1:09-cv-01039-MJT    Document 51-4    Filed 10/05/10    Page 36 of 77   PageID #: 7042

# EXHIBIT 86

## Barlow Law Firm

**From:**    "Brooks Investigations & Process Service, LLC" <brooksivr    Redacted
**To:**    <barlowlawfirm    Redacted
**Sent:**    Wednesday, July 12, 2006 7:43 PM
**Attach:**    Inv_115_from_Brooks_Investi.pdf
**Subject:**    FINAL INVOICE REF.: David Lee Jackson

Dear Mr. Barlow :
Attached you will find our final invoice regarding the services we provided for defendant David Lee Jackson. Due to a copy bill being $404.70 (5716 pages w/Investigator Jenkins standing by due to this being a Sealed Case ) I will fax a copy of the bill to you this evening.

Again, we would like to thank you for giving us the opportunity to assist you with this case. It was unfortunate for us, the last five months I had been in and out of the hospital so much, however, I am finally back at 100% and look forward to serving you in the future. If you have any questions or need any additional assistance with this case, pleasegive me a call at your convenience.

Sincerely,

David W. Brooks

Brooks Investigations & Process Service, LLC
409.860-9191 or my Cell: 409.658-9413


**To view your invoice**
Open the attached PDF file. You must have Acrobat® Reader® installed to view the attachment.

7/14/2006

86-001

# EXHIBIT 87

# ABA Standards for Criminal Justice
## Prosecution Function and Defense Function
### Third Edition

87-001

*Copyright © 1993 by the American Bar Association*

All rights reserved. No part of this book may be reproduced in any form or by any electronic or mechanical means including information storage and retrieval systems without permission in writing from the publisher, except by a reviewer who may quote brief passages in a review.

*Library of Congress Catalog Card No. 93-17567*
*ISBN 0-89707-850-0*

The commentary contained herein does not necessarily represent the official position of the ABA. Only the text of the black-letter standards has been formally approved by the ABA House of Delegates as official policy. The commentary, although unofficial, serves as a useful explanation of the black-letter standards.

Project of the
American Bar Association
Criminal Justice Standards Committee
Criminal Justice Section
1800 M Street, NW
Washington, D.C. 20036
202/331-2260

Printed in the United States of America

# PART IV.

## INVESTIGATION AND PREPARATION

### Standard 4-4.1    Duty to Investigate

(a) Defense counsel should conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to defense counsel of facts constituting guilt or the accused's stated desire to plead guilty.

(b) Defense counsel should not seek to acquire possession of physical evidence personally or through use of an investigator where defense counsel's sole purpose is to obstruct access to such evidence.

### History of Standard

Stylistic changes were made in the first and last sentences of section (a), which was the full text of this Standard in the last edition. In the second sentence, the word "always" was deleted after the phrase "The investigation should" as such an effort is not *always* necessary (e.g., when defense counsel already possesses such information).

Section (b) is new to this edition.

### Related Standards

ABA Model Code of Professional Responsibility EC 4-1 (1969)

ABA Standards for Criminal Justice 3-3.1(a); 4-4.2; 4-4.3(a); 4-4.6; 4-6.1(b) (3d ed. 1993)

### Commentary

#### The Importance of Prompt Investigation

Facts form the basis of effective representation. Effective representation consists of much more than the advocate's courtroom function per se. Indeed, adequate investigation may avert the need for court-

181

87-003

**4-4.1**    *Criminal Justice Prosecution Function and Defense Function Standards*

room confrontation. Considerable ingenuity may be required to locate persons who observed the criminal act charged or who have information concerning it. After they are located, their cooperation must be secured. It may be necessary to approach a witness several times to raise new questions stemming from facts learned from others. The resources of scientific laboratories may be required to evaluate certain kinds of evidence: analyses of fingerprints or handwriting, clothing, hair, or blood samples, or ballistics tests may be necessary. Neglect of any of these steps may preclude the presentation of an effective defense.

The prosecutor and law enforcement agencies are important sources of information often needed by the defense lawyer. Apart from any formal processes of discovery that are available, prosecutors and law enforcement officers may have in their possession facts that defense counsel must know. Prosecutors will often reveal facts freely in the hope of inducing a guilty plea. If defense counsel can secure the information known to the prosecutor, it will obviously facilitate investigation. Defense counsel should urge the prosecutor to disclose facts even though defense counsel must then proceed to verify them. Overtures to the prosecution are not an indication of weakness, and experienced defense counsel routinely approach the prosecutor at an early stage of their own investigations.

The lawyer's duty to investigate is not discharged by the accused's admission of guilt to the lawyer or by the accused's stated desire to enter a guilty plea. The accused's belief that he or she is guilty in fact may often not coincide with the elements that must be proved in order to establish guilt in law. In many criminal cases, the real issue is not whether the defendant performed the act in question but whether the defendant had the requisite intent and capacity. The accused may not be aware of the significance of facts relevant to intent in determining criminal responsibility. Similarly, a well-founded basis for suppression of evidence may lead to a disposition favorable to the client. The basis for evaluation of these possibilities will be determined by the lawyer's factual investigation for which the accused's own conclusions are not a substitute.

The lawyer's duty is to determine, from knowledge of all the facts and applicable law, whether the prosecution can establish guilt *in law*, not in some moral sense. An accused may feel a sense of guilt, but the accused's subjective or emotional evaluation is not relevant; an essential function of the advocate is to make a detached professional appraisal independent of the client's belief that he or she is or is not guilty.

182

*Criminal Justice Prosecution Function and Defense Function Standards*    **4-4.2**

The lawyer also has a substantial and important role to perform in raising mitigating factors both to the prosecutor initially and to the court at sentencing. This cannot effectively be done on the basis of broad general emotional appeals or on the strength of statements made to the lawyer by the defendant. Information concerning the defendant's background, education, employment record, mental and emotional stability, family relationships, and the like, will be relevant, as will mitigating circumstances surrounding the commission of the offense itself. Investigation is essential to fulfillment of these functions. Such information may lead the prosecutor to defer or abandon prosecution and will be relevant at trial and at sentencing.

