UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| DAVID LEE JACKSON, | ) | |
| *Movant,* | ) | |
| | ) | |
| v. | ) | CASE NO. 1:09-CV-1039-RC |
| | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| *Respondent.* | ) | |

---

**MOTION FOR LEAVE TO CONDUCT DISCOVERY FROM THE DEPARTMENT OF
JUSTICE AND BRIEF IN SUPPORT THEREOF**

---

LA2:916251.5

## MOTION

David Lee Jackson, by undersigned counsel, respectfully moves the Court to grant him leave to conduct certain discovery, as set forth below.  Mr. Jackson has pled several claims in his petition for post-conviction relief pursuant to 28 U.S.C. § 2255, filed with this Court on October 5, 21010, that warrant discovery and further factual development.  These claims include allegations of serious government misconduct, ineffective assistance of Mr. Jackson's trial and appellate counsel, Mr. Jackson's ineligibility for the death penalty, and deprivations of Mr. Jackson's basic constitutional rights.

This request for leave to conduct discovery specifically focuses on information needed from the United States Department of Justice ("DOJ").  Mr. Jackson's request for leave to conduct discovery from the DOJ, including but not limited to, requests for the production of records and evidence, requests for admissions, and depositions, is necessary to permit Mr. Jackson to fully develop the record in support of the constitutional claims presented in his 28 U.S.C. § 2255 petition.  Such discovery is authorized by Rule 6 of the *Rules Governing Section 2255 Proceedings for the United States District Courts* ("Habeas Rule 6").  The discovery requested below is essential to guarantee Mr. Jackson a full and fair opportunity to develop his petition under 28 U.S.C. § 2255 and to ensure that this Court reviews and resolves Mr. Jackson's claims for relief in light of a fully developed factual record.

## I.    MEMORANDUM OF LAW

### A.    Introduction

Habeas Rule 6 grants this Court authority to order discovery:

> A party may invoke the processes of discovery available under the Federal Rules of Criminal Procedure or the Federal Rules of Criminal Procedure or elsewhere in the usages and principles of law if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

Habeas Rule 6 incorporates the Supreme Court's directive that a federal habeas corpus petitioner is "entitled to careful consideration and plenary processing of [his claims] including full opportunity for presentation of the relevant facts." *Harris v. Nelson*, 394 U.S. 286, 298

(1969); *see also Blackledge v. Allison*, 431 U.S. 63, 82-83 (1977) (same); *Rules Governing Section 2254 Cases in the United States District Courts*, Advisory Committee Note to Rule 6 (West 2000) ("Subdivision (a) is consistent with *Harris v. Nelson*.").[1]

### B.    Good Cause

The showing required for discovery is not the same as that which is necessary to establish the right to an evidentiary hearing.  In *Bracy v. Gramley*, 520 U.S. 899, 904 (1997), the Supreme Court explained the process for determining whether there is "good cause" entitling a petitioner to discovery under Rule 6.  "Good cause" for discovery in habeas proceedings exists "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'"  *Bracy*, 520 U.S. at 908-909 (quoting *Harris v. Nelson*, 394 U.S. 296, 300 (1969)).

A petitioner seeking discovery need not establish a prima facie case or that he will ultimately prevail on the merits of the claim prior to seeking discovery.  *Bracy*, 520 U.S. at 908. Rather, as the Fifth Circuit explained, "[w]hile the district court generally has discretion to grant or deny discovery requests under Rule 6, a court's blanket denial of discovery is an abuse of discretion if discovery is 'indispensable to a fair, rounded, development of the material facts." *East v. Scott*, 55 F.3d 996, 1001 (5th Cir. 1995) (internal citations omitted).  For example, it is often the case that prior to discovery, the evidence needed to prove a claim is only accessible by the prosecutor.  *Id.* at 1002 (finding abuse of discretion in denying discovery to a habeas petitioner where potentially relevant evidence was accessible only to the district attorney).

