UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| DAVID LEE JACKSON,<br>    *Movant,* | ) | |
| | ) | |
| v. | ) | CASE NO. 1:09-CV-01039-RC |
| | ) | |
| UNITED STATES OF AMERICA,<br>    *Respondent.* | ) | |

---

**MOTION FOR DISCLOSURE AND PRODUCTION OF GRAND JURY TESTIMONY, OR, IN THE ALTERNATIVE, FOR AN *IN CAMERA* INSPECTION OF GRAND JURY TESTIMONY**

---

LA2:911200.6

**MOTION**

DAVID LEE JACKSON, by and through undersigned counsel, respectfully moves the Court, pursuant to Fed. Rule Crim. Proc. 6(e)(3)(E)(i) and Rule 6(a) of the Rules Governing §2255 Proceedings, for an Order granting disclosure and production of grand jury testimony from *United States v. Jackson*, 1:06-CR-51; *United States v. Gulley,* 1:05-CR-51, and *United States v. Gulley*, No. 1:03-CR-222; or, in the alternative, for an *in camera* inspection of these grand jury materials.  The specific grand jury materials Mr. Jackson seeks to review are: (i) the names of any and all witnesses who testified at the grand jury proceedings in *United States v. Jackson*, 1:06-CR-51; (ii) the grand jury testimony of any and all witnesses who testified at the grand jury proceedings in *United States v. Jackson,* No. 1:06-CR-51, and who testified at Mr. Jackson's trial in *United States v. Jackson*, No. 1:06-CR-51-MAC-ESH; (iii) the names of any and all witnesses who testified at the grand jury proceedings in *United States v. Gulley*, 1:05-CR-51; (iv) the grand jury testimony of any and all witnesses who testified at the grand jury proceedings in *United States v. Gulley,* No. 1:05-CR-51, and who testified at Mr. Jackson's trial in *United States v. Jackson*, No. 1:06-CR-51-MAC-ESH; (v) the names of any and all witnesses who testified at the grand jury proceedings in *United States v. Gulley*, No. 1-03-CR-222; and (vi) the grand jury testimony of any and all witnesses who testified at the grand jury proceedings in *United States v. Gulley,* No. 1:03-CR-222, and who testified at Mr. Jackson's trial in *Untied States v. Jackson*, No. 1:06-CR-51-MAC-ESH.

Mr. Jackson has a compelling and particularized need for access to the material for limited use in his 28 U.S.C. § 2255 Petition for Collateral Relief, and related proceedings.   Such disclosure is necessary to provide Mr. Jackson an opportunity to ascertain and evaluate the evidence and/or testimony used in the grand jury proceedings for Mr. Jackson's weapons possession and capital indictments and to impeach the testimony of witnesses whose trial testimony was inconsistent with their grand jury testimony.  Mr. Jackson's need for this information greatly outweighs any secrecy concerns, as the grand jury proceedings concluded several years ago and Mr. Jackson has been convicted of the underlying offense.  Moreover, in

the event that this Court finds it necessary to preserve any purported secrecy interest, Mr. Jackson is moving, in the alternative, for an *in camera* inspection of these materials to limit disclosure.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On December 16, 1999, Daryl Brown pulled a homemade shank on Mr. Jackson on the yard of USP Beaumont, initiating a fight which ultimately ended in Mr. Brown's death.  What followed was a series of bizarre and highly unusual events culminating in a death sentence for Mr. Jackson.  Yet even today, over ten years after this fateful incident, the circumstances which led to an indictment for capital murder and a sentence to die for Mr. Jackson are still remarkably unclear.

Mr. Jackson did not immediately face criminal charges in connection with the death of Mr. Brown in 1999.  Instead, Mr. Jackson was transferred to a more restrictive federal prison in Colorado to continue to serve his original federal sentence.  It was not until November of 2003, nearly four years after the fight between Mr. Brown and Mr. Jackson, that Mr. Jackson faced any criminal charges for his alleged role in the prison fight.  Even then, however, he was not charged with murder.  Instead, Mr. Jackson was charged with the unlawful possession of a weapon by a prisoner.  The charge was dismissed later that same month.

