UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| DAVID LEE JACKSON, | ) | |
| *Petitioner,* | ) | |
| | ) | |
| v. | ) | CASE NO. 1:09-CV-01039-RC |
| | ) | (Judge Clark) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| *Respondent.* | ) | |

---

**Petitioner David Lee Jackson's Motion to Establish Conditions of Government
*Atkins* Evaluation**

---

I.      **INTRODUCTION**

The Federal Rules governing the evaluation of persons who have put their mental

condition in controversy afford this Court significant discretion in shaping how the

Government's *Atkins* evaluation of Petitioner David Lee Jackson may be conducted.

While a government evaluation of Mr. Jackson is generally an acceptable step,[1] Mr.

Jackson retains Fifth and Sixth Amendment rights which could be violated were a

---

[1] Though not required: under Rules 6 and 12 of the Rules Governing Section 2255 Procedures for
the United States District Courts ("2255 Rules"), the Federal Rules of Criminal Procedure may
be applied to § 2255 proceedings.  Under FED. R. CRIM. P. 12.2, a court "may, upon the
government's motion, order the defendant to be examined under procedures ordered by the
court." FED. R. CRIM. P. 12.2(c)(1)(B).  Additionally, the Court should remember that the only
neutral examinations of Mr. Jackson—those pre-18 examinations conducted while he was a
student in Detroit—found Mr. Jackson to be mentally retarded.

1

Government expert to ask questions or conduct testing that strays beyond the scope of the *Atkins* hearing.  Therefore, if the Court is inclined to permit the Government to hire an out-of-state neuropsychologist to examine Mr. Jackson, even though the Court has refused to provide funding for Mr. Jackson's own neuropsychologist on the grounds that he is an out-of-state expert, Mr. Jackson hereby moves the Court to exercise its discretion to protect Mr. Jackson's rights by allowing Mr. Jackson's mental retardation expert, Dr. Victoria Swanson, and Mr. Jackson's attorney, James Lohman, to monitor the evaluation. Mr. Jackson also moves the Court to order the Government to submit a written description of all tests it is planning so that the Court and Mr. Jackson's counsel can examine those tests before Mr. Jackson's examination.[2]  Finally, Mr. Jackson moves the Court to enter an order prohibiting the Government from videotaping its evaluation, which is atypical in mental health evaluations[3] and may diminish the reliability of the testing.

If the Court permits the Government's examination, these reasonable conditions are necessary because it appears that the Government recently attempted to circumvent the discovery rules and the rules of professional conduct[4] by seeking to examine Mr.

---

[2] *See United States v. O'Reilly*, No. 05-80025, 2010 U.S. Dist. LEXIS 14621, *12-*14 (E.D. Mich. Feb. 19, 2010) (requiring government to provide advance notice of any tests its experts wished to perform and ordering that "Government experts can only subject [the defendant] to examination or testing that was performed by defense experts").

[3] *See, e.g., United States v. Minerd*, 197 F. Supp. 2d 272, 276 (W.D. Pa. 2002) (prohibiting government from audio- or video-taping its examination of the defendant absent express written consent of defense counsel).

[4] Rule 4.02(a) of the Texas Disciplinary Rules of Professional Conduct provides that "a lawyer shall not . . . cause or encourage another to communicate about the subject of the representation

Jackson without prior notice to Mr. Jackson and his counsel, and without an order from this Court outlining the conditions of Mr. Jackson's evaluation.  As such, Mr. Jackson moves the Court to issue an order preventing the Government's expert from conducting testing until the issues outlined herein are litigated and resolved by Court order.  Absent such an order, Mr. Jackson's constitutional rights and this Court's truth seeking function at the November *Atkins* hearing may be compromised.  To preserve the validity of the hearing, the Government's evaluation, if deemed necessary, must be conducted in a manner consistent with professional norms and an opportunity for objection by Mr. Jackson's counsel.

In addition, it has come to our attention that the Government expert has been given access to BOP records that undersigned counsel has not seen and was not given advance notice of.  Generally, the BOP requires counsel for prisoners to subpoena even their own client's files, and Mr. Jackson's case has been no different.  Yet the Government has apparently been allowed unfettered access to Mr. Jackson's files without notice to his lawyers or a court order.  Therefore, Mr. Jackson also moves the Court to order the Government to disclose immediately to Mr. Jackson's counsel the BOP or other prison records that it possesses or that its experts have reviewed.

