IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

DAVID LEE JACKSON                   §
                                    §
VS.                                 §          1:09-CV-01039
                                    §          (Judge Ron Clark)
UNITED STATES OF AMERICA            §

**GOVERNMENT'S RESPONSE TO PETITIONER'S MOTION TO ESTABLISH
CONDITIONS OF GOVERNMENT *ATKINS* EVALUATION**

COMES NOW the United States of America, by and through the United States

Attorney for the Eastern District of Texas, and files this its Government's Response to

Petitioner David Lee Jackson's Motion to Establish Conditions of Government *Atkins*

Evaluation.  In response, the Government would show the following:

## I.  INTRODUCTION

On March 25, 2011, the Court set a scheduling order that called for the

Government to respond to the *Atkins* claim raised by Petitioner "on or before June 10,

2011." (Doc. #80).  That order provided in part that the June 10, 2011 date, "will permit

the government sufficient time to have any expert witnesses review the relevant materials

and evaluate Mr. Jackson."  Pursuant to that order, the Government understood that the

Court was authorizing the Government to hire an expert to evaluate Jackson in an effort

to shed light on the issue of whether he was mentally retarded in advance of an *Atkins*

hearing scheduled for July 6, 2011.  Subsequently, the Government contracted with The

1

Forensic Panel to employ Dr. James Seward[1] to review the opinions of experts hired by Jackson's counsel, and contained in his petition, claiming that Jackson was mentally retarded. The Government subsequently made Petitioner's counsel aware of Dr. Seward's hiring for the purpose of evaluating and testing Jackson, and reviewing the opinions expressed by Jackson's experts.[2]

On May 23, 2011, the undersigned AUSA spoke to counsel for Petitioner prior to filing a motion to continue the date for which the Government's reply to Petitioner's *Atkins* claim date was due. (Doc. #92). In that conversation, (and the subsequent motion), the Government offered as one of its reasons for requesting a continuance, the fact that USP-Terre Haute, had so far refused to accommodate Dr. Seward's request to have access to Jackson over the Memorial holiday weekend. At the time of the filing of the motion, and until being told of Dr. Seward's presence at the institution, the undersigned AUSA was under the impression that Dr. Seward would not be able to see Jackson that weekend as hoped. However, that same week, Deputy Criminal Chief Robert Hobbs was able to secure a change in the position of USP-Terre Haute administration, and Dr. Seward was cleared see Jackson on May 27-28.

The Government does not contest the fact that it would have been prudent to have notified Petitioner's counsel of the dates of Dr. Seward's examination of Jackson, and the

---

[1] An expert in this particular field who, based on comments in their motion, is apparently well-known to Petitioner's counsel.

[2] Once in a phone conversation prior to filing the Government's Motion to Compel Discovery on April 12, 2011, and on at least two subsequent occasions.

2

Government obviously failed to do so.  However, the undersigned AUSA was just as surprised to receive word that Dr. Seward was at the institution on May 27, 2011, as Petitioner's counsel subsequently was.  Under these facts, it is simply unfair to suggest the serious ethical violations that Petitioner's counsel levels against the Government.  In addition, it is uncontested that Jackson refused to meet with Dr. Seward prior to speaking with his attorneys.  The undersigned AUSA upon hearing this, told Dr. Seward to go back to his hotel and await further instructions, and immediately sought to contact Mr. Lohman to intercede and advise Jackson to comply with the court-authorized evaluation. However, Mr. Lohman immediately lodged an objection to the fact that he had no notice of the examination, and would not consent to allowing Jackson to speak with Dr. Seward until certain pre-conditions were placed on his evaluation, including allowing the presence of Mr. Lohman and his own mental health expert at any evaluation.[3]   In any event, no unauthorized contact actually occurred.

Further,  the suggestion that the Government "rushed to conduct unauthorized discovery" is not well taken either.  As mentioned  above, the Government was acting under the belief that the Court had expressly provided for an evaluation, and had made clear to Jackson's counsel that one was coming.  Their were no "applicable discovery orders" in place, as Petitioner suggests.  Dr. Seward's visit to see Jackson was not an attempt to obtain unauthorized discovery.  Rather, it was an attempt to do a complete and

---

[3]  Such conditions are the subject of this motion and had not been communicated to the Government prior to the filing of this motion.

legitimate evaluation.  Nonetheless, at no time up until Dr. Seward's arrival at USP-Terre Haute did anyone on behalf of Petitioner make it known that they were planning on objecting to an evaluation and/or planning to file a motion to set certain conditions on how the evaluation would be undertaken.  And at no time since the Court's scheduling order in March did the Government ever contemplate such an issue.[5]

