** NOT FOR PRINTED PUBLICATION **

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| DAVID LEE JACKSON, | § | |
| | § | |
| *Petitioner,* | § | Civil Action No. 1:09-CV-1039 |
| | § | |
| v. | § | JUDGE RON CLARK |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Respondent.* | § | |

**ORDER OVERRULING PETITIONER'S OBJECTIONS AND DENYING
PETITIONER'S MOTION TO RECONSIDER**

On June 13, 2011, the court held a hearing on Petitioner David Lee Jackson's motion to

establish conditions of the Government's *Atkins* evaluation. The court made a number of rulings on

the record, and issued a written order on June 20, 2011 setting out its conclusions in writing. Doc.

# 101. Mr. Jackson has now moved for what is essentially reconsideration of a number of issues

previously decided by the court. Docs. # 106, 107. For the reasons discussed below the court

considers, and rejects, each argument.

**A.    "Objections" to the Government's testing [Doc. # 106]**

In its June 20 Order, the court stated the following:

Mr. Jackson may object to the list of tests [submitted by the Government and including all
tests the Government's expert will be administering], no later than three days of this Order,
only if he believes that one or more of the tests included on the list are completely
inappropriate for testing mental retardation. Mr. Jackson shall include citations, either in case
law or the psychological literature, to support this contention. All other objections will be
held until the November 2011 hearing.

1

Doc. # 101, at 1. Proving yet again that counsel either fails to read or comprehend the court's orders, Mr. Jackson's counsel submitted "objections" which state that he does not object to the administering of the four tests listed by the Government[1], but "does object to the unmonitored administration of theses or any other tests and further objects to these tests being administered by the Government Sixth expert Dr. James Seward without monitoring." Doc. # 106, at 1-2.

The court has already rejected Mr. Jackson's request to have these tests monitored by either counsel or his mental retardation expert Dr. Victoria Swanson.[2] *See, e.g.*, Doc. # 101, at 1. Challenges to Dr. Seward's qualifications and testing methodology can be raised at the *Atkins* hearing and on cross-examination.

**B.     Motion for reconsideration on recording of Government's *Atkins* evaluation**

In its June 20, 2011 Order, the court stated the following:

The interview portion only of the Government's evaluation of Mr. Jackson shall be videotaped. Although the court stated at the June 13 hearing that it was inclined to permit videotaping of the entire evaluation, for the protection of the Government expert, subsequent submissions from the Government have indicated that Dr. Seward will not administer the tests even with an unobtrusive video monitor and restrictions on who will view the video.

---

[1]These four tests are Mini Mental State Exam, Wechsler Adult Intelligence Scale Fourth Edition, Wide Range Achievement Test Fourth Edition, and Test of Adult Reading.

[2]To the extent that the June 20 Order was at all unclear, the court now clarifies that when it said neither Dr. Swanson nor any of Mr. Jackson's counsel will be permitted to contemporaneously observe or monitor the Government expert's testing, this includes the entire evaluation—i.e., *both* the testing and the interview portion. Mr. Jackson's concerns about his Fifth and Sixth Amendment rights are alleviated by the portion of the court's June 20 Order which states that "[n]o statements made by Mr. Jackson in the course of the Government's examination, and no testimony by the Government expert based on such statements, may be admitted into evidence against Mr. Jackson in any criminal proceeding, except on an issue relating to the November 2011 *Atkins* hearing. The testimony is admissible only at that proceeding and for no other purposes." Doc. # 101, at 2.

Doc. # 101, at 2. Arguing that this is "defense counsel's first opportunity to research and provide the Court with full briefing on videotaping," Mr. Jackson's counsel states that it appears Dr. Seward's position is unique to these proceedings because Dr. Seward has, in the past, recorded partes of neuropsychological exams of his own accord.

The court reminds Mr. Jackson's counsel that their original position in the motion to establish conditions of the Government's *Atkins* evaluation was that videotaping was impermissible[3] and it was only when the court cited authority to the contrary that counsel began to see it as a viable alternative. It is difficult for the court to credit counsel's current assertion that videotaping is extremely important, since counsel first advocated the "no taping" position, only to now turn around and argue exactly the opposite. Although the court did indicate at the June 13 hearing that videotaping was something it would consider, the Government's expert subsequently refused to conduct the testing portion of the evaluation if it were taped. The court has already had to re-set the *Atkins* hearing twice, and is not about to allow the reticence of the Government expert foster an additional delay, especially since his position is exactly what Mr. Jackson originally argued. Of course, Mr. Jackson's counsel may be given some latitude on cross-examination to raise the issue of why Dr. Seward was so adamant the testing portion of the evaluation not be taped.[4]

---

[3]"Finally, Mr. Jackson moves the Court to enter an order prohibiting the Government from videotaping its evaluation, which is atypical in mental health evaluations and may diminish the reliability of the testing." Doc. # 96, at 2. The motion went on to say that "[n]umerous courts have observed that the use of recording devices during mental health examinations can undermine the accuracy of the examination," *id*. at 11, and spent no less than two full pages discussing the horrors that would result if the court permitted videotaping.

[4]Mr. Jackson's counsel makes much of Dr. Seward's supposed amenability in the past to taped testing. To this end, they submitted a September 22, 2010 deposition in which Dr. Seward testified that the manual for the "Wechsler memory scale abbreviated logical memory subtest" indicated that this test could be recorded. Doc. # 107-2, at 9:4-8. Dr. Seward also indicated that

IT IS THEREFORE ORDERED that Petitioner David Lee Jackson's Objections to Government's Tests and Motion for Order to Permit Presence During Interview Portion [Doc. # 106] and Motion for Reconsideration [Doc. # 107] are DENIED.

So **ORDERED** and **SIGNED** this **1** day of **July, 2011.**

_____

Ron Clark, United States District Judge

---

other unnamed tests on letter or category fluency might be recorded as well. *Id.* at 11:4-24. However, Mr. Jackson's counsel omits the portion of Dr. Seward's testimony in which he states that "generally it's not standardized to record the actual neuropsychological test, and there's some reasons for that. I can send you some references, if you would like." *Id.* at 9:1-4. The court would also note that the Logical Memory subtest is part of the Wechsler Memory Scale, which is not the same thing as the Wechsler Adult Intelligence Scale (although the two are often used in combination), and is not on the list of tests Dr. Seward will be performing.