

THE FORENSIC PANEL

224 W. 30TH ST., SUITE. 806  NEW YORK, NY 10001   TEL: 212.535.9286  FAX: 212.535.3259   MICHAEL WELNER, M.D., CHAIRMAN

AUSA Robert Hobbs
United States Attorney's Office, Eastern District of Texas
350 Magnolia Ave., Ste 150
Beaumont, TX 77701

**David Lee Jackson**

August 17, 2011

AKA:  Anderson, Larry
      Calahan, David
      Falkes, Kevin
      Folfes, Kevin Ronald
      Folkes, Kevin
      Folkes, Kevin Randell
      Folkes, Kevin Ronald
      Folkesn, Kevin Ronald
      Jackson, Dee
      Jackson, Detroit
      Jackson, Stanley
      Johnson, Tony

Date of Birth:  **March 20, 1960**
AKA DOB:  March 26, 1960
SSN: 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
AKA SSNs:  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, 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

Dear Mr. Hobbs,

Pursuant to your request, I have been undertaking a peer-reviewed forensic neuropsychological assessment of the above death row inmate. He is 51 years old and housed at USP Terre Haute. I am writing to summarize my preliminary impressions in this matter.  These impressions are subject to elaboration and modification as I review emerging sources of information, with my ultimate opinions to be expressed in a final report that I will be submitting at a later date.

**SOURCES OF INFORMATION**
1. U. S. Department of Justice Federal Bureau of Prisons (FBOP), including:
   a. Central File, May 01, 2005 to April 13, 2011.
   b. United States Penitentiary, Terre Haute, Indiana.
   c. United States Penitentiary, Administrative Maximum, Florence Colorado (ADX).
   d. United States Penitentiary, Beaumont, Texas
   e. United States Penitentiary, Lewisburg, Pennsylvania
   f. United States Penitentiary, Marion, Illinois

Re: **David Lee Jackson – SUMMARY OF PRELIMINARY OPINION**
*The Forensic Panel – James D. Seward, Ph.D.*
August 17, 2011

Page 2 of 12

       g.  United States District Court, Eastern District of Texas incident to Case No. 4:04cr24LSu-001 regarding charges resulting from a bank robbery on May 6, 2004.

       h.  United States District Court, Eastern District of Texas incident to Case No. 1:06CR00051-001 regarding charges resulting from a murder on December 16, 1999.

       i.  Federal Bureau of Investigation (FBI) Criminal Justice Information Services Division (CJIS).

       j.  Federal Bureau of Prisons Psychology Data System. Intake December 27, 2006 (CF p. 32, questionnaire he completed).

       k.  Inmate Discipline Data Chronological Disciplinary Record, March 12, 1991 to January 26, 2002.

       l.  Work Performance Rating(s)

       m.  Inmate Skills Development Plan, dated January 07 & 11, 2005

       n.  Discipline Hearing Officer Report(s), USP Leavenworth, March 12, 1991

       o.  Inmate Education Data Transcript, January 7 2005.

       p.  Certificate of Achievement documenting that Mr. Jackson completed an astronomy course in 2005.

       q.  Central Inmate Monitoring (CIM) documentation.

       r.  Correspondence from Mr. Jackson to prison staff.

       s.  FBOP Medical records from July 25, 1990 to about June 1, 2010.

       t.  Mental Health Evaluation, Chad Lohman, Ph.D., August 24, 2000

       u.  Documents incident to Control Unit Hearing conducted on October 24, 2000.

       v.  Operations Manual for Challenge, Opportunity, Discipline and Ethics (CODE) program.

       w.  Email dated July 11, 2011 from Ms. Tina Hauck regarding Mr. Jackson's use of the law library at Terre Haute.

       x.  Email dated June 27, 2011 from Ms. Margie Bier regarding Mr. Jackson's prison education transcripts.

       y.  List of books found in Mr. Jackson's cell on May 25, 2011.

       z.  Records and correspondence incident to Mr. Jackson's request to open an account at Prime Bank and Wells Fargo Bank in Beaumont, Texas in 2001.

       aa.  Program Statement Mentally Ill Inmates, Institutional Management of.

       bb.  June 27, 2011 email from Ms. Margie Bier explaining Mr. Jackson's educational transcript.

