UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| DAVID LEE JACKSON, | ) | |
| *Petitioner,* | ) | |
| | ) | |
| v. | ) | CASE NO. 1:09-CV-01039-RC |
| | ) | (Judge Clark) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| *Respondent.* | ) | |

---

**Petitioner David Lee Jackson's Unopposed Motion To Compel Production Of Documents In The Possession Of The United States Government Relevant To *Atkins* Claim**

---

David Lee Jackson respectfully asks this Court to compel discovery from the Bureau of Prisons ("BOP") and Federal Bureau of Investigation ("FBI") that is specifically relevant to issues raised in the Government's expert's response to Mr. Jackson's claim that he is intellectually disabled and therefore ineligible for the death penalty under *Atkins v. Virginia*, 536 U.S. 304 (2002). This discovery is authorized by Rule 6 of the *Rules Governing Section 2255 Proceedings for the United States District Courts* ("Habeas Rule 6"), and "reasonably fashioned to elicit facts necessary to help the court dispose of" Mr. Jackson's *Atkins* claim "as law and justice require." *See Harris v. Nelson*, 394 U.S. 286, 290 (1969).

## I.    INTRODUCTION

After scoring him with an IQ of 70, the Government's expert, Dr. James Seward, has conceded that "Mr. Jackson's current IQ scores are in the range that when accompanied by some supportive functional evidence, could potentially be consistent with mild mental retardation."

1

(Report of Dr. James D. Seward, Sept. 23, 2011 at 7) ("Seward Final Report").)[1]  Thus, the primary disputed issue to be litigated at the *Atkins* hearing will likely be whether Mr. Jackson has "deficits in two or more areas of adaptive functioning" (*id*.), the second prong of a diagnosis of mental retardation.  In reaching his conclusion that Mr. Jackson lacks adaptive behavior deficits, Dr. Seward relies in substantial part on a selective smattering of documents from the BOP and other sources.  Mr. Jackson, by this motion, seeks records in the possession of the Bureau of Prisons and FBI that will provide additional evidence of his deficits in adaptive functioning and rebut the conclusions drawn by Dr. Seward.  A fair hearing on Mr. Jackson's intellectual disability and eligibility for the death penalty requires a complete, well-rounded production of documents that will allow the experts and the Court to thoroughly and meaningfully evaluate Mr. Jackson's adaptive deficits – it cannot be limited to the partial set of records Dr. Seward has used to support his conclusion.

Under Habeas Rule 6(a), "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law."  "Good cause" for discovery in habeas proceedings exists "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (quoting *Harris*, 394 U.S. at 300).  To obtain discovery, a petitioner need not, however, establish a prima facie case or demonstrate that he will ultimately prevail on the merits of his claim. *Bracy*, 520 U.S. at 908.  Rather, as the Fifth Circuit explained, "[w]hile the district court generally has discretion to grant or deny discovery requests under Rule 6, a court's blanket denial of discovery is an abuse of discretion if discovery is 'indispensable to a fair, rounded, development of the material facts." *East v. Scott*, 55 F.3d 996, 1001 (5th Cir. 1995) (internal citations omitted).  A petitioner is especially entitled to discovery

---

[1]  Dr. Seward's report was attached to an email from Mr. Hobbs to Christopher Craig and copied to Jody Frampton, dated September 23, 2011.  We will re-send the email to Ms. Frampton promptly if needed.

where the relevant evidence is only accessible to the prosecutor. *Id.* at 1002 (ruling that the district court abused its discretion in denying discovery to a habeas petitioner where the evidence that could shed light on the petitioner's claim was accessible only to the district attorney). Mr. Jackson's counsel has been attempting to get the bulk of these materials without success through the Freedom of Information Act, HIPAA requests, and other means. It is therefore clear that, absent an order from this Court, these are records only available to the Government.

