UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| DAVID LEE JACKSON, | ) | |
| *Petitioner,* | ) | |
| | ) | |
| v. | ) | CASE NO. 1:09-CV-01039-RC |
| | ) | (Judge Clark) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| *Respondent.* | ) | |

**Petitioner David Lee Jackson's Reply
To The Government's Response In Opposition To Claim 1**

## I.   <u>INTRODUCTION</u>.

Petitioner David Lee Jackson was convicted of murdering a fellow inmate on December 16, 1999, while Mr. Jackson was incarcerated at the federal penitentiary in Beaumont, Texas.  It is undisputed that, at the time of this offense, Mr. Jackson was not eligible for capital punishment under the Federal Death Penalty Act ("FDPA").  Even though Mr. Jackson's involvement in this prison killing was well known to the authorities at the time, the Government made no serious effort to prosecute Mr. Jackson for this crime during the subsequent four years and instead permitted him to be released from prison on March 9, 2004.  If the Government had prosecuted Mr. Jackson (and obtained a conviction) at any time between December 16, 1999 and March 9, 2004, the maximum permissible sentence would have been life without the possibility of parole.

1

Yet, Mr. Jackson is on death row.  He finds himself there, because on May 6, 2004, he robbed a bank, to which he pleaded guilty on November 4, 2004.  It was only then – four years and eleven months after the prison killing – that the Government decided Mr. Jackson's actions in 1999 warranted serious prosecutorial attention.  And, not only did the Government charge Mr. Jackson with murder, it sought (and obtained) the death penalty under 18 U.S.C. § 3592(c)(2) solely on the basis that Mr. Jackson had "previously been convicted" of a felony involving the use of a firearm – a "prior" conviction that occurred more than four years *after* the prison killing.

Simply put, Mr. Jackson's life turns on a phrase.  The Government contends that the phrase "has previously been convicted" refers to any conviction occurring prior to conviction on the underlying capital offense; Mr. Jackson submits that the conviction must occur prior to commission of the underlying offense.  The Government's argument relies heavily on a single decision, *United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003), which construed this statutory language in a manner that is contrary to the decisions of two circuit courts construing substantially-identical provisions of another federal sentence-enhancement statute, and inconsistent with basic canons of statutory construction.  This Court should therefore not follow *Higgs*.  Moreover,  *Higgs* did not present, and thus did not decide, the constitutional questions that are raised by the application of Section 3592(c)(2) in Mr. Jackson's case.

Section 3592(c)(2)'s application in this case is unconstitutional because it allows for imposition of the death penalty even though it serves neither the deterrent nor retributive justifications for capital punishment and is on the wrong side of a national consensus.  In particular, conduct that occurred years after the underlying offense simply does not "reasonably justify" imposition of the death penalty in a "substantively rational" way, as it must to satisfy the Eighth Amendment.  *Zant v. Stephens*, 462 U.S. 862, 877, 879 (1983).

Not surprisingly, this case is an outlier.  Mr. Jackson is believed to be the only person in the history of the FDPA to be capitally prosecuted solely on the basis of a conviction that occurred after commission of the underlying offense.  Fortunately, the oddity of the Government's prosecution, the statutory text, and the weight of the statutory and constitutional case law all point in the same direction:  Mr. Jackson's sentence must be vacated.

## II.    PURSUANT TO BASIC CANONS OF STATUTORY CONSTRUCTION, A "PREVIOUS" CONVICTION UNDER SECTION 3592(C)(2) MUST OCCUR PRIOR TO COMMISSION OF THE UNDERLYING CAPITAL OFFENSE.

Section 3592(c)(2) makes a defendant eligible for the death penalty if "the defendant has *previously* been convicted of a Federal or State offense punishable by a term of imprisonment of more than 1 year, involving the use or attempted or threatened use of a firearm (as defined in section 921) against another person."  18 U.S.C. § 3592(c)(2) (emphasis added).  Because the FDPA does not define the phrase "has previously been convicted," the Court must interpret the provision.

