UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

DAVID LEE JACKSON,                    )
   *Petitioner,*                      )
               )
   v.                             )    CASE NO. 1:09-CV-01039-RC
               )    (Judge Clark)
               )
UNITED STATES OF AMERICA,              )
   *Respondent.*                    )

---

### Status Conference Statement

---

At Mr. Jackson's request, this Court has scheduled a status conference for January 23, 2013.  In order to provide the Court with background information regarding the issues that Mr. Jackson's counsel would like to discuss at the status conference, counsel submits the following:

Based on previous in-court statements of the Court and counsel for both parties, Mr. Jackson's counsel has been preparing for the upcoming *Atkins* hearing (scheduled for March 25-27, 2013) with the understanding that IQ would not be at issue and that the hearing's focus would be on adaptive deficits.  During a July 24, 2012 conference, for example, the Court set forth its understanding of the Government's position regarding the *Atkins* issues:

> [I]t seems that the government agrees that the IQ scores, both before and after 18, are within that range set out in the cases and set out by the psychological and psychiatric associations as being, I guess, the minimum or the trigger point for looking at whether or not someone is mentally retarded . . . ***So, now what we're looking at is the testimony and evaluation of adaptive behavior.  And given that, it would seem that any expert who was hired would not need to do a full-blown workup with IQ testing and so forth.***
> (Tr. 7/24/12 Telephonic Hearing at 3) (emphasis added).

The Court then gave the Government ample opportunity to correct the Court's

understanding of the scope of the *Atkins* case, and the Government's counsel expressly said that

he had no disagreement:

> THE COURT:  So, let me first ask the government: Do you
> disagree with my analysis of what the issue is going to wind up
> being in this case?
>
> [COUNSEL FOR THE GOVERNMENT] MR. HOBBS:  Robert
> Hobbs for the government, your Honor.  I have no disagreement
> with how you characterized it.  (*Id*. at 4).

Later in the July 24 conference, the Court repeated its assessment that the contested issue

for the *Atkins* case would be adaptive deficits and that the scope of the experts' work would

conform to that understanding:

> THE COURT:  Mr. Hobbs has already agreed on the record with
> my analysis that -- *and I don't see how the government's expert at
> this point could get up and start making a point about IQ given
> all the statements in his report,* both pre-18 and after 18.  Then he
> says those IQs along with adaptive behavior.  I mean, he's hitting
> the point; and, so, in my mind petitioner has the -- if you call it a
> "magic number" or "the line" or whatever in terms of IQ scores.
> I'm not going to listen to experts talking about that much at this
> point.  There is no point in plaintiff gilding the lily, and the
> government's expert would destroy his own credibility if he tried
> to backtrack now.  So, we really are on the adaptive behavior.  (*Id*.
> at 10) (emphasis added).

In order to preserve the appellate record and formalize what Mr. Jackson believed to be

the universal understanding that IQ was no longer a subject to be litigated, one of Mr. Jackson's

undersigned counsel (Chris Hollinger) contacted Robert Hobbs (the Government's attorney) in

early December about entering into a stipulation on the IQ prong.  Acknowledging that this

subject had been earlier tabled on account of the medical condition of Mr. Jackson's original

expert, Mr. Hobbs wrote that he would re-engage Dr. Seward (the Government's expert) and

others and respond to Mr. Hollinger's proposed stipulation in early to mid-January.

Mr. Jackson's co-counsel, Morris Moon, then explained that an answer would be needed sooner

given that new budgetary arrangements and other hearing preparation would have to be undertaken if Mr. Jackson's IQ was in fact going to be in contention.

Since that time, counsel for both parties have diligently attempted to reach agreement on a stipulation.  Mr. Hobbs and Mr. Moon spent significant time parsing language for such a stipulation and found that both were able to agree that Mr. Jackson's IQ was in the range of mental retardation and that there should be no need to litigate the IQ issue at the March hearing. In late December, it appeared that a stipulation was likely, as Mr. Hobbs advised Mr. Moon that his leadership would agree to a stipulation.  On January 4, Mr. Moon was informed that the Government's appellate chief had agreed to stipulate that Mr. Jackson's IQ was "below 75" and that there would be no need to litigate IQ at the upcoming hearing.  Mr. Hobbs' informed Mr. Moon that the parties were "99% there" and that his office was in favor of the negotiated stipulation language but needed the agreement of the Government's experts from the Forensic Panel (the organization with which Dr. Seward is affiliated for purposes of providing his expert report).

On January 10, however, Mr. Hobbs contacted Mr. Moon and relayed that Dr. Seward and the Forensic Panel were opposed to the agreed stipulation.  Mr. Hobbs, appearing to convey Dr. Seward's position, also suggested the *Atkins* hearing be limited to adaptive deficits and "to the issues of what may be responsible for Mr. Jackson's performing poorly on standardized testing."  As this language would have done nothing to limit the scope of the *Atkins* hearing, or limit the need for additional and extensive expert-related litigation preparation on the first *Atkins* prong in order to anticipate and rebut Dr. Seward's heretofore-undisclosed views on why Mr. Jackson's test scores do not satisfy the IQ prong of the *Atkins* inquiry, Mr. Jackson's counsel could not agree.  After further assurances that an agreement could be reached, Mr. Hobbs finally

3

informed Mr. Moon on January 16, 2013 that no stipulation could be obtained because the Government's expert was opposed to the previously agreed-upon language.

Consistent with what appeared to be a mutual agreement that IQ would no longer be at issue in Mr. Jackson's case and in substantial reliance on the Government's repeated assurances over the past month that a stipulation would be reached, Mr. Jackson's counsel has been preparing for the *Atkins* hearing with a focus on proving adaptive deficits. Counsel hired a new expert and sought a limited budget – consistent with prior discussions with the Court – to encompass solely the evaluation and review of the evidence necessary to establish significant limitations in adaptive functioning. Now that it appears the parties have an irreconcilable disagreement about the scope of the *Atkins* hearing, Mr. Jackson's counsel has promptly brought this matter to the Court's attention. Mr. Jackson, who bears the burden here, cannot fully prepare for the hearing until this dispute is resolved.

4

Dated: January 21, 2013 Respectfully Submitted,

_/s/ Christopher B. Craig_

CHRIS A. HOLLINGER (Cal Bar # 147637)  Attorneys for Petitioner
chollinger@omm.com   DAVID LEE JACKSON
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Phone: 415.984.8906
Fax: 415.984.8701

CHRISTOPHER B. CRAIG (Cal Bar # 257108)
christophercraig@omm.com
O'MELVENY & MYERS LLP
400 S. Hope St.
Los Angeles, CA 90071
Phone: 213.430.6029
Fax: 213.430.6407

MORRIS H. MOON (Texas Bar #24032750)
Morris_Moon@fd.org
Federal Capital Habeas Project
2109 Decatur Street
Houston, Texas 77007
Phone: 713.880.3556

**CERTIFICATE OF SERVICE**

On January 21, 2013, I electronically filed and served the forgoing Status Conference Statement with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court.

                                                      _____*/s/ Christopher B. Craig*_____