UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

DAVID LEE JACKSON              |   DOCKET 1:09CV1039
                               |
                               |   JANUARY 23, 2013
VS.                            |
                               |   2:32 P.M.
                               |
UNITED STATES OF AMERICA       |   BEAUMONT, TEXAS

-------------------------------------------------------------

VOLUME 1 OF 1, PAGES 1 THROUGH 20

REPORTER'S TRANSCRIPT OF STATUS CONFERENCE

BEFORE THE HONORABLE RON CLARK
UNITED STATES DISTRICT JUDGE

-------------------------------------------------------------

APPEARANCES:

FOR THE PETITIONER:     CHRIS A. HOLLINGER (BY TELEPHONE)
                        O'MELVENY & MYERS
                        TWO EMBARCADERO CENTER
                        28TH FLOOR
                        SAN FRANCISCO, CALIFORNIA  94111

                        CHRISTOPHER CRAIG (BY TELEPHONE)
                        O'MELVENY & MYERS
                        400 SOUTH HOPE
                        LOS ANGELES, CALIFORNIA  90071

                        MORRIS H. MOON (BY TELEPHONE)
                        FEDERAL CAPITAL HABEAS PROJECT
                        2109 DECATUR STREET
                        HOUSTON, TX 77007

FOR THE RESPONDENT:     ROBERT L. HOBBS
                        JOSEPH R. BATTE
                        U.S. ATTORNEY'S OFFICE
                        350 MAGNOLIA AVENUE
                        SUITE 150
                        BEAUMONT, TEXAS  77701

                            TRACI LYNNE KENNER (BY TELEPHONE)
                            US ATTORNEY'S OFFICE
                            110 N COLLEGE
                            SUITE 700
                            TYLER, TX 75702


COURT REPORTER:             CHRISTINA L. BICKHAM, CRR, RMR
                            FEDERAL OFFICIAL REPORTER
                            300 WILLOW, SUITE 221
                            BEAUMONT, TEXAS  77701




     PROCEEDINGS REPORTED USING COMPUTERIZED STENOTYPE;
   TRANSCRIPT PRODUCED VIA COMPUTER-AIDED TRANSCRIPTION.

3

(REPORTER'S NOTES 1-23-2013\JACKSON, 2:32 P.M., WEDNESDAY, JANUARY 23, 2013, BEAUMONT, TEXAS, HON. RON CLARK PRESIDING.)

(OPEN COURT, ALL PARTIES PRESENT.)

THE COURT:  Okay.  I'm calling *David Lee Jackson versus United States*, 1:09cv1039.

Who is here for Mr. Jackson?

MR. HOLLINGER:  Chris Hollinger from O'Melveny & Myers in San Francisco, your Honor.

THE COURT:  Okay.

MR. MOON:  Morris Moon here on behalf of Mr. Jackson.

THE COURT:  All right.

MR. CRAIG:  And Christopher Craig, also O'Melveny & Myers, also here for Mr. Jackson.

THE COURT:  Okay.  And then for the government, we have Ms. Kenner?

MS. KENNER:  That's correct, your Honor.

THE COURT:  All right.  And then here in the courtroom, if you would be sure to speak into the microphone so the people on the phone can hear you.

MR. HOBBS:  Yes, your Honor.  Robert Hobbs for the government and Joe Batte to my right.

THE COURT:  Okay.  Ms. Kenner, we'll probably know who you are when you speak.

Christina L. Bickham, RMR, CRR
409/654-2891

4

But, gentlemen, when any one of the three of you on the phone speak, please say your name so the court reporter knows exactly who you are.

This hearing is a result of this status conference statement that was set, evidently some concern raised at this fairly late date about what the hearing is going to be. And I'm not sure what it is you want, counsel; so, Mr. Hollinger or Craig or Moon, what is it you want?

MR. HOLLINGER: Chris Hollinger for Mr. Jackson, your Honor.