Effective investigation by the lawyer has an important bearing on competent representation at trial, for without adequate investigation the lawyer is not in a position to make the best use of such mechanisms as cross-examination or impeachment of adverse witnesses at trial or to conduct plea discussions effectively. The lawyer needs to know as much as possible about the character and background of witnesses to take advantage of impeachment. If there were eyewitnesses, the lawyer needs to know conditions at the scene that may have affected their opportunity as well as their capacity for observation. The effectiveness of advocacy is not to be measured solely by what the lawyer does at the trial; without careful preparation, the lawyer cannot fulfill the advocate's role. Failure to make adequate pretrial investigation and preparation may also be grounds for finding ineffective assistance of counsel.[1]

### Acquisition of Physical Evidence

Defense counsel's duties and obligations when he or she comes into possession of physical evidence of crime are discussed elsewhere in these Standards.[2] Section (b) deals only with the acquisition of such physical evidence. While it is essential that defense counsel engage in a prompt investigation and while it is perfectly appropriate to use the services of investigators for these purposes, it is inappropriate and, indeed, may even be criminal conduct in some jurisdictions for defense attorneys to seek to acquire physical evidence personally or through the use of investigators solely for the purpose of obstructing access to such evidence by law enforcement or other government officials. Where physical evidence is acquired by counsel for an appropriate purpose, e.g., for

---

1. Strickland v. Washington, 466 U.S. 668, 691 (1984).
2. *See* Standard 4-4.6.

183

87-005

**4-4.3**    *Criminal Justice Prosecution Function and Defense Function Standards*

testing, examination, use, or inspection as part of counsel's representation of his or her client, this section is inapplicable.

## Standard 4-4.2    Illegal Investigation

**Defense counsel should not knowingly use illegal means to obtain evidence or information or to employ, instruct, or encourage others to do so.**

### History of Standard

There is a stylistic change only.

### Related Standards

ABA Model Code of Professional Responsibility DR 1-102(A)(3), (4), (5) (1969)

ABA Model Rules of Professional Conduct 3.3(a)(1), (3), (4); 3.4(a), (b); 4.4; 8.4(b), (c), (d), (e), (f) (1983)

ABA Standards for Criminal Justice 3-3.1(c); 4-4.1(b); 4-4.3(a); 4-4.6 (3d ed. 1993)

### Commentary

The use by investigators of wiretaps, electronic surveillance devices, and other prohibited means of investigation is common. Such practices are a serious threat to personal privacy. Lawyers who use the services of private investigators are in a strategic position to control the means by which investigation is conducted. Lawyers have a special responsibility to act within the bounds of the law and to see that those they employ do so also. Lawyers must also forbid the use of oppressive methods of securing information, as by threats or intimidation.[1]

## Standard 4-4.3    Relations With Prospective Witnesses

**(a) Defense counsel, in representing an accused, should not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining**

---

1. *See also* Standard 4-4.3(a).

184

# EXHIBIT 88





② 2-6-9-13-17-22  Png          Cash
③ 1-6-9-13-18-22  md
② 3-6-8-10-19-22-24  Lupu Teasers
① 3-7-11-15  Fh

                                8.00
                               -2.00
                               ─────
                                6.00

CASH

Keith: 5,13,17,21 $25
Rude = 5, 17 $5.00
Shick= 1,3,5,7,22 $2.50

T-N-T Action!!!
Thur 16 In by 5:45pm

900)Atl +4      LAL(901
902)ov   194    un.(903
904)Dall +4     NY.(905
906)ov   188    un.(907
908)Den +2      Sac(909
910)ov   211    un.(911
912)C.S. +4     Det(913
914)ov   199    un.(915
916)Mia -7      Milw(917
918)ov   197    un.(919
920)Wash -3     NJ.(921
922)ov   190    un.(923
924)Sea +3      Port(925
926)ov   186    un.(927
-All-ties-Lose!!!!!!!!!!
3-5/1 4-12/1 5-25/1
6-35/1 7-50/1 8-80/1
9-100/1 10-150/1
11-300/1 12-400/1
Teaser(5) 10-15/1

88-002



```
        1) N.J + 4  WAS (2
        3) o- 191 -u   (4
        5) LAL - 4  ATL (6
        7) o- 193 -u   (8
        9) MILW 16 MIAMI(10
       11) o- 196 -u   (12
       13) N.Y -4  DALL (14
       15) o- 188 -u   (16
       17) SAC -3  DEN. (18
       19) o- 210 -u   (20
       21) POR -6  SEA  (22
       23) o- 187 -u   (24
   ---------------------------
   SL/6-5 2/3-1 3/5-1
   4/11-1 5/22-1 6/35-1
   7/55-1 8/80-1 9/120-1
   10/180-1 11/250-1
   12/400-1
   ---------------------------
   TEASERS: (4) 6/5-1
   7/7-1 8/8-1 9/9-12
   10/16-1
   ---------------------------
   T: (5) 6/5-1 7/7-1
   8/8-1 9/12-1 10/16-1
   ---------------------------
   ALL TIES LOSS
   EXCEPT STRAIGHT LINE
```





```
   Daily Double NBA
   Thur. 16 In by 5:45pm
   ---------------------------
   10)Atl  + 4     LAL.(11
   12)ov   193    un.(13
   14)Dall +5     NY.(15
   16)ov   188    un(17
   18)DEN  +3     Sac(19
   20)ov   211    un(21
   22)G.S. +4     Det(23
   24)ov   200    un(25
   26)Mia  -7    Milw(27
   28)ov   196    un(29
   30)Wash - 3    N.J(31
   32)ov   190    un(33
   34)Sea  +2    Port(35
   36)ov   186    un(37
   ---All ties lose!!!!!!!---
   3-5/1 4-12/1 5-25/1
   6-35/1 7-50/1 8-80/1
   9-100/1 10-150/1
   Teaser(5) 10-15/1
   ---------------------------
```



88-003

Z
99451-V
Jm,

December 2, 1991
Attachment G
P.S. 1380.2
Page 1

## CHAIN OF CUSTODY LOG
(Enclose with/attach to evidence)

CASE ID NUMBER: *BMP99451*    SUSPECT (IF KNOWN): *Jackson 13567-039*

DESCRIPTION OF ITEM: *36 USP Postage Stamps, 5 Sport Betting Slips (w/ Jms initials), Rec Pass und 3A1- #24 g 25*

DATE/TIME ITEM FOUND: *12/16/99*    *7:55pm*

LOCATION: *USP R&D Hold Cell #4*

SIGNATURE OF PERSON RECOVERING EVIDENCE: _____

PRINTED NAME: *Rich Brawtz*

EVIDENCE PLACED IN EVIDENCE LOCKER BY: _____

DATE/TIME PLACED IN EVIDENCE LOCKER: _____

DISPOSITION:

/ /  Hold as evidence    / /  Return to owner      / /  Lab Analysis
/ /  Return to finder    / /  Destroy immediately / /  FBI
/ /  Other

REMARKS & WITNESSES: _____
_____
_____

## CHAIN OF CUSTODY

| Evidence released to | Date/time | Destination | Released by |
|---|---|---|---|
| *J Marshal lass 25, Marc D Skinner* | *12/16/99 8:48pm* | *SIS Evid —* | *R Brawtz* |
| | *11/2/01 1533* | *SIS Evd Rus* | *Jm* |
| | *4/00/03 1130* | *FBI - BMP* | *T. MCINTOSH* |

Government
Exhibit
#32B
1:06-CR-51

**33**

88-005





88-007

*BB*

ECN: *99451-8 Jsn*

ATTACHMENT G
P.S. 1380.2

## CHAIN OF CUSTODY LOG
(Enclose with/attach to evidence)

CASE ID NUMBER: *BMP 99451*   SUSPECT (If known) *Jackson 13567-039*

DESCRIPTION OF ITEM: *116 US postage Stamps*

DATE/TIME ITEM FOUND: *12/16/99*   *7:30 pm*

LOCATION: *US P R&D Hold Cell #3 for Jackson 13567-039*

SIGNATURE OF PERSON RECOVERING EVIDENCE: *[signature]*

PRINTED NAME: *Rick Brawly*

EVIDENCE PLACED IN EVIDENCE LOCKER BY: _____

DATE/TIME PLACED IN EVIDENCE LOCKER: _____ / ___

DISPOSITION:

/ / Hold as evidence   / / Return to owner      / / Lab Analysis
/ / Return to finder   / / Destroy immediately / / FBI
/ / Other

REMARKS & WITNESSES:

_____
_____

### CHAIN OF CUSTODY

| Evidence Released To | Date/Time | Destination | Released By |
|---|---|---|---|
| *J. Marshal* | *12/16/99 848* | *SIS Evi D* | *R. Brawly* |
| *Hans RS* | *11/2/01 1530* | *Sts Evid Rus* | *[signature]* |
| *Marc Whnan* | *4/10/03 1130* | *FBI-Bait* | *G. MCINTOSH* |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**Government Exhibit #33B 1:06-CR-51**

88-008

10/150-1
TEASER MOVE (5pt's)

Have you vi...?
our web site

If you want to see what's new
STAMPS and STAMP PRODU...
or get the latest information the...
stamps issued throughout the...
year, visit our web site at
WWW.STAMPSONLINE.CO...

© USPS 1998

Wed 10/13/1999
6:15pm    Location 1
Sun 10/17/1999
1:00pm    Location 1
Wed 10/20/1999
6:15pm    Location 1
2-4
Sun 10/24/1999
3-2    1:00pm    Location 1
4-1    6:15pm    Location 1
Wed 10/27/1999
6:15pm    Location 1
1-2

Government
Exhibit
#33C
1:06-CR-51

88-009

```
REG ODDS: SL/6-5 T.V GM.ONLY
2/3-1 3/5-1 4/10-1 5/20-1
6/30-1 7/50-1 8/80-1 9/110-1
10/150-1
TEASER MOVE (5pt's)   13/1
```

"Glove"

CASH
6-18-11-3-23   (#5)   5 PICK   "HOUSE"

$5
1-900 976-8383    Scores
1¢ 1-900 420-8456  Lines 9 AM to 1 PM
¢) 1-900 446-2win  Cnx  After 4 PM
$0) 1-900 438-7777  4 PM to 12 AM
   platimun
10) 1-900 Sport Form Line  9 AM to 1 PM
   # 420-8456

(601) 346-4455
NIKKI

BREAKFAST
FRESH SEASONAL F
HOT GRITS
FRUIT

88-010

IA3
SArge   4pic   10stAmps = 5, 7, 13, 15
BMT  5pic   1BK, 1, 8, 16, 13, 17
T.Dog  4pic  10stAmps  5, 13, 17, 21
Unknown  5pic  2BKs   1, 5, 13, 17, 20

FCC BMT - LIMITED OFFICIAL USE
K WINSTON

SALES INVOICE
JACKSON DAVID LEE
ACCOUNT No.13567039            C-3
12/03/99 Time 17:52:18p TX# 000016  98
BEGINNING BALANCES:
Available Balance is 527.02
Spending Limit Balance is 203.70
Account Balance is 527.02
=================================
QTY DESCRIPTION                  PRICE
=================================
 1 ITS CREDITS                  20.00
10 HONEY BUNS                    4.00
 1 ROASTED SLT PEANUTS           .85
 1 CALIFORNIA MIX               1.65
 1 CALIFORNIA MIX               1.65
 4 RICE, LONG GRAINS            3.40
 8 RAMEN CAJUN CHICKEN          1.60
 8 RAMEN CAJUN CHICKEN         -1.60
 5 RAMEN CHICKEN SOUP           1.00
 5 RAMEN CAJUN CHICKEN          1.00
10 REESES P/B CUP               5.00
 1 CAL VEGETABLE SOUP            .55
 1 CAL VEGETABLE SOUP            .55
 1 CAL VEGETABLE SOUP            .55
 1 BUGLER TOBACCO                .75
 1 BUGLER TOBACCO                .75
10 SNICKER CANDY BAR            5.00
 1 RICE, LONG GRAINS             .85
 1 SURE DEODORANT  REG          2.65
20 ORANGE JUICE                13.00
 1 HOT BEEF SUM SAUS            1.40
10 WATER (1 LITER)              5.00
 1 DUPLEX SAND COOKIES          1.60
 1 DUPLEX SAND COOKIES          1.60
 1 CHEETOS                      2.15
 1 LAYS REGULAR                 1.35
 1 DORITOS NACHO CHIPS          2.05
 1 AAA  BATTERY                 2.35
 1 ATRA SKIN TONE SOAP          2.05
 1 CURL ACTIVATOR, 5N          -1.35
         SUB TOTAL             86.40
            TOTAL              86.40
     CHANGE (3567039           86.40
ENDING BALANCES:
Available Balance is 440.62
Spending Limit Balance is 142.00
Account Balance is 440.62

Signature
       ALL SALES ARE FINAL !!