### C.    McCleskey v. Zant

In *McCleskey v. Zant*, 499 U.S. 467, 489 (1991), the United States Supreme Court held that a habeas petitioner must include in his initial petition "what petitioner knows or could discover upon reasonable investigation. . . ." *Id.*  Having "obtained a sufficient basis to allege"

---

[1]    The Advisory Committee Notes to *the Rules Governing Section 2254 Cases in the United States District Courts* are "fully applicable to discovery under [the analogous Rule] for section 2255 motions."  *Rules Governing Section 2255 Cases in the United States District Courts*, Advisory Committee Note to Rule 6 (West 2000).

his claims, Mr. Jackson now seeks to make a "reasonable investigation" into all such claims and to "pursue the matter through the habeas process" of discovery under Habeas Rule 6, the procedure expressly articulated by the Supreme Court in *McCleskey*.  *McCleskey* places a duty upon the federal courts to provide petitioners with the necessary tools to meet this obligation, including discovery.

### D.      Discovery Is Especially Warranted in a Capital Case

The policies favoring discovery are even stronger in capital cases than in non-capital cases because the "finality" of death and its "qualitative[] differen[ce] from a sentence of imprisonment, however long," magnifies the "need for reliability" and, accordingly, the need for reliable fact-determination procedures.  *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976); *McFarland v. Scott*, 512 U.S. 849, 855 (1994).  Because Mr. Jackson faces execution if his petition for post-conviction relief is not granted, broad discovery is necessary to ensure that extra measure of process demanded in capital cases.  This Circuit has proclaimed that "if death is involved, the petitioner should be presented every opportunity possible . . . to present facts relevant to his constitutional claims."  *Wilson v. Butler*, 825 F.2d 879, 883 (5th Cir. 1987).  The opportunity to seek discovery from relevant government agencies is indispensable to the development of the material facts essential to the full consideration and accurate resolution of the claims for relief in Mr. Jackson's initial § 2255 petition.  For these reasons, and those discussed below, there is good cause for this Court to grant Mr. Jackson leave to obtain the discovery he seeks from the Department of Justice ("DOJ").

## II.      DISCOVERY REQUESTS

### A.      Pre-Petition Request for Information from DOJ

In the process of preparing his initial petition for post-conviction relief, Mr. Jackson made every effort to obtain evidence and records from the DOJ pursuant to the Freedom of Information Act (FOIA).  *See* 5 U.S.C. § 552.  Each FOIA request letter explained that Mr. Jackson was facing a death sentence and asked for expedited processing.  The FOIA requests yielded few results.  Most agencies either claimed exemption under FOIA or stated that they had

no responsive material in their possession.  Others, such as the United States Marshal's Service, produced documents that were already part of Mr. Jackson's trial file.

The most promising response came from the Executive Office for United States Attorney (EOUSA).  Unfortunately, however, due to unreasonable agency delay, Mr. Jackson has still not received the documents to which he is entitled.  Counsel sent an initial request for Mr. Jackson's "complete records" to the EOUSA on January 29, 2010.  *See* Declaration of Christopher Craig ("Craig Decl.") ¶ 2, Ex. A .  On June 25, 2010, the EOUSA responded, informing counsel that 45 boxes of potentially responsive material had been found in the Eastern District of Texas, and that an advance payment of $476 to cover the cost of reviewing the documents was required.  *See* Craig Decl. ¶ 3, Ex. B.  After multiple conversations with Sean Vanek, an EOUSA attorney regarding the process of payment and review, Mr. Jackson's counsel submitted the payment, along with a letter instructing the EOUSA to move forward with the search of the boxes that had been found in the Eastern District of Texas, on August 27, 2010.  *Id.* ¶¶ 4-5, Ex. C.

Despite multiple attempts to follow up with the EOUSA's office, including leaving multiple messages requesting return phone calls, counsel was unable to verify the status of the FOIA request until September 29, 2010 — less than a week before the statute of limitations would run on Mr. Jackson's § 2255 motion.  At that time the EOUSA's assistant director informed Mr. Jackson's counsel that his office had failed to process our payment and that the Eastern District of Texas had therefore not begun to review the 45 boxes of documents.  *See* Craig Decl. ¶ 7 & Ex. D.  On Friday, October 1, 2010, the assistant director faxed a one-page document noting that the first 11 boxes had been preliminarily reviewed and contained largely non-responsive or privileged documents.  *See id.* ¶ 8, Ex. E.  The assistant director acknowledged that the remainder of the review would "require a much longer search time."