In February 2004, having completed his federal sentence on an unrelated charge, Mr. Jackson was *released* from prison, with no further charges whatsoever arising from the incident. It was only after Mr. Jackson was arrested for a bank robbery in Mississippi in May 2004, and pled guilty to that robbery, that Mr. Jackson found himself facing capital murder charges.  Until Mr. Jackson's arrest in May 2004, the only charge the Government ever brought against Mr. Jackson in connection with Daryl Brown's death was the subsequently dismissed weapons charge.  Thus, it appears that in February 2004 the Government had no intention of pursuing any further charges against Mr. Jackson in connection with Daryl Brown's death.

In April 2005, after waiting more than five years, the Government finally indicted Mr. Jackson for the murder of Daryl Brown.  Eight months after indictment, in January 2006, the

Government gave Notice of Intent to Seek the Death Penalty.  There was no new evidence concerning Daryl Brown's death, as the investigation had been concluded for several years. Thus, the capital prosecution of Mr. Jackson was likely based on evidence from the investigation that was completed in March 2000, the same evidence which the Government believed only supported a weapons indictment a few years prior.

Despite this highly unusual sequence of charging events, Mr. Jackson's trial counsel's sole request for disclosure of this grand jury testimony consisted of a short three page motion, which failed to adequately plead any particularized need for the disclosure of such evidence (despite an abundance of facts supporting such disclosure).  *See* Declaration of Christopher Craig ("Craig Decl."), Ex. F (Motion for Grand Jury Testimony, dated July 18, 2006).  Mr. Jackson now moves for disclosure of this grand jury testimony to support numerous claims in his Petition for Collateral Relief, including allegations of prosecutorial misconduct and ineffective assistance of counsel.

## II.    MEMORANDUM OF LAW

Habeas Rule 6(a) provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law."  Rule 6(a) of the Rules Governing Section 2255 Proceedings.  The Supreme Court has defined "good cause," for purposes of discovery in habeas proceedings, to exist "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."  *Bracy v. Gramley*, 520 U.S. 899, 908-909 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).  The policies favoring discovery are even stronger in capital cases than in non-capital cases because the "finality" of death and its "qualitative[] differen[ce] from a sentence of imprisonment, however long," magnifies the "need for reliability" and, accordingly, the need for reliable fact-determination procedures.  *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976); *McFarland v. Scott*, 512 U.S. 849, 855 (1994).

For the reasons discussed more fully below, there exists good cause to grant an Order granting disclosure and production of the grand jury testimony from *United States v. Jackson*, 1:06-CR-51; *United States v. Gulley,* 1:05-CR-51, and *United States v. Gulley*, No. 1:03-CR-222.

### A.    Disclosure of Grand Jury Testimony is Proper When a Party Has a Particularized Need that Outweighs the Need for Continued Secrecy.

Federal Rule of Criminal Procedure 6(e)(3)(E)(i) provides that courts may order the disclosure of grand jury testimony for use "in connection with a judicial proceeding."  A party moving for the disclosure of grand jury testimony under this provision must demonstrate three elements:  (1) that the material he seeks is needed to avoid a possible injustice in another judicial proceeding; (2) that the need for disclosure is greater than the need for continued secrecy; (3) and that the request is limited to material needed for that purpose.  *Shields v. Twiss,* 389 F.3d 142, 147 (5th Cir. 2004); *Douglas Oil Co. v. Petrol Stops NW*, 441 U.S. 211, 222 (1979); *In re Grand Jury Proceedings*, 62 F.3d 1175, 1179 (9th Cir. 1995).  Courts have held that "[t]he *Douglas Oil* standard is a highly flexible one, adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some situations than in others."  *U.S. v. John Doe, Inc. I*, 481 U.S. 102, 112 (1987).  Moreover, "as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification."  *Douglas Oil*, 441 U.S. at 223; *United States v. Emilor*, S.A., NO. 6:07-cr-12, 008 U.S. Dist. LEXIS 112865, *42 (E.D. Tex. Apr. 30, 2008).