## II.    <u>FACTUAL BACKGROUND</u>

On May 27, 2011, Dr. James D. Seward, a Government expert from Arizona, attempted to examine Petitioner David Lee Jackson without prior notice to Mr. Jackson,

---

with a person . . . the lawyer knows to be represented by another lawyer regarding that subject, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."

his counsel, or leave of this Court.  Mr. Jackson, who had no advance notice of any examination, requested and was permitted to telephone his attorney.  On the advice of counsel, he refused the examination.  Assistant United States Attorney Joseph Batte then called James Lohman to seek permission to immediately examine Mr. Jackson.  Mr. Lohman declined the request because of the lack of notice, the Government's failure to comply with the applicable rules concerning discovery in this proceeding, and the fact that there would be no effective means for Mr. Jackson's counsel or experts to monitor or object if the Government failed to adhere to proper protocol.  (Lohman Decl. at 1.) AUSA Batte had made no mention of Dr. Seward's pending visit when he spoke with Steven Bergman, co-counsel for Mr. Jackson, regarding a discovery request as to Dr. Seward the previous day, May 26, 2011.  (Bergman Decl. at 1.)

In light of the *Atkins* hearing set to begin on November 8, 2011, counsel for Mr. Jackson has assumed that a motion for examination of Mr. Jackson would be forthcoming, but expected the Government to comply with the Rules Governing Section 2255 Proceedings, the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, and the Texas Disciplinary Rules of Professional Conduct, which prohibit such an examination absent consent of, or at the very least notice to, counsel and leave of court.  Instead, the Government rushed to conduct unauthorized discovery, in violation of these rules, and sought to examine Mr. Jackson absent consent of counsel or leave of court.  Although this Court's March 25, 2011 Order stated that it was allotting "the Government sufficient time to have any expert witnesses review the relevant materials and evaluate Mr. Jackson," no reasonable construction of this language permits the

Government to conduct such an evaluation solely on its own terms, at any time it seeks, without further leave of Court or notice to Mr. Jackson's counsel.

## III.    ARGUMENT

As stated, the Government has not moved for a court order authorizing the evaluation of Mr. Jackson.  Mr. Jackson expects it will so move in the near future given the Government's expert's recent attempt to improperly examine Mr. Jackson on May 27, 2011.  Assuming the Government does move for an evaluation of Mr. Jackson and this Court orders such an evaluation, Mr. Jackson respectfully moves this Court for an order requiring that the Government observe, at minimum, the following terms and conditions, and allowing for the parties to submit further briefing regarding the terms and conditions of Mr. Jackson's evaluation once the Government formally moves for such:

1.    If the Government's experts wish to administer psychological testing not performed by the defense experts, Mr. Jackson's counsel shall be afforded reasonable notice (at least 10 days) of such intention and may seek an order from this Court barring the particular test or instrument sought to be utilized by the government's experts;

2.    Dr. Swanson will be permitted to observe or otherwise monitor the Government experts' evaluation in order to bring to counsel's attention any discrepancies in testing or inappropriate testing;

3.    Mr. Lohman, or another legal representative of the defense, will be permitted to observe or otherwise monitor, and contemporaneously object, where necessary, to  the Government experts' evaluations, as required by *Estelle v. Smith*, 451 U.S. 454 (1981);

4.    The sessions with government experts will not be video- or audio-recorded;

5.    Any notes taken by the Government's experts will be preserved for later production to Mr. Jackson's counsel;

6.      No statements made by Mr. Jackson in the course of any examination ordered by the court, no testimony by the expert based on such statements, and no other fruits of the statement may be admitted into evidence against the defendant in any criminal proceeding, except on an issue relating to the November *Atkins* hearing; the testimony is admissible only at that proceeding and for no other purposes, including later utilization of any fruits of that testimony;

7.      Psychological testing will be limited to testing directly relevant to the November *Atkins* hearing; and

8.      Disclosure to the defense of any and all records reviewed by the Government's expert, including but not limited to records maintained by the BOP.

Dr. Swanson's attendance will help ensure that, on the whole, the data presented by the Government at Mr. Jackson's *Atkins* hearing is the product of sound methodologies and is free from the taint of bias, undue influence, and prejudice.  The presence of Mr. Lohman is also critical, both to assure accurate and detailed cross-examination and other adversarial testing of Dr. Seward's methods and conclusions, and to ensure Mr. Jackson's cooperation, as he is uncomfortable with testing and has struggled to understand the nature of the *Atkins* claim and the need for mental health assessments, even by defense experts.