Petitioner then filed a motion in advance of Dr. Seward's evaluation asking the following; (1) that the Government "formally" move for a court order authorizing the evaluation; (2) and (3) that Dr. Swanson (defense expert) and Mr. Lohman be allowed to observe or otherwise monitor and contemporaneously object during the evaluation; (4) that the evaluation not to be video-taped; and (6) for an order preventing any statements made by Jackson during the evaluation from being used in any proceeding or for any other purpose other than an issue related to the *Atkins* hearing.[6]

## II.  ARGUMENT

**1.  The Government formally moves for an evaluation.**

---

[5] Petitioner seems to suggest that the Government should have known that they would be looking to set conditions prior Dr. Seward's evaluation. While the undersigned AUSA admits to the disadvantage of having no prior experience litigating this issue in this forum, he has litigated at least three prior federal capital trials where an expert hired by the Government evaluated a defendant.  On none of those prior occasions did defense counsel file a motion to set conditions on the expert's evaluation, nor did they ever ask to be present.

[6] The Government does not object to Petitioner's requests numbered 5, 7 and 8, provided the "notes" referenced in #5 pertain only to those taken by Dr. Seward during the examination, however, the Government renews its request for reciprocal discovery of similar documents utilized by Petitioner's experts.

As stated above, the Government construed the Court's order stating that the response date would allow for sufficient time to permit an expert evaluation to mean that the Court permitted an evaluation. Should the Court require that the Government "formally" move for express permission to have Jackson evaluated for purposes of the *Atkins* hearing, it respectfully does so now.

**2. and 3. Dr. Swanson and Petitioner's counsel should not be permitted to attend Dr. Seward's evaluation.**

The Government strongly opposes petitioner's request for the presence of Dr. Swanson and Mr. Lohman at Dr. Seward's evaluation (See, Affidavit of Dr. James D. Seward, attached). Petitioner offers no legal authority for his request to have his psychological expert and his attorney present during Dr. Seward's examination. The presence of third-party observers in mental health evaluations is the exception, not the rule. In fact, petitioner's claim that the rules of cognitive examinations do not prohibit observers is contradicted by the Pearson Assessment Web site.

Petitioner first claims that Dr. Swanson would act only as an unheard and unseen "silent observer", present only to monitor the performance of Dr. Seward in administering the tests given to Jackson. (Doc. #96, p. 9). Nevertheless, the presence of third parties disrupt a proper examination, and prevent a clinically sound evaluation that would be most probative of the *Atkins* issue before this Court. (See, Doc. #96, p.10, fn.7).

Although counsel claims that Dr. Swanson would be unnoticed, Petitioner next requests that his counsel be present to "present contemporaneous objections" to questions

or tests given by Dr. Seward.  (Doc. #96, p. 10).  The determination of  when and what to object to would be made by Dr. Swanson.  So, in effect,  Petitioner is asking for the unfettered right to interrupt Dr. Seward's examination, a procedure that would breach any norm or standard in conducting these types of evaluations.

As for their claim that counsel's presence would help ensure Jackson's cooperation, it is clear that Jackson has been cooperative with testing in the past without the presence of a chaperoning attorney.  Certainly, his attorneys can instruct him to cooperate prior to the examination.

Finally, Petitioner's concerns regarding safeguards for the adversarial process are adequately addressed.  Petitioner and his expert will have access to Dr. Seward's raw data, including the tests and results, and the interview portion of Jackson's evaluation will be video-taped to ensure transparency.

## 4.  The Government should be permitted to video-tape the interview part of the evaluation only.

The Government agrees that the *testing* part of the examination should not be video-taped in accordance with professional practice.  However, Petitioner's counsel cannot legitimately claim that recording devices would impede the one-on-one relationship necessary for testing, while at he same time requesting the far more intrusive presence of an attorney and a psychological advocate.  The minimally invasive disturbance caused by a video camera during the interview portion is substantially outweighed by the probative value of affording the Court with the opportunity to have a

first hand view of the Petitioner during the interview, rather than relying only on Dr. Seward's account.

**6. Statements of Jackson made during his examination by Dr. Seward can be used against him at any other proceeding.**

Petitioner neither briefs, nor argues this point in his motion.  Absent authority in support of such a request, the Government sees no compelling reason to afford Jackson more protection than constitutionally required and in effect, grant him complete immunity for any statement he makes during the evaluation.

### III.  CONCLUSION

For the above stated reasons, Petitioner's motions should be DENIED as to paragraphs 1, 2, 3, 4, and 6, and GRANTED as to paragraphs 5, 7 and 8.

Respectfully submitted,

JOHN M. BALES
UNITED STATES ATTORNEY

/s/ Joseph R. Batte
JOSEPH R. BATTE
ASSISTANT U.S. ATTORNEY
Eastern District of Texas
350 Magnolia, Suite 150
Beaumont, Texas 77701
409/839-2538 phone
409/839-2550 fax
email:  joe.batte@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was delivered via electronic transmission to opposing counsel, on this the 10th day of June, 2011.

/s/ Joseph R. Batte
Joseph R. Batte
Assistant United States Attorney