2. Attorney Campbell objection to presentence report dated October 15, 2004.

3. Declaration of Dale G. Watson, Ph.D., September 29, 2010.

4. Declaration of Daneen Milam, Ph.D., September 29, 2010.

5. Declaration of Mark A. Bezy, September 28, 2010.

6. Declaration of Pamela Stites, September 27, 2010.

7. Declaration of Richard G. Dudley, Jr. M.D., September 29, 2010.

8. Redacted affidavit of Douglas M. Barlow, March 9, 2011.

9. Records requested by Pam Stites, Mitigation Investigator.

10. Partially redacted Witness Interview of Patricia Jackson, January 19 2006

11. Pam Stites Affidavit Page 7 of Affidavit dated May 22, 2006.

12. Pamela Stites email to Barlow Law Firm dated October 24, 2005.

13. Redacted affidavit of Robert Morrow dated March 7, 2011.

Re: **David Lee Jackson – SUMMARY OF PRELIMINARY OPINION**
*The Forensic Panel – James D. Seward, Ph.D.*
August 17, 2011

Page 3 of 12

14. Partial undated trial and appellate counsel claim.
15. United States District Court for the Eastern District of Michigan presence report dated April 18, 1990 incident to Docket No. 90-CR-80099-AA-01.
16. United States District Court for the Eastern District of Mississippi presence report incident to Docket No. 4:04cr24LSu-001 dated October 4, 2004.
17. United States District Court for the Eastern District of Mississippi undated addendum to presence report incident to Docket No. 4:04cr24LSu-001.
18. United States Court of Appeals for the Fifth Circuit appeal filed November 17, 2008.
19. CV of Richard G. Dudley, Jr. M.D.
20. CV of Dale G. Watson, Ph.D.
21. ECO-Map of David Jackson's Formative Years, Filed March 18 2011
22. "Summary of Educational Records" dated September 7, 2006, authored by Dee Dee Halpin, M.S.
23. Correspondence from Mr. Jackson to friends and family.
24. News release, October 30, 2006.
25. Records from the Center for Forensic Psychiatry in Michigan from about 1980, including:
    a. The last page of an undated psychological evaluation.
    b. Records from Beaumont Hospital in Royal Oak, Michigan.
    c. Michigan criminal history record.
    d. Incomplete Psychological Examination, Lamont Crenshaw, April 17, 1980.
    e. A Diagnostic Evaluation for his competency to stand trial, David Northcross, MD., April 17, 1980.
    f. An evaluation of his Criminal Responsibility, Steven Bank, Ph.D. May 15, 1980.
26. Declaration of Victoria Swanson, Ph.D., September 24, 2010.
27. Notes from Dr. Swanson's evaluation.
28. CV of Victoria Swanson, Ph.D.
29. Correspondence to Mr. Jackson from Menina Jackson.
30. Trial transcripts from November 2006 incident to United States of America vs. David Lee Jackson, Criminal Docket No. 1:06-CR-51.
31. Internet postings regarding Mr. Jackson
32. Defense motion to establish conditions of Atkins evaluation.
33. Jackson exhibits, including:
    a. *Federal Death Row Prisoners,* Death Penalty Information Center, http://www.Deathpenaltyinfo.org/federal-death-row-prisoners; last updated September 2, 2010
    b. Declaration of Marion Jordan; July 17, 2010
    c. Declaration of Alfred Little; July 17, 2010
    d. Declaration of Marcos Martinez; July 17, 2010
    e. Declaration of Chiketa Palmore-Bryant; July 17, 2010
    f. Declaration of Dave Wallace III; July 17, 2010
    g. Declaration of Harriet Bass; July 16, 2010
    h. Declaration of Yvette McCaskill; July 16, 2010
    i. Declaration of Patricia Jackson; July 15, 2010
    j. Declaration of Pam Little Morrison; July 15, 2010
    k. Declaration of Lionel Bass; July 13, 2010