Counsel is aware that discovery in Section 2255 proceedings is not intended to mimic civil discovery, and that "fishing expeditions" are not countenanced. Accordingly, while thorough, the requests made below have been tailored to the issues raised by Dr. Seward's final report. These materials go to the heart of testing "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. With one exception, they are limited to materials in the possession of the BOP – even though it is likely there are other similar materials in the possession of various state institutions that are also relevant to Mr. Jackson's *Atkins* claim. These requests should not be unduly burdensome. As previously represented to the Court in prior motions for BOP materials, Mr. Jackson's counsel believes that many of the records regarding Mr. Jackson have, in fact, already been collected by Larry Collins at the BOP's South Central Regional Office. (*See* Dkt. No. 24 at 4; Dkt. No. 57 at 11.)

## II.    DISCOVERY SOUGHT

The Government, primarily through the BOP, should be directed to produce the documents in the following categories to Mr. Jackson. These documents are reasonably likely to provide supporting evidence of Mr. Jackson's mental retardation. The requested documents are also reasonably likely to undermine the adaptive deficit opinions and testimony of Dr. Seward, whose selective reliance on particular records has opened the door to the present discovery requests.

### A. **Personnel Records**

In his final report, Dr. Seward has relied substantially upon information and opinions from Dr. Chad Lohman, Michael Mattes, Gregory Hawkins, and John Feeney, while also referring to numerous other BOP employees.  Dr. Seward relies on the statements and opinions of these individuals in evaluating five of the eleven adaptive behavioral categories analyzed in his report (Communication, Self-Care, Social/Interpersonal Skills, Use of Community Resources, and Leisure).  (*See* Seward Final Report at 11-15.)  As outlined in the table below, Mr. Jackson seeks discovery that will allow him to assess and meaningfully test the credentials of Dr. Seward's "sources" to render opinions regarding Mr. Jackson's mental retardation and/or whether he has adaptive deficits in certain behavioral categories.

| Discovery Request: Personnel Records Of Relevant BOP Employees | Basis |
| --- | --- |
| Personnel file of Dr. Chad Lohman, including reviews, qualifications and CV. | Dr. Seward's final report refers to Dr. Lohman repeatedly, and Dr. Seward relies on Dr. Lohman for his conclusions regarding Mr. Jackson's Communication and Social/Interpersonal Skills.  (Seward Final Report at 2, 7, 8, 11 and 13.) |
| Job description and CV for Margie Bier. | Dr. Seward's final report apparently relies on Ms. Bier for his conclusions regarding Mr. Jackson's Functional Academic Skills and Leisure, as the report cites Mr. Jackson's participation in continuing education classes, about which Dr. Seward communicated with Ms. Bier.  (Seward Final Report at 2 and 14-15.)  As Dr. Seward's reliance on Ms. Bier is comparatively small, Mr. Jackson requests information only on her basic qualifications. |
| Personnel file of Michael Mattes, including reviews, qualifications and CV. | Dr. Seward's final report cites Mr. Mattes repeatedly.  Dr. Seward interviewed Mr. Mattes, who was a Treatment Specialist with the Challenge, Opportunity, Discipline and Ethics ("CODE") Program at USP Beaumont, and relied on Mr. Mattes for his conclusions regarding Mr. Jackson's Communication, Self-Care, Social/Interpersonal Skills, Use of Community Resources, and Leisure.  (Seward Final Report at 7, 11-13, and 15.) |
| Personnel file of Gregory Hawkins, including reviews, qualifications and CV. | Dr. Seward's final report refers to Mr. Hawkins, a Correctional Counselor at USP Beaumont, and Dr. Seward relies on Mr. Hawkins for his conclusions regarding |

| | |
|---|---|
| | Mr. Jackson's Communication, Self-Care, and Social/Interpersonal Skills.  (Seward Final Report at 7 and 11-12.) |
| Personnel file of John Feeney, including reviews, qualifications and CV. | Dr. Seward's final report refers to Mr. Feeney, a BOP Special Investigation Agent, and Dr. Seward relies on Mr. Feeney for his conclusions regarding Mr. Jackson's Communication and Social/Interpersonal Skills.  (Seward Final Report at 7 and 11-12.)  Mr. Feeney also accuses Mr. Jackson of leadership in the Black Guerilla Family.  (*See* infra at 11.) |
| Job description and CV for John Bellantoni. | Based on the documents cited in Dr. Seward's Final Report, Mr. Bellantoni is the true source of Dr. Seward's information regarding Mr. Jackson's participation in adult continuing education courses while at ADX Florence in the December 2000-November 2003 and January-July 2005 timeframes.  This information is relevant to Mr. Jackson's adaptive behavior related to Functional Academic Skills and Leisure.  (*See* Seward Final Report at 14-15.) |
| Personnel file of Todd Royer, including reviews, qualifications and CV. | Mr. Royer is a Case Manager at USP Terre Haute who has authored documents concerning Mr. Jackson's Inmate Skills Development Plan and progress towards meeting the goals therein.  Mr. Royer is thus a percipient witness to Mr. Jackson's adaptive behavior related to, among other things, Work and Leisure. |