### A.    Statutory Text.

The Government glosses over the authorities construing similar statutory language that were cited in Mr. Jackson's Motion for Collateral Relief ("Motion"), dismissing them as distinguishable merely because they involve a different statute.  *See* Government's Brief, Doc. No. 138, at 11.  But the interpretive principles invoked in these cases do not apply to only one statute; they apply to all statutes.  The Eighth Circuit's decision in *United States v. Talley*, 16 F.3d 972 (8th Cir. 1994), is instructive.  There, the court held that a "previous conviction" under the Armed Career Criminal Act must occur prior to the underlying offense.  *Id.* at 977.  The court began its analysis by observing that the phrase "previous convictions" might have "any one of three plausible interpretations": it might plausibly refer to convictions prior to sentencing

3

on the underlying offense, or to convictions prior to conviction on the underlying offense, or to convictions prior to commission of the underlying offense. *Id.* at 975.

Considering first the "prior to sentencing" option, the *Talley* court observed that this interpretation would "violate[] the fundamental canon of statutory construction whereby a court should 'give effect, if possible, to every clause and word of a statute.'" *Id.* (quoting *Moskal v. United States*, 498 U.S. 103, 109–10 (1990)). The *Talley* court explained:

> "If *previous convictions* meant those convictions a defendant had accumulated prior to sentencing, Congress could have omitted the word *previous* because, at sentencing, a district court could never consider *convictions* not yet in existence. Thus, adoption of the government's interpretation of *previous convictions* effectively would render the term *previous* superfluous."

*Talley*, 16 F.3d at 975–76 (emphasis in original). The Fourth Circuit, like the Eighth Circuit, has recognized that interpreting "previous convictions" to include all convictions that occurred prior to sentencing on the instant offense would violate the canon against surplusage. *United States v. Pressley*, 359 F.3d 347, 350 (4th Cir. 2004) (holding that "previous convictions" under Armed Career Criminal Act must predate commission of the underlying offense; "[I]f we were to adopt the Government's interpretation—that any convictions obtained prior to sentencing qualify as 'previous convictions'—we would be violating a cardinal rule of statutory construction by reading the term 'previous' out of the statute."). Precisely the same logic applies to the FDPA: the event to which the aggravating conviction is "previous" logically can only be sentencing, conviction, or commission of the underlying (capital) offense, and it would be entirely unnecessary for the statute to include the word "previously" to specify that the aggravating conviction must occur prior to sentencing on the capital offense.

4

The second potential interpretation of "previous" conviction, namely, that the aggravating conviction must only occur prior to conviction on the underlying offense, was rejected by both the *Talley* and *Pressley* courts as inconsistent with the Armed Career Criminal Act when read as a whole.  *See Talley*, 16 F.3d at 976 ("Analyzing previous convictions in context with the rest of § 924(e), we reject the interpretation that previous convictions refers to convictions that occur prior to conviction for the § 922(g) offense."); *Pressley*, 359 F.3d at 349–50.  Nonetheless, the Government effectively advances the same position here under the FDPA.  *See* Government's Brief, Doc. No. 138, at 10 (asserting that consideration of aggravating conviction which occurred after commission of underlying offense is permissible and does not render the term "previously" in the FDPA surplusage because Government's construction would "eliminate consideration of convictions which occur simultaneous with the capital conviction").  The Government's argument here should likewise be rejected, as inconsistent with the FDPA when read as a whole, because other provisions of the FDPA already prohibit the consideration of aggravating convictions for which a defendant is convicted simultaneously with the capital offense.  In particular, the FDPA requires the government to serve a notice "setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death," 18 U.S.C. § 3593(a)(2), and requires that this notice must be filed "a reasonable time *before the trial* or *before acceptance* by the court of a plea of guilty . . . ." 18 U.S.C. § 3593(a) (emphasis added).  Because a "simultaneous" conviction, by definition, could not exist before the trial on the capital offense, Section 3593 ensures that such convictions can never serve as statutory aggravators, and it would therefore be entirely superfluous to use the word "previously" in Section 3592(c)(2) to achieve the same result, as the Government suggests.

5

Thus, the only reading of Section 3592(c)(2) that gives full effect to each applicable provision of the FDPA, and does not render the word "previously" superfluous, is one which requires the "previous conviction" to occur prior to *commission* of the underlying capital offense – contrary to what happened in Mr. Jackson's case.