For the reasons set out in our statement, we believe the parties through counsel had a very clear agreement in July that Mr. Jackson had satisfied the IQ prong of the mental retardation test and that the remaining issues to be litigated were related to adaptive behaviors. We've set out the relevant passages from the hearing transcript, and that's the basis for our understanding in that regard.

Recently in the course of --

THE COURT: Okay. Well, I've got that from your writing. What I'm asking is what you want.

MR. HOLLINGER: We would like a -- because there appears to be a disagreement between the government and Mr. Jackson regarding the scope of issues to be

discussed and addressed in March, we would like a clear indication from the court that testimony will not be allowed in March on the subject of IQ scores because we have reason to believe the government intends to do that even though, Number 1, it is contrary to the agreement reached in July and, Number 2, Dr. Seward has never before expressed opinions regarding the validity of IQ scores in his expert report and the deadline for service of an expert report was September 23, 2011.

THE COURT:  Okay.  And, so, if an expert witness was to testify in court about something that had not properly been disclosed -- and I recognize that you may not be really familiar with the Eastern District of Texas, but our rules are actually more stringent and more stringently enforced than most of the rest of the country.  What would the trial lawyer on your side do?

MR. HOLLINGER:  Well, we would object and seek to preclude that testimony.

THE COURT:  Then what do you anticipate, based on the Federal Rules of Civil Procedure and especially as supplemented by the rules of the Eastern District of Texas, that any judge in the Eastern District in general and this court in particular, based on every ruling I've ever made on this topic -- what do you anticipate the ruling would be?

6

MR. HOLLINGER:  I anticipate the objection would be granted.

THE COURT:  Okay.

MR. HOLLINGER:  But --

THE COURT:  On the other hand, you are asking me with -- and keeping in mind that I do have to make a finding based on evidence I'm presented, aren't you almost inviting error by having me rule now before I've heard a single shred of evidence?  Basically I would have to make a pronouncement based on what I remember from reading the expert reports without any testimony.

I mean, that's what I'm trying to figure out, what you want.  In other words, go through the analysis. I rule right now, "Okay.  His IQ is far below the needed" and make whatever finding under the two different tests that -- or the two different psychiatric/psychological organizations the Supreme Court has used or the various ones, you know.

So, I make that finding and then you're standing in front of the Fifth Circuit and they go, "How did Judge Clark make that?  There was no evidence on the record when he made that ruling."  What's your response going to be?

MR. HOLLINGER:  Well, our concern is that in light of what was agreed on the record in July and in

7

light of what has been -- or what has not been disclosed previously by Dr. Seward, our concern is that Dr. Seward shows up at a hearing in March and instead of simply saying, "Yes, I administered this test; and this was my result," says, "Oh, and by the way, here are eight different reasons why that result should not be regarded as within the range of mental retardation."

THE COURT:  And is your objection going to come at the word "eight" or "different," or how fast do you get to your feet when you know it's not in his report?

I mean, I'm not trying to make light of this, counsel.  I know this is serious, and we're talking about a man's life here.  But you've asked for a hearing almost for an advisory opinion.  Let's say, for example, I said, "Okay, government, I'm ordering you to stipulate" and I shake my finger at them and tell them to go stipulate to something.

All right.  What have I given you then?  Here you are standing before the Fifth Circuit; and they say, "Counsel, on what basis did Judge Clark, who is getting old now, think he could order the government to stipulate to anything?"

I mean, that -- what is it you want that you think is actually going to help you -- well, I'll stop

8

picking on you for a minute.  Let me ask Mr. Hobbs.

Mr. Hobbs, you're well familiar with the rules; and I presume that if you're bringing an expert witness under the rules and he's put in a report, you're not going to be asking him a bunch of questions that he hasn't properly disclosed previously, are you?

MR. HOBBS:  Not to my knowledge, judge; or I don't have a plan to ask him any question that would elicit an answer not covered in his report.

THE COURT:  I mean -- and like I say, I understand you haven't been in my court before.  I don't think any of the three of you have.  I do know that at various seminars and probably around various bar associations -- well, let me put it this way.  Judge Ward of our district said the quickest way to lose a case or a motion in the Eastern District of Texas is to not disclose evidence that you want to submit.  And that's pretty much been the rule since 1992.