88-011



Wed 10/13/1999
   6:15pm    Location 1

Sun 10/17/1999
   1:00pm    Location 1

Wed 10/20/1999
2-4    6:15pm    Location 1

Sun 10/24/1999
3-2    1:00pm    Location 1
4-1    6:15pm    Location 1

Wed 10/27/1999
1-2    6:15pm    Location 1

Sun 10/31/1999
4-~    ~~~~~~~~~~~tion 1

FCC BMT - LIMITED OFFICIAL USE
K WINSTON

SALES INVOICE
JACKSON DAVID LEE
ACCOUNT No.13567039          C-3
12/03/99 Time 17:57:00p TX# 000017  98
BEGINNING BALANCES:
Available Balance is 440.62
Spending Limit Balance is 142.00
Account Balance is 440.62
==================================
QTY DESCRIPTION          PRICE
==================================
  1 CURL ACTIVATOR, SM    1.35
         SUB TOTAL        1.35
             TOTAL        1.35
      CHARGE 13567039     1.35
ENDING BALANCES:
Available Balance is 439.27
Spending Limit Balance is 140.65
Account Balance is 439.27

Signature
          ALL SALES ARE FINAL !!

88-012

88-013

**UNITED STATES POSTAL SERVICE ®**
We Deliver.



Fruit Berries

**UNITED STATES POSTAL SERVICE ®**
We Deliver.



Fruit Berries

**UNITED STATES POSTAL SERVICE ®**
We Deliver.



Fruit Berries

**UNITED STATES POSTAL SERVICE ®**
We Deliver.



Fruit Berries







JACKSON     DAVID

LEE

U.S. Department of Justice

ECN: 99451-*AA*

ATTACHMENT G
P.S. 1380.2

## CHAIN OF CUSTODY LOG
### (Enclose with/attach to evidence)

CASE ID NUMBER: *DMP 99451*    *T* (If known) *Jackson 13567-039*

DESCRIPTION OF ITEM: *Address* *tamiging* *80 US Postage Stamps of various Betty Slips*

DATE/TIME ITEM FOUND: *12/16/99* *750p*

LOCATION: *USP RFD Hold Cell #3, for Jackson 13567-039*

SIGNATURE OF PERSON RECOVERING EVIDENCE:

PRINTED NAME: *Rick Brawly*

EVIDENCE PLACED IN EVIDENCE LOCKER BY: _____

DATE/TIME PLACED IN EVIDENCE LOCKER: _____/_____

DISPOSITION:

/ / Hold as evidence    / / Return to owner    / / Lab Analysis
/ / Return to finder    / / Destroy immediately / / FBI
/ / Other

REMARKS & WITNESSES:
*Address Book released to I/m Jackson #13567-039*
*8-29-00/9am by Ofc SA.*

### CHAIN OF CUSTODY

| Evidence Released To | Date/Time | Destination | Released By |
|---|---|---|---|
| *J. Marshal* | *12/16/99 840p* | *SIS Evid* | *R Brawly* |
| *Haas RJ* | *11/2/01 1530* | *SIS Evid R&B* | */sos* |
| *Marc D. Theme* | *4/10/03 1130* | *FBI - BMT* | *T. McIntosh* |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

Government
Exhibit
#33D
1:06-CR-51

88-014

# EXHIBIT 89

Henry Ford Health System                                                                  Aug 30 2010 09:05AM
Procedure/Test Note

Patient Name: JACKSON, PATRICIA    MRN: *    REDACTED    Birth Date REDACTED /1962 (48 years)   Sex: Female   Room/Bed:
PCP: Unassigned    PP: Unassigned    HFH Primary Insurance: OTHER HMO    Current Chart: DETROIT CAMPUS CLINIC  MEDICAL RECORDS FILE    Primary

Report: 06/04/2010 23:11    Received: 06/06/2010 10:37    Original Document    Document Status: Signed
Electronically signed by: FALVO, ANTHONY,DO (50688) On: 06/06/2010 10:37

# Henry Ford Hospital and Medical Centers
## Procedure/Test Note

Patient Name: JACKSON, PATRICIA          MRN: *          REDACTED
Care Provider Name: Burchett, Michael    Care Provider Code: 22904
Site: 85 HF Henry Ford Medical Center    Dept: 11 General Surgery
Date of Service: 06/04/2010 23:11        Note Type: DPROC

PATIENT'S DOB/AGE: 06/14/1962 (47 years)   SEX: female


Procedure:          Right shoulder and deltoid exploration
Attending:          Anthony Falvo, DO
Resident:           Michael Burchett, DO.  Emily Smeltzer, MD.
Indication:         Retained needle in right deltoid from medicine injection.
Complication:       None
EBL:                None

Procedure:
The patient was examined and found to have a retained needle in her right shoulder.  The patient was
injecting medicine into her right shoulder.  A 2 cm linear incision was fashioned above the area of
maximal tenderness.  The wound was explored.  The needle was not found or removed during the
procedure.  There were no signs of inflammation or purulent fluid.  The wound was reapproximated with
4-0 Vicryl suture, and the skin was reapproximated with 4-0 nylon sutures.  Hemostasis was obtained.

The patient tolerated the procedure well.

Disposition and instructions:
1. The patient was informed regarding the retained needle.  Because there were no signs of infection,
no additional procedures were indicated.
2. She was instructed to return to the ED in one week for suture removal.
3. She was instructed to return to the ED if she experiences erythema, edema, or purulent fluid coming
from the wound.

Michael A. Burchett, DO

89-001

### PHYSICIAN DOCUMENTATION SHEET
Tue Jun 08 15:24:27 EDT 2010

Henry Ford Hospital
Emergency Department
2799 W. Grand Blvd.
Detroit, MI 48202
PHONE: (313) 916-1545

| | |
|---|---|
| **MRN:** 21060748 | **Account #:** 0155 |
| **Name:** Jackson, Patricia | **Sex:** F |
| **Age:** 47 | **DOB:** *REDACTED* 1962 |
| **Complaint:** Arm pain | **Primary Diagnosis:** Foreign body |
| **Arrival Time:** 06/04/2010 14:59 | **Discharge Time:** 06/04/2010 23:38 |

**All Providers:**  EM Staff Doctor Enrique Enriquez; MD Claire Uebbing

---

**HPI:**

The patient is a 47-year-old female who presents with a chief complaint of arm pain. The patient states that she has had right upper arm pain for the last 3 days after having a needle get stuck in her arm.  She says she was taking an insulin shot, but she is not a diabetic.  " I don't know why they gave it to me." she says.  She was here in the ER yesterday, but left because it was taking too long for the surgeons to come take it out and "no one was waiting on me".  There has been no swelling, erythema or discharge from the wound. The history was provided by the patient. Medical history is significant for hypertension. The arm pain occurred 4 days ago. The arm pain is located in the right upper arm. The course is persistent. The patient was treated prior to arrival with nothing. The initial case discussion and decision making with enriquez, Enrique A - Emergency Medicine.