The EOUSA's failure to comply with its obligations under 5 U.S.C. § 552 prejudiced Mr. Jackson's ability to fully develop certain claims in his motion for post-conviction relief.  Thus, it is critical that Mr. Jackson be permitted, under Habeas Rule 6, to use this Court's mandatory

discovery process to adequately develop his claims in the time allotted to file an amended petition.

### B.    Mr. Jackson Seeks Specific Discovery from DOJ

Mr. Jackson requests the process of this Court to secure the following evidence in support of his 28 U.S.C. § 2255 claims.

#### 1.    Document Requests Regarding The Decision to Charge Mr. Jackson With The Death Penalty

##### a.    Document Requests

###### (1)    Request No. 1

Any and all documents, memoranda, protocols, guides, manuals, rules, regulations, criteria, or any other material discussing when the DOJ may or shall seek the death penalty, and/or what criteria officials working for the DOJ may consider in determining whether to seek a sentence of death.

###### (2)    Request No. 2

Any and all documents, memoranda, protocols, phone records, meeting notes, interview notes, e-mails, or any other materials pertaining to the decision by DOJ to charge Jackson with capital murder.

###### (3)    Request No. 3

Any and all documents, memoranda, phone records, meeting notes, interview notes, or any other materials pertaining to the decision by DOJ to seek the death penalty against Jackson, including, but not limited to, the death penalty evaluation for Jackson as required by the United States Attorney's Manual.

###### (4)    Request No. 4

Any and all documents, memoranda, phone records, meeting notes, interview notes, or any other materials pertaining to the DOJ's review of Mr. Jackson's previous offense history.

###### (5)    Request No. 5

Any communications from the United States Attorney General's Office related to the

charging of capital murder and/or the decision to seek the death penalty against Jackson.

### b.    **Relevant Claims**

The documents that Mr. Jackson seeks in Request Nos. 1-5 are relevant to Mr. Jackson's 1st and 8th claims in his §2255 Petition.  Mr. Jackson's 1st Claim asserts that the death sentence imposed upon violates the Federal Death Penalty Act, the Rule of Lenity and the Fifth, Sixth and Eighth Amendments of the U.S. Constitution.  Mr. Jackson's 8th Claim asserts that Mr. Jackson has been effectively sentenced to death for bank robbery in violation of the Fifth and Eighth Amendments of the U.S. Constitution.

### c.    **Good Cause for the Requested Discovery**

The only statutory aggravating factor submitted to Mr. Jackson's jury was that he had "previously been convicted of a federal offense punishable by a term of imprisonment of more than one year involving the use or attempted or threatened use of a firearm, as defined in 18 U.S.C. § 921, against another person."  Special Verdict Form at 4 (Ex. 37) (quoting 18 U.S.C. § 3592(c)(2)).  However, the offense for which he had "previously" been convicted, actually occurred four years *after* the capital crime for which the government sought death.  This atypical chronology violates due process and the Eighth Amendment's prohibition on the infliction of cruel and unusual punishment, which require that an aggravating factor be applied in a manner that genuinely and reasonably narrows the class of death-eligible murders to those for which the evolving standards of decency call for death.  *Zant v. Stephens*, 462 U.S. 862, 877-78 (1983); *Kennedy v. Louisiana*, 128 S. Ct. 2641 (2008).  Because a "previous" conviction under section 3592(c)(2) must occur prior to the underlying offense, the 2004 conviction does not meet the statutory criteria, and Mr. Jackson alleges that he is not eligible for the federal death penalty.

This alleged constitutional and statutory violation establishes good cause for Mr. Jackson to seek production of from the DOJ and the EOUSA of the requested documents discussing when the DOJ may or shall seek the death penalty, and/or what criteria officials working for the DOJ may consider in determining whether to seek a sentence of death.  Such documents, in connection with the other the documents that Mr. Jackson seeks from DOJ and EOUSA, may

demonstrate that DOJ did not follow policies or required statutes in making the decision to charge Mr. Jackson with the death penalty and/or that the decision to charge Mr. Jackson with the death penalty was arbitrary or capricious.   Full development of such facts would demonstrate that Mr. Jackson is entitled to relief.  *See Bracy*, 520 U.S. at 908-909.