While the required showing of particularized need varies with the circumstances of each case, the need to "impeach a witness" or to "test his credibility" has been routinely recognized by the Supreme Court as a basis to lift grand jury secrecy.  *See Dennis v. United States*, 384 U.S. 855, 870 (1966) (quoting *United States v. Procter & Gamble*, 356 U.S. 677, 683 (1958)).  In addition, a party often demonstrates a sufficient need for disclosure by showing that such disclosure is necessary "to avoid misleading the trier of fact."  *Douglas Oil*, 441 U.S. at 222 fn. 12.

1. **Mr. Jackson Needs Access to Grand Jury Testimony to Impeach Government Witnesses Who Testified at His Trial.**

During Mr. Jackson's trial, the Government relied heavily on the testimony of Correctional Officer Raymond Chopane and prison employee Michael Mattes to support its case. Officer Chopane testified that Mr. Jackson was carrying a knife in the yard on December 16, 1999 when Daryl Brown attacked him.  Officer Chopane's ability to recall specific details of the offense -- nearly seven years after the fateful incident -- was remarkable in light of his failure to recall many of the key details of the offense shortly following the incident.  In fact, nearly seven years prior, just hours after the altercation, when asked to provide details of the incident, Office Chopane could only recall that "**two unidentified inmates**" were involved in the incident with Brown.  *See* Craig Decl., Ex. G (Federal Bureau of Prisons Memorandum for Lieutenant Tims (Dec. 16, 1999) ("On Dec. 12, 1999 at about 6:02 p.m. inmate Daryl Brown #05803-053 was on the yard getting into a verbal argument with *two unidentified inmates* [emphasis added] in front of unit three.  Inmate Brown was backing up taking off his coat.  He then started running into unit 3B1 with the same two unidentified inmates chasing him with weapons in their hands.")).

Despite Officer Chopane's initial failure to recall certain key facts, at trial AUSA Batte, with full knowledge of Officer Chopane's earlier statements, solicited the following false testimony from Chopane:

[By Mr. Batte:]

Q.     Okay.  Do you know who were the individuals that were involved?

A.     Yes.

Q.     Who were they?

A.     Daryl Brown, Arzell Gulley and David Jackson.

Q.     Okay.  Now, were any of those individuals assigned to your unit, the 3-B-1 unit, at that time?

A.     No, they wasn't [sic].

Q.     Did you know the defendant, David Jackson, prior to that day?

A.     I knew him by his last name, Jackson.

Q.      Okay.  And the person that you're talking about as David Jackson or that you

knew as Jackson, is that the individual seated at this table in the light tan jacket?

A.      Yes it is.

Mr. Batte:      Your Honor, I would ask the record to reflect he's identified the

Defendant, David Jackson.

The Court:      Yes, the record will so reflect.

By Mr. Batte:

Q.      So you knew who Mr. Jackson was before December 16, 1999?

A.      Yes.

(Tr. 176–177.)

Officer Chopane's trial testimony flatly contradicted his earlier statements to the Bureau

of Prisons, on the date of the incident, as well as to the FBI the week after the incident.  These

statements make it clear that Mr. Chopane could not identify Mr. Jackson prior to, or at the time

of, the incident.  Yet, AUSA Batte, with full knowledge of these prior statements, elicited false

testimony from Mr. Chopane.  *See* Craig Decl., Ex. H; (Letter from Joseph R. Batte to Gerald E.

Bourque and Douglas Barlow, dated July 27, 2005).

Considering the discrepancy between Officer Chopane's initial incident report, and his

testimony at trial, it is likely that Officer Chopane articulated a different version of events during

his grand jury testimony.  Mr. Jackson needs access to such testimony in order impeach Officer

Chopane's trial testimony; testimony that was key in convincing the jury of premeditation.

But Officer Chopane was not the only witness for the Government who offered false

testimony at trial.  Prison employee Michael Mattes, a Code Treatment Specialist in the

psychology division at USP Beaumont, gave damaging testimony concerning an alleged threat

by Mr. Jackson to kill an inmate who was being put in his cell.  During the guilt phase of the

trial, Mattes testified that around 9:00 p.m. on February 24, 2000, Mr. Jackson, who was in the

segregated housing unit, asked to speak with him.  (Tr. 680.)  Mattes stated that Mr. Jackson

"was basically upset that he had to take a cellee. . . He wanted to be single-celled." (Tr. 681.)