## A. This Court is Vested With the Discretion to Condition the Government's *Atkins* Evaluation of Mr. Jackson Upon the Attendance of One of His Experts, Dr. Swanson

The Federal Rules vest this Court with the discretion to shape the Government's *Atkins* evaluation of Mr. Jackson.  Rule 6 of the 2255 Rules provides that "a judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles

6

of law." The plain language of Rule 6 directs courts to consider the Federal Rules of Civil Procedure and Criminal Procedure when determining the manner in which discovery (here, the Government's anticipated *Atkins* evaluation of Mr. Jackson) may be conducted. Two Rules specifically dictate the procedure by which a court may order the examination of a party who has placed his or her mental condition in controversy—FED. R. CIV. P. 35 and FED. R. CRIM. P. 12.2. Both Rules enable the Court to shape the manner in which the Government conducts its *Atkins* evaluation of Mr. Jackson, as both Rules demand that the Court's order authorizing an examination articulate the manner in which the examination will proceed.[5] FED. R. CIV. P. 35(a)(2)(B); FED. R. CRIM. P. 12.2(c)(1)(B). Here, monitoring by the defense team, Dr. Swanson and Mr. Lohman, will ensure more reliable testing conditions, keep the Government honest in its discovery conduct, and protect Mr. Jackson's Fifth and Sixth amendment rights should the Government expert stray beyond appropriate testing areas.

The Government cannot justify excluding one of Mr. Jackson's experts and counsel from attendance at the Government's evaluation, and, as outlined above, there is good reason to permit it. First, the rules of most cognitive examinations the Government may choose to administer do not prohibit third-party presence. Counsel for Mr. Jackson recognizes that some professionals do not believe that it is proper for third parties to observe a cognitive assessment for legitimate reasons. However, the concerns often

---

[5] FED. R. CIV. P. 35 requires that the court's order "specify the time, place, *manner*, *conditions*, and scope of the examination, as well as the person or persons who will perform it" (emphasis added), while FED. R. CRIM. P. 12.2 provides that the court may order a party to be "examined under procedures ordered by the court."

cited—maintaining the integrity and the security of the testing materials and concerns about possible distraction due to presence—are not applicable to this case.  The defense observers would consent to any positioning to prevent distracting Mr. Jackson during his examination.  Mr. Jackson merely asks that his attorney and one of his experts be present to observe, not participate in, the examination.

### B.    The Government's May 27, 2011 Conduct Warrants the Presence of Dr. Swanson at Mr. Jackson's *Atkins* Evaluation

The Government's May 27, 2011 conduct, wherein it attempted to examine Mr. Jackson without notice to Mr. Jackson and his counsel, and without leave of this Court, should be construed as an attempt to circumvent the Federal Rules governing the examination of persons who have placed their mental condition in controversy.[6]  At minimum, it was unethical contact with a represented party without the consent of, or even notice to, his counsel.  The Government's attempt to examine Mr. Jackson constituted a breach of Rule 4.02(a) of the Texas Disciplinary Rules of Professional Conduct, which prohibits an attorney from causing another to speak with a represented party about the subject of that representation without the permission of the represented party's attorney.  Absent the permission of Mr. Jackson's counsel or an order from this Court, the Government had no authority to cause Dr. Seward to examine Mr. Jackson and the attempt to do so was both procedurally and ethically unsound.

---

[6] As previously discussed, FED. R. CIV. P. 35 and FED. R. CRIM. P. 12.2 govern the procedure by which a party may examine one who has put his or her mental condition in controversy.  Both Rules expressly require that the party seeking to conduct an examination, here the Government, move the court for an order authorizing the examination, and both Rules require that the court order's authorizing the examination dictate the manner in which the examination will proceed. FED. R. CIV. P. 35(a)(2)(A) & (B); FED. R. CRIM. P. 12.2(c)(1)(B).

8

The Government's attempt to have Dr. Seward examine Mr. Jackson without notice to counsel or leave of this Court risked precluding this Court from considering the scope of Dr. Seward's evaluation and precluding this Court from dictating the conditions of the evaluation, the tests administered, and other relevant procedures attendant to Dr. Seward's examination of Mr. Jackson, as this Court is required to do by rule and law.  As the Government, like Mr. Jackson, has an interest in upholding the Constitution and Mr. Jackson's Fifth, Sixth, and Eighth Amendment rights, Mr. Jackson urges the Court to take efforts to ensure that future proceedings related to Mr. Jackson's *Atkins* claim are free of any procedural or ethical taint *and* that Mr. Jackson and the Government engage in a mutual effort to ensure that his *Atkins* claim is resolved on the merits alone and after reliable procedures are imposed to ensure that this Court is presented with only the most accurate information available about Mr. Jackson's intellectual functioning.