Re: **David Lee Jackson – SUMMARY OF PRELIMINARY OPINION**
**The Forensic Panel – James D. Seward, Ph.D.**
August 17, 2011

Page 4 of 12

l.  Declaration of Larry Anderson; July 10, 2010
m.  Declaration of Brenda Boyd; July 10, 2010
n.  Declaration of Harold Jones; July 10, 2010
o.  Declaration of Darrell Evans; July 09, 2010
p.  Declaration of Reginald Carr; July 02, 2010
q.  McGrew, Kevin S., "Is the Flynn Effect Scientifically Accepted Fact?", *Institute for Applied Psychometrics*, June 30, 2010
r.  Declaration of Juanita Newby; June 16, 2010
s.  David Jackson, Leroy Jackson, and Sammie Lee Jackson Total Earnings, Social Security Administration; June 17, 2000
t.  Kanaya & Ceci, "The Flynn Effect in WISC Subtests Among School Children Tested For Special Education Services", *Journal of Psychoeducational Assessment,* 1-12, May 19 2010
u.  Total Earnings for David Jackson, Social Security Administration; May 11, 2010
v.  Intellectual Disability: Definition, Classification, and Systems of Supports (AAIDD, 2010) (11th ed. Of AAIDD Definitional Manual).
w.  Notice of Intent Chart- Aggravation Alleged in Federal Death Penalty Cases **only 1 page of 161**; dated September 11, 2009
x.  Letter from Wanda M. Hunt to Christie Gibbens re homicides at BOP w/ attachment of BOP homicides from 1996- June 2009; dated August 24, 2009
y.  Shailesh N. Humbad, "Detroit Population History 1990-2000", *Somacon*, http://www.somacon.com/p469.php; last modified February. 27, 2009
z.  Craig Haney, "On Mitigation As Counter-Narrative: A Case Study of the Hidden Context of Prison Violence", 77 *UMKC L. Rev.*911 (2009)
aa.  Video of *Harlow v. Abbott* ; dated May 07, 2008
bb.  Myers, Ryan, "Hardcore Cons Move Out", *The Beaumont Enterprise* (Texas), Apr. 6, 2008 at 1, State and Regional News, available at LEXIS
cc.  "Man heads to death row in murder of Inmate", *The Beaumont Enterprise* (Texas), Nov. 21, 2006 at 1, State and Regional News.
dd.  Special Verdict Form Sections 1-7, United States v. Jackson, 1:06-CR-00051 (E.D. Tex. May 31, 2006), ECF 328; November 13, 2006
ee.  Fax from Dr. Roberts to Doug Barlow re Jackson case; dated November 11, 2006
ff.  Letter from Dr. Fitzpatrick to Mr. Barlow re payment request; November 06, 2006
gg.  Fax from Judge Crone to Barlow re List of Jurors; dated October 20, 2006
hh.  Jury Strike Lists; October 19 & 20, 2006
ii.  Letter from inmate George Rivera to Judge Crone re being called as a witness for the defense in the David Jackson case; dated October 11, 2006
jj.  Defendant's Requested Instructions, United States v. Jackson, 1:06-CR-0051 (E.D.Tex.Sept. 22, 2006), ECF 225-1; September 22, 2006
kk.  Letter from Joseph R. Batte to Douglas M. Barlow re USA v. David Lee Jackson, No. 1:06-CR-51; dated September 19, 2006
ll.  Email from Robert Morrow to Doug Barlow re Jury Instructions – self defense and Agofsky issues; dated September 15, 2006
mm. Letter from Joseph R. Batte to Douglas M. Barlow re USA v. David Jackson, No. 1:06-CR-51 (01); dated September 12, 2006