### B.    Education Records

The BOP should be directed to produce documents regarding education programs in which Mr. Jackson participated at any institution where he was incarcerated, as described in the table below.  Dr. Seward relies on "Educational Records from Federal Prison" in his Final Report, as such materials are relevant to the Functional Academic Skills and/or Leisure categories of adaptive deficits.  (*See* Seward Final Report at 6-7 and 14-15.)  But the Government has only produced documents regarding classes Mr. Jackson took while at the ADX facility in Florence, Colorado and, even with respect to ADX, the Government's production appears incomplete.  While current records suggest that Mr. Jackson participated in some programming at ADX, further information on these programs is needed; for example, Mr. Jackson's counsel has reason to believe that the programs offered at ADX did not require any meaningful active participation by Mr. Jackson, and the documents produced by the

Government do not meaningfully analyze the correlation (if any) between an inmate like Mr. Jackson watching a video on a closed-circuit TV in his cell and actually comprehending (or being able to comprehend) the course material.    Moreover, the BOP's document production cannot be limited to ADX; it must include complete productions regarding any courses Mr. Jackson took at any of the other institutions where he was incarcerated:  USP Terre Haute, USP Marion, FCI Petersburg, MCC Chicago, FCI Milan, USP Beaumont, USP Lewisberg, USP Leavenworth, USP Lompoc, USP Atlanta, USP Springfield, and the Transfer Center (OK).

Dr. Seward also relies on Mr. Jackson's supposed completion of a GED while in prison as a sign of his Functional Academic Skills.  (Seward Final Report at 14.)  The only evidence regarding this GED produced by the Government, however, is a single notation in Mr. Jackson's file from USP Terre Haute that he "Completed GED or HS diploma" on August 12, 1993, while he was incarcerated at USP Lompoc.  In addition, other records suggest that Mr. Jackson enrolled in a "GED Class" on September 17, 1990, while incarcerated at USP Leavenworth, and that he received a failing GED test score on or about November 15, 1990.  The Government should be directed to produce all other GED records in the possession of the BOP.

| Discovery Request: BOP Education Records | Basis |
|---|---|
| Names of every course previously or currently enrolled in. | Relevant to complete assessment of Mr. Jackson's functioning in prison, specifically his Functional Academic Skills and Leisure.  (*See* Seward Final Report at 14-15.) |
| Names of every course previously enrolled in, but not completed or passed. | Relevant to complete assessment of Mr. Jackson's functioning in prison, specifically his Functional Academic Skills and Leisure.  (*See* Seward Final Report at 14-15.) |
| Criteria that must be met to pass each course previously or currently enrolled in. | Relevant to complete assessment of Mr. Jackson's functioning in prison, specifically his Functional Academic Skills and Leisure.  (*See* Seward Final Report at 14-15.) |
| BOP policies and procedures regarding enrollment in education courses. | Relevant to complete assessment of Mr. Jackson's functioning in prison, specifically his Functional Academic Skills and Leisure.  (*See* Seward Final Report at 14-15.) |
| Coursebooks, lesson plans, and other materials containing curriculum content for every | Relevant to complete assessment of Mr. Jackson's functioning in prison, specifically his Functional Academic Skills and Leisure.  (*See* Seward Final Report at 14-15.) |

| | |
|---|---|
| course previously or currently enrolled in. | |
| Evaluations, transcripts or performance reports for each course previously or currently enrolled in. | Relevant to complete assessment of Mr. Jackson's functioning in prison, specifically his Functional Academic Skills and Leisure. (*See* Seward Final Report at 14-15.) |
| Identity of instructors for each course previously or currently enrolled in. | Will lead to discovery of sources of information relevant to complete assessment of Mr. Jackson's functioning in prison, specifically his Functional Academic Skills and Leisure. (*See* Seward Final Report at 14-15.) |
| All tests, assessments and resulting scores for every course previously or currently enrolled in. | Relevant to complete assessment of Mr. Jackson's functioning in prison, specifically his Functional Academic Skills and Leisure. (*See* Seward Final Report at 14-15.) |