### B.     The Rule Of Lenity And Constitutional Avoidance Doctrine.

To the extent the Court finds any ambiguity regarding the meaning of the phrase "has previously been convicted," two additional doctrines mandate that Section 3592(c)(2) be construed to apply only to convictions occurring prior to commission of the underlying offense: the rule of lenity and the constitutional avoidance doctrine.

The rule of lenity "requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them"; a statute is ambiguous if it is "susceptible to more than one reasonable interpretation or more than one accepted meaning." *United States v. Solis*, 675 F.3d 795, 800 (5th Cir. 2012) (citations omitted).  The rule of lenity applies with even greater force where, as here, the statute in question would make the defendant eligible for the death penalty.  *See United States v. Pitera*, 795 F. Supp. 571, 577 (E.D.N.Y. 1992) (concluding that "strict adherence to the rule of lenity is appropriate" in the context of a capital sentencing scheme, and holding that a prior "conviction" did not include guilty pleas or jury verdicts).  In *Pitera*, a case involving a prior federal death penalty statute, the court explained that "where a statutory aggravating factor is not drawn with precision, where it is subject to two possible interpretations, caution mandates selection of the narrower, lest classes of individuals not specifically identified by Congress be subject to irrevocable punishment."  *Id.*

*Pitera* rightly recognized the constitutional, life-or-death implications of statutory aggravators, and the special care courts must exercise to avoid adopting unduly expansive

interpretations of such provisions.  These considerations provide yet another reason, in addition to those discussed above in Section II.A, for rejecting the position advanced by the Government in its brief.

The constitutional avoidance doctrine also dictates that Section 3592(c)(2) be construed in Mr. Jackson's favor.  The Supreme Court has "instructed the federal courts to avoid constitutional difficulties by adopting a limiting interpretation if such a construction is fairly possible."  *Skilling v. United States*, 130 S. Ct. 2896, 2929–30 (2010) (internal quotation marks and alterations omitted).  As discussed in Section III, below, Section 3592(c)(2)'s invocation in this case raises significant "constitutional difficulties" under the Eighth Amendment.[1]  Those weighty constitutional questions can be avoided by limiting Section 3592(c)(2) to convictions that occurred after commission of the underlying capital offense – a statutory construction that is not only "fairly possible," but the one applied to a substantially identical statute by the Fourth and Eighth Circuits in *Pressley* and *Talley*.

### C.    The Government's Individualized Sentencing Argument.

The Government seeks to justify including post-offense convictions within Section 3592(c)(2) by reciting general truisms about the importance of individualized sentencing and the need to consider all relevant conduct.  *See*, *e.g.*, Government's Brief, Doc. No. 138, at 11 (referring to the FDPA's "design to allow the jury to consider all relevant evidence about the circumstances of the crime and the defendant's background in assessing sentence").  In so doing, however, the Government conflates the analytical framework for statutory aggravating factors (eligibility aggravators), which are used at the definition/eligibility stage to narrow the class of

---

[1]    Moreover, for the reasons discussed in Mr. Jackson's Motion, the application of Section 3592(c)(2) in this case also raises significant concerns under the Double Jeopardy Clause and the Due Process Clause.  *See* Doc. No. 41, at 25–26.

offenders who are eligible for the death penalty, and for non-statutory aggravating factors, which are used only at the selection stage to decide whether a sentence of death is appropriate for a death-eligible offender.  As the Supreme Court explained in *Zant*:

> "Our cases indicate, then, that statutory aggravating circumstances play a constitutionally necessary function at the stage of legislative definition: they circumscribe the class of persons eligible for the death penalty. But the Constitution does not require the jury to ignore other possible aggravating factors in the process of selecting, from among that class, those defendants who will actually be sentenced to death.  What is important ***at the selection stage*** is an individualized determination on the basis of the character of the individual and the circumstances of the crime."