And I also know, from practicing in other areas and listening to other lawyers, that we are considered more stringent even than others on that; but it's only fair.  And, in fact, the Texas state courts went in for that rule for a number of years, well, starting in the Eighties when I was practicing; so, it's not something I'm unfamiliar with.

9

But you've heard what Mr. Hobbs has said.  And you can check it out.  You know, run especially patent discovery orders that I've entered or Judge Davis or Judge Ward or any of the magistrate judges have entered on PACER or just look at our rules.  But what is it you would like me to do that wouldn't actually hurt your client when you're up on appeal?

MR. MOON:  Judge, this is Morris Moon if I could address the court briefly.

THE COURT:  Sure.

MR. MOON:  You know, really the issue is about our -- is notice to us and our ability to prepare.  So, I understand what you're saying about precluding that evidence at the hearing; but if that occurs and, for example, your Honor makes a finding in our favor on that prong, the Fifth Circuit can reverse that just based on the record.  And we're faulted for that because we had the opportunity -- the hearing was not limited.  We had the opportunity to present any evidence we wanted, and we failed to present evidence about many issues that could come into play --

THE COURT:  Ah, but counsel --

MR. MOON:  -- agreement of the parties on the IQ issue.

THE COURT:  Mr. Moon, in fact, Ms. Frampton

10

was just reminding me about all of the great evidence you already have or could easily put in within a matter of minutes about all the IQ tests that have been given. They're in your experts' reports. In fact, they're in Dr. Seward -- the government's expert's reports. You've got the investigator --

What's her name? Rachel...

-- Ms. Rachel Rogers who went out and talked to all kinds of people about how he was perceived back then, which is going to partly come in to adaptive functioning.

I mean, I'm not saying you shouldn't go ahead and take the evidence you've already set up and present it. Sure, you're going to want me to make a ruling based on something. But if I just rule now that you're right on an issue when there's no evidence before me and we've had no hearing and no chance for anything -- how would you have me write the opinion, which the Fifth Circuit always wants me to do, on the reasons for my decision?

MR. MOON: Well, judge, this is Morris Moon again.

In 2254 cases, for example, federal *habeas* cases I've been involved with that have had hearings or -- you know, I'm thinking of one in particular in the Southern District. There was an agreement and a finding

11

by the judge as to the first prong of a Strickland claim --

THE COURT:  Ah.

MR. MOON:  -- so we could really focus the hearing and not have to worry about bringing in the trial lawyers, litigating the whole first prong, because everyone was in agreement based on the facts on paper that that prong would be met.

THE COURT:  But that's -- see, you hit on it right there.  There was an agreement; and, so, obviously the judge could make the finding based on the agreement.

Evidently here you've asked for a particular stipulation, and Mr. Hobbs has said exactly to what he would stipulate.  I mean, keep in mind he's got -- this is hard to understand perhaps, but if I recall -- was it Mr. Hollinger or Mr. Craig or maybe one of your predecessors used to be an assistant United States attorney?

Mr. Hollinger or Mr. Craig, were you --

MR. HOLLINGER:  This is Mr. Hollinger, and it must have been a predecessor.

THE COURT:  Okay, the earlier people there.

Well, the government attorneys have clients also; namely, the various agencies they have to represent.  I mean, that's, in effect, how they have to

think of them, the DEA, the FBI, so forth.  And if the group that handles mental retardation doesn't want to enter into a precise stipulation on a particular subject -- and I don't know why.  Maybe they'd like to wear belt and suspenders.  Maybe they're afraid of getting pinned down somewhere else.  Who knows.  I'm not sure I'm in a position to order it.

Now, I do have in this government's response what they would be willing to stipulate to.  I can't imagine a circumstance I would allow testimony to come in that hadn't been properly disclosed as required by the rules.  I suppose I've done it once in ten years, but I can't think when.  And I'm quite sure another judge in the Eastern District did it, but I sure haven't heard about it personally.