21:25 06/04/2010 by Claire Uebbing, MD


**ROS:**

**Constitutional:** Negative for fever and chills.
**Eyes:** Negative for visual change.
**ENMT:** Negative for nasal congestion and sore throat.
**Cardiovascular:** Negative for chest pain.
**Respiratory:** Negative for cough and shortness of breath.
**Gastrointestinal:** Negative for nausea, vomiting and abdominal pain.
**Genitourinary:** Negative for dysuria and Frequency.
**Musculoskeletal:** Positive for myalgias.
**Skin:** Negative for rash.
**Neuro:** Negative for headache and lightheadedness.
**Psychiatric:** Negative for anxiety and depression.

02:03 06/05/2010 by Claire Uebbing, MD


**PMH:**

**Reviewed by:** physician
**Historian:** the patient
**Social History:** tobacco user
**Medical History:** hypertension, schizophrenia

-2-

| Allergies | | |
|---|---|---|
| **Allergen** | **Allergic reaction** | **Allergy Note** |
| Penicillins | | |
| Tetracycline | | |

23:08 06/04/2010 by Claire Uebbing, MD

**Home Medications:**

| Medications | | |
|---|---|---|
| **Medication** | **Dosage** | **Frequency** |
| VICOdin Oral | | |
| SEROquel Oral | | |
| Catapres Oral | | |

**Home Medication Verification:** Verified With No Changes
23:09 06/04/2010 by Claire Uebbing, MD

**Physical examination:**
  **Vital Signs:** vital signs per nurses
  **Constitutional:** Oriented, Alert, in NAD, comfortable appearance
  **Cardiovascular:** regular rate and rhythm, NL S1/S2, no Murmurs
  **Respiratory:** breath sounds equal bilaterally, no rales, rhonchi, or wheezes
  **Gastrointestinal:** abdomen soft, nontender, bowel Sounds present
  **Neuro:** A&Ox3

| forearm examination | | | | | | |
|---|---|---|---|---|---|---|
| Clinical findings | Location | Palpation | Neuro exam | Vascular exam | Tendon exam | Other observations |
| No abnormality | | | | | | |

| elbow examination | | | | | |
|---|---|---|---|---|---|
| Clinical findings | Location | Palpation | Neuro exam | Vascular exam | Other observations |
| No abnormality | | | | | |

| Upper arm examination | | | | | |
|---|---|---|---|---|---|
| Clinical findings | Location | Palpation | Neuro exam | Vascular exam | Other observations |
| tenderness | right | tender | light touch sensation present | cap refill <2 seconds | |

23:11 06/04/2010 by Claire Uebbing, MD

**Medical Decision Making:**

89-003

-3-

**Impressions**: retained foreign body with no major signs of infection
**Amount and complexity of data**: discussion with consultant(s), discussion with patient, medical Records reviewed
02:04 06/05/2010 by Claire Uebbing, MD

**Reassessment**:
**Reassessment**: General surgery came to bedside and attempted needle extraction. They were unsuccessful, but exploration of the wound track revealed no signs of infection. The wound was sutured closed. she will need to return to the ER in 1 week for suture removal.
23:13 06/04/2010 by Claire Uebbing, MD

**Medication disposition**:

| Medications | | | | |
|---|---|---|---|---|
| **Medication** | **Dosage** | **Frequency** | **Last Dose** | **Patient needs to:** |
| VICOdin Oral | | | | continue |
| SEROquel Oral | | | | continue |
| Catapres Oral | | | | continue |

23:13 06/04/2010 by Claire Uebbing, MD

**Patient disposition**:
**Primary Diagnosis**: foreign body
**Patient disposition**: Disch - Home
23:13 06/04/2010 by Claire Uebbing, MD

**Prescriptions**:

| Prescription | | |
|---|---|---|
| **Medication** | **Dispense** | **Sig Line** |
| Norco 5 mg-325 mg Tab | #10 | Take 1-2 tablets PO q6hrs prn pain |

23:14 06/04/2010 by Claire Uebbing, MD

**Discharge**:
**Append a Note to Discharge Instructions**: Please return to the ER in 7 days for suture removal. Watch for signs of infection: redness, warmth, yellow or white drainage from the wound. If any of these occur, please return to the ER.

Follow up with your primary doctor for your blood pressure and mood stabilizer medication.

| Referral/Appointment | | | |
|---|---|---|---|
| **Refer Patient To:** | **Phone Number:** | **Follow-up in** | **Appointment Details:** |
| Internal Medicine-Main Campus/916-9100 | | 7 days | |

23:16 06/04/2010 by Claire Uebbing, MD

-4-

Documentation completed by Resident
02:04 06/05/2010 by Claire Uebbing, MD

Chart electronically signed by Responsible Physician
15:24 06/08/2010 by Enrique Enriquez, EM Staff Doctor


**Staff physician:**
**Teaching physician note:** I personally saw and evaluated the patient. I was physically present for key portions of the services provided. I reviewed the resident's note and agree with the documented findings and plan of care without changes.
15:24 06/08/2010 by Enrique Enriquez, EM Staff Doctor

89-005

| Henry Ford Hospital<br>2799 W. Grand Blvd.<br>Detroit, MI 48202 | Emergency Department<br>(313) 916-1545<br>Assessment Sheet | MR # 21060748    Account # 0155    Room: 226<br>Name: **Jackson, Patricia**<br>Phone:<br>Address:<br>Sex: Female    DOB: REDACTED1962    Age: 47<br>Home Phone: |

Complaint: Needle in arm     Acuity: 2 B
Arrival Date/Time: 06/04/2010 14:59     Insurance
Arrived by: Walk In     Amb/Helicopter:
Mobility:     Referring Facility:
Primary Medical Provider: Uebbing, Claire     Emergency Physician: Enriquez, Enrique A
Accompanied By:

Complaint Code: Triage Nurse: Cavanagh Rn, Erin H
Treatment PTA:

Past Medical Hx: **Diabetes, Hypertension, Schizophrenia**
Tetanus History:
Social History: Tobacco user
Weights:
LMP Date:

**Presenting Medications**

| Medication | Dosage | Freq | Medication | Dosage | Freq |
|---|---|---|---|---|---|
| VICOdin | | | | | |
| SeroQUEL | | | | | |
| Catapres | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Allergy**

| Allergy | Allergic Reaction |
|---|---|
| Penicillins | |
| Tetracycline | |
| | |
| | |
| | |
| | |

**Vital Signs**

| Inits | Time | Temp | Blood Pressure | Pulse | Resp | Pain Time | Scale | Pulse Ox. Time | % | Pupils Time | L(mm) | R(mm) | Glasgow Coma Time | Score | VMAS Time | Score |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| JM | 15:50 | 37.0 | 95/64 | 108 | 18 | 15:51 | 10/10 | 15:50 | 96 | | | | 15:50 | 15 | 15:51 | 3 |

**Disposition Information**
Primary Diagnosis: **Foreign body**
Secondary Diagnosis:
Alternate Diagnoses:
Disposition: **Disch - Home**Family Notification:
Report Called By: Report Given To:
Prescriptions: **Norco 5 mg-325 mg Tab**
Discharge Instructions:
Disability Statement:
Follow-up Care: **Internal Medicine-Main Campus/916-9100**Appt Date/Time:
Discharge Time: **23:37 06/04/2010**

89-006

# 4238



**NEW CENTER COMMUNITY MENTAL HEALTH SERVICES**

REPLY TO: OARS Department 3rd Floor
2051 W. Grand Blvd.
(313) 961-3929
Detroit, MI 48208

Date:Monday, August 24, 2009

The Methodone Clinic
300 Woodward & Six Mile.
Detroit, MI

Dear Sir/ Madam,

This is to certify that Patricia Wilcox (Date of Birth <sup>REDACTED</sup> 1962) was seen at this clinic for psychiatric appointment. She has been coming to this clinic since Feb 22nd 2008.

| 08/24/2009 | Zoloft - 100 mg, TAB, PO (1)ea BID | 09/23/2009 | ☒ ☒ ☒ |
| 08/24/2009 | Seroquel - 400 mg, TAB, PO (2)ea QHS | 09/23/2009 | ☒ ☒ ☒ |
| 08/24/2009 | Eskalith - 300 mg, CAP, PO (1.5)ea QAM | 09/23/2009 | |

Yours truly,

M. Shahid Yousuf, M.D.
Consulting Psychiatric

# KRESGE EYE INSTITUTE



# 4238

James E. Puklin, M.D.
Professor of Ophthalmology
Wayne State University
School of Medicine
jpuklin@med.wayne.edu

February 12, 2009

Re: Wilcox-Jackson, Patricia, D.O.B. REDACTED 1962

To Whom It May Concern:

This letter, written at the request of Mrs. Wilcox-Jackson, is to verify that she has a best corrected visual acuity of No Light Perception in the right eye and 20/100 in the left. She is legally blind in the right eye.

Sincerely,

Jessica Jackson
Practice Coordinator for Dr. James Puklin

Detroit Office: 4717 St. Antoine, Detroit, MI 48201 | tel: 313.577.8900 | fax: 313.577.5482
Taylor Office: 15055 Plaza South Drive | Taylor, MI 48180 | tel: 734.287.8000 | fax: 734.287.3864

WAYNE STATE
UNIVERSITY
PHYSICIAN GROUP

89-008

## NEW LIGHT RECOVERY CENTER, INC.

### PHYSICIAN EVALUATION

_____ 30 Day Evaluation          ✓ _____ 60 Day Evaluation
_____ Annual Evaluation          _____ 2-Year Evaluation
_____ Take-home Evaluation

Client Name _Patricia Sanford Willcop_    Client ID# _4238_

**Drug Use and Withdrawal**
1. current Methadone Dosage: ( _80_ ) mg
2. Is the dosage stabilized ? _____ Yes _____ No
3. Last dose change _____
4. Is the Patient on Detox? _____ Yes _____ No
5. Results of last drug screen _7/7/09 (P) Barbiturate + Benzo_

**Drug / Alcohol Use Sphere:** _____ Satisfactory _____ Unsatisfactory
Comments: _Clinic follow up need_

**Medical Sphere:** _____ Satisfactory _____ Unsatisfactory
Comments: _① Legally blind R eye_
_② ↑ BP. Rp- Catapres_
_③_

**psychiatric or Psychological Sphere:** _____ Satisfactory _____ Unsatisfactory
Comments: _Bipolar disorder_

**Employment Sphere:** _____ Satisfactory _____ Unsatisfactory

Recommendations: _① meth. 80mg._
_② need urine report for Aug_

Physician Signature: _____    Date _8/27/09_

89-009

## NEW LIGHT RECOVERY CENTER, INC.

### PHYSICIAN EVALUATION

_____ 30 Day Evaluation          ____/____ 60 Day Evaluation
_____ Annual Evaluation          _____ 2-Year Evaluation
_____ Take-home Evaluation

Client Name _Jackson, Patrick_  Client ID# _4238_

__Drug Use and Withdrawal__
1. current Methadone Dosage: _80_ mg
2. Is the dosage stabilized ? _____ Yes _____ No
3. Last dose change _____
4. Is the Patient on Detox? _____ Yes _____ No
5. Results of last drug screen _7/17/09 (P) Barbiturates, Benzo_

__Drug / Alcohol Use Sphere:__ _____ Satisfactory _____ Unsatisfactory
Comments:

_Clinic follow-up_

__Medical Sphere:__ _____ Satisfactory _____ Unsatisfactory
Comments: (1) ↑ BP. Rx Catapres
(2) Back pain Rx Heroin
(3) legally blind ℗ eye

__psychiatric or Psychological Sphere:__ _____ Satisfactory ___/___ Unsatisfactory
Comments: Rx Zoloft
Seroquel ? Bipolar

__Employment Sphere:__ _____ Satisfactory _____ Unsatisfactory

∅

Recommendations: (1) Continue with 80mg &
must (2) all Rx aides from Psych - need
PRINT-Out

Physician Signature: _____    Date _8/27/09_

# NEW LIGHT RECOVERY CENTER, INC.

## PHYSICIAN'S ADMISSION NOTES

Patient's Name: Patricia Jackson    ID #: 4238

Presenting complaints/Drug History: 46 yrs old, B F c Heroin addiction that started @ age 31. Exposure brother on drug. & she got "curiosity" Presently doing I.V. routes. (most IM) Habit of $140/day. Last used Heroin about 11pm yesterday. Never been in any tx before.