### 2.     Document Requests Regarding Mr. Jackson's Release From Prison in 2004 Without Being Charged For Daryl Brown's Death

#### a.     Document Requests

##### (1)     Document Request No. 6

Any and all documents, memoranda, phone records, meeting notes, interview notes, or any other materials pertaining to Mr. Jackson's release from prison in 2003 with no charges related to Daryl Brown's death.

##### (2)     Document Request No. 7

Any and all documents, memoranda, phone records, meeting notes, interview notes, or any other materials pertaining to any mistakes of fact or law made in regard to the decision to release Mr. Jackson's from prison in 2003 with no charges related to Daryl Brown's death.

##### (3)     Document Request No. 8

Any and all documents, memoranda, phone records, meeting notes, interview notes, or any other materials pertaining to the reprimanding of any DOJ employee, including United States Attorneys and Assistant United States Attorneys, for failing to charge Mr. Jackson for the events surrounding Daryl Brown's death prior to Mr. Jackson's release from prison in 2003.

#### b.     Relevant Claims

The documents that Mr. Jackson seeks in Request Nos. 6-8 are relevant to Mr. Jackson's 1st and 8th claims in his §2255 Petition.

#### c.     Good Cause for the Requested Discovery

As Judge Crone herself noted before Mr. Jackson's trial:

> [L]et's face it, Mr. Jackson got out of prison, then he committed armed robbery.  If he hadn't done that, the dismissal had already happened, it might just—the whole thing might have gone away.  But he committed

> armed robbery.  That was the big factor that changed things before and after.  I don't think you can ignore that fact.

Statement by Trial Judge Marcia Crone at Pre-Trial Motion Hearing (8/29/06 Tr. at 31.)

The discovery that Mr. Jackson seeks in Document Request Nos. 6-8 goes to this issue. Why didn't the Government charge Mr. Jackson with Daryl Brown's death and seek the death penalty before releasing Mr. Jackson from prison?  Only the Government possesses this information, and Mr. Jackson seeks it to determine if the Government acted arbitrarily or capriciously in charging Mr. Jackson with the death penalty.  Full development of such facts would demonstrate that Mr. Jackson is entitled to relief.  *See Bracy*, 520 U.S. at 908-909.

### 3. Reservation of Right to Request to Propound Interrogatories and Requests for Admission and to Seek a Person(s) Most Knowledgeable Deposition

After the Government has produced the documents that Mr. Jackson seeks, Mr. Jackson intends to seek leave to propound special interrogatories and request for admission on the DOJ and seek a deposition of the DOJ on these issues.  Such discovery will allow Mr. Jackson to test and refute alternative explanations for the Government's decisions, including: (i) to pursue and then dismiss a weapons charge against Mr. Jackson in 2003; (ii) to release Mr. Jackson from prison in 2004 without facing murder charges in connection with the death of Daryl Brown; (iii) to charge Mr. Jackson with murder only *after* he was arrested for bank robbery following his release from prison in 2004; and (iv) to seek the death penalty against Mr. Jackson only *after* he was arrested for bank robbery following his release from prison in 2004.

### 4. Document Requests Regarding The Evidence and Investigation into the Confrontation Between Mr. Jackson and Daryl Brown on the Recreation Yard of USP Beaumont on December 16, 1999

#### a. Document Requests

##### (1) Document Request No. 9

Any and all videotape recording, photographs, drawings, and/or other physical evidence of the confrontation between Mr. Jackson and Daryl Brown on the recreation yard of USP Beaumont on December 16, 1999.

**(2)      Document Request No. 10**

Any and all videotape recording, photographs, drawings, and/or other physical evidence of the recreation yard of USP Beaumont on December 16, 1999 between the hours of 5:30 p.m. and 6:30 p.m.

**(3)      Document Request No. 11**

Any and all documents, memoranda, protocols, phone records, meeting notes, interview notes, e-mails, or any other materials pertaining to the confrontation between Mr. Jackson and Daryl Brown on the recreation yard of USP Beaumont on December 16, 1999.

**(4)      Document Request No. 12**

Any and all documents, memoranda, protocols, phone records, meeting notes, interview notes, e-mails, or any other materials pertaining to interviews of any BOP employees regarding the confrontation between Mr. Jackson and Daryl Brown on the recreation yard of USP Beaumont on December 16, 1999.