According to Mattes, in an attempt to prevent an inmate named Harold "Pop" Jones from being placed into his cell, Jackson threatened "that if they didn't take this guy out of here, he was going to kill him." (Tr. 681.) He also claimed that Jackson said "I'm through playing games, and if you don't believe me, look at the tapes. I'll kill again." (Tr. 681-82.)

It is now known that Mattes' testimony was false and that the entire "Pop Jones incident" was fabricated. At trial, two prisoners testified that they were present when Pop Jones was brought to the cell in question and that Mr. Jackson, in fact, made no such threats. (Tr. 893-98, 912-15, 926-29). Moreover, in addition to this trial testimony, a statement by Harold "Pop" Jones, the inmate at the center of this alleged incident, which was filed in support of Mr. Jackson's Petition for Collateral Relief, also asserts that the incident never happened. *See* Craig Decl., Ex. I (Declaration by Harold "Pop" Jones,). Jones asserts in his declaration that he was brought to an overcrowded cell that evening in early 2000 containing Mr. Jackson and several other prisoners but he states that no threats were made against him and certainly not by Mr. Jackson of whom Jones says: "he never did threaten me and never would threaten me." *Id.* at ¶¶ 7-8.

The discrepancy between Mattes' recollection of the "Pop Jones incident," and the testimony of the *three* defense witnesses, is stark and alarming. As such, there is a reasonable likelihood that Mattes' proffered a different version of the incident while testifying before the grand jury. It is imperative that Mr. Jackson access Mattes' grand jury testimony in order impeach this testimony and avoid misleading the Court on the circumstances underlying Mr. Jackson's conviction.

Such a use fits squarely within the "particularized need[s]" approved by the Supreme Court. *See Douglas Oil*, 441 U.S. 211; *United States v. Young*, 494 F. Supp. 57, 59 (E.D. Tex. 1980); *Petrol Stops Northwest v. Continental Oil. Co.*, 647 F. 2d 1005 (9th Cir. 1981). The respondents in *Douglas Oil* were independent gasoline retailers who filed civil actions alleging that the petitioners, gasoline wholesalers, had violated antitrust laws by fixing the price of gasoline. In answering discovery propounded by respondents, petitioners stated that they were

unaware of any communications between themselves concerning wholesale gasoline prices. After the petitioners subsequently pleaded *nolo contendere* to criminal antitrust violations, the respondents moved for disclosure of the grand jury testimony of several of petitioners' employees noting that the petitioners' discovery responses appeared to be at odds with their pleas in the criminal action. *Id.*

After holding that disclosure of grand jury testimony could be justified when necessary to impeach a witness' testimony, the Supreme Court remanded the case to the district court to determine whether such need existed in that case. *Douglas Oil*, 441 U.S. at 222 fn. 12, 230. The district court held that such a need had been shown because the materials sought could be used "'to impeach, refresh the recollection, or to test the credibility of witnesses, who testified before the grand jury.'" *Petrol Stops*, 647 F.2d at 1008 (quoting district court decision).

Like the petitioners in *Douglas Oil*, in this action, there is a reasonable likelihood that the testimony of witnesses who testified at Mr. Jackson's trial is at odds with their testimony before the grand jury. Such inconsistency has already been shown in the testimony of Officer Chopane and Prison employee Michael Mattes. Like the respondents in *Douglas Oil*, Mr. Jackson needs access to the grand-jury testimony of all grand jury witnesses who also testified at his trial to test their credibility and, potentially, to impeach their trial testimony. Such need is particularly important in this case to avoid inconsistencies in the testimony of key witnesses, which would result in "misleading the trier of fact," something disclosure can prevent. *Douglas Oil*, 441 U.S. at 222 fn. 12, 230. As these cases demonstrate, both the Supreme Court and courts within the Fifth Circuit have found the necessary "particularized need" exists for the same reasons asserted by Mr. Jackson.