The presence of Dr. Swanson will enhance the reliability and transparency of the process through which the validity of Mr. Jackson's *Atkins* claim is assessed.  As a silent observer at the Government's evaluation, Dr. Swanson will observe the testing methods utilized by Dr. Seward, and will evaluate the propriety of those methods.  Dr. Swanson will also observe and evaluate whether Dr. Seward's testing is properly administered in accordance with professional norms and standards.  These observations will ensure that Dr. Seward's evaluation is performed accurately and that any irregularities are exposed through cross-examination at the hearing so that the proceedings are a joint effort to ensure that Mr. Jackson's *Atkins* claim is resolved on the merits and that he is not subject to a capital sentence in contravention of his rights under the Eighth Amendment.  As a

9

mental retardation expert, Dr. Swanson is uniquely positioned to observe and detect problems with a mental health examination, and so Dr. Swanson's attendance is necessary to assure proper protocols are followed.

C. **Mr. Lohman's Presence at Mr. Jackson's** *Atkins* **Evaluation is Also Essential**

Should Dr. Seward utilize improper questioning or should his evaluation of Mr. Jackson be tainted with bias, undue influence, and/or prejudice, only an attorney can present contemporaneous objections to such activities.  Moreover, Mr. Lohman, unique among Mr. Jackson's legal team, has both a thorough knowledge of *Atkins* procedure, and a relationship of trust with Mr. Jackson.  Rather than distract from the testing, Mr. Lohman's presence will ensure a more reliable result, by putting Mr. Jackson at ease that Dr. Seward's examination is a legitimate part of these proceedings.  Mental health examinations are strenuous and confusing for a mentally retarded inmate, and a trusted face in the room will ensure Mr. Jackson's full compliance with the tests.  Further, Mr. Lohman's presence will help guard against violations of Mr. Jackson's Fifth and Sixth Amendment rights by Dr. Seward, who is notorious for conducting thorough interrogations into past criminal conduct that would go well beyond the scope of the *Atkins* evaluation contemplated here.[7]

D. **The Government's** *Atkins* **Evaluation Should Not Be Video- or Audio-Recorded**

Mr. Jackson also objects to any attempt by the Government to video- or audio-tape

---

[7] With additional funding for experts, counsel for Mr. Jackson could produce declarations detailing this reputation.  Again, it may be more prudent for the Court to save taxpayer expense on both the Government and defense side by prohibiting Dr. Seward's evaluation from going forward.

its evaluation.[8] Numerous courts have observed that the use of recording devices during mental health examinations can undermine the accuracy of the examination. *See, e.g.*, *Abdulwali v. Washington Metro Transit Auth.,* 193 F.R.D. 10, 13 (D.D.C. 2000) (finding that videotaping is inimical to conduct of psychiatric examination, court ruled that plaintiff failed to show a sufficient need to be permitted to record her examination); *Tomlin v. Holecek*, 150 F.R.D. 628 (D. Minn. 1993) (prohibiting tape-recording of mental health examination because the presence of a recording device "is inimical to the conduct of a valid psychiatric examination," and "psychological examinations necessitate an unimpeded, one-on-one exchange between the doctor and the patient" and "[g]iven the sensitivity of the subject matter which may well be explored in this interview, the need for private and personal interchange, between the Plaintiff and [the psychiatrist], would seem self-obvious").[9] And no rule or guideline by mental health authorities suggests that the Government is entitled to video- or audio-record a court-ordered evaluation. To the extent other courts have permitted such recording of a Government evaluation, it is often at the request of the defendant, in order to protect the defendant's interest, and with the express consent of the defendant. *See*, *e.g.*, *United States v. Sampson*, 335 F. Supp. 2d

---

[8] Mr. Jackson's request that the Government be prohibited from video- or audio-recording the evaluation assumes that his counsel, James Lohman, and one of his experts, Dr. Swanson, will be permitted to attend the Government's evaluation. Should this Court permit the Government to proceed without Mr. Lohman and Dr. Swanson's presence, which Mr. Jackson objects to as stated herein, Mr. Jackson respectfully requests that this Court order a hearing to discuss the conditions of any mental health testing by the Government, including the propriety of audio- or video-recording the Government's evaluation.

[9] Although the courts in these cases also concluded that the presence of a third party, including the examinee's counsel, was "inimical" to the conduct of an evaluation, the courts were not confronted with this issue where the examinee was contesting the imposition of the death penalty and seeking to preserve his Fifth, Sixth, and Eighth Amendment rights.