Re: **David Lee Jackson – SUMMARY OF PRELIMINARY OPINION**
*The Forensic Panel – James D. Seward, Ph.D.*
August 17, 2011

Page 5 of 12

nn.  Motion *In Limine* to Exclude Psychiatric or Psychological Testimony Concerning Future Dangerousness and Memorandum of Law, United States v. Jackson, 1:06-CR-00051 (E.D. Tex. July 18, 2006), ECF 159; July 18, 2006

oo.  Transcript of Record (Excerpts), United States v. Gulley, No. 1:05-CR-51 (E.D. Tex. 2006); June 26, 2006

pp.  Order Granting Defendant David Jackson's Motion to Allow Video Deposition, United States v. Jackson, 1:06-CR-00051 (E.D. Tex. May 31, 2006), ECF 139; May 31, 2006

qq.  Motion to Allow Video Disposition, United States v. Jackson, 1:06-CR-0051 (E.D. Tex. May 30, 2006), ECF 137; May 30, 2006

rr.  Hearing on Defendants' Motions to Sever, United States v. Gulley, 1:05-CR-00051 (E.D. Tex. Apr 5, 2006), ECF 119; April 5, 2006

ss.  Defendant Arzell Gulley's Motion For Severance, United States v. Gulley, 1:05-CR-00051 (E.D. Tex. Mar. 16, 2006), ECF 114; March 16, 2006

tt.  Notice of Intent to Seek the Death Penalty , United States v. Jackson, 1:06-CR-00051 (E.D. Tex. Jan. 4, 2006), ECF 96; January 04, 2006

uu.  Letter from inmate James Larkin to Judge Crone undated re being called as a witness for the defense in the David Jackson case; 2006

vv.  Curriculum Vitae of Dorothy Halpin; 2006

ww. Kevin M. Carlsmith, "The Roles of Retribution and Utility in Determining Punishment". 42 J. *Experimental Soc. Psych.* 437-51 (2006)

xx.  Letter from Joseph R. Batte to Gerald E. Bourque & Douglas Barlow re *USA v. Arzell Gulley and David Lee Jackson,* No. 1:05-CR-51; dated July 27, 2005

yy.  King, Colbert, Op-Ed., "A Witness Pays the Price in Prison", *The Washington Post*, A.19; May 21, 2005

zz.  Telephonic interview notes of Orlando Rivera from Marc D. Skinner; May 05, 2005

aaa.  Edens, Colweel, Deforges and Fernandez, "The Impact of Mental Health Evidence on Support for capital Punishment: Are Defendants Labeled Psychopathic Considered More Deserving of Death?"*, Behav. Sci. Law* 23:603-625 (2005)

bbb.Presentence Investigation Report (PSI Report), United Sates v. Jackson, No. 4:04-cr-00024 (S.D. Miss. Nov. 4, 2004), ECF 18; November 04, 2004

ccc. Incident/Offense Report by Kevin D. Russell;

ddd.March 30, 2004 Note in Attorney's File re weapons charge;  dated February 23, 2004

eee.  Kanaya, T., Scullin, M.H., & Ceci, S.J., "The Flynn Effect and U.S. Policies: the impact of rising IQ scores on American society via mental retardation diagnoses", *American Psychologist* (October 2003)

fff.  James J. Stephan & Jennifer C. Karberg, Bureau of Justice Statistics, Census of State and Federal Correctional Facilities, 2000 (2003)

ggg. American Bar Association, *Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases,* Revision Edition (2003)

hhh.Office of the Inspector General, The Federal Bureau of Prisons' Drug Interdiction Activities, (January 2003)

iii.  Becker, Kirk A., "History of the Standford-Binet Intelligence Scales: Content and Psychometrics", Standford-Binet Intelligence Scales, Fifth Edition: *Assessment Service Bulletin Number 1,* Riverside Pub. (2003)