### C.    Prison Work Records

"Work" is one of the relevant diagnostic categories for adaptive deficits. (*See* Seward Final Report at 14.) As Mr. Jackson has not been able to maintain a job outside of prison, Dr. Seward's final report relies on Mr. Jackson's work while incarcerated in concluding the Mr. Jackson lacks adaptive deficits in this area. (*Id.*) His only direct citation is to a mere job description of one position held by Mr. Jackson. (*Id.*) To assess Mr. Jackson's competencies, records of his actual performance are vital, rather than the mere job description. (*Id.*)

| Discovery Request: BOP Employment Records | Basis |
|---|---|
| All jobs held by Mr. Jackson. | Relevant to complete assessment of Mr. Jackson's functioning in prison, specifically any work he has performed while in prison. (*See* Seward Final Report at 14.) |
| Descriptions of all jobs held & descriptions of daily work activities. | Relevant to complete assessment of Mr. Jackson's functioning in prison, specifically any work he has performed while in prison. |
| Start and end dates of each job held. | Relevant to complete assessment of Mr. Jackson's functioning in prison, specifically any work he has performed while in prison. (*See* Seward Final Report at 14.) |
| Identity of all persons who supervised/managed Mr. Jackson for each job held. | Will lead to discovery of sources of information relevant to complete assessment of Mr. Jackson's functioning in prison, specifically his Work abilities. (*See* Seward Final Report at 14-15.) |
| Work performance reviews/evaluations of Mr. | Relevant to complete assessment of Mr. Jackson's functioning in prison, specifically any work he has |

| Jackson for each job held. | performed while in prison.  (*See* Seward Final Report at 14.) |
| Write ups or disciplinary action taken with respect to Mr. Jackson's work performance. | Relevant to complete assessment of Mr. Jackson's functioning in prison, specifically any work he has performed while in prison.  (*See* Seward Final Report at 14.) |

### D.       Institutional Policy Records

Mr. Jackson's behavior must be placed in context with the institutions where he has been incarcerated, and specific records produced, so that a full assessment of his behavior can be presented at the *Atkins* hearing.  For example, Mr. Jackson's participation in education courses or other prison programs may appear significant in isolation, but trivial in comparison to the programs available to him.  At present, it is unclear whether Mr. Jackson regularly participated in complicated prison programs, or simply had the prison system's most basic and simple programming piped into him by television once he was placed in solitary confinement.  Only a full production of records from the institutions where Mr. Jackson has been incarcerated will clarify this picture.

Dr. Seward concludes that Mr. Jackson lacks adaptive deficits in a number of relevant areas based on his prison records showing that he participated in certain programs, performed certain work, at times kept his cell clean, sought medical care, at times used the law library, and filed grievances.  Dr. Seward's report does not cite to the particular files that support his conclusions.  Mr. Jackson seeks complete files to insure that a full picture of Mr. Jackson's prison activities is assessed in evaluating his adaptive functioning.  These files include policies and procedures governing housing, educational programs, psychological care, medical care, inmate employment, cell sanitation, and resources accessible to inmates (e.g., Corrlinks email, Prisoner Assist) for the following institutions: USP Terre Haute, USP Marion, USP ADX, FCI Petersburg, MCC Chicago, FCI Milan, USP Beaumont, USP Lewisberg, USP Leavenworth, USP Lompoc, USP Atlanta, USP Springfield, and the Transfer Center (OK).