462 U.S. at 878–79 (emphasis added).  Thus, while aggravating factors used at the definition/eligibility stage must meet constitutional requirements of genuine narrowing and reasonable justification, *id.* at 876, non-statutory aggravating factors used at the selection stage need not meet these requirements and may instead be used to ensure that an individualized decision is made.  *Id.* at 879; *see also Tuilaepa v. California*, 512 U.S. 967, 972 (1994) ("We have imposed a separate requirement for the selection decision, where the sentencer determines whether a defendant eligible for the death penalty should in fact receive that sentence. . . .  That requirement is met when the jury can consider relevant mitigating evidence of the character and record of the defendant and the circumstances of the crime.").

The Government's argument regarding the importance of individualized sentencing – for purposes of applying a statutory aggravator at the definition/eligibility stage – was rejected in *Pitera*.  There, the government argued that interpreting the word "conviction" to exclude guilty

8

pleas and jury verdicts would "unduly hamper[] the full consideration of a defendant's character that is the goal of individualized sentencing."  795 F. Supp. at 577.  But, as the *Pitera* court noted, this was a false choice:  "the government remains free to proffer evidence of the additional homicides as *non-statutory* aggravating factors."  *Id.* (emphasis in original ).  Similarly, while the Section 3592(c)(2) statutory aggravator should be construed so as not to apply to post-offense convictions, thus prohibiting those convictions from being used for purposes of determining death-penalty *eligibility*, those convictions, where appropriate, could still be introduced as non-statutory aggravating factors for purposes of the post-eligibility selection decision.

**D.**    ***United States v. Higgs.***

The Government relies almost entirely on the Fourth Circuit's opinion in *United States v. Higgs*, 353 F.3d 281, 318 (4th Cir. 2003), which held that "previous convictions" under a different statutory aggravator in the FDPA need only occur prior to sentencing on the underlying capital offense.[2] *See* Government's Brief, Doc. No. 138, at 7–10.  In *Higgs*, unlike in Mr. Jackson's case where the "previous" conviction was the sole statutory aggravator, the jury found four different statutory (i.e., eligibility) aggravators:  (1) the deaths occurred during the commission of another crime (kidnapping); (2) Higgs had a previous conviction for a violent felony involving a firearm; (3) Higgs had a previous conviction for a serious federal drug offense; and (4) Higgs's crime involved multiple killings.  *Id.* at 295.  Higgs argued that his prior drug conviction statutory aggravator under Section 3592(c)(12) was invalid because it was based on a conviction that occurred after his commission of the underlying three murders.  *Id.* at 317.

---

[2]    This holding appears to be in substantial tension with the Fourth Circuit's subsequent holding in *Pressley*, where the court held that "previous conviction" under a similar sentence enhancement statute only applied to convictions that occurred prior to commission of the underlying offense.  *See* Section II.A, above.

The *Higgs* court rejected this argument, but, in doing so, focused entirely on the relevance of post-offense convictions at the ***selection*** stage of capital sentencing, when the jury is indisputably allowed to weigh a broad range of factors to determine whether a death-eligible defendant should actually be sentenced to death.  *See id.* at 318 ("[T]he entire section speaks in terms of those things that must be considered when the death sentencing hearing is conducted ***and the petit jury begins its weighing process***.") (emphasis added).  The *Higgs* court made the same mistake the Government does in its brief – it limited its analysis to the function served by the statutory aggravator at the selection stage, and thereby relied on an "individualized sentencing" rationale that is manifestly not applicable at the eligibility stage.  *See* Section II.C, above.  Yet, in the FDPA's capital sentencing scheme, statutory aggravators "necessarily serve the dual purpose of establishing a defendant's eligibility for the death penalty in addition to his actual sentence."  *Jennings v. McDonough*, 490 F.3d 1230, 1255 n.22 (11th Cir. 2007) (discussing "weighing" capital sentencing schemes); *United States v. Jones*, 132 F.3d 232, 251 (5th Cir. 1998) (stating that the FDPA is a "weighing" scheme).  And when, as here, the presence of a single statutory aggravator is the sole basis for the defendant's eligibility for the death penalty, the minimum constitutional requirements recognized by the Supreme Court in *Zant* cannot be ignored.[3]  Moreover, the *Higgs* opinion fails to discuss:  the canon against surplusage; the effect of Section 3593(a)(2)'s pre-trial notice requirement; the rule of lenity; the constitutional avoidance doctrine; and the fact that individualized sentencing could still have been achieved at the selection stage by submitting evidence of Higgs's post-offense drug conviction as a non-statutory aggravator.  Whatever one's view on the outcome in *Higgs*, these