And, yes, you're probably going to want to put into evidence the results of the various tests.  But to decide that, oh, now we're going to have to have several days of hearing and an extra several days of testing and experts and so on and so forth doesn't make a lot of sense to me.  And what ruling you want from me today that wouldn't actually harm you on appeal rather than we go through the process and then give me a record to rule on -- I guess that's what I'm asking you.  What is it you think I could do today, with no record, that would not be

13

almost instantly reversible?

Assume for the minute -- let's do it this way. Assume for purposes of this question that I'm in full agreement with you that -- this is just an assumption. But just assume for a minute that I agree with you that whether or not -- I mean, the IQ prong is really not the issue here; it's the other prong. Assume I'm willing to say whatever you want.

Now, given that hypothetical judge who is willing to write whatever you wish right now, what is it you think I could write that wouldn't just be an open invitation for reversal on appeal since I have no record and no evidence?

MR. MOON:  Well, your Honor, this is Morris Moon again.  I mean, I would submit to the court that the *habeas* cases are treated differently than criminal cases or civil cases.  They're sort of a mishmash of the two. And in those cases there is often factual findings made by courts based on submissions.  And before this court there is a submission from Mr. Jackson about this issue and --

THE REPORTER:  I'm sorry.  I'm having trouble hearing.

THE COURT:  Okay.  Mr. Moon, you'll have to speak up loud enough for the court reporter to hear you.

14

MR. MOON:  I'm sorry, your Honor.

I was saying that in these *habeas* cases, you know, I think there's precedent that they are treated differently than civil cases or criminal cases.  They're sort of a mix of the two.

And there's often factual findings made by a court based on a submission -- *habeas* petition that's submitted and a response by the respondent; and so, that's not -- you know, I submit to the court that that's not unique in a *habeas* situation where a judge makes factual findings and issues an order based on the submissions.

And in this case we have the pleading laying out the Atkins claim in the original -- Mr. Jackson's original motion, 2255 motion.  We have the government's response, and we have the government's testing as well.  So, there are submission facts; and like other *habeas* cases, that finding can be made based on the paper submissions.

THE COURT:  Well, Mr. Hobbs, what do you think of that, that I should just go ahead and make a finding based on what I've got?

MR. HOBBS:  Judge, if I may, this would be a matter of the first time I would experience it; but I would have to consult with the appellate authorities both

15

in my own district and outside of this district and see if that was something we would appeal immediately or at some point later in the process.

THE COURT:  Okay.  Well, I guess I just have to respectfully disagree, Mr. Moon.  We got into this situation because no ruling was ever really asked for or obtained at the trial court.  Now it's in front of me.

It seems that procedurally every effort has been made to -- as is appropriate under the federal rules -- to not put you to unnecessary burdens and expenses.  We've had various representations by the government as to what they are going to do and not going to do.  We've seen the report that their expert submitted, which is when this first came up, if I recall, because I was the one who brought up at that hearing that there didn't seem to be much left on this issue from the government's point of view; and Mr. Hobbs agreed.

But it's almost -- the term I heard used once by a Fifth Circuit panel member asking an attorney -- and thank goodness it was opposing counsel, not me.  But the question particularly was, "Counsel, you got what you want.  Why did you try to gild the lily?"  And at the end of it all, they properly reversed that lawyer's win and flipped his whole case around just based in large part on trying to gild the lily and ask for a little extra on top

16

of what they already had.

I don't think it would be appropriate for me to just rule on that part or that prong of mental retardation before having offered and admitted the evidence and the test scores. I think that would be an actual mistake leaving the -- I mean, assuming -- and I'm sure you're planning -- it would seem to me your game plan is to go ahead and prove up to me the other prong of the mental retardation and convince me that that's the finding I should make. And, in effect, you would have been asking me to build for you a two-legged stool; and it would just get knocked over.