Psychiatric/Emotional Problems:

φ          Married c 3 children, Education 12th.

Personal/Medical History: ① ↑ BP. ② R eye - legally blind ③ Hysterectomy 16 years ago. ④ Laser surgery @ eye.

Social History: Smoke cigs 1 pack/3 days Drinking φ

Medications: Rx
1. Catapres 0.3 mg     2. ____
3. ____                4. ____

Admitting Diagnosis:
1. Heroin    2. ____
3. ____      4. ____

Treatment Planning: ① U A - for drug screen ② TB skin test ③ Counseling / group ④ Dispense 40mg mech 12/01/08 Rev tomorrow 12/02/08

Physician Signature: ____

revised 5/01

Date: 12/01/08

89-011

## NEW LIGHT RECOVERY CENTER, INC.

### PHYSICIAN EVALUATION

_____ 30 Day Evaluation          _____✓____ 60 Day Evaluation
_____ Annual Evaluation          _____ 2-Year Evaluation
_____ Take-home Evaluation

Client Name _Patricia Jackson_          Client ID# _4238_

Drug Use and Withdrawal
1. current Methadone Dosage: _(65)_ mg     _Was ↓ non compl._
2. Is the dosage stabilized ? _____ Yes     _60 day_ ___No_  _contact_
3. Last dose change _____
4. Is the Patient on Detox? _____ Yes          No
5. Results of last drug screen _2/5/08 (P) Opiate_

Drug / Alcohol Use Sphere: _____ Satisfactory _____ Unsatisfactory
Comments: _____
_Stable ,_

Medical Sphere: _____ Satisfactory _____ Unsatisfactory
Comments: _① Pain back R/5 Vicodin_
_② ↑ Bl. Catapres, Flexeril_

psychiatric or Psychological Sphere: _____ Satisfactory _____ Unsatisfactory
Comments: _R Seroquel_

Employment Sphere: _____ Satisfactory _____ Unsatisfactory
_Ø_

Recommendations: _Resume 70mg high effective_
_3/24/09._

Physician Signature: _____          Date _3/24/09_

89-012

**New Light Recovery**
300 W MCNICHOLS
Detroit, MI, 48203
(313) 867-8015

## Dispensing Activity by Patient

sorted by Id

*For Period: 04/30/2010 to 05/31/2010*

### WILCOXJACKSON, PATRICIA - 0004238

**Counselor:**                **Phase:**

| Date | Time | T/O | Med. Date | Medication | Mgs. | Nurse | Bottle Number |
|------|------|-----|-----------|-----------|------|-------|---------------|
| 04/30/2010 | 14:05 | No | 04/30/2010 | Methadone | 75 | Jedwards | 0527N73664M1075 - 0 |
| | 14:05 | Yes | 05/01/2010 | Methadone | 75 | Jedwards | 0527N73664M1075 - 0 |
| | 14:05 | Yes | 05/02/2010 | Methadone | 75 | Jedwards | 0527N73664M1075 - 0 |
| 05/03/2010 | 14:55 | No | 05/03/2010 | Methadone | 75 | Jedwards | 0527N73664M1081 - 0 |
| | 14:55 | Yes | 05/04/2010 | Methadone | 75 | Jedwards | 0527N73664M1081 - 0 |
| 05/05/2010 | 13:22 | No | 05/05/2010 | Methadone | 75 | Mmailey | 0527N73664M1086 - 0 |
| 05/06/2010 | 15:26 | No | 05/06/2010 | Methadone | 75 | Jedwards | 0527P74584M4457 - 0 |
| 05/07/2010 | 12:48 | No | 05/07/2010 | Methadone | 75 | Mmailey | 0527P74584M4460 - 0 |
| | 12:48 | Yes | 05/08/2010 | Methadone | 75 | Mmailey | 0527P74584M4460 - 0 |
| | 12:49 | Yes | 05/09/2010 | Methadone | 75 | Mmalley | 0527P74584M4460 - 0 |
| 05/10/2010 | 14:43 | No | 05/10/2010 | Methadone | 75 | Jedwards | 0527P74584M4467 - 0 |
| | 14:43 | Yes | 05/11/2010 | Methadone | 75 | Jedwards | 0527P74584M4467 - 0 |
| 05/12/2010 | 13:49 | No | 05/12/2010 | Methadone | 75 | Mmailey | 0527P74584M4472 - 0 |
| | 13:49 | Yes | 05/13/2010 | Methadone | 75 | Mmailey | 0527P74584M4472 - 0 |
| 05/14/2010 | 13:05 | No | 05/14/2010 | Methadone | 75 | Mmailey | 0527P74584M4478 - 0 |
| | 13:06 | Yes | 05/15/2010 | Methadone | 75 | Mmailey | 0527P74584M4478 - 0 |
| | 13:06 | Yes | 05/16/2010 | Methadone | 75 | Mmailey | 0527P74584M4478 - 0 |
| 05/17/2010 | 13:27 | No | 05/17/2010 | Methadone | 75 | Mmailey | 0527P74584M4485 - 0 |
| | 13:27 | Yes | 05/18/2010 | Methadone | 75 | Mmailey | 0527P74584M4485 - 0 |
| 05/19/2010 | 11:50 | No | 05/19/2010 | Methadone | 75 | Jedwards | 0527P74584M4490 - 0 |
| | 11:51 | Yes | 05/20/2010 | Methadone | 75 | Jedwards | 0527P74584M4490 - 0 |
| 05/21/2010 | 12:39 | No | 05/21/2010 | Methadone | 75 | Jedwards | 0527P74584M4497 - 0 |
| | 12:39 | Yes | 05/22/2010 | Methadone | 75 | Jedwards | 0527P74584M4497 - 0 |
| | 12:39 | Yes | 05/23/2010 | Methadone | 75 | Jedwards | 0527P74584M4497 - 0 |
| 05/24/2010 | 12:25 | No | 05/24/2010 | Methadone | 75 | Jedwards | 0527P74584M4503 - 0 |
| | 12:25 | Yes | 05/25/2010 | Methadone | 75 | Jedwards | 0527P74584M4503 - 0 |
| 05/26/2010 | 13:54 | No | 05/26/2010 | Methadone | 75 | Mmailey | 0527P74584M4509 - 0 |
| | 13:54 | Yes | 05/27/2010 | Methadone | 75 | Mmailey | 0527P74584M4509 - 0 |
| 05/28/2010 | 13:23 | No | 05/28/2010 | Methadone | 75 | Mmailey | 0527P74584M4516 - 0 |
| | 13:23 | Yes | 05/29/2010 | Methadone | 75 | Mmailey | 0527P74584M4516 - 0 |
| | 13:24 | Yes | 05/30/2010 | Methadone | 75 | Mmailey | 0527P74584M4516 - 0 |
| | 13:24 | Yes | 05/31/2010 | Methadone | 75 | Mmailey | 0527P74584M4516 - 0 |