**(5)      Document Request No. 13**

Any and all documents, memoranda, protocols, phone records, meeting notes, interview notes, e-mails, or any other materials pertaining to interviews of any BOP employees regarding the confrontation between Mr. Jackson and Daryl Brown on the recreation yard of USP Beaumont on December 16, 1999.

**(6)      Document Request No. 14**

Any and all documents, memoranda, protocols, phone records, meeting notes, interview notes, e-mails, or any other materials pertaining to interviews of any inmates housed at USP Beaumont on December 16, 1999, regarding the confrontation between Mr. Jackson and Daryl Brown on the recreation yard of USP Beaumont on December 16, 1999.

b.      **Relevant Claims**

The documents and other materials that Mr. Jackson seeks in Document Request Nos. 9-14 are relevant to Mr. Jackson's 4th, 5th, 9th and 10th claims in his §2255 Petition.  Mr. Jackson's Fourth and Fifth Claims for Relief assert that he was denied effective assistance of counsel at the

guilt and penalty phases of his trial in violation of 18 U.S.C. § 3006A and the Fifth, Sixth and Eighth Amendments. Mr. Jackson's Ninth Claim for Relief asserts that the Government knowingly proffered false testimony in violation of Mr. Jackson's rights under the Fifth, Sixth and Eighth Amendments, while Mr. Jackson's Tenth Claim for Relief asserts that the Government withheld exculpatory evidence from Mr. Jackson in violation of Fifth, Sixth and Eighth Amendments.

c.     <strong>Good Cause for the Requested Discovery</strong>

Mr. Jackson seeks the documents in Document Request Nos. 9-14 as they should exist, but either were never produced during pre-trial discovery, or the document production was incomplete.

Trial evidence supports the theory that, on December 16, 1999, Daryl Brown attacked Mr. Jackson outside of unit 3-B-1 of the United States Penitentiary, within the Federal Correctional Complex in Beaumont, Texas. Nine of twelve jurors found that Daryl Brown was the initial aggressor, confirming the weight of these facts. *See* Special Verdict Form (Ex. 37.) Significant evidence from defense witnesses also suggested that Brown was the first to pull a knife in the initial confrontation. (*See, e.g.,* Tr. 778, 834, 850, 942–43.) However, the prosecution repeatedly emphasized the testimony that Mr. Jackson had a knife, while Brown was unarmed. (*See, e.g.,* Tr. 1032; 1038–1039; 1088; 1089; 1721.) They relied largely on the testimony of Raymond Chopane, whose testimony seven years after the fact was suspiciously more detailed than his statements during the days immediately following the incident. Oddly, the only portion of the entire altercation between Mr. Jackson and Brown for which the prosecution produced no videotape evidence is the initial confrontation. Mr. Jackson's rights were violated both by trial counsel's failure to both investigate the absence of a yard video and effectively cross-examine the government witness, and by the prosecution's wrongful withholding of material evidence.

The documents that Mr. Jackson seeks in Document Request Nos. 9-14 could undermine the Government's theory that Mr. Jackson initiated the encounter that resulted in Daryl Brown's

death.  Such evidence may also be relevant to discrediting the testimony of several of the Government's witnesses who claimed that Mr. Jackson had a knife at the start of the encounter and that Daryl Brown was only interested in a fist fight.  Full development of such facts could demonstrate that Mr. Jackson is entitled to relief on the Fourth, Fifth, Ninth and/or Tenth Claims for Relief in his §2255 Petition.  *See Bracy*, 520 U.S. at 908-909.

> 5.    **Document Requests Concerning The Search of Daryl Brown's Cell and Personal Effects and Toxilogical Testing of Mr. Brown**

> a.    **Document Requests**

> (1)    **Document Request No. 15**

Any and all documents, memoranda, protocols, phone records, meeting notes, interview notes, e-mails, or any other materials pertaining to any search of Daryl Brown's cell after his death.

> (2)    **Document Request No. 16**

Any and all documents, memoranda, protocols, phone records, meeting notes, interview notes, e-mails, or any other materials pertaining to any of Daryl Brown's personal effects found anywhere on the USP Beaumont premises after his death.