2.      **Mr. Jackson's Narrowly-Tailored Request for Disclosure of the Grand Jury Testimony Outweighs Any Continued Need for Secrecy**

Mr. Jackson's "particularized need" for disclosure -- specifically, to impeach the grand jury testimony of witnesses who testified at trial -- outweighs any continued need for secrecy, as any need for continued secrecy in this matter is negligible.

In weighing whether the need for grand jury secrecy outweighs the petitioner's need for the material, the Supreme Court has urged the Court to consider the five purported justifications for grand jury secrecy:

    (1)    [t]o prevent the escape of those whose indictment may be contemplated;

    (2)    to ensure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors;

    (3)    to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it;

    (4)    to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes;

    (5)    to protect [an] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial when there was no probability of guilt.

*Douglas Oil*, 441 U.S. at 219 fn.10; *see also Procter & Gamble Co.*, 356 U.S. at 681 fn.6.  None of these factors militate in favor of continued secrecy in this present case.

Where, as here, the grand jury is no longer in session and proceedings have been terminated, the first three justifications for secrecy are no longer relevant.  *See In re Grand Jury,* 583 F.2d 128, 130-31 (5th Cir. 1978) ("After a grand jury's investigation has terminated, most of the reasons for grand jury secrecy are no longer applicable and the others are less compelling. The indicted will not flee; the investigation has not been impeded; witnesses cannot be bribed or intimidated; it is less likely that an innocent person will suffer injury to his reputation"); *In re Grand Jury Proceedings*, 62 F.3d at 1179 fn. 2 (same).  Further, the weight of the fourth factor (encouraging free and untrammeled disclosure) is sharply reduced here where the disclosure will be limited for the specific purpose of challenging Mr. Jackson's death sentence, pursuant to 28 U.S.C. § 2255.  Moreover, in this instance Mr. Jackson has narrowly tailored his request for disclosure of testimony only of those witnesses who testified in both the grand jury proceedings

and Mr. Jackson's trial.  *See United States v. Miramontez,* 995 F.2d 56, 60 (5th Cir. 1993) (distinguishing permitted disclosure when a request specifically requests the grand jury testimony of witnesses who testified at trial).  Finally, the relevance of the fifth factor (protection of the accused) is greatly diminished after the defendant has been indicted and convicted by a jury.  *See United States v. Dynavac, Inc.*, 6 F.3d 1407, 1412 (9th Cir. 1993) ("When the grand jury investigation is already terminated and an indictment has been issued, only 'institutional' concerns are implicated by the documentary disclosure.").  The relevance of this fifth factor is even less significant when the "accused" himself is moving for disclosure of the grand jury materials, as in the case in this matter.  Thus, none of the factors favor continuing secrecy in this case.

## III.    CONCLUSION

For the foregoing reasons, Mr. Jackson respectfully moves this Court for an Order granting disclosure and production of grand jury testimony from *United States v. Jackson,* 1:06-CR-51, *United States v. Gulley,* 1:05-CR-51, and *United States v. Gulley*, No. 1:03-CR-222 no later than January 31, 2011; or, in the alternative, for an *in camera* inspection of these grand jury materials.

Dated:  December 8, 2010

RESPECTUFULLY SUBMITTED,

_____*/s/ Steven H. Bergman*_____

STEVE OLSON (Cal. Bar #182240)
STEVEN H. BERGMAN (Cal. Bar. #180542)
O'MELVENY & MYERS LLP
400 S. Hope St.
Los Angeles, California 90071

JAMES C. LOHMAN (Fl. Bar #0570214)
1806 East 39th Street
Austin, Texas 78722

Attorneys for Defendant/Petitioner
DAVID LEE JACKSON

## CERTIFICATE OF CONFERENCE

This motion is opposed, and filed in accordance with the "meet and confer" requirement of L.R. CV-7(h), pursuant to a conversation between Steven Bergman, undersigned counsel for Mr. Jackson, and Assistant United States Attorneys Kerry Klintworth on December 1, 2010.

/s/ *Steven H. Bergman*
Steven H. Bergman

LA2:911200.6