11

166, 246-247 (D. Mass. 2004) (authorizing audio-recording of government's interview of client and same-day disclosure of the recording to defense counsel in order to protect defendant's Fifth and Sixth Amendment rights, and noting that defense consented to the recording procedure).

Video- or audio-recording of Mr. Jackson's evaluation may inhibit his responses and interactions with the Government's expert, possibly undermining the accuracy of the evaluation and frustrating this Court's ability to resolve his *Atkins* claim on the merits and preserve his rights. Unlike the presence of Mr. Jackson's counsel and expert, moreover, recording the evaluation would not allow contemporaneous correction of errors made by Dr. Seward—at best, it would signal that the testing must be redone, at further taxpayer expense. The presence of a recording device may not serve the purpose of the evaluation as it could decrease the likelihood of an uninhibited exchange between Mr. Jackson and Dr. Seward, by increasing the risk that Mr. Jackson will feel self-conscious. Ultimately, prohibiting the audio- or video-recording of the evaluation and reducing Mr. Jackson's inhibitions may enhance the validity and accuracy of the Government's results and the truth-seeking function of this Court at Mr. Jackson's *Atkins* hearing. While individual defendants may, on occasion, request recording, believing that it is in their interest to preserve what was said and how the evaluation was conducted, such is unwarranted here where Mr. Jackson's counsel and Dr. Swanson, Mr. Jackson's expert, will be present to observe the evaluation and ensure that the evaluation is performed accurately and that any irregularities are exposed.

**E.    Other Conditions Should Be Set Governing the Government's *Atkins* Evaluation**

Regardless of this Court's decision concerning the presence of defense counsel and/or the defense expert at the Government's assessment of Mr. Jackson, this Court must nevertheless set appropriate limits on the scope of the Government's examination. First, defense counsel asserts its right to be notified of the date of testing of Mr. Jackson, who will conduct the testing, who will be present at the testing, and what tests will be administered. *See Estelle v. Smith*, 451 U.S. 451 (1981). Second, the scope of the November *Atkins* hearing demands that any tests of Mr. Jackson be limited to those issues directly relevant to an evaluation of mental retardation. Prior to any evaluation, the Government should be ordered to disclose the tests Dr. Seward intends to administer and the scope of his questioning for potential objection by Mr. Jackson.

//

//

//

//

//

//

//

//

//

//

13

## IV.   CONCLUSION

For the reasons expressed above, Mr. Jackson respectfully requests that the above restrictions be placed on any an evaluation by the Government's expert, Dr. Seward.  To the extent the Court has additional questions subsequent to this briefing, Mr. Jackson requests a hearing to resolve any disputes prior to any such evaluation taking place.[10]

Dated:  June 6, 2011

RESPECTFULLY SUBMITTED,


_/s/ Steven H. Bergman_

CHRISTOPHER CRAIG (Cal Bar # 257108)
christophercraig@omm.com
O'MELVENY & MYERS LLP
400 S. Hope St.
Los Angeles, CA 90071
Phone: 213.430.6029
Fax: 213.430.6407

JAMES C. LOHMAN
(Fl Bar #0570214)
jimmylohman@gmail.com
1806 East 39th Street
Austin, TX 78722
Phone/Fax: 512.542.9947

Attorneys for Petitioner
DAVID LEE JACKSON

STEVEN H. BERGMAN (Cal Bar #180542)
steven@bergmanesq.com
Law Office of Steven H. Bergman
P.O. Box 951
Draper, Utah 84020
Phone: 801.601.1087

---

[10] Mr. Jackson's counsel also reminds the Court that recent funding orders have created an untenable restraint on their ability to properly meet their adversarial duties.  As with other recent motions, Mr. Jackson's counsel has been forced to weigh whether to allow continued abuse of Mr. Jackson's rights by various actors, including the Government and former trial counsel, or to perform forced pro bono work, at considerable personal hardship, to address these continued abuses.

14

## CERTIFICATE OF CONFERENCE

This motion is filed in accordance with the "meet and confer" requirement of L.R. CV-7(h), pursuant to conversations between James C. Lohman, undersigned counsel for Mr. Jackson, and Assistant United States Attorney Joseph Batte on May 27, 2011 and June 3, 2011.  Mr. Batte stated that the Government opposes this motion.


                    /s/ *James C. Lohman*
                        James C. Lohman

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of June, 2011, I sent a true and correct copy of the foregoing instrument, using the Court's CM/ECF, to Joseph Batte, AUSA, U.S. Attorney's Office -- Beaumont, 350 Magnolia, Suite 150, Beaumont, TX 77701.

/s/ *Christopher Craig*

CHRISTOPHER CRAIG

16