Re: **David Lee Jackson – SUMMARY OF PRELIMINARY OPINION**
*The Forensic Panel – James D. Seward, Ph.D.*
August 17, 2011

Page 6 of 12

jjj. American Ass'n on Mental Retardation, *Mental Retardation: Definition, Classification, and Systems of Supports* (AAMR, 10th ed. 2002)

kkk. District Judges Assoc. Fifth Circuit, *Pattern Jury Instructions (Criminal Cases)* 2.57 (2001 Edition)

lll. United States Dept. of Justice, *The Federal Death Penalty System: A Statistical Survey (1988-2000),* (2000)

mmm. Offense Report; dated March 03, 2000

nnn. FBI 302 Reports of Interviews of Larry Deveraux, Gary Vanin, Kelvin Tims and Raymond Chopane dated December 23, 1999

ooo. Federal Bureau of Prisons and United States Government Memorandums from Kelvin Tims, Larry Devereux, R. Chopane, Everett Gordon, Gary Vann and Danny Wilhite to Kelvin Tims and Walter Whaley dated December 16, 1999 re Assault/Homicide unit 3B1; December 16, 1999

ppp. United States department of Justice, Discipline Hearing Officer Report and Inmate Injury Assessment and Follow-up; February 22, 1997

qqq. Federal Prosecutions In Which The Death Penalty May Be Sought, The Department of Justice Manual, 1997

rrr. Anders Kaye, "Dangerous Places: The Right to Self-Defense in Prison and Prison Conditions Jurisprudence" , 63 *U. Chi. L. Rev.* 693, 695-696 (1996)

sss. James E. Robertson, *The Constitution in Protective Custody: An Analysis of the Rights of Protective Custody Inmates,* 56 *I.Cin.L.Rev.* 91, 93-94 (1987)

ttt. Letters from Lonnie B. Landeros re Sammie Lee Jackson's Marijuana Arrest; dated May 15, 1985 and January 23, 1986

uuu. "Michigan: Decline in Detroit". *TIME Magazine*; October 27, 1961

vvv. David Jackson's School Records

www. Information filed against Clara Sue Smith Shaffer; October 20, 1985

xxx. Email from Brooks Investigations & Process Service, LLC to Barlow Law Firm; July 12/06 re Financial Invoice Ref. David Lee Jackson; July 12, 2006

yyy. American Bar Association, *Standards for Criminal Justice,* Standard 4-4.1 (Duty to Investigate) (3rd ed.1993); 1993

zzz. Betting Slips, Government Trial Exhibits 32A, 32B, 33A, 33B, 33C, and 33D; October 23, 2006

aaaa. Medical Reports for Patricia Jackson; 2009-2010

bbbb. Medical Reports for Joan Perry; September 01, 2004

34. Custody records from the California Department of Corrections from the 1980s and early 1990s.

35. Michigan Department of Corrections Wayne County Adult Probation Services presentence investigation report dated May 9, 1990.

36. Michigan Department of Social Services Office of Youth Services Educational Transcript.

37. Academic records from Detroit Public Schools.

38. Initial attempt to evaluate Mr. Jackson, May 27, 2011.

39. Evaluation of Mr. Jackson on July 14 (about 5.75 hours) and July 15 (about 5 hours), 2011.

40. Telephone conference with peer reviewers on August 5, 2011.

Re: **David Lee Jackson – SUMMARY OF PRELIMINARY OPINION**
*The Forensic Panel – James D. Seward, Ph.D.*
August 17, 2011

Page 7 of 12

## IS DAVID LEE JACKSON INTELLECTUALLY DISABLED TO THE END THAT HE HAS MENTAL RETARDATION?

**No.**

Mr. Jackson's current IQ scores are in the range that when accompanied by some supportive functional evidence, could potentially be consistent with mild mental retardation. However, IQ evidence alone is insufficient, and the weight of the current extra-test data does not support the diagnosis of intellectual disability. Mental retardation is usually diagnosed based on three prongs: 1) significant sub-average intelligence, 2) deficits in two or more areas of adaptive functioning, and 3) development before the age of 18. Substantial collateral records, when combined with Mr. Jackson's behavioral presentation during my evaluation of him, do not support the presence of significant limitations in adaptive functioning. In addition, in the course of his extensive contact with the criminal justice system - both in adolescence and adulthood - he has seen numerous mental health and medical professionals, none of whom have categorized him as mentally retarded.