### E.       Other Documents Related to Dr. Seward's Final Report

In order to assist the Court in its truth-seeking function at the *Atkins* hearing, Mr. Jackson ultimately needs all the documents pertaining to BOP records on which Dr. Seward relies in his

final report, as well as relevant BOP materials that may demonstrate Mr. Jackson's adaptive deficits and/or rebut the BOP materials selected by Dr. Seward to support his conclusions. For example, Dr. Seward cites Mr. Jackson's Central File from May 1, 2005 to April 13, 2011 as a source for his report. (Seward Final Report at 1.) This selection appears to omit all of Mr. Jackson's time served in general population. To accurately assess Mr. Jackson's adaptive behavior while incarcerated, the full file is necessary. The timeframe selected by Dr. Seward may distort the picture of Mr. Jackson's adaptive skills.

As another example, Dr. Seward also concluded that Mr. Jackson lacks adaptive deficits in the area of Communication, in part based on written requests he has purportedly submitted while incarcerated. (Seward Final Report at 11.) Dr. Seward also opined that Mr. Jackson is not impaired because he has purportedly "received sanitation awards for keeping his quarters clean." (Seward Final Report at 9.) Dr. Seward further argues that Mr. Jackson is not impaired because he has "utilized available resources such as educational opportunities and medical services," while in prison. (Seward Final Report at 9.) Similarly, Dr. Seward cites a program manual for the Challenge, Opportunity, Discipline, and Ethics (CODE) program, and Mr. Jackson's participation in that program, as evidence that he is not impaired. (Seward Final Report at 2, 11.) These additional examples are intended to be illustrative, but the full extent of materials necessary to ensure that the evidentiary record for Mr. Jackson's *Atkins* hearing is complete and the evidence before the Court accurately reflects Mr. Jackson's intellectual functioning are set forth in the (final) table below. It is possible that the request for Mr. Jackson's BOP Central File will encompass most of these other requests, but Mr. Jackson's counsel has been unable to confirm this.

| Discovery Request: Additional Materials | Basis |
|---|---|
| Entire BOP Central File (Pursuant to PS 5800.11) | Dr. Seward cites Mr. Jackson's Central File from May 1, 2005 to April 13, 2011 as the basis for his report. (Seward Final Report at 1.) To accurately assess Mr. Jackson's adaptive behavior while incarcerated, the full file is necessary, particularly as the timeframe selected by Dr. |

| | Seward does not cover time served by Mr. Jackson in the general population, and may rely on a distorted picture of his adaptive skills. |
|---|---|
| Entire CJIS file | Dr. Seward cites unspecified information from the FBI Criminal Justice Information Services Division (CJIS). (Seward Final Report at 2.)  Not only is Mr. Jackson entitled to know exactly what CJIS records have been disclosed to Dr. Seward, but he should also be given access to those complete records. |
| **BOP Psychology and Mental Retardation Materials** | |
| Entire file from the BOP psychology data system | Relevant to complete picture of BOP's assessment of Mr. Jackson's intellectual functioning and other relevant psychological data. |
| Regulations and/or policies and protocols governing the BOP psychology program. | Relevant to complete picture of BOP's assessment of Mr. Jackson's intellectual functioning and other relevant psychological data. |
| All psychological and/or neurological evaluations conducted, including the copies of evaluations used, reasons evaluations conducted, notes & memorandum taken during evaluations, and the results of the evaluations | Relevant to complete picture of BOP's assessment of Mr. Jackson's intellectual functioning, including rebuttal of Dr. Seward's statement that Mr. Jackson has not been categorized as mentally retarded by the criminal justice system.  (Seward Final Report at 8.) |
| Identity of all persons who evaluated Mr. Jackson on an informal and/or formal basis | Will lead to discovery of sources of information relevant to complete assessment of Mr. Jackson's intellectual functioning in prison. |
| BOP policies & protocols regarding psychological and/or neurological assessment of inmates | Same as above. |
| BOP policies & protocols regarding the identification of inmates with mental retardation. | Same as above. |
| BOP policies and procedures for screening inmates identified as possibly mentally retarded | Same as above. |
| Services provided to inmates identified as mentally retarded | Same as above. |
| **CODE Program** | |
| Program manual, as well as other documents evidencing policies and procedures of CODE Program | Dr. Seward cites Mr. Jackson's participation in the CODE program as proof of his lack of adaptive deficits in his Communication and Use of Community Resources. (Seward Final Report at 11 and 13.)  Dr. Seward even opines that participation in the program essentially proves |