---

[3]     The *Higgs* court did not need to address whether allowing a post-offense drug conviction to be a basis for death penalty eligibility satisfied *Zant*'s substantive requirements for statutory aggravators, because it already had concluded that two other constitutionally valid statutory aggravating factors were present.  *See Higgs*, 353 F.3d at 315–16 (upholding jury's finding of statutory aggravators for death during kidnapping and previous firearm-related felony conviction).

omissions are glaring, the Government fails to address them in its briefing before this Court, and *Higgs* should not be followed.

\* \* \*

In sum, and for the reasons discussed above, Mr. Jackson's death sentence is "in excess of the maximum authorized by law," 28 U.S.C. § 2255, and must be vacated.[4]

### III.   THE SECTION 3592(C)(2) AGGRAVATOR, AS APPLIED IN THIS CASE, VIOLATES THE EIGHTH AMENDMENT.

The Government's interpretation of Section 3592(c)(2) violates the Eighth Amendment. Here, the challenged statutory aggravator is the sole basis for death penalty eligibility. Thus, to uphold Mr. Jackson's death sentence, the Court would necessarily have to conclude that Section 3592(c)(2), as applied to a remote-in-time, post-offense firearm brandishing conviction, satisfies constitutional requirements. It does not, because so applied the aggravator would allow for imposition of the death penalty where neither the essential retributive nor deterrent justifications for capital punishment are met. *Cf. Kennedy v. Louisiana*, 554 U.S. 407, 441 (2008) ("[C]apital punishment is excessive when it is grossly out of proportion to the crime or it does not fulfill the two distinct social purposes served by the death penalty: retribution and deterrence of capital crimes.").

*Zant* requires statutory aggravators to both genuinely narrow the class of death-eligible offenders and "reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Zant*, 462 U.S. at 877. Statutory aggravators must "adequately differentiate [the defendant's case] in an objective, evenhanded, and ***substantively rational*** way from the many [other] murder cases in which the death penalty may not be

---

[4]   *See, e.g.*, *Bifulco v. United States*, 447 U.S. 381 (1980) (granting § 2255 motion and vacating sentence not authorized by statute); *United States v. Buitrago*, 919 F.2d 348, 350 (5th Cir. 1990) (same); *United States v. Lloyd*, 983 F. Supp. 738, 745 (N.D. Ill. 1997) (holding that § 2255 challenges to sentences above the statutory maximum are not subject to waiver).

imposed." *Id.* at 879 (emphasis added).  The Supreme Court has emphasized that this standard is intended to address several concerns raised in *Furman v. Georgia*, 408 U.S. 238 (1972), including that "it is highly implausible that only the worst criminals or the criminals who commit the worst crimes are selected for [capital] punishment," *id.* at 294 (Brennan, J., concurring); that those selected for capital punishment "are among a capriciously selected random handful upon whom the sentence of death has in fact been imposed," *id.* at 309–10 (Stewart, J., concurring); and that "there is no meaningful basis for distinguishing the few cases in which [death] is imposed from the many cases in which it is not," *id.* at 313 (White, J., concurring).  *Zant*, 462 U.S. at 877 n.15.

*Zant* also emphasized the role statutory aggravators play in "defin[ing] those crimes and those criminals for which capital punishment is most probably an effective deterrent."  *Zant*, 462 U.S. at 877 n.15 (quoting *Gregg v. Georgia*, 428 U.S. 153, 184 (1976)).  Here, the application of Section 3592(c)(2) provides no meaningful deterrent effect.  "Assuming the offender behaves in a rational way, as one must to justify the penalty on grounds of deterrence," *Kennedy*, 554 U.S. at 445, the threat of the death penalty could not possibly have deterred Mr. Jackson from committing the murder in question because he indisputably was not eligible for capital punishment at the time he committed the murder, and, according to the Government's theory, he did not even become eligible until approximately five years later.