And, yeah, I mean, at some point a trial lawyer has to just go to trial or go to the hearing and have some confidence in the rules and confidence in prior statements and representations that have been made by the opponent and confidence in what has been stated by the expert on the other side and confidence in one's own ability to, should the other expert try to suddenly reverse himself, basically gut that person's credibility so that everything they say from that point on is pretty worthless.

I mean, I'm not going to prejudge it; but I'm very concerned about the idea of just making a ruling at this stage that he meets that prong of the test for

mental retardation.  Is there anything else that you think I could do or should do -- and maybe you disagree with me on what's likely to happen on appeal.  Any other relief you think I should give you that doesn't raise more possibilities for problems on appeal than what you've got already?

MR. MOON:  Well, your Honor -- this is Morris Moon again.  I mean, the other issue, I guess, is just a practical issue, which is that, as you recall, we discussed shortly before my appointment we are really limited to what we get through our administrative process for funding in this case based on our understanding of what the hearing is about.  So, I guess I need to just reevaluate that.

THE COURT:  Well, I suppose if you want to go to your higher-ups and try to claim to them that the judge has said, yes, there is going to be a full-blown hearing on that prong and the U.S. Attorney has said they're bringing in six experts and three truckloads of evidence to prove that his IQ was well over 150, you can go ahead and present that to your higher-ups and do whatever you wish.

But I am very much aware of the budget constraints on you and the organization you work for because it happens to be the same government that the

18

U.S. Attorney works for and the same government of which I'm a part, and I'm trying very hard to keep this hearing focused on the truly contested issues that are going to make a difference.

I mean, this is a difficult case from that point of view. But I guess you can go evaluate what you wish and present however you wish. But I certainly wouldn't recommend that at no point do your experts mention, "By the way, there are some IQ scores at and below 70"; and it might not hurt to ask a question about what does that generally mean.

What I would do if the government suddenly came in with new experts and new argument or something like that -- I'm not going to rule in advance, but there would have to be some convincing done. And then, obviously, I'd be listening to the motion for continuance of the hearing because you're surprised; and then I'd have to rule on that. But right now I haven't seen anything that convinces me that an order of this court would be helpful, and actually I really think it would put you in a bad position later on.

All right. Is there anything else the government wants to add to this?

MR. HOBBS: No, your Honor.

THE COURT: All right. And again, you know,

19

Mr. Hollinger, Mr. Moon, Mr. Craig, I understand you're -- if you've got any feeling at all, this is an important case.  I mean, you're taking on the heavy and sometimes horrible responsibility of representing someone who is facing the death penalty.

Anything else you want to say?  Any other argument you want to make?  Any other suggestion you have?

Obviously you're trying to cover all your bases, and that speaks well of you.  So, what is it -- I mean, if there is something else you want to cover, here is the chance.

(No response.)

THE COURT:  Mr. Hollinger?

MR. HOLLINGER:  Oh, I was waiting for Mr. Moon.

Mr. Hollinger.  No, your Honor.  We've raised our issues, and --

THE COURT:  Okay.

MR. HOLLINGER:  -- you've addressed them.

THE COURT:  All right.  Mr. Moon?

MR. MOON:  No, judge.  Thank you very much.

THE COURT:  Okay.  Mr. Craig?

MR. CRAIG:  No, your Honor.  Thank you.

THE COURT:  All right.  Well, we will proceed

20

on forward with the hearing as set.  And, again, I would anticipate that the main focus of the hearing is going to be the adaptive deficits prong.  But, like I say, it wouldn't be amiss to spend a few minutes pointing out that all this other evidence is already in there about the IQ and it's pretty well uncontested and see where we go from there.

All right.  In that case I appreciate all of you attending and you're excused and the court is adjourned.

(Proceedings concluded, 3:00 p.m.)

COURT REPORTER'S CERTIFICATION

I HEREBY CERTIFY THAT ON THIS DATE, JANUARY 30, 2013, THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS.

_Christina Bickham_
CHRISTINA L. BICKHAM,   CRR,   RMR