89-013

# EXHIBIT 90



# PENNSTATE HERSHEY
## Milton S. Hershey Medical Center

Penn State Hershey Tel: (717) 531-8055
Milton S. Hershey Medical Center
Health Information Services, HU24
500 University Drive
P.O. Box 850
Hershey, PA 17033-0850

| | |
|---|---|
| Patient Name: | PERRY, JOAN |
| MRN: | REDACTED |
| Date of Birth: | Redacted 1960 |
| Patient Gender: | Female |

| | |
|---|---|
| Visit Number: | 04195045 |
| Visit Type: | Clinic |
| Patient Location: | ORT1 |

---

## Outpatient Note

RESULT STATUS:
DOCUMENT SUBJECT:
ELECTRONICALLY SIGNED BY:     Reid,J Spence (9/20/2004 12:25 EDT); Harris,Thomas G (9/4/2004 10:20 EDT); Reid,J Spence (9/3/2004 15:59 EDT)

**OUTPATIENT NOTE DATE OF SERVICE:** September 1, 2004

CHIEF COMPLAINT:  Left ankle pain.

HISTORY OF PRESENT ILLNESS:  A 44-year-old African-American disabled female who is here for evaluation of left ankle pain.  She had a distal tibial fracture after a fall in 1997 which was treated with an intramedullary nail at Henry Ford in Detroit.  She has had pain ever since that point.  She did have a hardware removal of the distal locking screw at CGOH approximately 2 years ago, and then the twisting injury after that, and has pain primarily on the medial aspect of her tibia along the apex of the prior fracture and pain on the aspect of the distal locking screw, which is still present in the nail.

Past medical history is significant for bipolar disease and sarcoidosis.

Medicines include Tylenol No. 3, Seroquel, and Celexa.

No known drug allergies.

She has no other past surgical history than above.

Socially, she is disabled secondary to her bipolar disease and smokes half pack a day.

Physical exam shows that all of her incisions are healed with prominent scars.  She does have a significant amount of hind foot valgus and pes planus.  She is able to do a single-toe raise.  Range of motion of the ankle is 10 degrees with dorsiflexion and normal plantar flexion.  Subtalar joint is normal, no pain there.  She has some tenderness along the aspect of the posterior tibial tendon along the ankle at its insertion of the navicular.

X-rays reveal what looks to be a healed distal tibia and fibular fracture.  There is a significant amount of windshield watering around the edge of the nail, and the distal locking screw, which is placed in an anterior to posterior direction, does seem to be prominent.  There is no hardware at the fibula, and the measurement of the hind foot valgus looks to be somewhere around 16 degrees.



# PennState Hershey

## Milton S. Hershey Medical Center

Patient Name: PERRY, JOAN

MRN   REDACTED

---

### *Outpatient Letter*

---

Her social history is significant for heroin IV use about 10 years ago. She is married, has 4 grown children. She is in disability for bipolar. Smokes about one-half pack a day for over 27 years. Denies any alcohol use.

Today at her visit, she is alert and oriented, in no acute distress. Her vitals are afebrile. Heart rate is 70, respiratory rate 20, blood pressure 122/82. She is comfortably breathing on room air. HEENT: Extraocular movements are intact. Pupils are equal, round, and reactive to light and accommodation. Oropharynx: Clear. Neck: Supple. There are enlarged submandibular lymph nodes bilaterally about 1 x 2 cm, nontender, smooth, not attached to surrounding tissue. There is no JVD. Heart auscultation reveals regular rate and rhythm. Normal S1 and S2. No murmur, gallop, or rub. Lungs: Clear to auscultation bilaterally. There is no wheezing or rales. Abdomen: Soft, obese, and nontender with active bowel sounds. Extremity: No clubbing, cyanosis, or edema. Neurologically: No focal, motor, or sensory deficit.

She had pulmonary function test done prior to visit today, which showed FEV1 of 1.62 liters, which is 56% of predicted and FVC is 2.31 liters, which 67% of predicted, and FEV1-FVC ratio is 70 compared to previous ratio of 83. After bronchodilator inhalation, her FEV1 is 1.64, which is 1% change and FVC is 2.34 liters, which is 1% change. Total lung capacity measures 4.22 liters, which is 83% of predicted, and diffusion capacity is 11.2 mmHg/min, which is 41% of predicted. The resting oxygen saturation is 96% on room air.

Assessment:
1. Bipolar disorder. The patient is on disability.
2. Anxiety.
3. COPD.
4. Sarcoidosis, stable at present.
5. Gastroesophageal reflux.
6. Costochondritis from history of seizures, history of opiate overdose, history of heroin use, status post trach and PEG tube placement and removal, and hepatitis C positive.

Recommendations: At this point, I explained to the patient to continue with her pulmonary function test and a chest x-ray. She will not qualify for disability from the lung standpoint. I encouraged the patient to stop smoking as it might significantly improve her state of health and progression of her disease. I also gave the patient a prescription for Advair 100/50 twice a day. For her costochondritis, I advised the patient to take Advil probably for 3 times a day for 2-3 weeks and use heating pad to chest wall. I did not see any reason for sure to continue taking Bactrim, so I discontinued Bactrim. I arranged to see the patient in a year for his followup chest x-ray and spirometry. Dr. Giver had seen and discussed in agreement to this treatment plan.

Thank you very much for allowing me to be part of this patient's care. Please do not hesitate to contact me should you have any questions.

Date/Time Printed:   7/23/2010 11:18 EDT                    Page 2 of 5
Printed By:          Tice,Cindy L

90-002