> (3)    **Document Request No. 17**

Any and all documents, memoranda, protocols, phone records, meeting notes, interview notes, e-mails, or any other materials pertaining to the toxicological testing of Daryl Brown's blood and/or other bodily fluids after his death.

> b.    **Relevant Claims**

The documents that Mr. Jackson seeks in Request Nos. 15-17 are relevant to Mr. Jackson's 4th, 5th, 9th and 10th Claims for Relief in his § 225 Petition.

> c.    **Good Cause Exists for This Discovery**

Before and during trial, the prosecution also failed to produce any evidence that Daryl Brown's cell had been searched for contraband after his death.  Trial counsel did not look into this either.  Similarly, neither the prosecution nor defense tested Brown's blood samples for any

drugs other than THC, despite testimony that Brown was often high and aggressive. Further discovery is needed to determine whether this type of evidence exists. Mr. Brown's level of intoxication or inebriation or evidence that he was under the influence of other drugs is relevant to who initiated the confrontation on December 16, 1999, Daryl Brown's culpability for his own death, and Mr. Jackson's lack of culpability for Daryl Brown's death. Full development of such facts could demonstrate that Mr. Jackson is entitled to relief on the Fourth, Fifth, Ninth and/or Tenth Claims for Relief in his §2255 Petition. *See Bracy*, 520 U.S. at 908-909.

### 6. Document Requests Regarding the "Pop" Jones Incident

#### a. Document Requests

##### (1) Document Request No. 18

Any and all documents, memoranda, protocols, phone records, meeting notes, interview notes, e-mails, or any other materials pertaining to statements Mr. Jackson made to Michael Mattes related to Brown's death on February 24, 2000.

##### (2) Document Request No. 19

Any and all documents, memoranda, protocols, phone records, meeting notes, interview notes, e-mails, or any other materials pertaining to any investigation conducted by BOP employees *other than* Michael Mattes, regarding the veracity of Mattes' claim that Mr. Jackson refused to allow Harold Jones into his cell and/or Mr. Jackson's statements about Brown's death.

##### (3) Document Request No. 20

Any and all information within its possession, or at its disposal, regarding exculpatory, inculpatory, or mitigating statements made by any BOP employee or any inmate who was housed at USP Beaumont on February 24, 2000, regarding Mr. Jackson's alleged comments to Michael Mattes.

#### b. Relevant Claims

The documents that Mr. Jackson seeks in Document Request Nos. 18-20 is relevant to Mr. Jackson's 4th, 5th, 9th and 10th Claims for Relief in his § 2255 Petition.

c.      **Good Cause Exists for This Discovery**

At trial the prosecution argued repeatedly that two months after Brown's death Mr. Jackson threatened to kill an elderly inmate named Harold "Pop" Jones if he was put into Mr. Jackson's cell.  BOP employee, Michael Mattes, claimed Mr. Jackson told him that he had "killed before" and would "kill again." (Tr. 1916.)  The Government relied heavily on this purported evidence, making it the last thing it said to the jury during the sentencing phase.

Mr. Jackson's investigator uncovered evidence post-conviction that contradicts the Government's evidence.  Recently obtained declarations of the inmates who were in the same small cell as Mr. Jackson at that time, including Harold Jones himself, dispute the Government's claims.  That the prosecutor allowed Mr. Mattes to provide misleading testimony, and that trial counsel failed to make proper objections, establishes good cause to seek discovery regarding the night Harold "Pop" Jones was brought into the segregated housing unit.  Full development of these facts could demonstrate that Mr. Jackson is entitled to relief on the Fourth, Fifth, Ninth and/or Tenth Claims for Relief in his §2255 Petition.  *See Bracy*, 520 U.S. at 908-909.

7.      **Document Requests Concerning Other Potentially Exculpatory or Mitigating Evidence In the Government's Possession**

a.      **Document Requests**

(1)      **Document Request No. 21**

Any and all information within its possession, or at its disposal, regarding exculpatory, inculpatory, or mitigating statements made by co-defendant Arzell Gulley or by Daryl Brown. Said production shall include any evidence that Petitioner's role in this offense was limited or differed from that argued by the government at Petitioner's trial.