## IQ DATA

The records reviewed reference scores from seven previous tests of intellectual functioning. I have not been provided with any of the actual test reports or test protocols for any of these evaluations. These are:

1. Stanford-Binet conducted in 1967 when Mr. Jackson was about 7 years old, resulting in a score of 76.
2. Primary Mental Abilities Test administered on January 1967, resulting in a score at the 11th percentile.
3. California Short Form Test of Mental Abilities administered on December 1968, resulting in a score at the 14th percentile.
4. Wechsler Intelligence Scale for Children administered on April 13, 1970 resulting in an IQ of 67. As a result Mr. Jackson was categorized as "mildly retarded." He was also noted to be "perceptually handicapped" due to "decreased hearing in both ears." It is not known what modifications were made to the test administration or interpretation in order to accommodate for this disability.
5. Mitigation materials reference testing done at the Center for Forensic Psychiatry in Michigan around 1973. He reportedly received an IQ of 80.
6. Records from the California Department of Corrections from the 1980s reference an IQ score of 73. Mitigation records state that this testing was done at Folsom prison when he was 24 years old. (His medical and psychiatric records from that incarceration were reportedly purged in 1997.)
7. Wechsler Adult Intelligence Scale, Third Edition given incident to his trial in 2006 by Daneen Milam, Ph.D., which resulted in a Full Scale IQ of 81. According to defense expert Dale Watson, Ph.D., this administration was invalidated by multiple errors.

Re: **David Lee Jackson – SUMMARY OF PRELIMINARY OPINION**
*The Forensic Panel – James D. Seward, Ph.D.*
August 17, 2011

Page 8 of 12

On July 14, 2011 I administered the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV) to Mr. Jackson, resulting in the following scores:

| Composite Score Label | Score (95% CI) | Percentile | Classification |
|---|---|---|---|
| Verbal Comprehension | 68 (64-75) | 2 | Extremely Low |
| Perceptual Reasoning | 77 (72-84) | 6 | Borderline |
| Working Memory | 80 (74-88) | 9 | Low Average |
| Processing Speed | 76 (70-87) | 5 | Borderline |
| **Full Scale IQ** | **70 (67-75)** | **2** | **Borderline** |
| General Ability | 70 (66-76) | 2 | Borderline |

## ADAPTIVE FUNCTIONING

The American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision* (DSM-IV-TR) lists the following skill areas that must be considered when diagnosing Mental Retardation[1].

These are listed below with my preliminary opinion regarding Mr. Jackson's current functioning in each of these areas.  As noted above, these opinions are subject to modification and elaboration as new information becomes available. Also note that some of the behaviors described cut across multiple domains.  Mr. Jackson's behaviors are complex, and can be grouped in more than one domain.  Seeking medical care, for example, is a multifaceted behavior that can simultaneously inform questions about self-care, communication, use of community services, and self-direction.

**Communication**
*Unimpaired*

The available records contain multiple examples of Mr. Jackson carrying out effective written correspondence.   For example, Mr. Jackson has submitted multiple written requests to prison staff while incarcerated.

He is also able to effectively communicate via spoken language. He uses full sentences, making logical statements and arguments.  Two prominent examples are his testimony at his 2006 trial and his interactions with me.