| | that Mr. Jackson is not mentally retarded, because inmates in the program "must have no serious mental impairment which would substantially interfere with or preclude full program participation." (*Id.* at 11.)  Mr. Jackson seeks complete information about this program, including its criteria for participation and substantive program. |
|---|---|
| Admission requirements inmates must meet to participate in CODE | Same as above. |
| Inmate screening procedures for the CODE program | Same as above. |
| Screening documents regarding or pertaining to Mr. Jackson's enrollment in CODE | Same as above. |
| Documents evidencing or regarding Mr. Jackson's use of resources provided to inmates enrolled in CODE | Same as above. |
| **Black Guerilla Family ("BGF")** | |
| All documents evidencing Mr. Jackson's participation in or affiliation with the Black Guerilla Family while imprisoned at USP Lompoc and/or elsewhere | Dr. Seward argues that Mr. Jackson lacks adaptive deficits related to Social/Interpersonal Skills due in part to his purported participation in the Black Guerilla Family. (Seward Final Report at 12.)  Dr. Seward cites no documentary evidence for this conclusion; only an interview with Mr. Feeney, who has not seen Mr. Jackson for more than a decade.  Mr. Jackson's counsel seeks more information about Mr. Jackson's alleged participation in this gang. |
| BOP Security Threat Group ("STG") files regarding the BGF | Same as above |
| **Access to Free-world Resources** | |
| Documents relevant to any of Mr. Jackson's requests to open bank accounts at Prime Bank and Wells Fargo Bank while incarcerated at Beaumont | Dr. Seward cites Mr. Jackson's "attempting" to open a bank account (presumably not succeeding) as proof of his lack of adaptive deficits in his Use of Community Resources. (Seward Final Report at 2 and 13.)  Mr. Jackson's counsel seeks complete information about these attempts. |
| Documents relevant to any arrangements for Mr. Jackson and Ms. Baaba to marry | Dr. Seward cites Mr. Jackson's "making arrangements" to marry Ms. Baaba as proof of his lack of adaptive deficits in his Self Direction.  (Seward Final Report at 13–14.)  Mr. Jackson's counsel seeks complete information about this attempt. |
| **Hygiene/Cell Sanitation** | |
| Criteria for awarding cell sanitation awards | Dr. Seward cites Mr. Jackson's receipt of "sanitation awards" as an example of his lack of adaptive deficits with regard to self-care.  (Seward Final Report at 11.)  Mr. |

11

|  | Jackson seeks information about the criteria for granting such awards. |
|---|---|
| Any and all records regarding the condition of Mr. Jackson's cell from any institution where he has been incarcerated, including any disciplinary citations or critical evaluations Mr. Jackson has received for the condition of his cell. | In light of Dr. Seward's reliance on "sanitation awards," Mr. Jackson seeks records that will establish whether such awards were an aberration, or an accurate portrayal of Mr. Jackson ability to maintain his cell while he has been incarcerated. |
| **Use of "Community Resources"** | **(Seward Final Report at 13)** |
| Procedures and policies for access to and use of Corrlinks | Corrlinks is the BOP email system for inmates.  Dr. Seward cites Mr. Jackson's use of Corrlinks as evidence that he lacks adaptive deficits in the area of Use of Community Resources.  These materials are relevant to Mr. Jackson's adaptive deficits with respect to his Use of Community Resources. |
| Procedures and policies for access to and use of Prisoner Assistant | Same as above.  Dr. Seward describes Prisoner Assistant as a "financial concierge service for prisoners."  (Seward Final Report at 13.) |
| **Disciplinary Files** | |
| All documents pertaining to the Control Unit Hearing in 2000 | Dr. Seward cites these materials as a source for his report, without elaboration.  (Seward Final Report at 2.)  Mr. Jackson's counsel is entitled to a complete set of these materials, as Dr. Seward has opened the door. |
| Mr. Jackson's entire BOP disciplinary file, including transcripts of disciplinary hearings, write-ups or reports of misconduct, records of disciplinary incidents, and records of disciplinary actions taken against Mr. Jackson. | Relevant to complete assessment of Mr. Jackson's functioning in prison. |
| **Correspondence** | |
| All correspondence between Mr. Jackson and prison staff, including but not limited to commissary requests, medical requests, and grievances | Dr. Seward cites Mr. Jackson's correspondence in his assessment of Mr. Jackson's adaptive behavior related to Communications, Use of Community Resources, Health, Safety, Self-Direction and Self-Care.  (Seward Final Report at 11, 13 and 15.)  This evidence may show that Mr. Jackson has deficits in these areas and rebut Dr. Seward's conclusions by showing that his use of Mr. Jackson's correspondence was selective. |
| All correspondence in the possession of the BOP, including but not limited to email | Dr. Seward cites Mr. Jackson's general correspondence in his assessment of Mr. Jackson's adaptive behavior related to Communications, Social and Interpersonal Skills, and |