Nor does Section 3592(c)(2)'s application here promote a valid retributive justification for the death penalty.  *See Graham v. Florida*, 130 S. Ct. 2011, 2028 (2010) (noting that retribution is intended to "restor[e] . . . the moral imbalance caused by the offense").  Applying the aggravator to convictions that post-date the commission of the underlying offense allows for situations where, as in Mr. Jackson's case, the Government has already effectively decided that

12

an offense does not merit prosecution, let alone capital prosecution – but the "fortuity" of a

subsequent non-capital conviction allows the Government to impose the ultimate punishment.  In

such circumstances, the Government is not meaningfully seeking retribution for the underlying

capital offense; it is seeking retribution for the aggravating bank robbery.  This is hardly a

"reasonable justification" for the death penalty.  *Zant*, 462 U.S. at 877; *see also Enmund v.*

*Florida*, 458 U.S. 782, 797 (1982) ("We have no doubt that robbery is a serious crime deserving

serious punishment.  It is not, however, a crime 'so grievous an affront to humanity that the only

adequate response may be the penalty of death.'") (quoting *Gregg*, 428 U.S. at 184).

In determining whether the aggravator's application in this case satisfies the Eighth

Amendment, the Court should also consider whether such a capital prosecution comports with

evolving standards of decency as evidenced by national consensus.  *See, generally, Kennedy*,

554 U.S. at 419.  To counsel's knowledge (and undisputed by the Government in its Brief), Mr.

Jackson is the only person to be capitally prosecuted under the FDPA based solely on a

"previous conviction" that occurred after his commission of the underlying offense.  *See* Motion,

Doc. No. 41, at 19.[5]  Of the 33 states that presently authorize the death penalty,[6] no more than 18

recognize an analogous[7] aggravating circumstance which, alone, could make a defendant eligible

---

[5]    It does not appear that the Government intended to make Mr. Jackson a test case.  Rather, Mr. Jackson was initially charged with a second prior conviction aggravator that occurred prior to his commission of the murder in question, but that prior conviction did not involve a firearm and thus did not satisfy the requirements of Section 3592(c)(2).  *See* Government's Brief, Doc. No. 138, at 3 and n.5.

[6]    *See* Death Penalty Information Center, States With and Without the Death Penalty, http://www.deathpenaltyinfo.org/states-and-without-death-penalty.

[7]    For purposes of this survey, an "analogous" aggravating circumstance refers to a statutory aggravating factor that, on its face, could have encompassed Mr. Jackson's 2004 conviction for bank robbery.

for the death penalty.[8]  And, in at least two of those 18 jurisdictions, the definition of "previous conviction," or similar terminology, does not include conduct that post-dates the capital offense.[9]

Thus, only in a minority of states (no more than 16 out of 50), can a defendant be made eligible for the death penalty solely on the basis of a non-capital felony conviction that post-dates commission of the capital offense.  That the vast majority of states – at least 34 – have reached the opposite conclusion is compelling evidence of society's prevailing norms and the national consensus against the imposition of the death penalty under such circumstances.  The Supreme Court has found similar statistics to be persuasive evidence of a national consensus against the imposition of the death penalty.  *See, e.g.*, *Roper v. Simmons*, 543 U.S. 551, 564-67 (2005) (fact that 30 states, including 12 non-capital jurisdictions, had not adopted death penalty for juvenile offenders was evidence of a national consensus); *Atkins v. Virginia*, 536 U.S. 304, 313-16 (2002) (fact that 30 states, including 12 non-capital jurisdictions, had not allowed for death penalty against mentally retarded offenders was evidence of a national consensus).

For the foregoing reasons, if the Court were to determine that Section 3592(c)(2) is applicable by its terms, the Court should rule that the aggravator's application under the circumstances of this case violates the Eighth Amendment.