(2)      **Document Request No. 22**

Any and all information within its possession, or at its disposal, concerning any mitigating evidence which questions the jury's verdict in any manner and was not presented during Petitioner's trial.

(3)      **Document Request No. 23**

All correspondence regarding any and all witnesses who testified at Petitioner's trial.

**(4)      Document Request No. 24**

Any evidence that any government witness who testified at Petitioner's trial was biased or prejudiced against Petitioner or had a motive to falsify or distort his/her testimony.

**(5)      Document Request No. 25**

Any and all documents of the personnel file of any federal agent involved in the investigation and/or interviewing of witnesses in this case tending to show that the agent(s) have been reprimanded, disciplined, or reported for attempts to influence witness testimony or for making false claims on any previous report, internal or public.

**(6)      Document Request No. 26**

Any and all evidence within its files, or at its disposal, concerning any physical, mental or sexual abuse suffered by Petitioner or other members of his family.

**(7)      Document Request No. 27**

Any and all evidence within its files, or at its disposal, concerning any mental or psychological illness or impairment suffered by Petitioner or other members of his family.

b.      **Relevant Claims**

The documents that Mr. Jackson seeks in Document Request Nos. 21-27 are relevant to Mr. Jackson's 4th, 5th, 9th and 10th Claims for Relief in his § 2255 Petition.

c.      **Good Cause Exists for This Discovery**

There is evidence to suggest that the Government proffered false testimony at the guilt and penalty phases of Mr. Jackson's trial, including testimony of Raymond Chopane and Michael Mattes.  There is also evidence that the Government withheld potentially exculpatory or mitigating evidence in its possession, including video evidence of the recreation yard on December 16, 1999.

Additionally, as detailed in Mr. Jackson's § 2255 Petition, the only inmate witness who testified adversely to Mr. Jackson was given benefits for his testimony, while inmate witnesses who testified on behalf of Mr. Jackson expressed concern over retaliation from prison guards.

The document requests above seek evidence in support of these claims, which would be serious prosecutorial misconduct if true.

These facts also leave open the possibility that the Government withheld other exculpatory or mitigating evidence.

## III.    <u>CONCLUSION</u>

Given the gravity of this capital case, Petitioner requests leave to conduct the discovery requested above.  By making this request at this time, Mr. Jackson does not intend to waive his right to conduct additional discovery in the future, including, but not limited to further requests for access to relevant documents and records, the propounding of special interrogatories and requests for admission and the seeking of depositions of relevant witnesses that come to light through the discovery process.

If the government alleges that any information Petitioner seeks via discovery is privileged and/or constitutes attorney work product, Petitioner requests the court to require the government to produce such information for an *in camera* inspection and review.  If the government submits any such material, Petitioner then further requests the Court to copy the undisclosed material and maintain it in the record under seal for purposes of any potential subsequent appeal.

Petitioner also requests that any evidentiary hearing be delayed until the completion of the requested discovery, and that he be allowed to amend his § 2255 motion in light of newly uncovered information from the discovery, if any, and from investigative leads produced from such discovery.  He also requests leave to seek additional discovery as development of the facts and issues may warrant.

For all the reasons set forth above and in the previously filed § 2255 motion, incorporated herein by express reference, Mr. Jackson respectfully requests that this Court grant him the requested discovery and other relief set forth in this motion and order production of the requested documents no later than January 31, 2011.

Dated: December 8, 2010

RESPECTFULLY SUBMITTED,

_____*/s/ Steven H. Bergman*_____

STEVE OLSON (Cal Bar #182240)
STEVEN H. BERGMAN (Cal Bar #180542)
O'MELVENY & MYERS LLP
400 S. Hope St.
Los Angeles, CA 90071

JAMES C. LOHMAN (Fl Bar #0570214)
1806 East 39th Street
Austin, TX 78722

Attorneys for Defendant/Petitioner
DAVID LEE JACKSON

**CERTIFICATE OF CONFERENCE**

This motion is opposed, and filed in accordance with the "meet and confer" requirement

of L.R. CV-7(h), pursuant to a conversation between Steven Bergman, undersigned counsel for

Mr. Jackson, and Assistant United States Attorneys Kerry Klintworth on December 1, 2010.


/s/ *Steven H. Bergman*
Steven H. Bergman

LA2:916251.5