---

[1] American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders,* Fourth Edition, Text Revision. Washington, DC, American Psychiatric Association, 2000, pp 41

Re: **David Lee Jackson – SUMMARY OF PRELIMINARY OPINION**
*The Forensic Panel – James D. Seward, Ph.D.*
August 17, 2011

Page 9 of 12

### Self-care
*Unimpaired while incarcerated.  Further information is being sought regarding his functioning in the free world.*

The available records document that Mr. Jackson is currently able to independently undertake all of his basic activities of daily living, including advocating for his own interests regarding medical care. He has received sanitation awards for keeping his quarters clean.

### Home Living
*Unimpaired while incarcerated.  Further information is being sought regarding his functioning in the free world.*

Mr. Jackson has been confined for much of his life.  While incarcerated he has been able to attend to his needs by both licit and illicit means.  For example, while incarcerated he has supplemented his income by being involved in the drug trade and running a gambling operation.

### Social/interpersonal Skills
*Unimpaired*

The best documentation of Mr. Jackson's social/interpersonal skills can be seen in the video recording of my approximately five hour long interview of Mr. Jackson.  In the course of this interview he related in a socially appropriate, sophisticated manner, demonstrating the capacity for irony and abstract thinking.   In addition, he maintains at least one relationship with a European pen pal (Ms. Marianne Baaba); FBOP records document that she has visited him from Germany and Mr. Jackson refers to her as his "fiancée."  Criminal cunning of the type displayed by Mr. Jackson (in records) shows his capacity to understand the minds of others, and to adjust his behavior to leave false impressions in other's minds.

### Use of Community Resources
*Unimpaired while incarcerated.  Further information is being sought regarding his functioning in the free world.*

Again, Mr. Jackson has been confined for much of his life.  Within that context he has sought out and utilized available resources such as educational opportunities and medical services.

### Self-Direction
*Unimpaired*

The available records contain examples of Mr. Jackson advocating for his own legal interests (such as his participation in his 2006 trial) advocating for his own health (such as requesting and anticipating the need for medical, dental, or optometry services).  He has given informed consent – without dispute of his competency to do so -- to diagnostic and surgical procedures, psychoactive medications, and an advanced directive.

In 2001 he requested to open a bank account in the community.

Re: **David Lee Jackson – SUMMARY OF PRELIMINARY OPINION**
*The Forensic Panel – James D. Seward, Ph.D.*
August 17, 2011

Page 10 of 12

In 2004 he requested that an attorney be present prior to submitting a DNA sample.

Mr. Jackson frequently uses the law library at Terre Haute.

In 1992 while in prison he was judged to be "competent" to marry, and in 1997 forged a divorce document.

He has managed to have photographs (apparently taken in prison) posted on an internet prison pen pal website.

Mr. Jackson has exhibited criminal cunning on numerous occasions spanning many years.  For example, he reportedly has 13 escapes from a juvenile facility in Michigan.  When arrested as a 23 year-old in California in 1983, he claimed that he was 15 years old and was subsequently placed in a juvenile facility, from which he escaped.  He escaped from custody on July 10, 2005.  In 2005 he was in possession of a "homemade lock-pick device."  He has attempted to have narcotics introduced through the visiting room at USP Lompoc and USP Leavenworth.

In 1993, prison staff intercepted an encoded note addressed to Mr. Jackson.  In 2005, he was described as "an extremely sophisticated inmate" who "is skilled at manipulating staff." He has used numerous aliases and several Social Security numbers.

**Functional Academic Skills**
*Unimpaired*

As mention, collateral records contain numerous written communications authored by Mr. Jackson. As part of my evaluation of Mr. Jackson I assessed his academic abilities with the Wide Range Achievement Test-Fourth Edition (WRAT-4).   He received the following scores:

| Subtest/Composite | Standard Score (95% CI) | Percentile Rank | Grade Equivalent |
|---|---|---|---|
| Word Reading | 84 (78-90) | 14 | 8.7 |
| Sentence Comprehension | 75 (70-81) | 5 | 6.8 |
| Spelling | 84 (78-91) | 14 | 7.5 |
| Math Computation | 78 (71-86) | 7 | 4.9 |
| Reading Composite | 77 (72-83) | 6 | N/A |

In 1993, Mr. Jackson completed a GED, and has successfully completed a variety of adult education courses while in FBOP custody.