| | |
|---|---|
| correspondence, by and between Mr. Jackson and Mr. Jackson's friends, family, and legal teams | Leisure.  (Seward Final Report at 11, 12 and 15.)  This evidence may show that Mr. Jackson has deficits in these areas and rebut Dr. Seward's conclusions by showing that his use of Mr. Jackson's correspondence was selective. |

## III.    CONCLUSION

For the foregoing reasons, Mr. Jackson respectfully requests that this Court grant leave for counsel to serve a *subpoena duces tecum* compelling the production by the Bureau of Prisons and other relevant agencies of the materials described herein.

Dated:  October 18, 2011.                                    Respectfully Submitted,


                                                                          */s/ CHRISTOPHER B. CRAIG*
CHRIS A. HOLLINGER (Cal Bar # 147637)      JAMES C. LOHMAN
chollinger@omm.com                                         (Fl Bar #0570214)
O'MELVENY & MYERS LLP                              jimmylohman@gmail.com
Two Embarcadero Center, 28th Floor             1806 East 39th Street
San Francisco, CA 94111                               Austin, TX 78722
Phone: 415.984.8906                                     Phone/Fax: 512.542.9947
Fax: 415.984.8701

                                                                  Attorneys for Petitioner
CHRISTOPHER B. CRAIG (Cal Bar #           DAVID LEE JACKSON
257108)
christophercraig@omm.com
O'MELVENY & MYERS LLP
400 S. Hope St.
Los Angeles, CA 90071
Phone: 213.430.6029
Fax: 213.430.6407

13

## CERTIFICATE OF CONFERENCE

This motion is filed in accordance with the "meet and confer" requirement of L.R. CV-7(h), pursuant to e-mail correspondence between Christopher Craig, undersigned counsel for Mr. Jackson, and Assistant United States Attorney Robert Hobbs on October 14 and 17, 2011.  In that correspondence, Mr. Hobbs stated that the Government does not oppose this motion.

/s/ *Christopher B. Craig*
Christopher B. Craig

**CERTIFICATE OF SERVICE**

I hereby certify that I served a true and correct copy of the foregoing *Notice of Appearance* upon counsel for Respondent by directing same to be sent via CM/ECF:

Joseph Robert Batte
U S Attorney's Office - Beaumont
350 Magnolia, Suite 150
Beaumont, TX 77701
(409) 839-2538
Fax: (409) 839-2550
Email: joe.batte@usdoj.gov

Robert Lavelle Hobbs
U S Attorney's Office - Beaumont
350 Magnolia, Suite 150
Beaumont, TX 77701
(409) 981-7912
Fax: (409) 839-2550
Email: robert.hobbs@usdoj.gov

Alan Reeve Jackson
U S Attorney's Office - Tyler
110 N. College, Suite 700
Tyler, TX 75702
(903) 590-1400
Fax: (903) 590-1439
Email: alan.jackson@usdoj.gov

Traci Lynne Kenner
U S Attorney's Office - Beaumont
110 N. College, Suite 700
Tyler, TX 75702
(903) 590-1400
Fax: (903) 590-1439
Email: traci.kenner@usdoj.gov

John Malcolm Bales
U S Attorney's Office - Lufkin
451 S. First St., Suite 201
Lufkin, TX 75901
(936) 639-4003
Fax: (936) 639-4033
Email: malcolm.bales@usdoj.gov

this 18th day of October, 2011.

_____ */s/ Christopher B. Craig* _____

2