---

[8]     *See* Ala. Code §§ 13A-5-46(e)(3), 13A-5-49(2) (1975); Ariz. Rev. Stat. §§ 13-751(F)(2), 13-752(D) (LexisNexis 2012); Ark. Code §§ 5-4-603(a)(1), 5-4-604(3) (2012); Colo. Rev. Stat. § 18-1.3-1201(2)(a)(I), (5)(b) (2011); Del. Code tit. 11 § 4209(d), (e)(1)(i) (2012); Fla. Stat. § 921.141(3)(a), 5(b) (2010); La. Code. Crim. Proc. art. 905.3 & art. 905.4(A)(3) (2012); Miss. Code § 99-19-101(2), (5)(b) (2011) ; Mo. Rev. Stat. §§ 565.030(4)(2), 565.032(2)(1) (2012); Neb. Rev. Stat. §§ 29-2520(4)(h), 29-2523(1)(a) (2012); Nev. Rev. Stat. §§ 200.030(4)(a), 200.033(2)(b) (2012);  N.C. Gen. Stat. §15A-2000(c)(1), (e)(3) (2012); Okla. Stat. tit. 21§ 701.12(1), tit. 21§ 701.11 (2012); 42 Pa.C.S.A. § 9711(c)(1)(iv), (d)(9) (2012); S.D. Codified Laws §§ 23A-27A-4, 23A-27A-1(1) (2012); Tenn. Code § 39-13-204(i) & (i)(2) (2012); Utah Code §§ 76-5-202(1)(j); 76-3-207(5)(b) (2012); and Wyo. Stat. § 6-2-102(e), (h)(ii) (2012).

[9]     *See State v. Stewart*, 197 Neb. 497, 520, 250 N.W.2d 849, 863 (1977), overruled on other grounds; *State v. Palmer*, 224 Neb. 282, 314, 399 N.W.2d 706, 728-729 (1986); *State v. Warren*, 347 N.C. 309, 319, 492 S.E.2d 609, 614 (1997).

14

## IV.    <u>CONCLUSION</u>.

For the foregoing reasons, Mr. Jackson respectfully requests that the Court vacate his death sentence.

Dated:  May 22, 2012.                           Respectfully Submitted,


                                                 <u>   /s/ Chris A. Hollinger          </u>

CHRIS A. HOLLINGER (Cal Bar # 147637)            JAMES C. LOHMAN
chollinger@omm.com                               (Fl Bar #0570214)
O'MELVENY & MYERS LLP                            jimmylohman@gmail.com
Two Embarcadero Center, 28th Floor               1806 East 39th Street
San Francisco, CA 94111                          Austin, TX 78722
Phone: 415.984.8906                              Phone/Fax: 512.542.9947
Fax: 415.984.8701

                                                 Attorneys for Petitioner
CHRISTOPHER B. CRAIG (Cal Bar # 257108)          DAVID LEE JACKSON
christophercraig@omm.com
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Phone: 213.430.6029
Fax: 213.430.6407

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the foregoing "Petitioner

David Lee Jackson's Reply to the Government's Response in Opposition to Claim 1"

upon counsel for Respondent by sending same via CM/ECF:


Joseph Robert Batte
U S Attorney's Office - Beaumont
350 Magnolia, Suite 150
Beaumont, TX 77701
(409) 839-2538
Fax: (409) 839-2550
Email: joe.batte@usdoj.gov

Robert Lavelle Hobbs
U S Attorney's Office - Beaumont
350 Magnolia, Suite 150
Beaumont, TX 77701
(409) 981-7912
Fax: (409) 839-2550
Email: robert.hobbs@usdoj.gov

Alan Reeve Jackson
U S Attorney's Office - Tyler
110 N. College, Suite 700
Tyler, TX 75702
(903) 590-1400
Fax: (903) 590-1439
Email: alan.jackson@usdoj.gov

Traci Lynne Kenner
U S Attorney's Office - Beaumont
110 N. College, Suite 700
Tyler, TX 75702
(903) 590-1400
Fax: (903) 590-1439
Email: traci.kenner@usdoj.gov

John Malcolm Bales
U S Attorney's Office - Lufkin
451 S. First St., Suite 201
Lufkin, TX 75901
(936) 639-4003
Fax: (936) 639-4033
Email: malcolm.bales@usdoj.gov


this 22nd day of May, 2012.


                                        /s/ Christopher B. Craig

16