**Work**
*Unimpaired while incarcerated.  Further information is being sought regarding his functioning in the free world.*

Re: **David Lee Jackson – SUMMARY OF PRELIMINARY OPINION**
*The Forensic Panel – James D. Seward, Ph.D.*
August 17, 2011

Page 11 of 12

As mentioned, while incarcerated Mr. Jackson has pursued both licit and illicit sources of income. The former include working in prison for a variety of departments. The available performance evaluations document satisfactory work performance. The latter include running a sports book and possibly dealing drugs.

**Leisure**
*Unimpaired while incarcerated. Further information is being sought regarding his functioning in the free world.*

Mr. Jackson's opportunities for leisure are limited by his confinement. A recent search of his cell revealed numerous books including several English-to-other-language dictionaries, religious texts, books written by Barak Obama and Nelson Mandela, and a text on hepatitis and liver disease. Mr. Jackson denies being able to read most of these.

**Health**
*Unimpaired*

As mentioned, Mr. Jackson has effectively advocated for and received medical services while incarcerated. According to an "Inmate Skills Development Plan" dated January 11, 2011, he complies with treatment recommendations.

**Safety**
*Unimpaired while incarcerated. Further information is being sought regarding his functioning in the free world.*

As noted above, Mr. Jackson monitors his health, anticipates the need for medical services, and follows-up on those needs.

**CONCLUSIONS**

As summarized in the trial and appellate counsel claim, the defense asserts that Mr. Jackson is mentally retarded, in part based on evidence of adaptive deficits both before and after age 18. These are based on interviews with relatives and family friends, some of whom describe events that took place four decades ago. These recollections may not be accurate, due to the passage of time or other distorting factors. In addition, Mr. Jackson's alleged early childhood deficits may have been a result of an impoverished upbringing or poor parenting (in the words of childhood friend Pamela Morrison, "His parents did not even know what David was doing in school..."). The descriptions of deficits in adaptive functioning as an adult are contradicted by both the available records and his interactions with me in the course of my interviews.

**RELEVANCE OF THE FLYNN EFFECT**

The Flynn Effect refers to the observation that mean IQ scores for populations increase over the successive editions of IQ tests. It is generally accepted that mean IQ *scores* have been rising since the early 20th Century, but the nature and cause of this increase are unknown. It remains unresolved in

Re: **David Lee Jackson – SUMMARY OF PRELIMINARY OPINION**
*The Forensic Panel – James D. Seward, Ph.D.*
August 17, 2011

Page 12 of 12

the scientific community whether actual intelligence is increasing or whether test standardization methods play a role.

The relevant point for this case is that inter-generation IQ score inflation has only been noted with group data; its relevance or application to specific individuals is not established. Some forensic psychologists believe in the practice of adjusting an individual's observed IQ score downwards, using a formula of subtracting fractional IQ points for every year that passed since standardization of the test. For example, subtracting 0.3 points for every year has been recommended by Flynn. But there is no conclusive scientific evidence supporting an adjustment of a specified individual's test score in accordance with the reports of findings in group data. In contrast, the reliability and validity of uncorrected IQ scores is firmly established, and easily referenced in the technical manual for the test. Additionally, downward score adjustments are not a generally accepted practice in either the clinical psychology or school psychology communities, per a recent survey[2].

Please let me know if you have any questions.


Sincerely,


James D. Seward, Ph.D., ABPP
Board Certified in Clinical Neuropsychology
Fellow, National Academy of Neuropsychology

---

[2] LD Hagan, EY Drogin, and TJ Guilmette. Adjusting IQ scores for the Flynn effect: Consistent with the standard of practice? Professional Psychology: Research and Practice, 39, 2008, 619-625